```
NNH-FA19-5046828-S              :  SUPERIOR COURT

THEODORA F. ANTAR               :  JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                              :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE               :  NOVEMBER 7, 2019
```

TRANSCRIPT OF PROCEEDINGS


BEFORE THE HONORABLE DANIEL J. KLAU,
JUDGE


A P P E A R A N C E S :


    Representing the Plaintiff:

        THEODORA F. ANTAR
        Self-Represented Party


    Representing the Defendant:

        MATTHEW J. LODICE
        Self-Represented Party


Recorded and Transcribed By:
Alexis Shevchenko
Court Recording Monitor
235 Church Street
New Haven, CT 06510

1          THE COURT:  Antar versus Lodice -- Lodice.

2          MR. LODICE:  Lodice.

3          THE COURT:  Lodice.  Okay.

4          Good afternoon to both of you.

5          MR. LODICE:  Good afternoon, your Honor.

6          THE COURT:  Madam Clerk, would you please swear

7     the parties in.

8          THE CLERK:  Please raise your right hands.

9          Do you solemnly swear or solemnly and sincerely

10     affirm, as the case may be, that the evidence you're

11     about to give concerning this case shall be the

12     truth, the whole truth, and nothing but the truth so

13     help you God or upon penalty of perjury?

14          MS. ANTAR:  Yes.

15          MR. LODICE:  Yeah.

16          THE CLERK:  Please state your name and address

17     for the record.

18          MS. ANTAR:  Theodora Antar.  856 Shagbark Drive,

19     Orange, Connecticut, 06477.

20          THE CLERK:  Thank you.  Sir.

21          MR. LODICE:  Matthew Lodice.  Water -- 48 Quarry

22     Hill Road, Waterbury, Connecticut, 06706.

23          THE COURT:  All right.  Okay.  Good afternoon,

24     folks.  Have a seat.

25          Did we get Mr. Lodice a appearance form or do I

26     have it here?

27          (Whereupon there was discussion between the

1     Court and the clerk.)

2         THE COURT:  Give me just a moment to look over

3     the file and then I'll just address the referral

4     here.  All right.

5         (Whereupon there was a pause in the

6     proceedings.)

7         THE COURT:  All right.  Thank you for your

8     patience.

9         Before I address the recommendation that I refer

10    this matter to what we call our early intervention

11    program, let me just make sure that I understand the

12    background of the case.

13        So we have what I'm sure is a beautiful young

14    daughter who's born in May?

15        MS. ANTAR:  Yes.

16        THE COURT:  Okay.  Who is she presently living

17    with?

18        MS. ANTAR:  She lives with me.

19        THE COURT:  All right.  And you filed originally

20    a -- well, a custody application.

21        MS. ANTAR:  Yes.  Custody and as well --

22        THE COURT:  Yeah.

23        MS. ANTAR:  -- as child support.

24        THE COURT:  Right.

25        MS. ANTAR:  Yes.

26        THE COURT:  Originally, I'm not sure why it was

27    coded this way, the very first document you filed in

1       September was described as a visitation application

2       but then you filed a -- a custody application -- but

3       you're right.  It's -- it says you're seeking -- the

4       request is sole legal custody, parenting plan,

5       primary residence with you, and then a -- a

6       visitation schedule and child support, right?

7               MS. ANTAR:  Yes.  I mean, we -- we want -- we

8       decided we want to do joint custody but --

9               THE COURT:  Oh, okay.

10              MS. ANTAR:  -- yes.  Everything else, correct.

11              THE COURT:  All righty.  So what are the issues

12      that are in dispute?  Let me break it down.  So

13      you're telling me the parties agree, at least at this

14      point, to share joint legal custody.  Is that --

15              MR. LODICE:  We actually --

16              THE COURT:  -- right?

17              MR. LODICE:  -- agree with everything.  We came

18      up with a full agreement as far as custody,

19      visitation, and child support.  We have it all

20      written out and we're ready to --

21              THE COURT:  Oh.

22              MR. LODICE:  -- put that on record.

23              MS. ANTAR:  Yeah.  So we're asking --

24              THE COURT:  Wait.

25              MS. ANTAR:  -- if you -- 'cause we --

26              THE COURT:  Was this something that happened

27      after you met with family relations?

1    MR. LODICE:  Yeah.  She --

2    MS. ANTAR:  Yes.

3    MR. LODICE:  -- was, like, really rushing us and

4    we didn't have time to go over everything.  So --

5    THE COURT:  Oh, okay.

6    MR. LODICE:  -- we kinda, like -- we -- we met

7    out after and then talked it and worked it all out

8    ourselves and then came back.

9    THE COURT:  A rare occurrence but I am very

10   happy to hear that.

11   So, ma'am, you have in front of you --

12   MS. ANTAR:  Yes.

13   THE COURT:  -- is that --

14   MS. ANTAR:  It's --

15   THE COURT:  -- the agreement?

16   MS. ANTAR:  -- it's handwritten but I'm

17   wondering --

18   THE COURT:  That's fine.

19   MS. ANTAR:  -- if it's okay if I read it and

20   then they -- they can type it as I'm…

21   THE COURT:  Let me -- well, it doesn't quite

22   work that way.  What --

23   MS. ANTAR:  Okay.

24   THE COURT:  -- I'm -- what I'm gonna do is have

25   you give it to the marshal.

26   MS. ANTAR:  Okay.  It's a little bit kind of

27   messy but for the most part -- if you want, I -- we

1    can read it to clarify.

2         THE COURT:  Let me just take a look at it first.

3         MS. ANTAR:  Okay.

4         THE COURT:  Okay.  Thank you, marshal.

5         MS. ANTAR:  Yep.

6         THE COURT:  And the fact that I'm raising my

7    glasses has nothing to do with the legibility.

8         MS. ANTAR:  Okay.

9         THE COURT:  I'm just getting old and so…

10        (Whereupon there was a pause in the

11   proceedings.)

12        THE COURT:  So let me see, if I got the gist of

13   this, you have a -- a -- a fairly detailed parenting

14   schedule through January --

15        MS. ANTAR:  Right.

16        THE COURT:  -- correct?  And then it provides

17   that after -- after that basically you will by mutual

18   agreement work out visitation on a work --

19   week-by-week basis?

20        MR. LODICE:  Yeah.  We --

21        MS. ANTAR:  Yes.

22        MR. LODICE:  -- work for the same company so

23   we --

24        THE COURT:  Okay.

25        MR. LODICE:  -- kinda understand our schedules.

26        THE COURT:  All right.  Where -- and the child

27   support number that's in here --

1       MS. ANTAR:  Yes.

2       THE COURT:  -- how did you both arrive at that

3   number?  Did you use the child support guidelines?

4       MR. LODICE:  On the child support guidelines --

5   I -- I'm -- I'm a private contractor.  We're both

6   private contractors.

7       THE COURT:  Mm-hmm.

8       MR. LODICE:  My write-offs are large so it's a

9   lot lower than it can be, than I could afford.  So I

10  -- we came up with a agreement that's higher than

11  what the guidelines would be.

12      THE COURT:  So this is a -- this -- that's

13  really my question.  This is an upward deviation.

14  So, if you took your gross income based on your

15  recent paystubs, tax returns, whatever, and --

16      MR. LODICE:  Yeah.

17      THE COURT:  -- yours, did you put that into the

18  child support guidelines?

19      MR. LODICE:  Yes.

20      THE COURT:  And you came up with a number that

21  was lower than one twenty?

22      MR. LODICE:  Yes.

23      THE COURT:  So you're paying her more than you

24  would under the guidelines?

25      MR. LODICE:  Yes.

26      THE COURT:  And I don't see anything in this

27  agreement, maybe I'm missing it, that says anything

1       about legal custody.

2           MR. LODICE:  We would like shared custody.

3           THE COURT:  You want shared --

4           MR. LODICE:  Yes.

5           THE COURT:  -- legal custody.  All right.

6           MS. ANTAR:  And I also did put in there about

7       unreimbursed childcare and unreimbursed medical.

8           THE COURT:  Did not put in here?

9           MS. ANTAR:  I did put it in there.  I'm not sure

10      if you saw it.  Just 50 -- 50 percent of the

11      unreimbursed medical and 50 percent of the

12      unreimbursed childcare.

13          THE COURT:  Oh, there it is.

14          MS. ANTAR:  Yeah.  I wrote it --

15          THE COURT:  Yeah, I see it.

16          MS. ANTAR:  -- kinda messy.

17          THE COURT:  Sorry.

18          MS. ANTAR:  Okay.

19          THE COURT:  Of all daycare and medical.

20          MS. ANTAR:  Yes.

21          THE COURT:  All right.  Did you fill out

22      financial affidavits at any point today?

23          MR. LODICE:  Not today.  We did -- we were

24      actually here on Tuesday.  We had a court -- court

25      appearance Tuesday for child support and we were just

26      at a very big disagreement with that because, you

27      know, like I said, my income was coming up as below

1      minimum and --

2           THE COURT:  Yeah.

3           MR. LODICE:  -- they wanted to give her a low

4      amount and we kind of bumped heads with that.  So

5      then we came up to our own agreement that was better

6      than that.

7           MS. ANTAR:  Yeah.  So that -- that on Tuesday

8      was in front of the magistrate and they told us today

9      in family relations that we could -- we could do both

10     child support as well as --

11          THE COURT:  Ah, so --

12          MS. ANTAR:  -- the visitation --

13          THE COURT:  -- well --

14          MS. ANTAR:  -- in this --

15          THE COURT:  -- just let me see here.

16          MS. ANTAR:  -- court.

17          THE COURT:  So is there a -- is there a docket

18     pending, a matter pending, in magistrate court?

19          MS. ANTAR:  Yes.  But we --

20          MR. LODICE:  Yes.

21          MS. ANTAR:  -- plan on -- on withdrawing that if

22     we can settle everything today.  So we wanted to

23     just, you know, get it ordered today and then not

24     have to come back.

25          THE COURT:  All right.  And who filed the action

26     in probate court -- excuse me, probate court -- in

27     the magistrate court?  You did?

1    MS. ANTAR:  I did.

2         THE COURT:  What was the reason for filing it in

3    magistrate court as opposed to here?  That's really

4    all I'm…

5         MS. ANTAR:  So basically I did it -- I did it

6    through Department of Social Services --

7         THE COURT:  Right.

8         MS. ANTAR:  -- and I did that months ago and it

9    took them a long time to get me a court date.  So, in

10   the meantime, while it was taking so long, I filed

11   through the regular court --

12        THE COURT:  Are you --

13        MS. ANTAR:  -- for both.

14        THE COURT:  -- receiving what they call IV-D

15   services?

16        MS. ANTAR:  Oh, yes.  Husky insurance --

17        THE COURT:  Oh --

18        MS. ANTAR:  -- so --

19        THE COURT:  -- but just the Husky?

20        MS. ANTAR:  And food stamps.

21        THE COURT:  And food stamp, okay.

22        MS. ANTAR:  Yes.

23        THE COURT:  I'm not sure -- I'm embarrassed to

24   admit this, I'm not sure that -- that this court as

25   opposed to the magistrate court since you're

26   receiving IV-D services --

27        MR. LODICE:  We were told --

1      MS. ANTAR:  We did ask --

2      MR. LODICE:  -- as long as she's not

3  receiving --

4      MS. ANTAR:  Yeah.

5      MR. LODICE:  -- food cash --

6      MS. ANTAR:  As long as --

7      THE COURT:  Is that --

8      MR. LODICE:  -- that there's --

9      MS. ANTAR:  -- we're not receiving --

10     THE COURT:  -- what they said?

11     MR. LODICE:  -- no problem so --

12     MS. ANTAR:  -- cash assistance --

13     MR. LODICE:  -- that's what they told us.

14     MS. ANTAR:  -- they said we would be able to

15  hear it in this court so.  They said it doesn't make

16  a difference.

17     MR. LODICE:  Because --

18     MS. ANTAR:  It's our preference.

19     MR. LODICE:  -- otherwise I have to pay back the

20  cash if she receives cash.

21     THE COURT:  Understood.  So is it your intention

22  that this agreement that you've negotiated would --

23  would be a final agreement that resolves the custody

24  application, you know, the -- everything that's under

25  the docket number in this case?

26     MS. ANTAR:  Yes.

27     MR. LODICE:  Yes.

1        (Whereupon there was a pause in the

2     proceedings.)

3        THE COURT:  All right.  Here's what I can do

4     today; here's what I can't do today.  What I can do

5     today, and I'm happy to do today, is enter this

6     agreement as a temporary agreement.  The reason I

7     call temporary -- I -- I can't enter a final

8     agreement without financial affidavits and child

9     support guideline worksheets.  I just can't do that.

10        Now, if you'd like, you can step outside the

11     courtroom, go down to one -- room 119, which is the

12     court support --

13        What are they called?

14        THE CLERK:  Court service center.

15        THE COURT:  -- court service center, and you can

16     fill out financial affidavits down there and the

17     child support guideline worksheet.  And then you can

18     come back up here and then I'll have those documents

19     and I'd be prepared to make this a final agreement

20     and you wouldn't have to come back.  But, until and

21     unless I have those documents, I can't enter this as

22     a final -- final judgment.

23        MR. LODICE:  Okay.

24        THE COURT:  So how would you like to proceed?

25        MS. ANTAR:  So, if we just go downstairs, get a

26     financial affidavit, fill it out, and come back --

27        THE COURT:  Yeah.

1        MS. ANTAR:  -- you can --

2        THE COURT:  Come right --

3        MS. ANTAR:  -- order this --

4        THE COURT:  -- back here.

5        MS. ANTAR:  -- right now?

6        THE COURT:  Yeah.  I -- you know, it's only

7    three.  I'm here till five.

8        MS. ANTAR:  Okay.

9        THE COURT:  That --

10        MR. LODICE:  You wanna do that?

11        THE COURT:  -- you -- you can --

12        MS. ANTAR:  Yeah, we can do that.

13        THE COURT:  -- I'm sure you can do it with them

14    now.

15        So what you need to do is fill out the financial

16    affidavits and somebody'll help you with the child

17    support guideline worksheets.  Just come back up with

18    those and then -- then we'll -- I'll enter final

19    orders on this.

20        MR. LODICE:  Okay.

21        MS. ANTAR:  Sounds good.

22        THE COURT:  Okay.

23        MS. ANTAR:  Thank you.

24        MR. LODICE:  Thank you, your Honor.

25        THE COURT:  All right.

26        (Whereupon the intervening proceedings are not

27    included in transcript.)

1          THE MARSHAL:  Court is now open and in session.

2          Good afternoon, your Honor.

3          THE COURT:  Good afternoon, marshal.  Good

4   afternoon, folks.

5          MR. LODICE:  Good afternoon, your Honor.

6          THE COURT:  All right.  The matter -- Court will

7   continue the matter of Antar versus Lodice.

8          Thank you, folks, for filling out the financial

9   affidavits and the child support guidelines.

10         Do you have the -- oh, here it is.  Sorry.

11         All right.  So, based on the financial

12  affidavits that you provided, the presumptive amount

13  of child support that --

14         Do, do, do, do, do, do, do.  Hold on.

15         (Whereupon there was a pause in the

16  proceedings.)

17         THE COURT:  -- that dad would pay mom is $55 a

18  week.

19         MR. LODICE:  Yes, your Honor.

20         THE COURT:  But is it still the case that the

21  parties have agreed that you'll pay a hundred and

22  twenty dollars a week?

23         MR. LODICE:  Yes, your Honor.

24         THE COURT:  Okay.  And that you believe is in

25  the best interests of the child?

26         MR. LODICE:  Definitely.

27         THE COURT:  I say that word because that's -- I

1       -- I -- I'm -- what we're doing here is deviating

2       from the child support guidelines.  Now, this is an

3       upward deviation, which I'm happy to do, but I just

4       need to specify the -- the specific reason for the

5       deviation and best interests is one of the matters.

6           MR. LODICE:  Okay.

7           THE COURT:  Okay.  So --

8           MR. LODICE:  Excuse me.  Thank you.

9           THE COURT:  What I'm going to do is -- I think

10      that the written agreement that you've done is

11      perfectly legible.  All right.  What I'm going to do

12      is simply hand it back down to you and have both of

13      you sign and date it just on the back.

14          MR. LODICE:  Okay.

15          THE COURT:  Okay.  And then -- actually, wait.

16      Before I do that, let me add to it.  I'm gonna write

17      on the back parties agree to -- to share joint legal

18      custody, all right, and primary residence is with

19      mom.  Correct?

20          MR. LODICE:  Yes, your Honor.

21          (Whereupon there was a pause in the

22      proceedings.)

23          THE COURT:  Very good.  Marshal.

24          So just sign -- sign and date underneath and

25      then we'll give it to -- to Miss Antar.

26          MR. LODICE:  Seven, right?

27          THE COURT:  Yep.

1      (Whereupon there was a pause in the

2   proceedings.)

3      THE COURT:  Thank you, marshal.

4      All right.  The next -- what I'm gonna do is

5   gonna be slightly repetitive but I'm just doing it so

6   that we now have a clear record, and I'm -- what I'm

7   gonna do is ask you standard questions that I ask in

8   any -- in any custody case.  There's nothing unusual

9   about these questions.  They're just to establish

10  jurisdiction, date of birth, that kind of thing.

11     All right.  Miss Antar, you are the applicant in

12  this matter, correct?

13     MS. ANTAR:  Yes.

14     THE COURT:  All right.  And you are the mother

15  of Angelina Maria Lodice, born May 21st, 2019.  Is

16  that correct?

17     MS. ANTAR:  Yes.

18     THE COURT:  Has Angelina resided continuously in

19  the state of Connecticut since her birth?

20     MS. ANTAR:  Yes.

21     THE COURT:  At the moment are you receiving any

22  financial support from the State of Connecticut or is

23  Angelina receiving any support other than Husky

24  insurance?

25     MS. ANTAR:  No.

26     THE COURT:  Okay.

27     (Whereupon there was a pause in the

1    proceedings.)

2         THE COURT:  And you and Mr. Lodice have reached

3    an agreement regarding legal custody, physical

4    custody, and a parenting plan, and child support.  Is

5    that correct?

6         MS. ANTAR:  Yes.

7         MR. LODICE:  Yes.

8         THE COURT:  And, just in general terms, this is

9    a -- a handwritten agreement which will be made cart

10   -- part of the court record.

11        Both of you have signed it in the presence of

12   the Court, correct?

13        MS. ANTAR:  Yes.

14        MR. LODICE:  Yes.

15        THE COURT:  Did anybody force either of you to

16   -- to threaten -- to -- to sign this document?

17        MR. LODICE:  No --

18        MS. ANTAR:  No.

19        MR. LODICE:  -- your Honor.

20        THE COURT:  Generally speaking, the agreement is

21   as follows:

22        Parties will share joint legal custody of

23   Angelina, correct?

24        MR. LODICE:  Mm-hmm.

25        MS. ANTAR:  Yes.

26        THE COURT:  Primary residence, physical

27   residence will be with you, correct, Miss Antar?

1          MS. ANTAR:  Correct.

2          THE COURT:  In terms of a -- a -- a parenting

3     schedule, the agreement sets forth a fairly specific

4     schedule that governs parenting time between today

5     and roughly the end of January 2020, correct?

6          MS. ANTAR:  Correct.

7          THE COURT:  And then the agreement provides that

8     thereafter the parties will work out visitation by

9     mutual agreement on a week-by-week basis, correct?

10          MS. ANTAR:  Yes.

11          MR. LODICE:  Yes.

12          THE COURT:  The agreement also provides that you

13     will have the authority to get a passport for the

14     child?

15          MS. ANTAR:  Yes.

16          THE COURT:  Okay.

17          MR. LODICE:  Yes.

18          THE COURT:  Anybody planning travels?

19          MS. ANTAR:  Not yet --

20          MR. LODICE:  Not -- not --

21          THE COURT:  Not yet.

22          MR. LODICE:  -- right away --

23          MS. ANTAR:  -- but I just --

24          MR. LODICE:  -- no.

25          MS. ANTAR:  -- just in case.

26          THE COURT:  Okay.  In terms of child support,

27     the agreement provides that dad will pay you a

1          hundred and twenty dollars a week in child support,

2          correct?

3                    MS. ANTAR:  Yes.

4                    MR. LODICE:  Yes.

5                    THE COURT:  Now, you understand that, based on

6          your respective incomes which were then put into the

7          child support guideline worksheet, the presumptive

8          amount of child support that Mr. Lodice would have to

9          pay is $55 a week.  Is that correct, sir?

10                   MR. LODICE:  Yes, your Honor.

11                   THE COURT:  So the agreement provides for what

12         we would call an upward deviation from the

13         presumptive amount to the agreed-upon amount,

14         correct?

15                   MS. ANTAR:  Yes.

16                   MR. LODICE:  Yes.

17                   THE COURT:  And do you both agree that that's in

18         the best interests of Angelina?

19                   MS. ANTAR:  Yes.

20                   MR. LODICE:  Yes.

21                   THE COURT:  In addition, the child support

22         guidelines specify presumptive percentages that each

23         of you would pay for unreimbursed medical expenses

24         and work-related daycare.  You understand that?

25                   MS. ANTAR:  Yes.

26                   MR. LODICE:  Yes.

27                   THE COURT:  The presumptive amount is that Mrs.

1   Antar [sic] would pay 70 percent of expenses and Mr.

2   Lodice would pay 30 percent, correct?

3        MS. ANTAR:  Yes.

4        MR. LODICE:  Yes.

5        THE COURT:  With respect to childcare, Mr.

6   Lodice would pay 20 percent, right?

7        MS. ANTAR:  Yes.

8        MR. LODICE:  Yes --

9        THE COURT:  Under the --

10       MR. LODICE:  -- that's presumptive.

11       THE COURT:  -- presumptive amount.

12       MR. LODICE:  Yeah.

13       THE COURT:  All right.

14       MR. LODICE:  Okay.  Yes.

15       THE COURT:  But the agreement is for the parties

16   to split 50/50 all unreimbursed medical expenses and

17   work-related daycare expenses --

18       MR. LODICE:  Yes.

19       THE COURT:  -- correct?

20       MS. ANTAR:  Yes.

21       THE COURT:  All right.

22       (Whereupon there was a pause in the

23   proceedings.)

24       THE COURT:  Let me ask you a question.  It might

25   not have come up.  Have you discussed with each other

26   who -- how taxes will be filed or who will claim

27   Angelina?

1        MS. ANTAR:  We haven't discussed it but it -- if

2   she's living with me, my accountant has always said

3   that the child -- whoever the child lives with is the

4   one who claims the child.

5        THE COURT:  Fine.  And do you agree --

6        MR. LODICE:  That's --

7        THE COURT:  -- with that --

8        MR. LODICE:  -- that's --

9        THE COURT:  -- sir?

10        MR. LODICE:  -- fine.  Yeah.

11        THE COURT:  Okay.

12        (Whereupon there was a pause in the

13   proceedings.)

14        THE COURT:  All right.  Now, both of you are

15   representing yourself -- I'll ask you these questions

16   and then you just -- I'll follow up.

17        MR. LODICE:  Okay.

18        THE COURT:  So, ma'am, you're representing

19   yourself today, which is your right, but do you

20   understand that, if you wanted to, you could've

21   retained an attorney to represent you in this matter?

22        MS. ANTAR:  Yes.

23        THE COURT:  Did anybody attempt to prevent you

24   or discourage you from hiring counsel?

25        MS. ANTAR:  No.

26        THE COURT:  Do you also understand that instead

27   of entering into an agreement today you could have

1    had a hearing, a -- a trial, if you will, before a

2    Judge, whether it was myself or one of my colleagues,

3    and the Judge would've heard evidence, testimony from

4    you and from the father, and that the Court could

5    have resolved the issues of custody, parenting time,

6    child support?  Do you understand that?

7         MS. ANTAR:  Yes.

8         THE COURT:  And do you believe that your -- you

9    -- do you understand that by entering into the

10   agreement today you're waiving your right to have a

11   trial and a Judge decide these issues?

12        MS. ANTAR:  Yes.

13        THE COURT:  And you're doing so voluntarily and

14   of your own free will?

15        MS. ANTAR:  Yes.

16        THE COURT:  All right.  Do you have any

17   questions about the agreement?

18        MS. ANTAR:  No.

19        THE COURT:  Okay.  Now, Mr. Lodice, those last

20   few questions that I asked Miss Antar, did you hear

21   those questions?

22        MR. LODICE:  I did.

23        THE COURT:  And did you hear her answers?

24        MR. LODICE:  Yes.

25        THE COURT:  Do you agree with her answers?

26        MR. LODICE:  Yes.

27        THE COURT:  If I asked you the same questions,

1       would you have answered the same --

2           MR. LODICE:  Yes.

3           THE COURT:  -- way?

4           MR. LODICE:  Yes.  Agreement with all of them.

5           THE COURT:  And I asked both of you before --

6       let me do it again.

7           Ma'am, is -- do you want the Court to accept

8       this agreement and make it a final Court order?

9           MS. ANTAR:  Yes.

10          THE COURT:  And, by final, what I mean is it

11      will resolve the custody application.  There won't be

12      any further court dates with respect to the pleadings

13      that you filed.  It doesn't mean, however, that

14      people can't come back to court to modify any aspect

15      of this agreement by filing a motion to modify.  You

16      understand that?

17          MS. ANTAR:  Yes.

18          THE COURT:  But, if -- if you wanted to do that,

19      somebody would have to file a motion.  Understood?

20          MS. ANTAR:  Yes.

21          MR. LODICE:  Yes.

22          THE COURT:  Okay.  Very good.

23          The Court will make the following findings now:

24          The Court finds that it has jurisdiction over

25      this custody matter.  The Court finds that the

26      parties have one minor child, Angelina Marinia --

27      Maria Lodice, born May 21st, 2019.  She has resided

1    continuously in the state of Connecticut since birth.

2    Other than Husky insurance, the parties nor the child

3    have received any financial assistance from the State

4    of Connecticut.

5        The Court has reviewed the parties' financial

6    affidavits, the child support guideline worksheet,

7    and the parties' written agreement.

8        Upon thorough consideration, the Court finds

9    that the parties' agreement is fair, just, and

10   equitable and in the best interests of their minor

11   child.  The Court approves their agreement.  It is

12   now an order of the Court and it will be incorporated

13   into the final custody judgment.  So this is a final

14   order.

15       Have either of you signed up for the parenting

16   education program?

17       MS. ANTAR:  No, but we are doing co-parenting

18   counseling --

19       MR. LODICE:  We actually do our own --

20       MS. ANTAR:  -- privately.

21       MR. LODICE:  -- co-parenting counseling outside

22   of the court ourselves just to help us work with each

23   other.  It's been very helpful.

24       THE COURT:  Excellent.  The -- hold on one

25   second.  The --

26       (Whereupon there was a pause in the

27   proceedings.)

1      THE COURT:  So the co-parenting counseling

2      you're doing is something that you've arranged on

3      your own?

4      MR. LODICE:  Yes.

5      MS. ANTAR:  Yes.

6      THE COURT:  In light of the parties'

7      representation that they are both currently engaged

8      in parenting education program [sic], the Court will

9      waive the requirement that they -- excuse me, that

10     they're engaged in co-parenting counseling, the Court

11     will waive the requirement that they participate in

12     the parenting education program.

13     MR. LODICE:  Okay.

14     THE COURT:  Okay.  You are all set.

15     MS. ANTAR:  Okay.

16     THE COURT:  I'm glad that you were able to work

17     this out over the course of the day.  I know it's

18     been --

19     MR. LODICE:  Thank you, your Honor.

20     THE COURT:  -- a long day and it got --

21     MR. LODICE:  Yes, it has.

22     THE COURT:  -- off to a rough start but I -- I'm

23     very pleased that you were able to work this out and

24     I --

25     MS. ANTAR:  Thank you --

26     MR. LODICE:  So are we.

27     THE COURT:  -- wish you both --

1          MS. ANTAR:  -- very much.

2          MR. LODICE:  Thank you.

3          THE COURT:  -- the best of luck.  Okay.

4          MR. LODICE:  Okay.

5          MS. ANTAR:  Thank you --

6          MR. LODICE:  Thank you, your Honor.

7          MS. ANTAR:  -- so much.

8          THE COURT:  All right.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

```
NNH-FA19-5046828-S              :   SUPERIOR COURT

THEODORA F. ANTAR               :   JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                              :   AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE               :   NOVEMBER 7, 2019
```

C E R T I F I C A T I O N

      I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, at New Haven, Connecticut, before the Honorable Daniel J. Klau, Judge, on the 7th day of November, 2019.

      Dated this 26th day of August, 2022 in New Haven, Connecticut.

_____

Alexis Shevchenko
Court Recording Monitor

6/26/2023

| NNH-FA19-5046828-S | : | SUPERIOR COURT |
|---|---|---|
| THEODORA F. ANTAR | : | JUDICIAL DISTRICT<br>OF NEW HAVEN |
| v. | : | AT NEW HAVEN, CONNECTICUT |
| MATTHEW J. LODICE | : | NOVEMBER 7, 2019 |

E L E C T R O N I C

C E R T I F I C A T I O N


    I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, at New Haven, Connecticut, before the Honorable Daniel J. Klau, Judge, on the 7th day of November, 2019.


    Dated this 26th day of June, 2023 in New Haven, Connecticut.


_____
Alexis Shevchenko
Court Recording Monitor