NNH-FA19-5046828-S                    :  SUPERIOR COURT

THEODORA F. ANTAR                     :  JUDICIAL DISTRICT
                                         OF NEW HAVEN

v.                                    :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE                     :  MAY 25, 2023


                    TRANSCRIPT OF PROCEEDINGS



               BEFORE THE HONORABLE JANE K. GROSSMAN,
                              JUDGE


A P P E A R A N C E S :


     Representing the Plaintiff:

          THEODORA F. ANTAR
          Self-Represented Party


     Representing the Defendant:

          MATTHEW J. LODICE
          Self-Represented Party


                              Recorded and Transcribed By:
                              Alexis Shevchenko
                              Court Recording Monitor
                              235 Church Street
                              New Haven, CT 06510

1    THE COURT:  All right.  The next ready matter is

2    Theodora Antar and Matthew Lodice.

3    MR. LODICE:  Good afternoon, your Honor.

4    THE COURT:  All right.  Miss Antar.

5    The record should reflect that both parties are

6    present.

7    Please get settled.  You need to turn off your

8    phones and put away your phones and no one is allowed

9    to use a phone in this courtroom.

10   This is a continuation of a hearing that we

11   started on April 5th.  We are finishing that hearing

12   today.

13   (Whereupon there was a pause in the

14   proceedings.)

15   THE COURT:  All right.  While you're getting

16   settled, I'm gonna get my notes off my desk.

17   We're not recessing, marshal.  I just wanna grab

18   my notes.

19   (Whereupon there was a pause in the

20   proceedings.)

21   THE COURT:  So on the last court date we heard

22   from family relations, we began the testimony of Miss

23   Antar, and I think we need to have the testimony of

24   Mr. Lodice.  So are we ready to begin with Mr.

25   Lodice's testimony?

26   MR. LODICE:  I am, your Honor.

27   THE COURT:  All right.  Are you ready, Miss

1      Antar?  I'm gonna let Mr. Lodice begin his testimony.

2          MS. ANTAR:  I just need one more minute please.

3      I just wanna just get all this stuff out right now.

4          THE COURT:  All right.  What -- Miss Antar, are

5      you unpacking suitcases worth of stuff?  What are you

6      doing there?

7          MS. ANTAR:  I just want to make sure I have in

8      -- evidence that I can provide to the Court to

9      support the claims I'm making.

10         THE COURT:  Okay.  Well, I'll remind you, Miss

11     Antar, that you were represented by a lawyer on the

12     first day of this hearing, that your lawyer put on

13     most of your evidence, called you on direct, put on

14     that direct case.  I have several hours' worth of

15     testimony from you.

16         Now I am going to take testimony from Mr.

17     Lodice.  Unless you have things that are maybe in

18     rebuttal, there's probably not gonna be additional

19     direct evidence from you.

20         MS. ANTAR:  So --

21         THE COURT:  That's how these trials work.

22         MS. ANTAR:  So my attorney did not provide any

23     of the evidence that I gave to him in preparing for

24     the previous hearing which is part of the reason why

25     I terminated the relationship.  I have been -- spent

26     the last week -- I consulted with many attorneys,

27     several, none of which said -- all of which said it

1      would be unethical for them to file an appearance and

2      jump into a hearing at the last second without having

3      a chance to --

4           THE COURT:  Okay.

5           MS. ANTAR:  -- consult and look at the file and

6      so on and so forth.  So I -- you know, I'm -- I'm

7      seeking new counsel.  I have one who I am -- I

8      already signed a retainer with and I plan to meet

9      with her after --

10          THE COURT:  Miss --

11          MS. ANTAR:  -- this.

12          THE COURT:  -- Antar, this hearing's ending

13     today.

14          MS. ANTAR:  I understand that --

15          THE COURT:  So --

16          MS. ANTAR:  -- but I have a lot of things I'd

17     like --

18          THE COURT:  -- so --

19          MS. ANTAR:  -- to address on these pending

20     motions today.

21          THE COURT:  Okay.  Miss --

22          MS. ANTAR:  And so --

23          THE COURT:  -- Miss Antar.

24          MS. ANTAR:  -- I'd like to be able to address

25     the Court --

26          THE COURT:  Listen to me.

27          MS. ANTAR:  -- with my evidence.

1        THE COURT:  Listen to me.  We've done this a

2    couple times and every time you've been in front of

3    me there's never been enough time for you.  You've

4    always had hundreds of documents, hours of testimony

5    you wanted to offer.  Part of the reason I had family

6    relations do the work they did was to kind of gather

7    some of that evidence for you, both of you, present

8    it in a very concise way.  I did that at -- at your

9    request.  Family relations talked to all the people

10   that you two wanted them to talk to to kind of narrow

11   some of what was before the Court.

12       But I wanna be clear with you.  You -- to the

13   extent that you're the moving party, your lawyer put

14   on your case.  I don't know why you fired that very

15   good lawyer between the last court date and today,

16   but that doesn't get you a continuance or a do-over.

17       So the case is gonna go like this:  your -- most

18   of your evidence has already been presented to the

19   Court through your counsel.  Additional objective

20   evidence was presented to the Court through family

21   relations.  Mr. Lodice needs today to put on his

22   evidence and then we're probably gonna be done.  So

23   that's how this is gonna go.

24       MS. ANTAR:  Okay.  And at the last hearing

25   Attorney Cretella did not submit one single piece of

26   my evidence.  Mr. Lodice was able to submit his

27   evidence.  He was able to ask question.  I was not

1       able to submit not one piece of evidence on the April

2       5th hearing --

3              THE COURT:  All right.  Miss --

4              MS. ANTAR:  -- and I would like the opportunity

5       to be able to submit my concise, organized evidence

6       today.

7              THE COURT:  Miss --

8              MS. ANTAR:  I also --

9              THE COURT:  -- Antar --

10             MS. ANTAR:  -- submitted some --

11             THE COURT:  -- listen to --

12             MS. ANTAR:  -- exhibits --

13             THE COURT:  -- me.  When I said --

14             MS. ANTAR:  -- e-filed today.

15             THE COURT:  -- when I said to you that your case

16      had been put on by your lawyer, that included

17      testimony, evidence, et cetera.

18             MS. ANTAR:  There was no evidence given on that

19      date.

20             THE COURT:  The Court took --

21             MS. ANTAR:  And I consulted with an attorney,

22      Stephanie Bernstein.  I signed a retainer with her.

23             THE COURT:  All right.

24             MS. ANTAR:  And she's extremely concerned

25      about --

26             THE COURT:  Miss Antar.

27             MS. ANTAR:  -- everything that I've told her.  I

1    know that --

2        THE COURT:  Sit down.

3        MS. ANTAR:  -- I need an attorney.  I'd like an

4    attorney to represent my case but I'm prepared to go

5    forward today with the motions as stated.

6        THE COURT:  Miss Antar, your case -- this is the

7    last time I'm gonna say this to you.  Your lawyer put

8    on your portion of your case already.

9        MS. ANTAR:  I disagree.  He did not.

10        THE COURT:  Okay.

11        MS. ANTAR:  He -- he committed malpractice and

12    I've filed a grievance on him.

13        THE COURT:  All right.  Sit down.

14        MS. ANTAR:  I have all --

15        THE COURT:  Miss Antar --

16        MS. ANTAR:  -- the evidence --

17        THE COURT:  -- sit down.

18        MS. ANTAR:  -- I have all the evidence here that

19    was not provided by --

20        THE COURT:  Miss Antar --

21        MS. ANTAR:  -- my attorney --

22        THE COURT:  -- sit down.

23        MS. ANTAR:  -- and that's why he's my former

24    counsel.

25        THE COURT:  Sit down.

26        MS. ANTAR:  Okay.  I also'd like to address the

27    fact that he's withholding my file which is also

1    malpractice.

2         THE COURT:  All right.  Ms. Antar, we have done

3    this a couple times before and I'm not --

4         MS. ANTAR:  We've only had one hearing with me

5    with counsel and -- since -- since --

6         THE COURT:  All right.

7         MS. ANTAR:  -- you've took on this case, we only

8    had one hearing in front of you with my counsel

9    during which I gave not one piece of evidence.

10         THE COURT:  Miss Antar.

11         MS. ANTAR:  Not one.  I was not given my

12    legal --

13         THE COURT:  All right.

14         MS. ANTAR:  -- opportunity to give evidence for

15    -- this is for custody of --

16         THE COURT:  That is --

17         MS. ANTAR:  -- my daughter.

18         THE COURT:  -- absolutely not true.  So sit --

19         MS. ANTAR:  There's --

20         THE COURT:  -- down.

21         MS. ANTAR:  -- zero exhibits that were -- that

22    was filed by me on that date.  I have copies of every

23    one that he submitted --

24         THE COURT:  Miss Antar.

25         MS. ANTAR:  -- and none of mine were

26    submitted --

27         THE COURT:  Miss Antar.

1          MS. ANTAR:  -- by Attorney Cretella --

2          THE MARSHAL:  Ma'am.

3          MS. ANTAR:  -- this --

4          THE MARSHAL:  Ma'am.

5          MS. ANTAR:  -- by him --

6          THE MARSHAL:  Can you sit please.

7          THE COURT:  All right.

8          MS. ANTAR:  Yes.  I'd like --

9          THE COURT:  Marshal.

10         MS. ANTAR:  -- I'd like an opportunity --

11         THE COURT:  Marshal.

12         MS. ANTAR:  -- to speak to the counsel --

13         THE COURT:  I'll do it.

14         MS. ANTAR:  -- I signed retainer with.

15         THE COURT:  Listen to me.  This is how this

16    goes.  You're not gonna interrupt me anymore.  We're

17    gonna conduct this hearing in an orderly fashion and,

18    if I am missing information that I need to make

19    decisions, I will let both of you know.

20         But, for the last time, the lawyer you had last

21    time put on your case.  He did a very good job.  I

22    understand you're not satisfied with it but that's

23    the way I received it.  You will not be given an

24    opportunity to redo what he did for you.

25         So we are at the point in this trial where Mr.

26    Lodice testifies.  I am going to let him do that and,

27    when he is done, if you have questions that are

1   relevant to these proceedings and not duplicative, I

2   will let you answer -- ask him them.  And then, if I

3   need any more information, I will ask it of the two

4   of you.  This is not a do-over.  So no more

5   interrupting and you are not going to do over what

6   Attorney Cretella did.  That's it.

7        So, Mr. Lodice, if you're gonna testify, you can

8   do that now.

9        MR. LODICE:  Do I need to go up there or can I

10  do it --

11       THE COURT:  Yes --

12       MR. LODICE:  -- from here?

13       THE COURT:  -- you do.

14       MR. LODICE:  Okay.  Can I bring notes or should

15  I leave them here?

16       THE COURT:  You can bring them but put them

17  facedown with -- and tell me if you want to look at

18  them.

19       MR. LODICE:  Okay.  If I need to present

20  evidence as part of my testimony, how do I do that?

21       THE COURT:  Is that the piles there?

22       MR. LODICE:  Some of it is just --

23       THE COURT:  All right.  Testify from there.

24  Just took -- stay there.

25       MR. LODICE:  Okay.

26       THE COURT:  Turn your notes over.  The clerk'll

27  swear you in.

1    THE CLERK:  Please stand and raise your right

2    hand.

3         Do you solemnly swear or solemnly and sincerely

4    affirm, as the case may be, that the evidence you

5    shall give concerning this case shall be the truth,

6    the whole truth, and nothing but the truth so help

7    you God or upon penalty of perjury?  If so, please

8    say I do.

9         MR. LODICE:  I do.

10        THE CLERK:  Please state your name and address

11   for the record, sir.

12        MR. LODICE:  Matthew Lodice.  23 Lyman Street,

13   New Britain, Connecticut, 06053.

14        THE COURT:  All right.  Mr. Lodice, do you need

15   me to prompt you as to what kind of information I

16   need or are you ready to tell me certain things?

17        MR. LODICE:  I'm ready to -- to give you

18   everything and I'll make it as fast as possible, your

19   Honor.

20        THE COURT:  Okay.  So I have custody motions, a

21   contempt motion, and one -- one of the things I'm

22   particularly concerned about is this claim that

23   you're not paying child support.  So make sure you

24   cover those things.

25        MR. LODICE:  Okay.  First of all, I wanna touch

26   base on contempt motion.  I'd like to submit this as

27   evidence.

```
1              THE COURT:  All right.

2              MR. LODICE:  Miss Antar --

3              THE COURT:  Hold on.

4              MR. LODICE:  -- will have received this.

5              THE COURT:  Don't take that from him yet.

6              MR. LODICE:  I'm sorry.

7              THE COURT:  What is it?

8              MR. LODICE:  This is basically -- I -- I

9      itemized the whole contempt motions 'cause her

10     contempt motion was ten pages long.  Each one is

11     numbered so I coincided a number with an explanation

12     showing that everything that she filed a contempt

13     motion for was not accurate and I have proof of those

14     in each one of these.  Some of them are -- are

15     messages.  Some of them are just different reports

16     and just different things that show that -- most of

17     it's messages though.  Like -- like, a -- a lot of

18     it's the phone calls.  So, like -- so one of the --

19     one -- some of the contempt motions she made was I

20     wasn't allowing for phone calls, I wasn't answering

21     her phone calls --

22             MS. ANTAR:  Objection.

23             THE COURT:  All right.

24             MS. ANTAR:  I was not provided with any of these

25     documents --

26             THE COURT:  All right.

27             MS. ANTAR:  -- and you're making allegations
```

1     without giving me any chance to review any of these

2     things.

3          THE COURT:  Miss -- we're not ready for

4     objections yet.

5          All right.  So, look, I can't take a whole stack

6     of stuff.

7          MR. LODICE:  It's just --

8          THE COURT:  So --

9          MR. LODICE:  -- one --

10         THE COURT:  -- what -- what's in there?  Text

11    messages?

12         MR. LODICE:  Yep.

13         THE COURT:  And --

14         MR. LODICE:  Text messages, phone call printouts

15    from the T-Mobile that shows actual phone call, like,

16    what do you call it, logs I guess.

17         THE COURT:  Okay.  So do you have a copy for Ms.

18    Antar?

19         MR. LODICE:  I gave Miss Antar's lawyer a copy

20    the day of the -- the day we were here last --

21         THE COURT:  Okay.

22         MR. LODICE:  -- when I was told to give him all

23    the evidence I have.  I presented him everything.

24    She said earlier that she has all that.

25         MS. ANTAR:  I did not.  I never received

26    anything from the attorney which is partly why I want

27    to address the two motions that were said --

```
1          THE COURT:  Please --
2          MS. ANTAR:  -- we're gonna --
3          THE COURT:  -- please --
4          MS. ANTAR:  -- hear today.
5          THE COURT:  -- please don't interrupt.
6          All right.  Why don't you -- we might -- I don't
7     know if she --
8          You don't have -- ma'am, you have, like, --
9          MR. LODICE:  I have --
10         THE COURT:  -- so much --
11         MR. LODICE:  -- two copies.
12         MS. ANTAR:  I'm --
13         THE COURT:  Stop.  Stop.
14         You have so much paper on your desk.  You don't
15    have this?
16         MS. ANTAR:  Your Honor, I -- I listed the
17    motions that I reclaimed for today including I want
18    to address the two that you referenced.  When I filed
19    my motion, you said you wanted to hear those two
20    specific motions today.
21         THE COURT:  All right.
22         MS. ANTAR:  If we could just --
23         THE COURT:  Listen -- listen to my --
24         MS. ANTAR:  -- do those --
25         THE COURT:  -- question.
26         MS. ANTAR:  -- motions first, I would be happy
27    to get those --
```

```
1          THE COURT:  Listen --
2          MS. ANTAR:  -- out of the way.
3          THE COURT:  -- to my question.
4          MS. ANTAR:  Yes.
5          THE COURT:  You have I can't believe how much
6     paper on your desk right now.  You don't have the --
7     the evidence that he submitted to -- for the last
8     hearing?  You don't have that with you?
9          MS. ANTAR:  Attorney Cretella gave me none of
10    that which is why I want to address the fact that I
11    need my file from Attorney Cretella which he is
12    withholding.  It's been over a week since he's not
13    been my counsel.  He's --
14         THE COURT:  Okay.
15         MS. ANTAR:  -- refusing to give it to me.
16         THE COURT:  Okay.  We'll -- do you have two
17    copies of that?
18         MR. LODICE:  I do.
19         THE COURT:  Okay.  Marshal, why don't you give
20    one copy to Ms. Antar.
21         All right.  So, Miss Antar, you can take a look
22    at that.  I won't take it into evidence right now.
23         Put it aside, sir.  We're gonna --
24         MR. LODICE:  Okay.
25         THE COURT:  -- it'll be a proposed exhibit.
26         MR. LODICE:  Okay.
27         THE COURT:  Actually, you know what, why don't
```

1    we mark it for ID.  So just give it to the clerk.

2         MS. ANTAR:  Your Honor, is he allowed to put

3    multiple different things as one exhibit because this

4    contains more than -- this is police reports, this is

5    just --

6         THE COURT:  Okay.  I -- I'm aware of that but

7    because now both of you are representing yourselves

8    I'm gonna try and give you both a little latitude so.

9         MS. ANTAR:  And will I get a chance to --

10        THE COURT:  Could you --

11        MS. ANTAR:  -- give him --

12        THE COURT:  -- stop --

13        MS. ANTAR:  -- the evidence --

14        THE COURT:  -- interrupting.  Miss Antar, I am

15   not gonna do this with you for two hours.

16        MS. ANTAR:  I'd just like to know if I'll have

17   an opportunity to give my evidence to him to review

18   just like he did.  He's been given the opportunity --

19        THE COURT:  Stop talking.

20        MS. ANTAR:  -- to give evidence.

21        THE COURT:  Stop.

22        MS. ANTAR:  I have not.

23        THE COURT:  Stop.  Listen to me.  I need to make

24   a record of the document which is gonna be marked for

25   ID, Madam Clerk, as a defense ID only exhibit.  And

26   Miss Antar will have a time to take a look at it

27   before the Court considers whether or not it's gonna

1        come into evidence.

2            So put it aside.  It's marked ID only for the

3        defense.  Don't lose track of it.  You'll have a

4        chance to look at it and, if you have any objections

5        about it, I'll hear you out after you had a chance to

6        look at it.

7            In the meantime, Mr. Lodice, I want you to just

8        tell me your objections to her motions for contempt.

9        Just tell me in your own words --

10           MR. LODICE:  Okay.

11           THE COURT:  -- the documents aside.

12           MR. LODICE:  So, shrinking it all down to the

13       short story, basically everything that she claimed,

14       all the times she said I didn't give her the right of

15       fusal [as stated] -- right of first refusal, excuse

16       me, I did give her the right of first refusal and

17       each line item is coincided with a message from our

18       parenting app that shows that I gave her the right of

19       first refusal.

20           The times that she claimed that I didn't answer

21       her calls or I did not call her back, in -- in those

22       same documents you'll see proof of the times that she

23       did call and the times that she didn't.  So, the

24       times that she said she did call, there are no calls

25       and I have phone logs from both of my cell phones.

26       And then, the times that she says I didn't call her

27       back, I have proof of those messages -- logs of me

1       actually calling her back.

2           Some of the things she claimed was, like, a --

3       this -- the major religious events, like, one was a

4       Greek festival that was being held on the church

5       grounds.  That wasn't a major religious event.  It

6       was just being held at the church grounds but she

7       tried claiming it as -- as that I was in contempt of

8       Court order because it was a major religious event.

9           I don't have a copy of the -- I don't have the

10      copy of the contempt motion in front of me right now.

11          Basically all the times that -- anything she

12      said that I refused to meet her, there's different

13      messages; there's different police reports showing

14      that I did try to meet her; I did reach out and

15      communicate with her; I did everything I was supposed

16      to and took all the necessary steps to try to, you

17      know, facilitate all our agreement as according to --

18      as it's written.

19          And that's basically what that all is and I have

20      it labeled as, like, A-1, A-2, A-3, and each one I

21      have coincided here with notes so I was gonna go over

22      each one.  I'm sure obviously you don't wanna hear

23      each one --

24          THE COURT:  All right.  Do --

25          MR. LODICE:  -- individually.

26          THE COURT:  -- you need to refer to the exhibit

27      to -- do you need to refer to the things you just

```
 1          gave my --
 2               MR. LODICE:  No --
 3               THE COURT:  -- clerk?
 4               MR. LODICE:  -- I have -- I have --
 5               THE COURT:  Okay.
 6               MR. LODICE:  -- notes for it and I don't have to
 7          look at them to be able to explain each --
 8               THE COURT:  Okay.
 9               MR. LODICE:  -- one.
10               THE COURT:  All right.  So, on the motions for
11          contempt --
12               MR. LODICE:  Mm-hmm.
13               THE COURT:  -- is there anything else that you
14          wanted to tell me?
15               MR. LODICE:  No.  Every -- all the evidence I
16          need is there and just -- if I can go through each
17          item and explain them individually, I will if you
18          prefer that.
19               THE COURT:  Well, I'm going to -- wait, hold off
20          on that --
21               MR. LODICE:  Okay.
22               THE COURT:  -- see what she has to say about the
23          proposed exhibit.
24               MR. LODICE:  Okay.
25               THE COURT:  Then if I look at it and it's not
26          self-explanatory I might have questions.
27               MR. LODICE:  Okay.
```

1       THE COURT:  So we're just gonna hold -- we might

2   go back to that.

3       MR. LODICE:  Okay.

4       THE COURT:  I'm not sure yet.

5       All right.  Then why don't you tell me what it

6   is that you think the -- how you think the schedule

7   should be for the child -- for your child between you

8   and Miss Antar because that's also part of what I

9   have to decide is what this parenting schedule should

10  be.

11      MR. LODICE:  Yes.  Well, I would actually like

12  to be able to take over as primary parent.  I feel

13  like Miss Antar has not been keeping up her end of

14  what she's supposed to be as a primary parent for

15  Angelina.  I mean, I've got a lot of documents and

16  evidence showing that.  I have my contempt motions I

17  filed against her that I have proof of also I can --

18      MS. ANTAR:  Objection.

19      MR. LODICE:  -- provide.

20      MS. ANTAR:  I haven't received a single document

21  showing anything like that.

22      THE COURT:  Okay.  You can object to questions

23  but not testimony.

24      MS. ANTAR:  And will I have a chance to ask him

25  questions while he's testifying as well?  Because I

26  have questions for him I'd like to ask and evidence

27  to go with it.

1          THE COURT:  All right.  Ms. Antar, I asked you

2      not to interrupt.  I'm trying to listen to you both.

3          You will have an opportunity to ask him

4      questions but they will have to be relevant and

5      limited to these motions and I am going to hold you

6      to that because sometimes you have some trouble

7      containing yourself.  So we'll see how it goes.  But,

8      yes, you will have an opportunity.  If you can't

9      follow the rules then we're gonna do it my way, what

10     is, you tell me the subject that you want me to ask

11     him about and I'll ask him the questions.  So, if you

12     can't follow the court rules, we're gonna revert to

13     that version.  So no more interrupting.

14          MS. ANTAR:  And may I just ask one question,

15     your Honor --

16          THE COURT:  Yes.

17          MS. ANTAR:  -- just for clarification?  I know

18     that with your most recent order you stated you

19     wanted to have those two motions between me and

20     Cretella to be heard as -- in addition to all pending

21     motions.  I just wanted to know will I have an

22     opportunity to address the specific ones that are

23     still pending that have not been heard yet at the

24     prior hearing that we had, that have not been

25     addressed at all yet?

26          THE COURT:  Okay.

27          MS. ANTAR:  'Cause there's some that --

1          THE COURT:  This --

2          MS. ANTAR:  -- have never --

3          THE COURT:  -- this is a hearing on motions that

4     were filed before -- that were pending on -- on April

5     5th.  I -- you've -- if you've filed any motions after

6     that, they -- we --

7          MS. ANTAR:  These were --

8          THE COURT:  -- are not --

9          MS. ANTAR:  -- before.

10          THE COURT:  -- we're -- we are not having a

11     hearing on that.  The list --

12          MS. ANTAR:  I --

13          THE COURT:  -- of motions that were down for

14     today was very clearly posted on all the notices so.

15     We'll get back -- I -- I want to hear from Mr. --

16          MS. ANTAR:  Okay.

17          THE COURT:  -- Lodice.

18          MS. ANTAR:  Yep.

19          THE COURT:  All right.  So tell me what it is --

20     why it is that you think primary custody should be

21     switched to you.

22          MR. LODICE:  I mean, as far as all facilitating,

23     all interactions between our drop-offs and pick-ups,

24     our visits, I have been following everything like I'm

25     supposed to.  I've been doing everything according to

26     the Court order.

27          The only thing that I've been struggling with is

1    the financial end.  I've hit a strong financial

2    burden.  I've been just scraping by so I have missed

3    a lot of child support payments and I'm very far

4    behind.  I'm trying to catch up.

5        But, outside of that, as far as, like, doing

6    what's best for Angelina, I feel like I always and

7    constantly exceed those expectations and do

8    everything I'm supposed to and I feel like Miss Antar

9    has shown the Court that she has not.  I mean, all

10   the times that we've been here, all the different

11   motions she filed against me that were shown not to

12   be true, the different things she did to my son to

13   try to get him in trouble so he couldn't be around

14   his sister, just --

15       MS. ANTAR:  Objection.  I never did anything to

16   anybody's --

17       THE COURT:  Miss --

18       MS. ANTAR:  -- son.

19       THE COURT:  -- Miss Antar, stop it.  You cannot

20   object to his testimony.  Of course --

21       MS. ANTAR:  Okay.  I'm sorry.

22       THE COURT:  -- of course he's gonna say things

23   you don't like.

24       MS. ANTAR:  I'm not allowed to object at all,

25   right?

26       THE COURT:  Well, you're allowed to object on --

27   based on the Rules of Evidence which it -- you know,

```
1          what he -- saying -- him saying something you don't
2          like is not a rule of evidence.
3              All right.  So, listen, the last time -- I've
4          talked to you about this before, Mr. Lodice, and --
5          about whether or not you wanted to be the primary
6          parent.  In the past you have not been so sure about
7          that.  So what's the difference between then and now?
8              MR. LODICE:  Things have gradually gotten worse.
9          I mean, just two, three weeks ago Miss Antar was
10         arrested during -- during -- well, she wasn't
11         arrested during but because of an interaction.  When
12         I went there to -- back to church to pick up my
13         daughter, Miss Antar caused a scene and then caused a
14         cop -- called the cops herself and upon that, her
15         calling the cops, a couple days later they placed
16         Miss Antar under arrest for disorderly conduct and --
17         and filing a false report again against me.  It's her
18         second time --
19             MS. ANTAR:  Objection.
20             MR. LODICE:  -- being arrested filing a false --
21             THE COURT:  All right.
22             MR. LODICE:  -- report.
23             THE COURT:  All right.  Why --
24             MS. ANTAR:  Objection.  Hearsay.
25             THE COURT:  All right.
26             MR. LODICE:  You can --
27             THE COURT:  It's overruled.
```

1          MR. LODICE:  -- see it on the --

2          THE COURT:  Stop.  Stop.

3          MR. LODICE:  Sorry.

4          THE COURT:  Tell me what happened at church, not

5     who got arrested, but just what the event was.

6          MR. LODICE:  I -- I -- so I now wear a body

7     camera when I pick up my daughter and drop her off

8     because things have gotten so deteriorated.  I went

9     there to pick up Angelina from church.  I put on the

10    camera.  Miss Antar's walking towards the car.  We're

11    parked close to each other.  My daughter walks over

12    to me.  I left my driver's side door open.  I go to

13    put my daughter in the car.  Theo's just ranting and

14    raving, saying all these things.  She starts going

15    through my car.  She starts taking papers, putting

16    them in her pocket.  The police did later retrieve

17    those papers back for me.  And then she's standing in

18    my doorway as I'm trying to leave and she's yelling

19    at me.  I'm like can you please step out of the way

20    so I can get in my car.  That's it, I'm calling the

21    cops, you can't talk to me, you're not allowed to

22    talk to me at all, blah, blah, blah.  And then she's

23    on the phone with the police.  I'm trying to get into

24    my vehicle.  She's not letting me.  She's just

25    standing in the way so I just stay back and wait.

26    She steps out of the way of the vehicle so I go to

27    close the door so she can't be in my vehicle and she

1       tries jumping in front of the door and then she's

2       like, oh, he tried hitting me with the door.  This is

3       what the false report comes under 'cause I had it all

4       recorded.

5           MS. ANTAR:  Objection.  He's slandering me.

6       None of this true --

7           THE COURT:  I --

8           MS. ANTAR:  -- and I --

9           THE COURT:  -- Miss Antar --

10          MS. ANTAR:  -- have evidence to the contrary.

11          THE COURT:  -- please.  This is the last --

12          MS. ANTAR:  He's --

13          THE COURT:  -- time --

14          MS. ANTAR:  -- lying.

15          THE COURT:  Listen to me.  You can't interrupt

16      because you don't like what he's saying and this is

17      the second time I've warned you about that and, if

18      you do it again, he's gonna testify and you're gonna

19      be in the hallway.  So sit quietly.  I have to listen

20      to both of you.

21          MS. ANTAR:  Okay.

22          THE COURT:  Okay.

23          MR. LODICE:  Just different things.  Like, when

24      she's supposed to be bringing her to -- like, all

25      those times that she just totally kept her from me,

26      there was -- you know, she's already admitted that

27      she was keeping her from me all that -- weeks and

1          weeks at a time at two different times.

2                Back last March she was doing the opposite

3          'cause she thought me having Angelina would hurt me

4          so she was not taking Angelina at all.  This was

5          March of 2022.  I had a whole bunch of text messages

6          I can bring forward and show you of her saying, oh,

7          why don't you just hang on to Angelina, I -- I don't

8          need to take her, why don't you just, you know, pay

9          your child support and then maybe I'll take her, and

10         stuff like that.  Just things like that.

11               And I also had a recording I wanted to play.  I

12         submitted a copy of the recording for -- for review

13         with Miss Antar's lawyer --

14               MS. ANTAR:  Objection.

15               MR. LODICE:  -- the day we were here.

16               THE COURT:  He hasn't offered it yet.

17               MR. LODICE:  I did wanna play that for the --

18               THE COURT:  All right.  Hold on.  I wanna go

19         back to the thing at the church.

20               MR. LODICE:  Okay.

21               THE COURT:  Where is your daughter while all

22         this is happening?

23               MR. LODICE:  Right there, right in the car --

24               THE COURT:  All right.

25               MR. LODICE:  -- sitting there with the door

26         open.

27               THE COURT:  How does she react to all of this?

```
 1              MR. LODICE:  I mean, like, my son was there
 2         helping distract her but obviously she doesn't like
 3         her mom sitting there yelling at me.  I mean, she
 4         looks nervous --
 5              THE COURT:  All right.
 6              MR. LODICE:  -- and upset.
 7              THE COURT:  So your son was there too?
 8              MR. LODICE:  My son was there.  Yes.
 9              THE COURT:  All right.  Which one?
10              MR. LODICE:  My 12-year-old.
11              THE COURT:  So how did all of that end?  How did
12         that event end?
13              MR. LODICE:  The police finally came.  They
14         talked to me; they talked to her.  I showed them the
15         whole recording.  It was a ten-minute-long recording.
16         They were like, okay, you're free to go.  Next day I
17         got a call from the police department.  They said can
18         you send me a copy of the recording, we're looking to
19         press charges for Miss Antar, we're sick of her, you
20         know, calling her -- making these false reports all
21         the time, she can't act like that in front of her
22         child, and these kinds of things.  So they filed --
23         they -- I didn't even push the charges.  They did it
24         all themselves --
25              THE COURT:  Okay.
26              MR. LODICE:  -- 'cause --
27              THE COURT:  So you are -- if -- if I -- remind
```

1       me again how old your daughter is?

2               MR. LODICE:  She just turned four last week.

3               THE COURT:  All right.  So is she gonna start

4       kindergarten in the fall?

5               MR. LODICE:  I would assume so.  I -- I have --

6       I don't -- I don't think so.  Can you start at four?

7       I think maybe a pre-school she might be able to.

8               THE COURT:  Well, it depends on when she was

9       gonna turn five.

10              MR. LODICE:  She just turned four.

11              THE COURT:  Okay.  So --

12              MR. LODICE:  So I --

13              THE COURT:  -- she's gonna --

14              MR. LODICE:  -- don't think so.

15              THE COURT:  -- do another year of nursery

16      school.

17              MR. LODICE:  Yes.

18              THE COURT:  All right.  Do you have room to have

19      her in your home full-time?

20              MR. LODICE:  I do.

21              THE COURT:  Who's gonna watch her when you're

22      working?

23              MR. LODICE:  I will make arrangements.  I will

24      sign her up for a daycare close to my area.  I will

25      -- my son will be off during the summer with his --

26      my mother had just retired so she's happy to help.

27      She already said that she'd be happy to provide any

1       assistance I need with regard to watching her.  I

2       have plenty of opportunities that I'll be able to get

3       somebody to take care of her when I'm -- when I'm

4       going to be working.

5           THE COURT:  Okay.  All right.  If that's your

6       proposal, what's your proposal for how the child sees

7       her mother?

8           MR. LODICE:  I think -- since her mother still

9       wants her to go to church, I think best case scenario

10      would be she goes back with mother on Sunday mornings

11      right when I drop off at church and then this way she

12      could keep her Sunday into Monday.  She gets her

13      other daughter back Sundays too typically.  So Sunday

14      into Monday she'll have her daughter and then maybe

15      come back to me Tuesday morning or have Miss Antar

16      drop her off at daycare as I was doing, you know, on

17      Monday morning but I -- on Tuesday morning instead.

18      So this way she gets two full days with her.

19          THE COURT:  All right.  You would want the child

20      to continue in the same church?  That would be okay?

21          MR. LODICE:  Yeah.  Yes.  That -- that would be

22      for -- for Miss Antar and her -- more for Miss

23      Antar's mother's really strong tradition --

24          THE COURT:  All right.  And she --

25          MR. LODICE:  -- with her religion.

26          THE COURT:  -- has a sibling at Ms. Antar's

27      home, right?

```
1              MR. LODICE:  She does.

2              THE COURT:  That she's close to?

3              MR. LODICE:  Yes.

4              THE COURT:  And that child goes to church as

5         well?

6              MR. LODICE:  I believe so.

7              THE COURT:  Okay.  Okay.  So this event where --

8         this conflict at the church, has anything like that

9         happened before?

10             MR. LODICE:  Yes, multiple times.

11             THE COURT:  All right.

12             MR. LODICE:  It happened -- you -- before like

13        in general or before like in front of our daughter?

14             THE COURT:  In front of your daughter.

15             MR. LODICE:  Yes.  There's been a lot of times.

16        There was a Fourth of July where I went to drop Miss

17        Antar [sic] off --

18             THE COURT:  All right.

19             MR. LODICE:  -- and --

20             THE COURT:  July 4th when?

21             MR. LODICE:  I have a -- I have a note on that

22        one.  Let me take a look.  2021.

23             COURT MONITOR:  Your Honor, if I could request

24        that she flip the page other than rip it into the

25        mic.  It's really, really loud.

26             MS. ANTAR:  I'm sorry.

27             THE COURT:  All right.  Well, she could --
```

1          MS. ANTAR:  Sorry.

2          THE COURT:  Yeah.  I was gonna say she doesn't

3     need her mic right now.  Okay.

4          MR. LODICE:  That was July 4th of 2021.

5          THE COURT:  What is it that happened on that

6     day?

7          MR. LODICE:  It was per our agreement that she

8     was supposed to take -- I was -- I was required to

9     bring Angelina back to her.  Once I brought her back

10    to her, she refused to take her.  She says I'm not

11    taking her.  She called the cops saying that, you

12    know, I -- I don't wanna take her, I don't have to

13    take her.  So cops are like, well, either you have to

14    take her back, Mr. Lodice, or we're gonna take her

15    into custody and we're gonna take your daughter to

16    the system.  I don't --

17         MS. ANTAR:  Objection.

18         MR. LODICE:  -- obviously I'm gonna -- okay.

19         THE COURT:  What's the basis for your objection?

20         MS. ANTAR:  Slander and he's also -- it's also

21    lying.  I have --

22         THE COURT:  Okay.  Okay.

23         MS. ANTAR:  -- evidence that I was in another

24    state --

25         THE COURT:  This is --

26         MS. ANTAR:  -- on that --

27         THE COURT:  Stop.  Stop.

1        MS. ANTAR:  -- date.

2        THE COURT:  This is the third time.  I told you

3    you cannot interrupt him just 'cause you don't like

4    what he's saying.  That's gonna happen.  You're not

5    gonna like what he says.  If I have to tell you one

6    more time not to interrupt when he's just saying

7    things that you don't like, I'm gonna have to take

8    some other steps to prevent these interruptions.

9    That includes put you in the hallway.  I don't want

10   you in the hallway while he testifies.  So stop it,

11   Ms. Antar.  Stop it.

12        Okay.  I wanna hear what happened on this event.

13    How did it end?

14        MR. LODICE:  It ended with me taking my daughter

15   back.

16        THE COURT:  Okay.  And what was the interaction

17   between the two of you?

18        MR. LODICE:  It was --

19        THE COURT:  You were --

20        MR. LODICE:  -- her yelling and just constantly

21   yelling I'm not taking her, I'm calling the cops,

22   don't step on my property, stay away from me, all

23   those things.

24        THE COURT:  So the last time you were here --

25        MR. LODICE:  Yes.

26        THE COURT:  -- we -- there was interaction with

27   DCF and with the police about your older son.

```
1              MR. LODICE:  Yes.
2              THE COURT:  Has that all resolved?
3              MR. LODICE:  Yep.  All of those have been closed
4         and unsubstantiated.
5              THE COURT:  Okay.  So DCF did not -- closed
6         those files unsubstantiated against you and your son?
7              MR. LODICE:  Yes, your Honor.
8              THE COURT:  And what happened with the police
9         department?
10             MR. LODICE:  And Detective Steeves also closed
11        the case.  That case has also been closed with the
12        police department.
13             THE COURT:  All right.  So there's no more
14        intervention with them at all?
15             MR. LODICE:  No.
16             THE COURT:  All right.  How did those -- did --
17        did those events appear to affect your child at all,
18        your daughter?
19             MR. LODICE:  Her not seeing me was, like, a
20        by-product of that 'cause Miss Antar was keeping her
21        from me as she already admitted and that I think
22        affected her.  I think -- I wasn't there for when
23        they do the forensic analysis on my daughter so I
24        don't know how it affected her before or after.  She
25        didn't seem to be affected by it 'cause I feel like
26        she doesn't know anything directly.  I felt like it
27        did direct my -- it hurt my son a little bit and his
```

1    relationship with her because, you know, he's been

2    accused of something he didn't do.

3         THE COURT:  All right.  So are they -- but

4    they're seeing -- they're still in the -- they're

5    occasionally in the same house, right?

6         MR. LODICE:  Oh, yes.  All the time.

7         THE COURT:  All right.  Is --

8         MR. LODICE:  Every weekend.

9         THE COURT:  -- is that going okay?

10        MR. LODICE:  Yes.  Yeah.

11        THE COURT:  All right.  All right.  Has anything

12   else happened in relation to those accusations since

13   the last time I saw you?

14        MR. LODICE:  No.

15        THE COURT:  All right.

16        MR. LODICE:  Excuse me.

17        THE COURT:  So on prior occasions you have

18   offered me some explanations for why Ms. Antar

19   behaves in some unusual ways.  You never finished

20   that discussion.  So do you know anything about why

21   she behaves this way?

22        MR. LODICE:  Well, from the report -- from my --

23   so, from what she has told me when we were together,

24   she, you know, has been diagnosed with PTSD.  Now, in

25   hearing the report from family relations, you know, I

26   heard that she was diagnosed with I believe it was

27   anxiety and I think she said ADHD also from her

1    therapist which, you know, does explain a little of

2    why sometimes she's, you know, not to be mean but,

3    has trouble keeping her emotions in check especially

4    during interactions.  Yeah.  So.

5         THE COURT:  All right.  So is there anything --

6    we gotta talk about the child support.  So you

7    started to tell me that you are very behind.

8         MR. LODICE:  I'm very behind.  I've been making

9    payments when I can.  Like, literally if I have $50

10   in my pocket I run downtown, I pay the child support.

11   I mean, I don't know if you can see the payment

12   system, the payments there, but --

13        THE COURT:  I don't have that.

14        MR. LODICE:  Okay.  I can get copies if you

15   need.  I just -- I try to make them as much as

16   possible.  I was running my own company and, come

17   this spring, I did not do well at all.  I started off

18   on a good run, I started making payments, and, you

19   know -- early I made a couple payments 'cause I was

20   doing okay and then it just fell apart and now I'm

21   looking for work currently.

22        THE COURT:  Okay.  So --

23        MR. LODICE:  I'm hoping to find work within the

24   next…

25        THE COURT:  You are not working for yourself

26   anymore or you --

27        MR. LODICE:  I'm still -- I mean, I'll work for

1      myself, I'll take jobs, but I don't have any work,

2      like, this week.  So, like, I have no income this

3      week.

4           THE COURT:  How are you paying your bills?

5           MR. LODICE:  I'm falling behind.

6           THE COURT:  All right.  Do -- what kind of work

7      are you looking for?

8           MR. LODICE:  Home improvements.

9           THE COURT:  So my impression of the market right

10     now -- now, Mr. Lodice, is that it wouldn't be all

11     that hard to find a job in that area.

12          MR. LODICE:  It -- I had some car trouble.  My

13     car broke down a few times on me which rendered me

14     unable to work 'cause without a vehicle I can't get

15     to a job.  I have picked up some work and if -- like

16     I said, as soon as I pick up work, you know, I would

17     pay my bills and whatever I had left -- I -- whenever

18     I had money, I'd pay child support.  You know, it's

19     not like I wasn't making any payments.  I just -- I

20     was making them when I can and they're not the amount

21     that they should be.

22          THE COURT:  Do you know what the arrearage is

23     now?

24          MR. LODICE:  A lot.  For Miss Antar, I wanna say

25     it's around 6,000.

26          THE COURT:  And do you owe child support to your

27     other --

1          MR. LODICE:  My --

2          THE COURT:  -- family?

3          MR. LODICE:  -- other ex?  Yes.

4          THE COURT:  And do you know how much that is?

5          MR. LODICE:  I wanna say around 5,000.

6          THE COURT:  Okay.  All right.  Listen, I wanna

7      take a look at all the motions and make sure that you

8      covered everything.  Then we'll go through that -- is

9      that document that you had, that I marked for ID

10     only, is that the only document you're asking the

11     Court to look at?

12         MR. LODICE:  I -- I mean, I have a lot of

13     instances I could bring up.  There's things about our

14     contempt motion -- my contempt motion I filed against

15     her.

16         THE COURT:  All right.  You'll have to tell me

17     about that.  Go ahead.

18         MR. LODICE:  You know, on 10/7 I put mother

19     never showed up at paternal grandmother's house to

20     drop off daughter.  Police report was made.  Mother

21     assured father -- mother as in Miss Antar, mother

22     assured father that I could pick up daughter the next

23     morning instead on 10/8.

24         On 10/8 mother refused to let father pick up

25     daughter, made claim that she would only do the

26     exchange at police station.  I went to the police

27     station to exchange; mother refused; police report

1      was made.

2          10/14, mother was supposed to drop off daughter

3      at the paternal grandmother's house and did not show

4      up.  The father retrieved daughter from daycare.

5          10/16, mother refused to give daughter back

6      after Sunday school.  Mother grabbed daughter, ran to

7      the car, sped off with the daughter.  Orange Police

8      pulled mother over and tried to mediate this exchange

9      and the mother still refused.  Then the police report

10     was made and that's when I filed the paperwork.

11         And then since then I -- that was filed all the

12     way back in October.  You know, since then she -- you

13     found out through other testimony that, you know, she

14     was keeping her from me for weeks after that and then

15     did the same thing following up in February again.

16         You know, we're -- we're on our -- we're on our

17     fifth or sixth daycare right now.  You know, after

18     March 10th when I picked Angelina up from that

19     daycare, she never brought her back to that daycare.

20     So one piece of evidence I will like to present is

21     Miss Antar keeps claiming that I told the daycare not

22     to take her back.  I actually have email here from

23     the daycare I'd like to give you that says as we

24     discussed Miss --

25         THE COURT:  All right.  Hold on.

26         MR. LODICE:  Okay.

27         THE COURT:  Do you have more than one copy?

1          MR. LODICE:  I do.

2          THE COURT:  Okay.  So, marshal, would you give a

3     copy to Ms. Antar.

4          All right.  Ms. Antar, the only question is is

5     that what he says it is, an email from the daycare?

6          (Whereupon there was a pause in the

7     proceedings.)

8          THE COURT:  Is it -- is --

9          MS. ANTAR:  It looks to be.

10          THE COURT:  Okay.  Do you have any objection if

11     I look at it?

12          MS. ANTAR:  No.

13          THE COURT:  Okay.  That can be marked as a full

14     exhibit.  So we'll take that and give it to the

15     clerk.  It'll be marked as a full exhibit.  I'll take

16     a look at it.

17          All right.  So now you can tell me what the

18     relevance is of this document.

19          MR. LODICE:  Basically it says Angelina's last

20     day was on 3/10.  We had not received notification

21     that Angelina would be absent from the period of 3/10

22     to 3/30.  We also received a letter from child --

23     received a letter of childcare cancellation from Care

24     4 Kids.  Therefore, we assume that she would not be

25     returning.  If you have any questions, feel -- feel

26     free to contact me, it says.

27          THE COURT:  So you didn't know that the child

1          was not in the daycare?

2              MR. LODICE:  Well, I was calling every week to

3          follow up once I wasn't seeing my daughter.  This was

4          a time that I wasn't getting to see her and I was

5          following up with the daycare to see if she was

6          there, you know, every day --

7              THE COURT:  I see.

8              MR. LODICE:  -- every day.  And no.

9              THE COURT:  And this is a letter saying that she

10         wasn't going --

11             MR. LODICE:  This is --

12             THE COURT:  -- there?

13             MR. LODICE:  -- a letter of -- because I -- I

14         asked her -- you know, I asked the daycare.  I say --

15         you know, I said Miss Antar was saying to me last in

16         court that you said that I told you that Angelina

17         wasn't coming, is that true.  And they said no.  I

18         was like can I just have a letter explaining why

19         Angelina is no longer at this daycare and --

20             THE COURT:  Okay.

21             MR. LODICE:  -- then she sent me this email.

22             THE COURT:  I see.  And what -- so this is in --

23         this is from March of 2023.  Where did the child go

24         to daycare after that?

25             MR. LODICE:  She now is enrolled -- Miss Antar

26         now enrolled her in another daycare.  I believe it's

27         our I wanna say fifth or sixth daycare since she's

1    been in daycare.  It's -- I can't think of the name

2    of it right now.  It's in Orange.  It's a daycare in

3    Orange.  I can't think of the name off the top of my

4    head.

5          THE COURT:  Okay.  So --

6          MR. LODICE:  Something Horizon.

7          THE COURT:  -- she's been through a lot of

8    daycares?

9          MR. LODICE:  She has.  It's like every time

10   something goes wrong she just takes her out and --

11   you know, she made police reports against the last

12   daycare.  I think we brought this up last time in

13   court how she made police reports against the last

14   daycare and the daycare worker and all these things.

15   And that's why -- she went to the -- so my daughter

16   was in a daycare called, I can never remember the

17   name of it, the Woodbridge Child Center I think it

18   was called.  And then Miss Antar was under the

19   assumption that one of --

20         MS. ANTAR:  Objection.  Relevance.

21         THE COURT:  That objection's overruled.

22         MR. LODICE:  Miss Antar was under the impression

23   that I was in a relations, this was after she and I

24   split, I was in a relations with one of the workers

25   at the daycare.  Miss Antar went there, yelled at the

26   owner -- not the owner, I'm sorry, the lady in

27   charge, like a principal you would call her, of the

1    daycare -- and told her that she wanted this girl

2    fired.  And then she said no, I'm sorry but our

3    workers can see -- are allowed to see whoever they

4    want.  Whether it be a parent or not, we have no

5    policy against that.  You know, I'm sorry but there's

6    nothing we can do about that.  Miss Antar proceeded

7    to follow up with swearing at her, swearing at the

8    teacher, and then -- and then shortly after that she

9    went to the Woodbridge Police Department.  She made

10   reports on both the daycare themselves and the

11   daycare worker --

12          MS. ANTAR:  Objection.  Hearsay.

13          THE COURT:  All right.  That's not hearsay.

14   It's overruled.

15          MR. LODICE:  She made reports against both the

16   daycare worker and the daycare itself for abuse,

17   claiming that they were abusing her, that they --

18   they let Angelina go home with somebody that wasn't

19   -- that she didn't allow, and stuff like that.  I

20   have copies of those police reports also for you,

21   your Honor, if you'd like the --

22          THE COURT:  All right.  Well, you can hang onto

23   those 'cause those are hearsay.

24          MR. LODICE:  Okay.

25          THE COURT:  All right.  So Angelina's been in

26   five or six daycares since birth?

27          MR. LODICE:  Yes.

1          THE COURT:  What about other providers like

2     doctors or anything like that?  Have you changed

3     pediatricians?

4          MR. LODICE:  I believe we are on our second

5     pediatrician or maybe third -- our third

6     pediatrician.

7          THE COURT:  How did you switch pediatricians?

8          MR. LODICE:  Miss Antar didn't -- wasn't happy

9     with the first one.  There was a thing that changed

10     with one of them that they wouldn't allow the

11     children to come in to -- unless they had a certain

12     vaccine -- I think it was the COVID vaccine or

13     something, might have been one of those -- a specific

14     vaccine.  And Miss Antar, which I actually agreed

15     with that I did not wanna give her this specific

16     vaccine, so I was okay with her transferring from

17     that daycare -- excuse me, from that provider to the

18     next.

19          And then -- so now she goes to I think this is

20     -- I'm pretty sure this is our third one.  It's more

21     of like -- it's a -- a little more leaning towards

22     holistic so they don't jump right to medicine right

23     away.  They'll, like, try to, you know, treat things

24     a little more holistically before they just give her

25     a prescription and then send us off.

26          THE COURT:  All right.

27          MR. LODICE:  They give a little more hands on.

```
 1            THE COURT:  Are you satisfied with the
 2       current --
 3            MR. LODICE:  I am --
 4            THE COURT:  -- pediatrician?
 5            MR. LODICE:  -- very satisfied with this place.
 6       Yes.
 7            THE COURT:  Okay.  So, the change you made from
 8       one of the three to -- the second to the next one,
 9       you agreed with?
10            MR. LODICE:  Yes.
11            THE COURT:  And this current one you were okay
12       with but there was another change in there?
13            MR. LODICE:  Yes.  I'm not sure exactly which
14       one was which.  I don't remember the exact details of
15       the change but I know that -- I think that the last
16       -- the one from the last one to this one was the one
17       that involved the vaccines.
18            THE COURT:  Okay.  All right.  So I think you
19       told me what you want me to do about the current
20       schedule.  I've -- I'm waiting for you to tell me
21       what we're gonna do about the back child support, all
22       right, of how you're gonna pay that off.  And I --
23       what do you want me to do about the motions for
24       contempt that you filed?  Like, what's the -- what's
25       the remedy you're asking for?
26            MR. LODICE:  I -- I want her to stop.  I want
27       her to do what the Court is ordering.  I want her to
```

1     just pick up our daughter when she's supposed to,

2     drop her off when she's supposed to, do the things

3     that, you know, are as -- best for our daughter.  I

4     want her to not argue with me when pick-up or drop-

5     off.  I want just, like, simple conversations.

6          Like, even when I, like, message her in the app,

7     I feel like if I send her a message I get, like --

8     like, ten different messages back in different

9     threads and I have to -- and, like, now I'm Court-

10    ordered to respond to these messages.  So now she'll

11    send me multiple, multiple messages and, if I don't

12    respond, I feel like I'm gonna be in violation of the

13    Court order so I try to respond but then she'll ask

14    the same question over and over again so eventually I

15    stop responding to the same question because it's

16    questions I've already answered.  So I want, like,

17    things like that to stop.

18         I just feel like -- like, I know this sounds

19    terrible.  I almost feel like Miss Antar needs

20    supervised visits and, like, our conversations need

21    to be supervised temporarily until she can show good

22    faith that she can do what's required to -- to -- to

23    not have supervised visits and, like, supervised

24    conversations.  I feel like there's always

25    situational things that keep happening every --

26    multiple times, not all the time but a lot of times,

27    enough times that it's become -- it's become an

1    issue.

2          THE COURT:  All right.  So I understand why

3    you're asking for the -- some policing between the

4    two of you but why would her time with Angelina be

5    supervised?  Like, how does this -- what are you

6    saying this --

7          MR. LODICE:  Because after seeing the way she

8    acted last time -- and there was another thing I

9    wanted to show you too.  There's things that I've

10   heard Miss Antar say in front of Angelina, to

11   Angelina, that really bother me.  I have a recording

12   I brought with me.  I made -- I -- I sent Miss -- I

13   gave Miss Antar's lawyer a copy last week.  It was a

14   recording of us when we were together in person.  I

15   have a copy here for the Court.  It's on a USB drive

16   but I would be happy to play it.  I would like to

17   play it 'cause I would like the Court to see the

18   things that Miss Antar is willing to say to her

19   daughter and the things she said to her past that

20   scares me.

21         THE COURT:  All right.  And are these things

22   that she said to you?

23         MR. LODICE:  No.  This is things -- well, to me

24   and my daughter.  It was when I was holding my

25   daughter.

26         THE COURT:  All right.  Well, then you can tell

27   me what she said.  I don't need the recording.  I

1    have you.

2          MR. LODICE:  Mm-hmm.  Mommy doesn't --

3          MS. ANTAR:  Objection.

4          MR. LODICE:  -- love you --

5          MS. ANTAR:  I never received the recording.

6    Attorney Cretella said that he gave it to him and

7    it --

8          THE COURT:  All right.

9          MS. ANTAR:  -- wouldn't open and I'd --

10         THE COURT:  It doesn't --

11         MS. ANTAR:  -- like to have -- he can't testify

12   about something that allegedly was happening --

13         THE COURT:  Okay.

14         MS. ANTAR:  -- and I never had a chance to see

15   it.

16         THE COURT:  Okay.  Listen.  He can tell me about

17   it.  I'm not letting him put the recording into

18   evidence --

19         MS. ANTAR:  I just --

20         THE COURT:  -- but he --

21         MS. ANTAR:  -- want on the record that Attorney

22   Cretella said the file he gave him did not open.

23         THE COURT:  Okay.  Well, I'm not taking the

24   file.  So --

25         MS. ANTAR:  Okay.

26         THE COURT:  -- it's okay.

27         But you're gonna tell me what happened.

1           MR. LODICE:  The recording clearly states --

2       it's Miss Antar yelling in the background.  She's

3       yelling at me --

4           MS. ANTAR:  Objection.  Relevance.

5           THE COURT:  Stop it.

6           MS. ANTAR:  There's no date about this

7       recording.

8           THE COURT:  Okay.  Stop.

9       It's not -- we're not talking about a recording.

10      We're talking about you telling me examples of things

11      that she says that concern you when they happen in

12      front of Angelina.

13          MR. LODICE:  She said --

14          THE COURT:  So --

15          MR. LODICE:  -- mommy doesn't love you, you are

16      worthless, I never wanted you, and things like that

17      right to my daughter.

18          THE COURT:  When's the last time you heard her

19      say something like that?

20          MR. LODICE:  This was two years ago.  Two --

21          THE COURT:  Okay.

22          MR. LODICE:  -- and a half years ago now that I

23      heard that specific conversation.

24          THE COURT:  All right.  Does -- do you get any

25      sense from Angelina that things like that are still

26      happening?

27          MR. LODICE:  I -- I don't know, to be honest

1      with you.  I don't see it one way or the other.

2      Like, I have very limited knowledge of what happens

3      and Angelina doesn't really talk about what goes on

4      at mom's house.  It almost like she's like -- you

5      know, I -- it -- obviously it's gonna be speculation

6      when I say this but it almost seems like she's told

7      not to say anything.  'Cause when I ask her about

8      things at mom's --

9          MS. ANTAR:  Objection.

10         MR. LODICE:  -- she doesn't --

11         MS. ANTAR:  Speculation.

12         THE COURT:  All right.

13         MR. LODICE:  It is --

14         THE COURT:  Stop it.

15         MR. LODICE:  -- speculation.

16         THE COURT:  All right.  You -- you are the

17     parent.  You can tell me what you think.

18         MR. LODICE:  I -- I -- I just feel like that's

19     Angelina being told not to tell her things about

20     what's going on at mom's.  Because I'll ask her, you

21     know, what'd you do at mom's and she'll be like oh,

22     oh.  And I actually had a talk with Angelina.  I was

23     like, look, it -- I don't want you ever lying to me.

24     If there's something that you feel like you just

25     don't wanna tell me, just say I don't wanna tell you,

26     dad, or I don't wanna talk about it instead of just

27     making up something.  'Cause there was times that she

1    was saying things I could tell that she was, like,

2    not -- like, trying to, like -- like, form a story

3    that wasn't true.  So now, like, when I ask her

4    things she'll be like I -- I don't really wanna say

5    or I don't wanna talk about it which I leave her

6    alone and I give her space with that.

7         THE COURT:  Okay.  So what's Angelina like these

8    days?  What kind of kid is she?  Easygoing,

9    anxious --

10        MR. LODICE:  She's very easygoing.  She's very

11   easygoing.  I do see -- sometimes I do see her start

12   to freak out a little bit, like, almost, like, that

13   zero to a hundred kind of mentality where it's like,

14   you know, if something bad happens she just freaks

15   out like aaah.  But, I mean, you can attribute that

16   to her just being her age.  But sometimes I just feel

17   likes -- like she reacts to stressors a little

18   overdramatic I guess you would say.

19        THE COURT:  All right.  You were giving me

20   examples of things that the mother says in front of

21   the child that worry you.  Is there anything else?

22        MR. LODICE:  A lot of times when I get the call

23   -- so, like -- so we're -- you -- you gave us this --

24   the right to have a phone call.  You know, Angelina's

25   young.  Sometimes she'll be like I don't wanna talk,

26   I don't wanna talk on the phone, I don't wanna talk

27   to mama or I don't wanna talk to dada, you know.  But

1    I'm like, you know -- so what I do is I prime

2    Angelina.  Hey, mama's gonna call in a little bit so

3    we need to make sure you make this call.  You know, I

4    want to -- you make sure you spend some time talking

5    to mommy and then she'll be like I don't wanna talk

6    to her.  I'll be like, Angelina, you have to talk to

7    her and I'll make her stay on the phone to make sure

8    that she gets that call.

9         The reciprocate never happens.  I get -- I'll

10   call.  All I'll hear is Angelina say I don't wanna

11   talk to you, phone hangs up, and I can't call back.

12   And, if I call back, she'll say stop harassing me or

13   I'm calling the cops.  So then I can't call back.

14        Also, I can't even call her.  She keeps my

15   number blocked.  So I had -- she made it where I have

16   to message her in her -- in the app to be able to

17   call her now.  So, if I don't message her in the app,

18   she'll just say she's not getting my calls.

19        Things like that I'd like to see change.  I'd

20   like maybe, like, say -- okay, maybe when we change

21   the order and we do the phone call conversation you

22   say a minimum of even two and a half minutes or three

23   minutes so, like, there's at least a chance I can

24   talk to my daughter and it's not just a quick I don't

25   wanna talk to you, hang up.  Like, there's even -- I

26   even have voicemails.  I believe one of those

27   voicemails I left on that hard drive for the Court,

1   but obviously I'm not turning it in, where it's just,

2   like, I missed the call and it's just Angelina saying

3   I don't wanna talk to you and then it -- it hangs up.

4   And then if I call back she just -- Miss Antar just

5   won't answer the phone.

6       THE COURT:  Are these phone calls a good idea?

7       MR. LODICE:  I mean, I don't want -- I don't

8   want us to not be able to talk to our -- our child.

9   Both of us.  I don't want her mom not to be able to

10   talk to her when she's with me and I don't want her

11   to not be able to talk to her -- I don't want her to

12   not be able to talk to me when she's with her.  I --

13   I -- I -- especially, like, when we're doing a two

14   five schedule when I'm not seeing her for five days

15   in a row.  You know, that's a long time for a child

16   not to see a parent or talk to a parent.  And then

17   all of a sudden they're supposed to just come back on

18   Friday and -- after not talking to their dad for five

19   days and just, you know, everything will be fine.  At

20   least when we stay in constant communication, you

21   know, it's -- it -- it makes the transitions easier

22   for our daughter.

23       THE COURT:  All right.  So, along those lines,

24   the schedule you're proposing would leave the child

25   with you more and not seeing his mother as -- her

26   mother as much.  How do you think Angelina's gonna

27   react to that?

1          MR. LODICE:  I think -- overall in the long run

2     I think it'll be better for Angelina.

3          THE COURT:  And why --

4          MR. LODICE:  I think --

5          THE COURT:  -- is that?

6          MR. LODICE:  -- 'cause I think the environment

7     in my household is a little bit more stable, a lot

8     less hostile.  There's not a lot of yelling in my

9     house.  We just -- we all get along very well.  I --

10    I just feel like Angelina is going to be in a

11    healthier environment with us.

12         THE COURT:  All right.  Tell me again when the

13    boys are with you.

14         MR. LODICE:  I pick them up Friday and I can --

15    I drop them off Monday.  My ex-wife and I, we

16    co-parent very, very well.  If I call her right now

17    and was like, hey, I wanna pick up the kids today,

18    she would have no problem.  She'd be like absolutely,

19    go to -- I could even go to the house there and pick

20    them up by myself without her even home.  So, like,

21    at any time if I wanted to change that schedule to

22    reflect this -- like, a new schedule, I would be able

23    to manipulate it to where I can have the kids at the

24    same time.  The only thing that would conflict with

25    that is trying to work if I'm working, you know,

26    during the week.

27         THE COURT:  All right.  So right now your boys

1    are with you every Friday to Sunday?

2        MR. LODICE:  Every Friday to Monday.

3        THE COURT:  Friday --

4        MR. LODICE:  Till Monday morning.

5        THE COURT:  -- to Monday.

6        MR. LODICE:  I pick them --

7        THE COURT:  Okay.

8        MR. LODICE:  -- up Friday after school and I

9    drop them off Friday [sic] before school.

10       THE COURT:  All right.  Remind me --

11       MR. LODICE:  At school.

12       THE COURT:  -- how -- how old the younger one

13   is?

14       MR. LODICE:  Monday.  The youngest -- the

15   younger boy is 12 --

16       THE COURT:  Okay.

17       MR. LODICE:  -- and my oldest is 16, almost 17.

18       THE COURT:  Okay.  Okay.  And, if Angelina was

19   with you more, your mother's going to help you with

20   that?

21       MR. LODICE:  Yes.

22       THE COURT:  So you don't think you're gonna be

23   using a daycare?

24       MR. LODICE:  I -- I won't at first.  I'll need

25   to get financially a little more situated before I

26   could afford a -- another daycare.  I already talked

27   to my mother prior to these hearings, letting her

1    know -- you know, asking her if she'd be all right,

2    you know, for the first maybe month or two before we

3    find a daycare if it's possible that she'd be able to

4    take on the full -- the full daycare responsibility

5    during the week when I have to work and she said

6    there's no problem with that at all.

7          THE COURT:  Okay.  All right.  Let's take a look

8    at the --

9          Have you -- Ms. Antar, have you had a chance to

10   look at those documents?

11         MS. ANTAR:  No, I have not.  And I would --

12         THE COURT:  Okay.

13         MS. ANTAR:  -- like a chance to ask him

14   questions as well.

15         THE COURT:  Okay.  Well, we're gonna get to that

16   but I was --

17         MS. ANTAR:  Okay.

18         THE COURT:  -- hoping to do the documents first.

19   So I'm -- we're gonna take the afternoon recess for

20   15 minutes.

21         Ms. Antar, you need to look at that packet of

22   stuff that's been marked for ID and tell me if it's

23   something that you're gonna consent for me to look at

24   or not so that -- if not, we gotta go through those

25   things one at a time.  So, when we get back from the

26   recess, that's what I want you to tell me:  which of

27   those documents are okay for me to look at, which

1      ones you're objecting to, and why.  Okay.  Do you

2      have that?

3           MS. ANTAR:  I just -- should I give him the

4      exhibits that I e-filed I wanted to show as well?

5           THE COURT:  We're just gonna do exhibits one at

6      a time because, remember, Attorney Cretella put your

7      case on so I'm not sure that you're going to be

8      offering anymore exhibits or evidence.  I'm not sure

9      about that so we're gonna do them one at a time.  So

10     right now I wanna do this one first.  When I get

11     back, I'm gonna ask you about that exhibit so spend

12     the 15 minutes looking at that.

13          All right.  We're gonna take a recess, ladies

14     and gentlemen, for 15 --

15          THE MARSHAL:  All rise.

16          THE COURT:  -- minutes.

17          THE MARSHAL:  Court is now in recess.

18          (Whereupon court recessed.)

19          THE MARSHAL:  Good afternoon, your Honor.

20          THE COURT:  Good afternoon.

21          You can have a seat, folks.  Make sure again

22     that your phones are off and away.

23          All right.  We're continuing on the Antar and

24     Lodice matter.  Before we took the break I asked Miss

25     Antar to take a look at the proposed exhibit by Mr.

26     Lodice.

27          Though have you had a chance to look at that,

1          ma'am?

2                  MS. ANTAR:  Yes.

3                  THE COURT:  All right.  So are you -- are there

4          documents in there that you're objecting to or can I

5          look at those documents?

6                  MS. ANTAR:  He gave multiple exhibits so I could

7          tell you each one I'm --

8                  THE COURT:  Okay.

9                  MS. ANTAR:  -- objecting to.

10                 THE COURT:  All right.  Well, are -- are you

11         objecting to all of them?

12                 MS. ANTAR:  Some of them.

13                 THE COURT:  Okay.  Why don't you put aside the

14         ones that are agreed on and we'll take those.

15                 MS. ANTAR:  Okay.

16                 THE COURT:  Are they numbered?  Mr. Lodice, are

17         these things numbered?

18                 MR. LODICE:  Yes.

19                 MS. ANTAR:  So the ones I agreed are the one

20         that I told you before which was about -- the email

21         from the school.

22                 THE COURT:  All right.  You gotta give me -- my

23         clerk's got this document.  She's gotta look at it

24         with you.  So give me the -- he's got them numbered

25         so --

26                 MS. ANTAR:  I don't have -- there's no number on

27         this.

1        THE COURT:  All right.  No, that's all -- we

2    took care of that.

3        MS. ANTAR:  Okay.

4        THE COURT:  The packet.  Remember the packet

5    that he gave you?  That's --

6        MS. ANTAR:  Yeah, he gave --

7        THE COURT:  -- what I'm asking you about.

8        MS. ANTAR:  He gave a packet but then he labeled

9    it A-1, A-2, A-3.

10        THE COURT:  Right.  That's what I'm asking you

11    about.  So which of those do you consent --

12        MS. ANTAR:  Okay.

13        THE COURT:  -- to?

14        MS. ANTAR:  So, of those, it's A-1.

15        THE COURT:  Is that something you consent to

16    or --

17        MS. ANTAR:  Yes.

18        THE COURT:  -- you don't consent to?  Okay.

19        MS. ANTAR:  I do.

20        THE COURT:  So, Madam Clerk, just put these in

21    separate piles if you can.

22        All right.  Which else do you consent to?

23        MS. ANTAR:  And then, A-2, I also consent to

24    that one.

25        THE COURT:  Okay.

26        MS. ANTAR:  There's an unlabeled one that --

27    it's page one of two and page two of two.  It says at

```
 1          the top generated 1/18/23.
 2               THE COURT:  Do you know what that is, sir?
 3               MR. LODICE:  I'd have to see it.  I don't know.
 4               THE COURT:  Okay.  Oh, you --
 5               MR. LODICE:  I don't --
 6               THE COURT:  -- gave us --
 7               MR. LODICE:  -- I -- I had to --
 8               THE COURT:  -- your copy.
 9               MR. LODICE:  -- give my --
10               THE COURT:  All right.
11               MR. LODICE:  -- copies up.
12               THE COURT:  Was that something you agree to or
13          don't agree to?
14               MS. ANTAR:  I do agree to it.  It's --
15               THE COURT:  Okay.
16               MS. ANTAR:  -- unlabeled however.
17               THE COURT:  Okay.  The -- do you know what that
18          is, Madam Clerk?
19               MR. LODICE:  It's -- it's probably part of A-2,
20          your Honor.
21               THE CLERK:  I'm not sure.  There's several
22          things here that are dated 1/18/2023.
23               THE COURT:  All right.  So all those things are
24          okay?
25               MS. ANTAR:  No, just these specific ones here
26          that are -- he -- I don't know if he could properly
27          label his exhibits but --
```

```
1              THE COURT:  There's --

2              MS. ANTAR:  -- I have --

3              THE COURT:  -- nothing wrong with the way the

4         exhibits are labeled.

5              MS. ANTAR:  Well, this one's unlabeled.  I can

6         show it to you if you'd like to see --

7              THE COURT:  I --

8              MS. ANTAR:  -- which one it is.

9              THE COURT:  Okay.  Are you agreeing to that or

10        do not --

11             MS. ANTAR:  I'm agreeing to this one.

12             THE COURT:  Okay.  Mr. -- marshal, would you

13        just give that to my clerk.

14             MS. ANTAR:  And then if I could just have it

15        back, just so I can --

16             THE COURT:  You'll --

17             MS. ANTAR:  -- have my --

18             THE COURT:  -- have it back.

19             (Whereupon there was a pause in the

20        proceedings.)

21             THE COURT:  All right.

22             THE CLERK:  Your Honor, I don't see that as

23        given in this packet --

24             THE COURT:  All right.  Give that back to her

25        then.

26             THE CLERK:  Could you just give that back --

27             THE MARSHAL:  Mm-hmm.
```

1          THE CLERK:  -- to her please.  Thank you.

2          MS. ANTAR:  Okay.

3          THE COURT:  All right.

4          MS. ANTAR:  So it's --

5          THE COURT:  What else --

6          MS. ANTAR:  -- not gonna be --

7          THE COURT:  -- what else are you being -- what

8    else are you agreeing to out of his exhibit?

9          MS. ANTAR:  So is this one gonna be discussed

10   'cause I did want to comment on it.

11         THE COURT:  No.

12         MS. ANTAR:  That's why --

13         THE COURT:  It's not gonna be discussed.

14         MS. ANTAR:  Okay.  So I'll take this one out.

15   The next one I said I agreed was -- it's labeled A-3,

16   A --

17         THE COURT:  Fine.

18         MS. ANTAR:  -- dash, three, and it's two pages

19   and -- and -- but the second page says page two of

20   two.  I only want to agree to page one of one because

21   it's -- the second page is not -- is missing.

22         THE COURT:  I don't understand.  Isn't it in

23   your hand?

24         MS. ANTAR:  So this says -- this is page one of

25   one which is a -- is a separate document.  He -- he

26   stapled it to this which says page two of two which

27   is a completely different document that does not have

1          the page one of two.

2               THE COURT:  All right.  Well, what's that second

3          page about?  Do you know, sir?

4               MR. LODICE:  She said A-3?

5               MS. ANTAR:  Yes.

6               MR. LODICE:  They're probably from two different

7          days 'cause sometimes on -- on some of her motions

8          were labeled two different days on one motion against

9          me.  So, like, line 6 on her motion --

10               THE COURT:  All right.

11               MR. LODICE:  -- was regarding 9/23, 9/24.

12               THE COURT:  Okay.

13               MR. LODICE:  I'm assuming that those are ones

14          from probably 9/23 and the other one's from probably

15          9/24.

16               THE COURT:  Okay.

17               MR. LODICE:  They're probably different days.

18          That's why they're separate.

19               THE COURT:  All right.  So we can keep them

20          separate for now.  What else do you agree to?

21               MS. ANTAR:  So, it being separate, is it going

22          to be an exhibit or no?

23               THE COURT:  The parts that you agree to will

24          definitely be exhibit and that -- be an exhibit and

25          the parts that you don't agree to we're gonna go over

26          separately.

27               MS. ANTAR:  Okay.  So the A-3 that says page one

1    of one I could -- I agree to and then the one that's

2    unlabeled that says page two of two I -- I will also

3    agree to it but I want to also put on the record that

4    it's -- it's half of the conversation.  It's not the

5    full conversation.

6         THE COURT:  Okay.  Understood.

7         MS. ANTAR:  And then there's another one here

8    that's unlabeled.  I don't know if it's -- if it's

9    gonna be in evidence or not.

10        THE COURT:  All right.  Well, what is it?  Are

11   they emails or text messages or --

12        MS. ANTAR:  It looks like OurFamilyWizard

13   messages.

14        THE COURT:  All right.  Is it OurFamilyWizard

15   messages between the two of you?

16        MS. ANTAR:  Yes, it is.

17        THE COURT:  Okay.  And --

18        MS. ANTAR:  But it's not labeled.

19        THE COURT:  All right.  Well, then that'll be

20   evidence.  You can give that to the marshal.

21        MS. ANTAR:  This is my copy.  So I just wanna

22   know what -- what to label this as to refer to it.

23        THE COURT:  This is all -- I'm all just -- I'm

24   just gonna make it one exhibit because there's too

25   many moving parts here.

26        So do --

27        MS. ANTAR:  Okay.  So --

1          THE COURT:  -- you have OurFamilyWizard

2     messages --

3          THE CLERK:  I have --

4          THE COURT:  -- there?

5          THE CLERK:  -- many --

6          THE COURT:  All right.

7          THE CLERK:  -- OurFamilyWizard --

8          MR. LODICE:  May I say something?

9          THE CLERK:  -- messages --

10         THE COURT:  Yeah.

11         MR. LODICE:  Each item is in sequential order so

12    anything that's not labeled is with its subsequent

13    number.  So the first page is labeled and then it

14    follows up until the last page is -- the next

15    subsection is labeled.

16         THE COURT:  Okay.  I --

17         MR. LODICE:  So it's --

18         THE COURT:  -- understand.

19         MR. LODICE:  -- like, altogether.  She's just

20    separating them.

21         THE COURT:  All right.  Give that to the -- give

22    that to the clerk.

23         MS. ANTAR:  But I need to be able to --

24         THE COURT:  All right.

25         MS. ANTAR:  -- see it.

26         THE COURT:  Give it to the clerk.  We'll --

27    we'll figure that out.

```
1              MS. ANTAR:  Will I get that back because --
2              THE COURT:  You'll get --
3              MS. ANTAR:  -- I wanna have --
4              THE COURT:  -- that back or a copy.
5              MS. ANTAR:  Okay.  The next --
6              THE COURT:  But they're all OFW messages between
7        the two of you so you have them, right?
8              MS. ANTAR:  Yeah.  I don't have them in front --
9        I don't know what specific ones.
10             THE COURT:  Okay.
11             MS. ANTAR:  I have -- I have --
12             THE COURT:  We'll get --
13             MS. ANTAR:  -- all of them, you know?
14             THE COURT:  -- we'll -- we'll compare it to the
15       exhibit --
16             MS. ANTAR:  Okay.
17             THE COURT:  -- and you'll get a copy if you
18       don't have it.
19             (Whereupon there was a pause in the
20       proceedings.)
21             MS. ANTAR:  So I guess A-6 I would -- I would be
22       okay with.  I'm objecting to A-8.  It's too blurry to
23       read and I don't recognize what this is at all.
24             THE COURT:  All right.  What's A-8?
25             MR. LODICE:  A-8?  I would need to see the
26       exhibit.  It might be a copy -- oh, here it is.
27       Received -- it's my call log, your Honor.
```

1          THE COURT:  Of the calls between the two of you?

2          MR. LODICE:  Yes.

3          THE COURT:  Okay.  So A-8 can come into

4     evidence.  You can put that in the evidence pile.

5          All right.  What else?

6          MS. ANTAR:  I'm sorry.  Did you -- is A-8 in

7     'cause I don't --

8          THE COURT:  Yes.

9          MS. ANTAR:  -- I -- I can't even read this.

10          THE COURT:  Okay.  Well --

11          MS. ANTAR:  It's illegible.

12          THE COURT:  I heard you.

13          MS. ANTAR:  Okay.  The next one I see, again --

14     it's A-9.  I'm objecting to this.  I have no idea

15     what this is.  It's -- just looks like a -- something

16     he created himself, a -- a halfway screenshot with

17     no --

18          THE COURT:  All right.

19          MS. ANTAR:  -- anything --

20          THE COURT:  What's -- what's A -- what's 9?

21          MR. LODICE:  You asking me?

22          THE COURT:  Yeah.

23          MR. LODICE:  I'm sorry.  What was that?  What

24     A-9 said?

25          THE COURT:  Yeah.

26          MR. LODICE:  I'm not sure.  Can she hold it up

27     so I could see it?  I -- I -- I don't -- I had to

```
 1          give my copies up because she didn't have hers from
 2          her lawyer so I don't have them in front of me right
 3          now.
 4                  THE COURT:  All right.  Let's…
 5                  MR. LODICE:  I'm looking at my --
 6                  THE COURT:  They -- they --
 7                  MR. LODICE:  -- notes here.
 8                  THE COURT:  -- look like they're screenshots of
 9          text messages, right?
10                  THE CLERK:  It's --
11                  MR. LODICE:  Oh, those are call logs.
12                  THE COURT:  Between the two of you?
13                  MR. LODICE:  Yes.  Yes.
14                  THE COURT:  All right.  Off of your --
15                  MR. LODICE:  May I see?
16                  THE COURT:  -- phone?
17                  MR. LODICE:  Yep.
18                  THE COURT:  Off of --
19                  MR. LODICE:  Yeah, those are call logs.
20                  THE COURT:  -- your phone?
21                  MR. LODICE:  From my phone.
22                  THE COURT:  All right.  So that can also come
23          into evidence.
24                  All right.  Miss Antar, this --
25                  MS. ANTAR:  Yes?
26                  THE COURT:  -- document -- I want you to look at
27          this document with me.
```

```
1              MS. ANTAR:  And which -- which one did you just

2         say went in?

3              THE COURT:  The call -- the call logs.

4              MS. ANTAR:  What's it labeled as?

5              THE COURT:  I think it was 9.

6              MS. ANTAR:  It's labeled as A-9 and -- and this.

7          So is that entered in as an ID only or --

8              THE COURT:  No, these are exhibits.

9              MS. ANTAR:  Okay.  A-10 is fine.

10             THE COURT:  All right.

11             (Whereupon there was a pause in the

12        proceedings.)

13             MS. ANTAR:  A-11 is fine.

14             (Whereupon there was a pause in the

15        proceedings.)

16             MS. ANTAR:  A-12 is two different things so I'm

17        -- I can't identify something that is stapled

18        together with multiple things.

19             THE COURT:  You can.  The question is do you

20        object to them or not.

21             MS. ANTAR:  I mean --

22             THE COURT:  Are they what they purport to be,

23        messages between --

24             MS. ANTAR:  I don't --

25             THE COURT:  -- the two --

26             MS. ANTAR:  -- know what --

27             THE COURT:  -- of you?
```

1      MS. ANTAR:  -- A-12 is.  So I don't --

2      THE COURT:  What -- what's --

3      MS. ANTAR:  -- understand what --

4      THE COURT:  -- what's A-12?

5      MS. ANTAR:  I don't understand what the first

6  page is but then there's another two pages attached

7  that are OurFamilyWizard messages.

8      THE COURT:  All right.  Well, I think he said a

9  couple times that he prepared that in response to

10  your contempt motion so they relate to the various

11  motions.

12      MS. ANTAR:  And --

13      THE COURT:  So they are different documents.

14      MS. ANTAR:  Okay.

15      THE COURT:  So --

16      MS. ANTAR:  Well, I don't -- I don't recognize

17  the first page but I'm okay with the messages from

18  OurFamilyWizard --

19      THE COURT:  All right.

20      MS. ANTAR:  -- that are --

21      THE COURT:  What's the --

22      MS. ANTAR:  -- page one --

23      THE COURT:  -- what's the --

24      MS. ANTAR:  -- and two.

25      THE COURT:  -- first page?

26      MR. LODICE:  The first page is -- we have --

27  with our daycare we had a app.  So when Angelina

1      would, like, check in at school, have a snack, it

2      would update on the app.

3            THE COURT:  Okay.

4            MR. LODICE:  This is just a screenshot of the

5      app from that day where she was making claims

6      different than what --

7            THE COURT:  Okay.

8            MR. LODICE:  -- was happening.

9            THE COURT:  All right.  So that can be admitted

10     then.

11           MR. LODICE:  That should be it.

12           MS. ANTAR:  And then I'm objecting to this

13     incomplete police report --

14           THE COURT:  Okay.

15           MS. ANTAR:  -- on the grounds of it's

16     incomplete.

17           THE COURT:  Hold -- hold on.  I don't wanna jump

18     around.

19           MS. ANTAR:  Okay.

20           THE COURT:  What are you looking at?

21           MS. ANTAR:  It's --

22           THE COURT:  Are you still --

23           MS. ANTAR:  There's no --

24           THE COURT:  -- looking at --

25           MS. ANTAR:  -- label.

26           THE COURT:  -- his exhibit?

27           MS. ANTAR:  No labels.

1          THE COURT:  All right.  Is it the police report?

2          MR. LODICE:  They're -- I -- some of the -- of

3      the accusations of me not picking up my daughter or

4      her not dropping her off or me not being there were

5      followed up with police reports.

6          THE COURT:  Okay.

7          MR. LODICE:  So --

8          THE COURT:  So police reports are generally not

9      admissible because --

10         MR. LODICE:  Okay.

11         THE COURT:  -- they're hearsay.

12         MR. LODICE:  That's fine.

13         THE COURT:  The police officers aren't here.  So

14     those'll be put aside and they'll stay marked as ID.

15         MS. ANTAR:  And I also was objecting to it

16     'cause it's not complete.  It's missing --

17         THE COURT:  All right.  I already --

18         MS. ANTAR:  -- the first page.

19         THE COURT:  -- I already sustained your

20     objection.

21         MS. ANTAR:  Okay.  Same thing with A-5 for

22     another police report.

23         THE COURT:  All right.  So, same thing, they'll

24     be marked for ID.

25         MS. ANTAR:  And then, A-4, I'm objecting to that

26     'cause it's also missing the page two.

27         THE COURT:  All right.  So what's -- what's --

1 what's A-4?

2   MS. ANTAR:  It's messages from OurFamilyWizard.

3   THE COURT:  All right.  Well, if they are what

4 you two say they are, our -- messages from

5 OurFamilyWizard, then they're gonna be admitted into

6 evidence.

7   MS. ANTAR:  What about the missing page?  'Cause

8 it's -- is --

9   THE COURT:  Well --

10   MS. ANTAR:  -- he's only showing half of the

11 conversation so I think it needs to be complete

12 because otherwise it's being taken out of context.

13   THE COURT:  All right.  Well, he can offer it

14 however he wants.  It'll come in that way.  But I'll

15 -- I will note that it is only one page of two.

16   MS. ANTAR:  Okay.

17   THE COURT:  Okay.  Is that everything on that

18 exhibit?  All right.

19   THE CLERK:  I -- I have two leftover ones that

20 weren't addressed.

21   THE COURT:  All right.  Marshal, show -- show

22 Miss Antar those two pages.

23   Miss Antar, look at these two pages -- my clerk

24 has them as part of this exhibit -- and tell me if

25 you have any objection to those.

26   MS. ANTAR:  Are these the ones that were given

27 to me as my copy that you're giving back or are these

1      something new?

2           THE COURT:  No.  This is something else.  The

3      question is do you object to my looking at those.

4           MS. ANTAR:  I would -- I would object if I don't

5      get to have a copy.

6           THE COURT:  Okay.  Well, you're gonna get a

7      copy.

8           MS. ANTAR:  Okay.

9           THE COURT:  All right.  Then they'll come into

10     evidence.  We'll --

11          MS. ANTAR:  Will I --

12          THE COURT:  -- make a --

13          MS. ANTAR:  -- have a copy during this hearing?

14          THE COURT:  Yes.  We'll make you a copy.

15          All right.  What happened to all those clips?

16     Get one of the -- get one of them in there with Judge

17     Griffin's clerks if one of them is free.

18          MS. ANTAR:  Yeah.  I mean, I don't -- I don't

19     have enough time to actually look at this or -- I

20     mean, I'll -- I thought the Rules of Evidence -- he's

21     supposed to show me this in advance.

22          THE COURT:  Give that back to the clerk --

23          MS. ANTAR:  Okay.

24          THE COURT:  -- to the marshal.

25          MS. ANTAR:  Here you go.

26          THE COURT:  It'll come into evidence.  We'll

27     make you a copy.

1          THE CLERK:  This can all be one exhibit?

2          THE COURT:  Can all be one exhibit.

3          THE CLERK:  Okay.

4          THE COURT:  Miss Antar's owed copies of those

5      last two pages and that other portion.

6          Okay.  Mr. Lodice, is there anything else that

7      you wanted the Court to look at or are you done?

8          (Whereupon there was a pause in the

9      proceedings.)

10         MR. LODICE:  No.  That's good.

11         THE COURT:  Okay.

12         MR. LODICE:  I'm good with that.

13         THE COURT:  All right.  Ms. Antar, I will let

14     you ask Mr. Lodice some questions about what he said

15     as long as they are focused and they are limited.  As

16     soon as -- if you go off the rails, I'm gonna stop

17     you, you can tell me what you want me to ask and I

18     will ask him about it.  But, as you can see, I

19     already asked him a bunch of questions and I was

20     critical of some of the things that he suggested.  So

21     I feel like I know most of what I need to know for

22     the situation.  But, if there's things you wanna ask

23     him that are focused, I will let you do that.

24         This hearing is ending at 5 o'clock.  So -- and

25     then we're done.  So I want you to use that time

26     wisely, okay.

27         MS. ANTAR:  Okay.  And then I just also wanted

1        to note that I have, you know, this -- the Court

2        order stated that we would also rule about this

3        and --

4              THE COURT:  I am --

5              MS. ANTAR:  -- Attorney --

6              THE COURT:  -- going to address those motions.

7              MS. ANTAR:  Okay.

8              THE COURT:  I'm going to address those motions

9        but those motions are unlimited and we'll make them

10       -- time to -- I will either issue orders on the

11       papers or -- don't worry.  We'll -- we will get to

12       those motions.  But I -- I have you both here.  The

13       most important thing is custody.  That stuff's about

14       financial paperwork.  So I wanna deal with custody.

15       That's the most important thing.

16             MS. ANTAR:  Okay.  So I'm asking if we -- if the

17       Court can immediately appoint a GAL for my daughter

18       given that there's now an open -- another open DCF

19       and New Britain Police Department investigation.  My

20       daughter was in the hospital.  She was in the

21       emergency room --

22             THE COURT:  All right.  Miss Antar, you're not

23       sworn in.

24             MS. ANTAR:  Okay.

25             THE COURT:  You're not offering me testimony.

26             MS. ANTAR:  Will I have a chance to as -- as --

27             THE COURT:  No.

1        MS. ANTAR:  -- the defendant did?

2        THE COURT:  Your --

3        MS. ANTAR:  Because I have new --

4        THE COURT:  -- your --

5        MS. ANTAR:  -- testimony that is extremely

6    urgent, that is very, very --

7        THE COURT:  No, Miss Antar.

8        MS. ANTAR:  -- very serious.

9        THE COURT:  No.  You were the moving -- all

10   right, this is the fourth time I've told you this.

11   You were the moving party.  You put on your case for

12   many hours on the first day of this hearing.  I'm

13   letting Mr. Lodice go forward now.  If you have

14   questions for Mr. Lodice, you can ask them.  But, no,

15   you are not doing -- getting a do-over on this

16   hearing.  So, if you've filed motions after this

17   hearing started, we will take them up in the regular

18   course of business.  This hearing's ending at 5

19   o'clock or it closes.  So, if you have a few

20   questions for Mr. Lodice, I suggest you ask them now.

21       MS. ANTAR:  I would -- I would be able to ask

22   him the questions, your Honor.  I just want just one

23   question just so I can make sure I'm understanding

24   what you're saying because, the Court order that you

25   issued the other day, it said that, you know, aside

26   from those ones about the file, that all pending

27   motions would be heard today.  It said today will be

1              a -- a hearing on all pending motions.

2                   I'm not suggesting to do a do-over of anything

3              that was done last time.  Everything that we did in

4              -- in -- that addressed the motions which were

5              brought up on the 5th -- we were only here for two

6              hours on that day.  We didn't really even address any

7              specific motions.  None of the contempts got

8              addressed.  I did not have a chance to show any of

9              the evidence that I had.  We ran out of time which

10             was what continued us to today.  And I did file a

11             motion to reclaim specific motions, just very -- a

12             few specific ones that I did wanna address today, and

13             I did have succinct evidence to go with them.  And I

14             -- but I can start by asking him his question --

15             like, my questions for him.  I'd be ready to do that

16             now.

17                  THE COURT:  Ms. Antar, no.  Let me tell you for

18             the fifth time.  All pending motions means the

19             motions that we started on the last hearing date.

20                  MS. ANTAR:  Mm-hmm.

21                  THE COURT:  If you've filed motions since the

22             last hearing date, we are not hearing those --

23                  MS. ANTAR:  So, for --

24                  THE COURT:  -- today.

25                  MS. ANTAR:  -- clarification, which motions are

26             you referring to?  Because I have the ones that I

27             filed --

```
1              THE COURT:  Okay.

2              MS. ANTAR:  -- here to reclaim, none of which

3         were addressed at the last hearing.  None --

4              THE COURT:  That --

5              MS. ANTAR:  -- of them.

6              THE COURT:  -- that is simply not accurate.  I

7         listed all -- at the start of that hearing all the

8         motions that were pending.  I heard evidence from

9         your side about all of those motions.  Now we are

10        hearing from him.  If you have questions about those

11        motions, you can ask him.  But this is, one more

12        time, not a do-over.  I listed --

13             MS. ANTAR:  I do --

14             THE COURT:  All right.

15             MS. ANTAR:  -- I do have questions I'd like to

16        ask him and -- but I just want to, again, repeat that

17        last time we only discussed -- he asked me questions

18        at the last hearing.  I was put on the stand, he

19        asked me questions, I answered them, and then we had

20        a continuance to today.  So, again, we didn't address

21        the issue of child support.  We didn't address the

22        motion for a GAL.

23             Attorney Cretella and I both filed motions for a

24        -- a GAL.  No GAL has been appointed.  That had --

25        that never got brought up.  Everything is so conflict

26        between him and I.  There's no reason why a GAL

27        shouldn't be brought in so that then it can't be
```

1       biased.  A GAL is an unbiased that can --

2            THE COURT:  Miss Antar.

3            MS. ANTAR:  -- be in the best interest.

4            THE COURT:  I'm going to issue orders before 5

5       o'clock --

6            MS. ANTAR:  Okay.

7            THE COURT:  -- temporary -- probably final

8       orders on -- on your daughter and where she's living

9       as of tomorrow because I've been hearing evidence on

10      this case for months and I got family relations

11      involved for that very reason.

12           So you can have from now until quarter to four

13      [sic] to ask Mr. Lodice questions if you want.  I

14      think that would be a better use than trying to get

15      me to do-over all the other motions that I listed at

16      the start of the hearing and that we heard evidence

17      on but, if you don't, you don't.  But I am going to

18      change the custody and access orders by the end of

19      the day today.

20           MS. ANTAR:  So I did not hear you list anything

21      at the beginning of this hearing.  Could you please

22      just repeat them for me --

23           THE COURT:  At the --

24           MS. ANTAR:  -- so that I --

25           THE COURT:  -- beginning of --

26           MS. ANTAR:  -- can write --

27           THE COURT:  -- the hearing --

1          MS. ANTAR:  -- them down?

2          THE COURT:  -- on April 5th.

3          MS. ANTAR:  I'm sorry.  Which --

4          THE COURT:  At the --

5          MS. ANTAR:  -- motions did you say?

6          THE COURT:  I said I listed all the motions at

7     the beginning of the hearing on April --

8          MS. ANTAR:  Is there --

9          THE COURT:  -- 5th.

10         MS. ANTAR:  -- any way that you could please let

11    me know which ones you're referring to since I'm

12    expected to --

13         As you said, this involves custody of my

14    daughter.  I'm asking for a GAL.  I just got rid of

15    the counsel because he made critical errors in this

16    case.  There's brand-new -- new evidence that I'd

17    like to give the Court.  I was told by multiple

18    different attorneys to come here today and say I'm

19    demanding child support, I'm demanding a GAL for my

20    child.

21         Family relation -- you ordered a custody

22    evaluation for us.  Family relations said that

23    they're not doing it because he didn't show up.  I'd

24    like a custody evaluation.  I'd like family relations

25    to take in the new information regarding the fact

26    that -- also, you ordered us to sign releases.  Mr.

27    Lodice refused.  He saw multiple therapists he

1     refused to sign releases on.  You stated if none of

2     us -- if any of us refused to sign it would -- it

3     would imply we're hiding something.  Mr. Lodice told

4     family relations that he has therapies -- therapists

5     he went to but he did not sign releases on those.

6          And, furthermore, he was ordered by Judge

7     Griffin to provide the rest of the missing discovery

8     documents which are relevant to prove my case that

9     he's making substantially more money than he was, not

10    to -- what he's saying to you he's struggling, and

11    Judge Griffin said he had until January 20th to

12    provide that.  He did not.  Attorney Cretella filed a

13    motion for contempt and moved our hearing from

14    February 1st to April 5th because of the fact and you

15    granted that continuance because he did not comply

16    with the discovery that Judge Griffin ordered based

17    on the motion for -- to compel.

18         So, again -- not only that but I -- the fact

19    that I just got everything back from Attorney

20    Cretella -- I signed a retainer with Attorney

21    Stephanie Bernstein.  She told me that she would be

22    happy to take this case.  She's -- she wants to take

23    my case.  However, I'm gonna be paying her the

24    retainer fee and she said that none of this is all

25    gonna get -- she couldn't prepare prior to today.

26    And, again, I spent all week speaking to her.  I sent

27    her all the stuff and evidence.

1        Now there's new evidence.  Angelina was -- her

2      pediatrician referred her to Griffin Hospital. We

3      were at Griffin Hospital and Children's --

4           THE COURT:  Miss Antar.

5           MS. ANTAR:  -- Hartford's Medical Center [sic].

6           THE COURT:  Listen to me.

7           MS. ANTAR:  They did a DNA collection --

8           THE COURT:  Listen to me.

9           MS. ANTAR:  -- and a rape kit.

10          THE COURT:  You are not sworn in.

11          MS. ANTAR:  Okay.

12          THE COURT:  You are not offering me testimony

13     and you are not asking this witness any questions.

14          MS. ANTAR:  I am gonna ask him questions.  I --

15          THE COURT:  So --

16          MS. ANTAR:  -- have questions right here

17     ready --

18          THE COURT:  Listen --

19          MS. ANTAR:  -- when -- whenever --

20          THE COURT:  -- listen --

21          MS. ANTAR:  -- I will have the opportunity.

22          THE COURT:  I've been giving the opportunity for

23     the last ten --

24          MS. ANTAR:  Well, I'm --

25          THE COURT:  -- minutes.

26          MS. ANTAR:  -- ready right now.  I just wanted

27     to say that to you so you're aware.

1          THE COURT:  All right.  Please --

2          MS. ANTAR:  But I'm ready to ask him.  And I

3     don't know if he has to sit up there --

4          THE COURT:  No.

5          MS. ANTAR:  -- or what.

6          THE COURT:  You can ask him from there.

7          MS. ANTAR:  Okay.

8          THE COURT:  And you can sit down too.

9          MS. ANTAR:  Okay.  So -- so did you sign an

10     agreement on -- in June of 2021 about custody and

11     visitation of Angelina?

12          MR. LODICE:  Yes.

13          MS. ANTAR:  Okay.  So all of the things that you

14     brought up that happened in 2019, 2020, 2021 prior to

15     June, all of those things that you brought up

16     happened and you still signed an agreement saying

17     that you were okay with me maintaining primary

18     residency of Angelina.  Is that correct?

19          MR. LODICE:  Yes.

20          MS. ANTAR:  Okay.  And have I had primary

21     residency of Angelina since the day she was born?

22          MR. LODICE:  Since we filed the paperwork

23     through court, yes.  Not since the day she was born.

24     We were still together then.

25          MS. ANTAR:  So how long have I had primary

26     residency of Angelina?

27          MR. LODICE:  I would say maybe three years now.

1          MS. ANTAR:  So would you say that since November

2      7th, 2019 is correct?

3          MR. LODICE:  Probably.

4          MS. ANTAR:  Is that yes?

5          MR. LODICE:  I can't be sure.  I don't know but

6      I would say -- okay, it --

7          MS. ANTAR:  Okay.  Your Honor --

8          MR. LODICE:  -- this all should be --

9          MS. ANTAR:  -- may I refresh his memory with a

10     transcript from that hearing?

11         THE COURT:  I don't think there's any need to do

12     that.  I have the file in front of --

13         MS. ANTAR:  Okay.

14         THE COURT:  -- me.

15         MS. ANTAR:  So -- yeah.  Would you say that

16     Angelina has had primary residency with me since --

17         MR. LODICE:  Yes.

18         MS. ANTAR:  -- approximately November 2019?

19         MR. LODICE:  Yes.

20         MS. ANTAR:  And would you say that Angelina --

21     since that order was put in place, would you say that

22     Angelina had a set schedule of visitation to see you?

23         MR. LODICE:  It's changed a few times but yes.

24         MS. ANTAR:  So you're saying in 2019 a set

25     schedule was established?

26         MR. LODICE:  I believe we set up an initial -- I

27     think, if I remember correctly, we set up a specific

1   schedule for that timeline, like a temporary one,

2   until we went back to court and then we set up

3   another one, a fall -- a finalized one, back in June

4   of 2021 I believe.

5        MS. ANTAR:  So you -- you told Attorney Cretella

6   that you have memory problems during the last

7   deposition.  Is that correct?

8        MR. LODICE:  I told him I can't remember

9   everything in detail.

10        MS. ANTAR:  You're saying that your testimony is

11   that you told Attorney Cretella that you cannot

12   remember everything in detail?

13        MR. LODICE:  Sometimes I forget things.  Yes.

14        MS. ANTAR:  Okay.  So is it your testimony that

15   you told Attorney Cretella in your deposition on

16   March 21st, '23 which I would like to give to the

17   Court as an --

18        MR. LODICE:  Objection.  Relevance.

19        MS. ANTAR:  -- exhibit --

20        THE COURT:  All right.  Listen.  Depositions

21   don't come into evidence unless there's a very

22   particular set of circumstances which have not been

23   met here.  And his memory problems are not gonna help

24   me decide where Angelina is living next week.  So

25   let's get focused.

26        MS. ANTAR:  Okay.  So -- sorry.

27        So would you say that it is correct that in

1    November -- on November 7th, 2019 we came to an

2    agreement and that you stated that the reason that

3    you agreed to it was because you felt it was in the

4    best interest of our daughter?

5        MR. LODICE:  At the time, yes.

6        MS. ANTAR:  And would you say it's correct that

7    that agreement gave a set schedule that carried

8    through the end of 2019 and then reverted to it being

9    -- visitation being at -- worked out on a week-by-

10   week basis between the two of us?

11       MR. LODICE:  Yes.

12       MS. ANTAR:  And would you say it's correct that

13   from January of 2020 until June of 2021 that it

14   remained where visitation would be worked out on a

15   week-by-week basis with no set schedule?

16       MR. LODICE:  Yes.  Yes.

17       MS. ANTAR:  Okay.  And then from June twenty --

18   from June of 2021, what did we do regarding our

19   agreement?  Do you remember?

20       MR. LODICE:  I don't understand the question.

21   What do you mean what did we do?

22       MS. ANTAR:  Do you remember what -- how we

23   changed our agreement in June of 2021?

24       MR. LODICE:  Like, standard week-to-week you

25   mean?

26       MS. ANTAR:  So we -- you just said that you

27   agree that we had a -- an arrangement from January

1    2020 until June 2021 where I maintained primary

2    residency of Angelina?

3         MR. LODICE:  Yes.

4         MS. ANTAR:  This was our final judgment order

5    which was entered in 2019 and it stated that we would

6    -- I would work out visitation on a week-by-week

7    basis with you because you stated that your work

8    schedule was so erratic that you couldn't possibly

9    commit to a set --

10        MR. LODICE:  Yes, at the time --

11        MS. ANTAR:  -- consistent --

12        MR. LODICE:  -- it was.

13        MS. ANTAR:  -- schedule.  So then --

14        MR. LODICE:  Yep.

15        MS. ANTAR:  -- you -- would you also say it's

16   correct that in June of 2021 we created a -- an

17   agreement together while we had pending Court motions

18   but ended up coming to an agreement and reached an

19   agreement and submitted it to the Court for final

20   approval?

21        MR. LODICE:  Yes.

22        MS. ANTAR:  And did you change when we -- so

23   when we had that agreement we both signed that we

24   both felt was fair and in the best interest of

25   Angelina in 2021, did you sign that willingly?

26        MR. LODICE:  Yes.

27        MS. ANTAR:  And you felt that it was still in

1   the best interest of Angelina to be in primary

2   residency with me as a mother and being -- the

3   schedule with you at the time was established where

4   you had her every weekend.  Is that correct?

5        MR. LODICE:  At that time, yes.

6        MS. ANTAR:  And do you recall how we would --

7   wrote in about the exchanges?

8        MR. LODICE:  What do you mean?  I don't

9   understand the question.

10        MS. ANTAR:  Do -- do you remember what the 2021

11   agreement -- how we established --

12        MR. LODICE:  How we established --

13        MS. ANTAR:  -- our --

14        MR. LODICE:  -- our exchanges?

15        MS. ANTAR:  -- how would we exchange Angelina as

16   far as you said every weekend doing --

17        MR. LODICE:  Not verbatim.  But, if I remember

18   correctly, it was I would take her Friday evening,

19   I'm not sure exactly what the drop-off or pick-up

20   was, and then I would keep her till Monday morning.

21   And I'm not sure what the pick-up or drop-off was on

22   the original order.

23        MS. ANTAR:  Okay.  So it's your testimony that

24   from 2019 through the middle of 2021 there was no set

25   schedule and she was with me primary residency, and

26   after the June 2021 agreement was signed it

27   established where we would exchange the child on

1    Mondays and Fridays and she'd go with you every

2    weekend?

3         MR. LODICE:  Yes, I believe so.

4         MS. ANTAR:  And then you were -- were you also

5    ordered to pay child support?

6         MR. LODICE:  I was.

7         MS. ANTAR:  And were you paying child support at

8    that time?

9         MR. LODICE:  I paid child support when I could.

10   I'm not sure exactly which weeks I paid and didn't.

11   I believe at that time I was still making all the

12   complete payments in child support.

13        MS. ANTAR:  And were you making those payments

14   with cash, with credit card?  How were you making

15   those payments?

16        MR. LODICE:  At first it was directly to you and

17   then we switched over to where I paid the -- the one

18   here, the report enforcement [sic].

19        MS. ANTAR:  So in 2021 it -- so is it your

20   testimony that when child support was first ordered

21   in 2019 that you were just paying me directly?  Is

22   that correct?

23        MR. LODICE:  When -- yes.  There was a time --

24   I'm not sure exactly the dates but, in the beginning,

25   yes, I was paying you directly.

26        MS. ANTAR:  And how were you paying me?  How

27   were those payments made?

1          MR. LODICE:  I -- some were Venmo's.  I think

2     some were checks.

3          MS. ANTAR:  So you're -- would you say that it's

4     accurate that all of those payments were paid to me

5     once a month at the beginning of the month by John

6     Casanova, Jr.?

7          MR. LODICE:  Once we switched over through

8     support enforcement it was taken out of my paycheck

9     from the place I was employed which was with John

10    Casanova.  Yes.

11         MS. ANTAR:  So you're saying that in 2019 and

12    2020 and in 2021 that you were making payments to me

13    with checks and Venmo and that John Casanova was not

14    paying me the child support once a month directly out

15    of your pipe?

16         MR. LODICE:  No.  You just asked the same

17    question again.  You --

18         MS. ANTAR:  Do you have any --

19         MR. LODICE:  In the --

20         MS. ANTAR:  -- do you have any --

21         MR. LODICE:  -- beginning --

22         MS. ANTAR:  -- proof of that?

23         MR. LODICE:  -- yes.  When we first split, when

24    we were -- we agreed on our child support, I was

25    paying you directly.  Then you went through support

26    enforcement.  Therefore, once the support enforcement

27    got enacted, it was getting paid out of my -- John

1          Casanova was writing the checks based off of my

2          commission checks.  Yes.

3               MS. ANTAR:  Okay.  I think you might have some

4          trouble memory -- remembering but I'm going to tell

5          you and ask you if you think that this is correct.

6          Would you say that it was correct that as soon as

7          that child support order was entered in November of

8          2019, that rather than I go to support enforcement

9          that we had an arrangement between you, me, and John

10         Casanova that -- as long as we stayed out of support

11         enforcement being involved, that John would take your

12         full 520-dollar a month child support amount out of

13         your -- out of your pipeline of your sales that he

14         owed you?  Was it your -- the agreement that John

15         would give me a check once a month for $520 directly

16         out of your pay?  Yes or no?

17              MR. LODICE:  Yes.

18              MS. ANTAR:  So your -- your testimony is now

19         that, yes, in fact, the child support was not being

20         paid by you to me via Venmo or checks but that John

21         Casanova was withholding it from your paycheck,

22         directly paying it to me once a month in full for the

23         month.  Is that correct?

24              MR. LODICE:  There was both.  Initially there

25         was Venmo's to you and some --

26              MS. ANTAR:  Do you --

27              MR. LODICE:  -- paid some actual checks and then

1       we -- you wanted to do it through John because we

2       were still working for the same company.  And we have

3       a sit-down, the three of us, and we agreed to do it,

4       that John would take it directly out of my check.

5       That all happened.

6           MS. ANTAR:  So in -- all right.  Do you have any

7       proof of these alleged checks or Venmo's?  Because to

8       my recollection every single payment came directly

9       out of your check by -- by John Casanova.  Do you

10      have any proof to the contrary?

11          MR. LODICE:  I'm sure I could probably if I

12      needed to get them.  I have nothing on me.

13          MS. ANTAR:  Okay.  So would you say that the

14      majority -- before support enforcement was involved,

15      would you say that the majority, if not all, of the

16      child support was paid to me directly by John

17      Casanova until he fired you?  Is that correct?

18          MR. LODICE:  No.

19          MS. ANTAR:  So you're --

20          MR. LODICE:  That's not correct because there

21      was a --

22          THE COURT:  Okay.

23          MR. LODICE:  -- time that --

24          THE COURT:  Okay.  Okay.

25          MR. LODICE:  -- he started writing checks to the

26      child support enforcement.

27          THE COURT:  All right.

1              MR. LODICE:  We had to send it to support

2        enforcement.

3              THE COURT:  Ms. Antar, let me ask you a

4        question.

5              MS. ANTAR:  Yes.

6              THE COURT:  He told me that he owes you $6,000.

7         Do you think that that's true?

8              MS. ANTAR:  No.  I actually have something I'd

9        like to give to the --

10              THE COURT:  Okay.  Just --

11              MS. ANTAR:  -- Court that's a breakdown --

12              THE COURT:  -- listen.

13              MS. ANTAR:  -- of what he owes.

14              THE COURT:  All right.  You have -- what -- how

15        much do you think he owes you?  You think it's more

16        than that?

17              MS. ANTAR:  It's absolutely more than that and

18        I've also submitted this to support enforcement.  I'm

19        -- have this prepared for the Court.

20              THE COURT:  All right.  Listen.  If it's --

21        involve -- if support enforcement is keeping track of

22        it then we're gonna have to rely on their records and

23        not your records.  Is support enforcement tracking

24        this order?

25              MS. ANTAR:  Well, Attorney Cretella stated that

26        you were gonna be ruling on these and that support

27        enforcement -- and that all pending motions would be

1    heard in front of you but I talked to support

2    enforcement and they stated that they're supposed to

3    be a party to the case because it's a Title -- a --

4         THE COURT:  Right.

5         MS. ANTAR:  -- IV-D case.

6         THE COURT:  That's correct.

7         MS. ANTAR:  So -- so --

8         THE COURT:  Okay.

9         MS. ANTAR:  -- now --

10        THE COURT:  So why don't we do this.  I would

11   like to have support enforcement's records because

12   they're -- at the end of the day, they're the ones

13   whose -- whose job it is to keep track of child

14   support.  So why don't we put aside the child support

15   issues and focus your time on the custody orders

16   because I'm gonna issue some custody orders today.

17   And, if we have to get support enforcement here on a

18   different date so we can look at their records, we'll

19   do that.  Why don't you focus your time on the

20   custody issues.

21        MS. ANTAR:  Okay.  And then I just have one

22   question.  What about the childcare because as it

23   stands it's not a cash order and support enforcement

24   did tell me that, you know, you have the authority as

25   family court you could rule on any of this stuff and

26   they said it's much quicker if I bring -- address it

27   since we do have this hearing.  And I did provide

```
 1        this --
 2            THE COURT:  All right.  Listen --
 3            MS. ANTAR:  -- a copy of this --
 4            THE COURT:  -- listen to what I --
 5            MS. ANTAR:  Okay.
 6            THE COURT:  -- just said to you.
 7            MS. ANTAR:  Yes.
 8            THE COURT:  I said I'm making custody orders --
 9            MS. ANTAR:  Okay.
10            THE COURT:  -- about your daughter in 30
11        minutes.
12            MS. ANTAR:  So all --
13            THE COURT:  So --
14            MS. ANTAR:  -- child support with --
15            THE COURT:  -- I think we should focus on the
16        custody issues.  I am extremely alarmed about what I
17        have been hearing over the course of the last six
18        months about Angelina.  So you wanted time to
19        question him about what's been going on.  I think --
20            MS. ANTAR:  Okay.
21            THE COURT:  -- you should focus on that.
22            MS. ANTAR:  Okay.  Okay.  So you stated that I
23        am not fit to have primary residency.  Is that
24        correct?
25            MR. LODICE:  Yes.
26            MS. ANTAR:  Okay.  And do you currently have
27        primary residency of your kids?
```

1          MR. LODICE:  The other children?

2          MS. ANTAR:  Any of your kids.

3          MR. LODICE:  No.

4          MS. ANTAR:  So you have -- you don't have

5     primary residency of any of your kids.  Have you

6     ever?

7          MR. LODICE:  No.

8          MS. ANTAR:  Okay.  And have you ever had sole

9     custody of any of your children?

10          MR. LODICE:  No.  I get along with my ex with my

11     other children so we co-parent very well together.

12          MS. ANTAR:  Okay.  And you -- you testified that

13     you have a set schedule that's a Court order with

14     your ex that requires you to pick them up from Friday

15     to Monday.  Is that correct?

16          MR. LODICE:  We -- we technically do have a set

17     schedule but I -- yes.  So yes.  Yes, we do have a

18     set schedule.

19          MS. ANTAR:  So you're -- you -- is it your

20     testimony that there is not currently an order in the

21     New Britain Superior Court that states that you are

22     to provide Monica Lodice with her -- your schedule

23     every Sunday and that it's a flexible option to pick

24     up the children anytime depending on your work

25     schedule?  Are you stating that that's not the

26     current Court order in New Britain Superior Court?

27          MR. LODICE:  I'm not a hundred percent sure if

1    that's the order.  Like I said, we've been getting

2    along for so many years that we just parent like

3    parents are supposed to.

4       MS. ANTAR:  Okay.  So there's no set schedule

5    for you to pick up your other children?

6       MR. LODICE:  We have a set schedule between the

7    two of us that I take my kids every Friday until

8    Monday.

9       MS. ANTAR:  And is that a Court order?

10      MR. LODICE:  I thought it was but maybe not.

11      MS. ANTAR:  Okay.  So there's no Court order

12   stating that you have to get the children and would

13   you say that they're also old enough where they could

14   be alone without a parent?

15      MR. LODICE:  My older one, yes.  My younger one

16   is still a little young.  If he is alone, we don't

17   like to leave him alone for long.

18      MS. ANTAR:  And have you ever left them alone

19   before?

20      MR. LODICE:  Yes, I have.

21      MS. ANTAR:  Okay.  And were you ever charged

22   with risk of injury to a minor for leaving them

23   alone?

24      MR. LODICE:  I was.

25      MS. ANTAR:  And were you convicted of reckless

26   endangerment for leaving them alone?

27      MR. LODICE:  I was.

 1          MS. ANTAR:  And were DCF substantiation -- did

 2     DCF substantiate abuse and neglect and neglect of

 3     your two sons --

 4          MR. LODICE:  No.

 5          MS. ANTAR:  -- related to that arrest?

 6          MR. LODICE:  No.

 7          MS. ANTAR:  So when your brother's daughter was

 8     staying with your mother, did DCF tell you you

 9     weren't allowed to live there because of the record

10     for the substantiated neglect and did you say in --

11          MR. LODICE:  No.

12          MS. ANTAR:  -- front of me and your mother --

13          MR. LODICE:  No.

14          MS. ANTAR:  So you're telling me if I get the

15     records from that, it's not going to say that you

16     have substantiations for neglect regarding your two

17     sons related to the risk of injury conviction that

18     you received in 2018?

19          MR. LODICE:  I don't believe so but there may

20     be.

21          MS. ANTAR:  But you are --

22          MR. LODICE:  I'm not sure.

23          MS. ANTAR:  -- admitting that you --

24          MR. LODICE:  So not --

25          MS. ANTAR:  -- pled guilty --

26          MR. LODICE:  -- that I recall.

27          MS. ANTAR:  You are admitting that you pled

1          guilty and you were convicted of risk -- reckless

2          endangerment and you were arrested and charged with

3          risk of injury to a minor and you were convicted.

4          You do --

5               MR. LODICE:  There's a --

6               MS. ANTAR:  -- admit that?

7               MR. LODICE:  -- lot of --

8               MS. ANTAR:  Is that --

9               MR. LODICE:  -- questions in there.

10              MS. ANTAR:  -- correct?

11              MR. LODICE:  Yes, I did plead under the Alfred

12         doctorate [sic] that -- under -- to risk -- excuse

13         me, to reckless endangerments.  Yes.

14              MS. ANTAR:  And you were convicted?

15              MR. LODICE:  Well, when you plead out, yes.

16         That's what that is.  That's being convicted.

17              MS. ANTAR:  Okay.  And so --

18              MR. LODICE:  Of misdemeanors.

19              MS. ANTAR:  Okay.  And so you're aware of the

20         fact that I also have sole custody of Juliana

21         [phonetic] whose Angelina's sister.  Is that correct?

22              MR. LODICE:  I am aware.

23              MS. ANTAR:  And do you think that Angelina and

24         Juliana have a good relationship?

25              MR. LODICE:  I don't know.

26              MS. ANTAR:  So you don't think that every time

27         that Juliana speaks to Angelina on the phone Angelina

1    gets excited.  You don't think that --

2           MR. LODICE:  Yes.

3           MS. ANTAR:  -- you've seen that?

4           MR. LODICE:  She seemed that she's happy to be

5    talking to her sister.  Yes.

6           MS. ANTAR:  Okay.  And do you think that

7    Angelina likes being able to be with her siblings?

8           MR. LODICE:  I think she likes being with all

9    her siblings.  Of course.

10          MS. ANTAR:  Okay.  And so do you -- how do you

11    think Angelina would feel if she could no longer see

12    Juliana?

13          MR. LODICE:  I would never make that happen.

14          MS. ANTAR:  Well, under --

15          MR. LODICE:  I mean, I --

16          MS. ANTAR:  -- your proposed --

17          MR. LODICE:  -- would do --

18          MS. ANTAR:  -- parenting plan, you stated that

19    you wanted me to only see Juliana -- Angelina two

20    days a week.  Is that correct?

21          MR. LODICE:  Yes.

22          MS. ANTAR:  And so that would mean that she

23    would have zero time with her sister --

24          MR. LODICE:  That's not --

25          MS. ANTAR:  -- moving forward.

26          MR. LODICE:  -- true.  You -- you told the Court

27    that you take your daughter every Sunday and that

1       Gerald just has them on the weekends -- has her on

2       the weekends.

3              MS. ANTAR:  No.  Actually we changed our order.

4       But you're saying that you think it's okay for

5       Angelina never to see Juliana during the week at all?

6              MR. LODICE:  No.  I would never -- I would never

7       not let her see her sister.  If there was times that

8       would work better for her to be with you and her

9       sister, I would absolutely oblige to that.  I would

10      never take her away from her sister.

11             MS. ANTAR:  Okay.  And so was it also your

12      testimony that your intent was to have her be with

13      your mother during the week rather than be in school?

14             MR. LODICE:  My intent is initially yes.  She'll

15      be staying with my mother just till, you know, the

16      dust settles, we get everything situated, figure out

17      a game plan, see how many days a week I'm going to

18      need a daycare.  And it's not school.  It's daycare.

19      There's a difference.

20             MS. ANTAR:  Are you aware of the fact that

21      Angelina is in a K-Prep program which is currently

22      preparing her for kindergarten?

23             MR. LODICE:  Yes, like most daycares are.  Yes.

24             MS. ANTAR:  Do you know the difference between

25      that and a -- just a -- strictly a daycare?

26             MR. LODICE:  No.  Enlighten me.

27             MS. ANTAR:  Do you know the -- well, are you

1     aware of the fact that our daughter is currently

2     learning how to do many things including reading,

3     writing, writing her name, and other things that are

4     going to adequately prepare her for kindergarten?

5          MR. LODICE:  Yes.  On her sixth daycare, yes,

6     she's doing that.

7          MS. ANTAR:  So what are the -- can you please

8     list for me the alleged six daycares?  Because I

9     don't -- I never counted six.

10         MR. LODICE:  There was -- so there was the one

11    that she just left --

12         MS. ANTAR:  Why don't we --

13         MR. LODICE:  -- the --

14         MS. ANTAR:  -- just start with the first?  What

15    was her first daycare?

16         MR. LODICE:  I'm not a hundred percent sure.

17         MS. ANTAR:  You're not sure where --

18         MR. LODICE:  Woodbridge Child Center I think was

19    the first.

20         MS. ANTAR:  Okay.  And was it your testimony --

21         MR. LODICE:  Do you want me to list them all or

22    no?

23         THE COURT:  All right.  You have to --

24         MS. ANTAR:  I want to --

25         THE COURT:  -- you --

26         MS. ANTAR:  -- I want to talk --

27         THE COURT:  -- if you --

1      MS. ANTAR:  -- about Woodbridge --

2      THE COURT:  Stop.  If you ask him a question,

3   you have to let him answer it.

4      MS. ANTAR:  Okay.

5      THE COURT:  So you told him to list the six

6   daycares and he gets to do that.

7      MS. ANTAR:  Yeah.

8      THE COURT:  Without interruption.

9      MR. LODICE:  It's --

10     MS. ANTAR:  Go ahead.  Please list the six.

11     MR. LODICE:  -- the Woodbridge Child Center.

12     MS. ANTAR:  Okay.

13     MR. LODICE:  And then there was the -- the

14   lady's house in Naugatuck that ran the daycare out of

15   her house.

16     MS. ANTAR:  I'm sorry.  Who?

17     MR. LODICE:  I don't remember the name of this

18   one.  The one that -- the blond lady that had swings

19   in the back, the one that had the hill on the

20   driveway that we used to drop her off at.

21     MS. ANTAR:  I'm sorry.  Angelina never attended

22   a daycare in Naugatuck --

23     THE COURT:  All right.

24     MS. ANTAR:  -- so.

25     THE COURT:  You are --

26     MR. LODICE:  Okay.

27     THE COURT:  -- not --

1          MR. LODICE:  Maybe it's --

2          THE COURT:  -- testifying.

3          MR. LODICE:  -- not Naugatuck.

4          THE COURT:  You asked --

5          MR. LODICE:  I don't -- I -- I --

6          THE COURT:  -- him --

7          MR. LODICE:  -- I could be wrong about the --

8      the city --

9          THE COURT:  All right.

10         MR. LODICE:  -- but --

11         THE COURT:  So I'm listening to the answer.

12         MS. ANTAR:  Okay.

13         THE COURT:  So go ahead.  Go --

14         MR. LODICE:  There was -- it was -- so it was

15     WCC which was Woodbridge Child Center.  It was that

16     one, I thought it was Naugatuck, it might be Ansonia,

17     it's somewhere in that valley there.  In March of

18     2022 she was not taking Angelina for a good two

19     months so I actually enrolled Angelina in my own

20     daycare.

21         MS. ANTAR:  Can you please answer the question?

22     The six --

23         THE COURT:  Stop it.

24         MS. ANTAR:  -- please list --

25         MR. LODICE:  I -- that's daycare number five.

26         THE COURT:  Miss Antar, stop interrupting.

27         MR. LODICE:  Or daycare number four.

```
 1            MS. ANTAR:  I'm sorry.  I'd just like for you to
 2       list it --
 3            THE COURT:  That was --
 4            MS. ANTAR:  -- please.
 5            THE COURT:  -- four.
 6            MR. LODICE:  It's -- the name of the daycare --
 7       I'd have to look to see what the name was.  I don't
 8       remember the name.  And then -- then there was -- so
 9       what do we got?  That -- that was four so far, right?
10       Then there was --
11            THE COURT:  Yes.
12            MR. LODICE:  -- the daycare we were just at and
13       then the one she's at now.
14            MS. ANTAR:  Okay.  So can --
15            MR. LODICE:  That's six.
16            MS. ANTAR:  -- I just ask you to please repeat
17       the six 'cause I only got --
18            THE COURT:  No, I don't -- I don't --
19            MS. ANTAR:  -- I got WCC --
20            THE COURT:  -- I don't -- I don't need him to do
21       that.
22            MS. ANTAR:  Okay.
23            THE COURT:  It's not -- I am the fact finder.
24       It's not helpful.
25            MS. ANTAR:  Okay.
26            MR. LODICE:  Okay.
27            MS. ANTAR:  So, out of the ones that you listed,
```

1       which some of them were not ones she ever attended,

2       you stated that -- that I -- that she got kicked out

3       of WCC.  Is that correct?

4              MR. LODICE:  Yes.

5              MS. ANTAR:  Oh, okay.  So you -- and did you

6       ever -- did you ever try to sexually harass the

7       teacher from there that was --

8              MR. LODICE:  No.

9              MS. ANTAR:  -- 18 --

10             MR. LODICE:  Never.

11             MS. ANTAR:  -- years old?

12             MR. LODICE:  No.

13             MS. ANTAR:  So the teacher didn't send me

14      messages saying that you were sexually harassing her

15      and asking me to ask that any contact between you and

16      the school be only strictly through the HiMama app?

17             MR. LODICE:  I don't know.  Not that I know of.

18             MS. ANTAR:  So were you told by the school that

19      any communications need to be solely through HiMama?

20             MR. LODICE:  No.  No.  They never said anything

21      had to be through HiMama.

22             MS. ANTAR:  And did the school have a policy

23      about pick-up and drop-off of child -- of children

24      where -- who pick them up?

25             MR. LODICE:  I would assume so.  Yeah.  Of

26      course.

27             MS. ANTAR:  So did they let anybody pick them up

1    or did they have to be on a list?

2         MR. LODICE:  I would assume they had to be on

3    the list.

4         MS. ANTAR:  Okay.  And I -- do you recall that

5    in that time we also had an agreement which we signed

6    which was not entered as a Court order?

7         MR. LODICE:  I don't know to what you are

8    referring to.  No.

9         MS. ANTAR:  So is -- would you say it's accurate

10   that in 2020 you and I signed an agreement that we

11   typed and signed but never entered to the court and

12   we were following it on a three two schedule to try

13   it?

14        MR. LODICE:  You came up with a proposed

15   agreement.  Yes.  You came up with a proposed one.

16   Okay.

17        MS. ANTAR:  And would you say that we made a

18   calendar showing who would be picking up Angelina on

19   which days?

20        MR. LODICE:  We did make a preliminary one.

21   Yes.

22        MS. ANTAR:  Okay.  And so would you say that on

23   the day that you -- the day that you were supposed to

24   get Angelina from that school on the last day that

25   she was there did you --

26        MR. LODICE:  Of what --

27        MS. ANTAR:  -- get her?

1          MR. LODICE:  -- school?  What school is this?

2          MS. ANTAR:  What -- WCC.

3          MR. LODICE:  I don't -- I -- not that I recall.

4     I don't know.

5          MS. ANTAR:  Okay.  So would you say that it's

6     correct that the babysitter did not notify the school

7     and took Angelina home without notifying the school

8     and that was the reason why they -- Dawn Moretti

9     documented in an email that she terminated her the

10    next day?

11         MR. LODICE:  The --

12         MS. ANTAR:  And that that was the reason why

13    they terminated her.  Because she broke the policy

14    and took Angelina home without notifying the -- Dawn

15    Moretti and without notifying anybody --

16         MR. LODICE:  Objection.  Hearsay.

17         THE COURT:  All right.

18         MS. ANTAR:  I'm asking you --

19         THE COURT:  Her --

20         MS. ANTAR:  -- a question.

21         THE COURT:  Stop.  Your questions aren't

22    evidence.  Only his answers are evidence.  So when

23    you ask him long questions like that I don't get any

24    information --

25         MS. ANTAR:  Okay.  I'm sorry.

26         THE COURT:  -- that I can use.

27         MS. ANTAR:  I'm sorry.

1          MS. ANTAR:  Okay.  So -- so did you tell the

2     last daycare which -- which, for the record, was

3     Bunny Village, did you tell them that you assumed

4     that Angelina would no longer be coming because she

5     hadn't been there in a while?

6          MR. LODICE:  Yes.  Yeah.

7          MS. ANTAR:  You -- so you did?  You -- you --

8     you -- you are admitting that?

9          MR. LODICE:  Yeah, I -- yeah, absolutely.

10         MS. ANTAR:  Okay.  And so does our agreement say

11    that we are supposed to make educational decisions

12    together?

13         MR. LODICE:  Yes.

14         MS. ANTAR:  And did you consult me before

15    telling the school that she would no longer be --

16         MR. LODICE:  I --

17         MS. ANTAR:  -- coming there?

18         MR. LODICE:  -- never said she was no longer

19    gonna be coming there.  Once you didn't show up for

20    multiple weeks and they were planning to remove her,

21    I -- they -- I -- I said that she's probably not

22    gonna be coming if I know Theo.

23         MS. ANTAR:  Did you ever communicate with me in

24    OurFamilyWizard to ask me if she was going to be

25    coming or ask anything about that or did you just go

26    and tell the school on your own without contacting me

27    first?

1        MR. LODICE:  I never told the school to remove

2   her if that's what you're asking.  No.

3        MS. ANTAR:  Okay.  And was Angelina told by

4   Alexis Stamos that she could no longer attend her

5   home daycare because the fact that she was not given

6   the flu vaccine?

7        MR. LODICE:  I believe so.  Yes.

8        MS. ANTAR:  And do you also remember the fact

9   that the flu vaccine was unavailable because her

10  pediatrician didn't have it in stock at the time and

11  she no longer was able to attend?

12        MR. LODICE:  I did not know that the

13  pediatrician didn't have it in time but okay.

14        MS. ANTAR:  And what daycare was Angelina in

15  from January of 2021 until -- I'm sorry.  What

16  daycare did Angelina attend from January of 2022

17  until the summer of 2022?

18        MR. LODICE:  I'm not sure.  During that time in

19  March, I had her in my own daycare --

20        MS. ANTAR:  What was --

21        MR. LODICE:  -- but --

22        MS. ANTAR:  -- the name of that daycare?

23        MR. LODICE:  I'd have to look.  I don't

24  remember.

25        MS. ANTAR:  You don't remember of the -- name of

26  the daycare you sent our daughter --

27        MR. LODICE:  No.

1          MS. ANTAR:  -- to?

2          MR. LODICE:  I don't.

3          MS. ANTAR:  Okay.  And --

4          MR. LODICE:  This was --

5          MS. ANTAR:  -- you also allege that our daughter

6     was in three different pediatricians.  Do you know

7     the name of any of those pediatricians or any of the

8     medical offices where our daughter had been enrolled

9     as a -- a patient?

10          MR. LODICE:  Orange Pediatrics.

11          MS. ANTAR:  Okay.  That was the first one.  Is

12     that your testimony that that was the first?

13          MR. LODICE:  Yeah, I believe so.

14          MS. ANTAR:  Okay.

15          MR. LODICE:  And then the one she's currently

16     in.

17          MS. ANTAR:  Which is named what?

18          MR. LODICE:  I don't know the name.

19          MS. ANTAR:  So you do not know the name of your

20     -- our daughter's pediatrician or the name of the

21     office where she attends?

22          MR. LODICE:  Not off the top of my head, no.

23          MS. ANTAR:  Okay.  And where is the alleged

24     third one that you said before when you gave your

25     testimony?

26          MR. LODICE:  I don't remember.

27          MS. ANTAR:  Okay.  So you don't even know what

1      -- where our daughter goes to the doctor or where her

2      prior doctors were?

3          MR. LODICE:  No.  You like to keep a lot from

4      me.  You don't tell me when the appointments are.

5      You don't tell me where they are.  I don't have any

6      way of knowing without you telling me.

7          MS. ANTAR:  So your testimony is that I don't

8      tell you where the appointments are so that -- that's

9      why you don't know any of the doctors' names or

10     locations of where our child has had doctors?

11         MR. LODICE:  Yes.

12         MS. ANTAR:  And -- let me see.  You also stated

13     that you haven't been paying child support because

14     you're falling behind.  Is that correct?

15         MR. LODICE:  Yes.

16         MS. ANTAR:  Okay.  And did you also state to me

17     on Sunday that you could not bring Angelina to the --

18     your -- I'm sorry.  Scratch that.

19         My question for you is did Judge Jane Grossman

20     on June 29th, 2022 put in an order to the court that

21     states that father -- that -- did Grossman's order to

22     the court state the Court reiterates that the father

23     is required to bring the child to Sunday school and

24     special religious events?

25         MR. LODICE:  Yes.

26         MS. ANTAR:  And were you made aware of that

27     being an order of the Court on June 29th, 2022?

1        MR. LODICE:  Yes.

2        MS. ANTAR:  And is that still a currently active

3    order of the Court?

4        MR. LODICE:  Yes.

5        MS. ANTAR:  And is it -- to your understanding,

6    is that the most recent civil family order of the

7    Court?

8        MR. LODICE:  It was an addendum to our original

9    order.  Yes.

10        MS. ANTAR:  So when you say original order, you

11    mean the final judgment that was put in on November

12    7th, 2019?

13        MR. LODICE:  So the majority of our order is

14    written on the order from 6/15/2021 and then the day

15    -- the order you're speaking of was an addendum that

16    Judge Grossman added on because we were having issues

17    regarding the church visits and drop-off and the

18    phone calls.  So --

19        MS. ANTAR:  So --

20        MR. LODICE:  -- it was an addendum to our

21    original --

22        MS. ANTAR:  -- so do you understand that the

23    June -- the June document that you're referring to is

24    an agreement and not an order?

25        MR. LODICE:  No.  It's an order.  It's a

26    Court --

27        THE COURT:  Court --

1          MR. LODICE:  -- order.

2          THE COURT:  -- Court-approved agreements are

3      orders.

4          MS. ANTAR:  So do you acknowledge that it was a

5      -- an agreement that was approved by the Court and

6      made into an order subsequently?

7          MR. LODICE:  Yes.

8          MS. ANTAR:  Okay.  And so would you say that

9      after that we modified that order in 2022?

10         MR. LODICE:  Yes.

11         MS. ANTAR:  And --

12         MR. LODICE:  Yeah.

13         MS. ANTAR:  -- do you remember -- do you

14     remember signing an agreement with family relations

15     to make that modification?

16         MR. LODICE:  Yep.

17         MS. ANTAR:  And do you remember what was

18     modified?

19         MR. LODICE:  Yes.

20         MS. ANTAR:  What was it?

21         MR. LODICE:  The things you just mentioned.  The

22     -- the church -- the -- she has to be brought to

23     Sunday school and the major religious events and then

24     we changed the -- the time to allocate a little more

25     time window for the call because you kept not

26     answering after 7 p.m. on the dot.

27         MS. ANTAR:  So, not referring to the -- the

1    temporary orders that were placed by Judge Grossman

2    on June 29th, 2022 that I referred to before, I'm

3    referring to the agreement that you signed in 2022

4    that was made into an order of the Court.  Do you

5    recall what was modified on that?

6         MR. LODICE:  The things I just said but there

7    might be other things.

8         MS. ANTAR:  Okay.  So would you like me to

9    refresh your memory?

10        MR. LODICE:  Sure.

11        MS. ANTAR:  Okay.  So --

12        THE COURT:  All right.

13        MS. ANTAR:  -- would you say it's correct or to

14   your memory that we signed an agreement with family

15   relations stating that we would modify our agreement

16   to change the pick-up location/drop-off location?

17        MR. LODICE:  Yes.

18        MS. ANTAR:  And do you remember what we changed

19   it to?

20        MR. LODICE:  Yes.  We changed it that she would

21   be dropped off to my mother's house between 9 and 12

22   p.m. -- a.m., excuse me.  9 a.m. and 12 p.m.  And

23   then she'll be dropped off at daycare on Monday

24   morning.

25        MS. ANTAR:  So it's not your testimony that we

26   made an agreement that stated that mother would drop

27   off child to grandmother's house any time after 8:30

1         a.m. on Fridays?

2              MR. LODICE:  On the initial one?

3              MS. ANTAR:  Just for clarification, what I was

4         asking is referring to the 4/12/22 agreement that was

5         subsequently --

6              MR. LODICE:  Yes.  But --

7              MS. ANTAR:  -- made into --

8              MR. LODICE:  -- then we --

9              MS. ANTAR:  -- an order.

10             MR. LODICE:  -- changed that to narrow the

11        window of time.

12             MS. ANTAR:  Okay.  So --

13             MR. LODICE:  At the latter date.

14             MS. ANTAR:  My question is only relevant to what

15        I asked you.  I'll --

16             MR. LODICE:  Okay.

17             MS. ANTAR:  -- would you like me to repeat?

18             MR. LODICE:  So, at that time, okay, yes.  It

19        was after 8:30.  Yes.

20             MS. ANTAR:  Okay.  So your testimony is that on

21        4/12/2022 we agreed that we would resolve multiple

22        pending motions that both of us had filed by our

23        hearing which took place on April 12th which modified

24        the location to being mom drops off child at

25        grandma's any time after 8:30 on Fridays.  Is that

26        correct?

27             MR. LODICE:  I'm not sure if that's the date

1       but, yes, that was that agreement.  And so, yes, to

2       that agreement.  I'm not sure about the specific

3       days, on --

4            MS. ANTAR:  Okay.

5            MR. LODICE:  -- which ones was which day.

6            MS. ANTAR:  And would you say --

7            MR. LODICE:  We've modified --

8            MS. ANTAR:  -- also --

9            MR. LODICE:  -- it three or four different

10      times.

11           MS. ANTAR:  Okay.  And do you recall that we had

12      a hearing on April 12th, 2022 in front of Judge

13      Maureen Price-Boreland during which she made our

14      agreement that we signed that morning with family

15      relations into an order?

16           MR. LODICE:  Yes.

17           MS. ANTAR:  And do you remember that that

18      resolved some of the pending contempt motions that we

19      both had on each other?

20           MR. LODICE:  Yes.

21           MS. ANTAR:  Okay.  And you -- do you remember

22      that you stated that day on April 12th that you still

23      felt that you wanted sole custody?

24           MR. LODICE:  Not on that day, no.

25           MS. ANTAR:  So you did not say on that day that

26      you still wanted sole custody and the Court didn't

27      tell --

```
 1              MR. LODICE:  I -- I --

 2              MS. ANTAR:  -- us that they were gonna

 3         schedule --

 4              MR. LODICE:  -- don't remember.

 5              MS. ANTAR:  -- something for that?

 6              MR. LODICE:  I don't remember.

 7              MS. ANTAR:  Okay.  And so do you think that --

 8         since April 12th, 2022, when you signed that agreement

 9         which stated that the only thing that was changing

10         was the drop-off location, do you think that anything

11         has changed -- significantly changed that would

12         warrant changing anything else?

13              MR. LODICE:  Absolutely.

14              MS. ANTAR:  Okay.  And so are you aware of the

15         and do you know the temporary orders that were added

16         after the June 28th hearing that we had with Judge

17         Grossman?

18              MR. LODICE:  Temporary orders?  No.  I don't

19         know what you mean by temporary orders.

20              MS. ANTAR:  Okay.  So on June 29th, 2022,

21         after --

22              MR. LODICE:  Okay.

23              MS. ANTAR:  -- we had a hearing on June 28th,

24         2022 with Judge Grossman, Judge Grossman ended the

25         hearing by stating that she would institute temporary

26         orders for us because we were not able to agree on

27         anything.  Do you remember that?
```

1          MR. LODICE:  Is this the one where she said not

2     to leave Dominic [phonetic] home alone until the

3     cases were closed?

4          MS. ANTAR:  No, it's not.

5          MR. LODICE:  Then is this the one where -- I

6     don't know.  I don't know which one you're speaking

7     of.  I -- is it the one that we added on the addendum

8     that changed the time of the phone call?

9          MS. ANTAR:  So would you say that when you

10    refer --

11         MR. LODICE:  'Cause that wasn't a temporary

12    order.

13         MS. ANTAR:  Would you say that when we -- when

14    you refer to the word addendum that you're referring

15    to the temporary order that Judge Grossman placed

16    that she created on June 29th --

17         MR. LODICE:  That wasn't --

18         MS. ANTAR:  -- 2022?

19         MR. LODICE:  -- a temporary order.  It was an

20    addendum.

21         MS. ANTAR:  So --

22         MR. LODICE:  It was, like, an add-on to our

23    original order.  It wasn't temporary.

24         MS. ANTAR:  So you're saying that, the order

25    that states the following temporary orders are

26    entered on behalf of the parties and dated June 29th,

27    2022 and signed by Judge Grossman, it's your

1          understanding that that's an addendum and not a Court

2          order that she made?

3                    THE COURT:  Are you talking --

4                    MR. LODICE:  It's in an order.

5                    THE COURT:  Stop.  Stop.

6                    MR. LODICE:  What do you mean?

7                    THE COURT:  Stop.

8                    MS. ANTAR:  I can -- I can give it to you --

9                    THE COURT:  Both of you --

10                   MS. ANTAR:  -- if you want.

11                   THE COURT:  -- stop.  I have the Court orders in

12         front of me so I don't need you two to fight about

13         them.

14                   MS. ANTAR:  May I show him it if he wants?

15                   THE COURT:  There's no need.

16                   MS. ANTAR:  Okay.

17                   THE COURT:  I have the Court orders in front of

18         me.  I wrote them and --

19                   MS. ANTAR:  I just want --

20                   THE COURT:  -- I have to find --

21                   MS. ANTAR:  -- him to see it.

22                   THE COURT:  Okay.  There's no need --

23                   MS. ANTAR:  Okay.

24                   THE COURT:  -- for that.  If you have a question

25         that relates to --

26                   MS. ANTAR:  Well --

27                   THE COURT:  -- parenting -- listen to me.  He's

1    asked me to switch legal and physical custody

2    entirely to him.

3        MS. ANTAR:  Mm-hmm.

4        THE COURT:  Ms. Antar, I'm considering doing

5    that because of so many upsetting things that I have

6    observed and heard in this case and you are not

7    asking him anything about that.

8        MS. ANTAR:  Okay.  Well, are you aware that DNA

9    evidence was collected at Children Hartford's Medical

10   Center [sic] in Hartford on Tuesday night and that a

11   new New Britain Police Department investigation was

12   initiated after Angelina made allegations that your

13   son sexually abused her?

14       MR. LODICE:  No, but I'm not surprised.  It's

15   your fourth time you made this happen.

16       MS. ANTAR:  So you're -- are you saying that

17   you're accusing Angelina of lying?

18       MR. LODICE:  I'm not accusing Angelina of lying.

19    No.

20       MS. ANTAR:  So I have a video recording that was

21   recorded in the hospital on Tuesday night --

22       MR. LODICE:  Okay.

23       MS. ANTAR:  -- and was shown to a doctor who

24   then referred us to go to Children's Hartford --

25   Children's Medical Center in Hartford to perform a

26   rape kit on Angelina --

27       MR. LODICE:  Okay.

1          MS. ANTAR:  -- after seeing the video

2     disclosure.  Would you like --

3          MR. LODICE:  And what were --

4          MS. ANTAR:  -- to see it?

5          MR. LODICE:  -- the results?

6          MS. ANTAR:  They need to be tested.  They test

7     them for evidence.  Now, are you aware of that?

8          MR. LODICE:  I am now that you're saying it.

9          MS. ANTAR:  And are you aware of the fact that

10    there's currently an open DCF case -- investigation

11    and an open New Britain Police Department

12    investigation based on these allegations?

13         MR. LODICE:  No --

14         THE COURT:  All right.

15         MR. LODICE:  -- but I'm --

16         THE COURT:  Stop.

17         MR. LODICE:  -- finding out --

18         THE COURT:  Stop.

19         MR. LODICE:  -- now.

20         THE COURT:  Ms. Antar, how many times have you

21    made allegations like this?  Is this the third time

22    or the fourth time?

23         MS. ANTAR:  Your Honor, I don't --

24         THE COURT:  Answer --

25         MS. ANTAR:  -- appreciate --

26         THE COURT:  -- answer my --

27         MS. ANTAR:  -- being told that I'm making these

1       allegations.  My daughter --

2            THE COURT:  Answer my question.

3            MS. ANTAR:  -- my daughter is and I have all the

4       evidence and you're --

5            THE COURT:  How many --

6            MS. ANTAR:  -- refusing to let me show it.

7            THE COURT:  How many times has this happened?

8       Is this --

9            MS. ANTAR:  How much --

10           THE COURT:  -- the third time?

11           MS. ANTAR:  -- evidence have you seen?  You've

12      seen none.

13           THE COURT:  Listen to me.  Is this the third

14      time or the fourth time?

15           MS. ANTAR:  Attorney Stephanie Bernstein said

16      she was disturbed by it.  She says why the F is the

17      Court still letting her go when Angelina made

18      disclosures?  She made disclosures on --

19           THE COURT:  Listen --

20           MS. ANTAR:  -- March 3rd, 2023 in Yale Child

21      Advocacy Center.  I would be happy to show you that.

22      I have all the documentation.

23           THE COURT:  All right.  So --

24           MS. ANTAR:  I also have documentation from her

25      doctor.  I have documentation from the -- from the

26      hospital.  Everything I have is documented.  I have

27      all the evidence.  I've spoken to an attorney and I'm

1    not going to allow this to continue.  I have all the

2    proof I need --

3         THE COURT:  Where's --

4         MS. ANTAR:  -- and -- and Attorney Stephanie

5    Bernstein who is well-respected --

6         THE COURT:  Where is --

7         MS. ANTAR:  -- who said she's --

8         THE COURT:  Stop.

9         MS. ANTAR:  -- well respects you --

10        THE COURT:  Stop.

11        MS. ANTAR:  -- as well, stated that --

12        THE COURT:  Stop.

13        MS. ANTAR:  -- she's disturbed by this.

14        THE COURT:  Attorney -- Ms. Antar, stop talking.

15   Where's your daughter right now?

16        MS. ANTAR:  My daughter is at school.

17        THE COURT:  She doesn't go to school.  She's

18   four.  Where does she -- where is she --

19        MS. ANTAR:  It's her --

20        THE COURT:  -- right now?

21        MS. ANTAR:  -- K-Prep program which is called

22   Bright --

23        THE COURT:  Okay.

24        MS. ANTAR:  -- Horizons in Orange.

25        THE COURT:  Okay.  And remind me again who's --

26   who -- who is supposed to have the child with them

27   tonight?

```
1            MR. LODICE:  Today, of course, she goes with
2       Miss Antar --
3            THE COURT:  All right.
4            MR. LODICE:  -- and I pick her up on Friday from
5       my mother's house.  She gets dropped off at my
6       mother's between 9:00 and 12:00 on Friday.
7            MS. ANTAR:  And there's multiple times when his
8       mother was not there --
9            THE COURT:  Okay.  Stop.  Stop.
10           MS. ANTAR:  -- and I have evidence of that as
11      well.
12           THE COURT:  Okay.
13           MS. ANTAR:  There's multiple --
14           THE COURT:  Stop.  Stop.
15           MS. ANTAR:  -- there's no reason why his
16      mother --
17           THE COURT:  Stop.  Stop.  Miss Antar, stop.
18      Okay.
19           MS. ANTAR:  I'm not gonna be rushed and -- and
20      -- and not allowed to show my evidence.  I have
21      rights.  I have legal rights and I have -- there's no
22      basis for him to sit here with no evidence.  If
23      you're not -- if you're gonna let him testify, you're
24      gonna let him show evidence --
25           THE COURT:  All right.  Stop.
26           MS. ANTAR:  -- you need to do the same for me.
27           THE COURT:  Miss Antar --
```

1        MS. ANTAR:  You're being -- it --

2        THE COURT:  -- stop.

3        MS. ANTAR:  -- you are being unfair.  You're not

4    giving me a chance for counsel.

5        THE COURT:  Stop.

6        MS. ANTAR:  I need time for counsel.

7        THE COURT:  No.  I have --

8        MS. ANTAR:  My daughter's being abused and I

9    have proof.

10       THE COURT:  There's --

11       MS. ANTAR:  If you'd like me to show it, I will

12    show you.

13       THE COURT:  Miss Antar, if you don't stop

14    talking, you're gonna leave my courtroom.  Stop it.

15    Sit down.

16       Has the --

17       MS. ANTAR:  I have more questions.

18       THE COURT:  Sit down.

19       Has the Department of Children and Families

20    contacted you, sir?

21       MR. LODICE:  No, your Honor.

22       THE COURT:  Has the police department

23    contacted --

24       MR. LODICE:  No --

25       THE COURT:  -- you, sir?

26       MR. LODICE:  -- your Honor.

27       THE COURT:  Okay.  Have you been served with any

1        paperwork about this?

2             MR. LODICE:  No, your Honor.

3             THE COURT:  All right.  Is this -- if this is

4        true, is it the third time or the fourth time?

5             MR. LODICE:  This is the fourth time, your

6        Honor.

7             MS. ANTAR:  Objection.  No, it's not.

8             THE COURT:  Okay.  Okay.

9             MS. ANTAR:  I have documentation that she made

10       disclosures at Yale --

11            THE COURT:  Okay.

12            MS. ANTAR:  -- that states that he sits on her.

13       I have document --

14            THE COURT:  Miss Antar --

15            MS. ANTAR:  -- videos of her --

16            THE COURT:  -- stop talking.

17            MS. ANTAR:  -- saying he puts his penis on her

18       vagina.

19            THE COURT:  That is not --

20            MS. ANTAR:  I'm not -- if you're --

21            THE COURT:  That is --

22            MS. ANTAR:  -- not gonna hear --

23            THE COURT:  -- enough.

24            MS. ANTAR:  -- you accusing me of lying.  You're

25       not listening to --

26            THE COURT:  Miss --

27            MS. ANTAR:  -- any evidence --

```
1              THE COURT:  -- Miss Antar.

2              MS. ANTAR:  -- I have.  I have evidence.

3              THE COURT:  Stop.

4              MS. ANTAR:  I have proof.  It's my right --

5              THE COURT:  Stop.

6              MS. ANTAR:  -- to show it.

7              THE COURT:  Stop.

8              MS. ANTAR:  I want --

9              THE COURT:  Stop.

10             MS. ANTAR:  -- I want to show the evidence --

11             THE COURT:  Be quiet.

12             MS. ANTAR:  -- I have.

13             THE COURT:  Miss Antar, you have to be quiet.

14             MS. ANTAR:  You didn't look at any of the

15        exhibits --

16             THE COURT:  Okay.

17             MS. ANTAR:  -- I e-filed but you took all of his

18        exhibits.  Nobody's paying attention to the fact that

19        I asked for a GAL.  If you're that --

20             THE COURT:  Stop.

21             MS. ANTAR:  -- concerned, why aren't you giving

22        us a GAL?  Why aren't you giving --

23             THE COURT:  Miss --

24             MS. ANTAR:  -- us a custody --

25             THE COURT:  Oh my God.

26             MS. ANTAR:  -- evaluations?  Why aren't we

27        meeting with family relations?  I want all of this
```

1       on --

2              THE COURT:  Miss Antar --

3              MS. ANTAR:  -- the record.  I --

4              THE COURT:  -- stop talking.

5              MS. ANTAR:  -- demand a GAL.

6              THE COURT:  Miss --

7              MS. ANTAR:  I want an attorney for the minor

8       child and a GAL.  I don't want any orders put in

9       until we have somebody advocate for my child who

10      is --

11             THE COURT:  Miss Antar.

12             MS. ANTAR:  -- not going to be him.

13             THE COURT:  That is enough.  This is the eighth

14      time that I personally have presided over the dispute

15      between the two of you in the last 18 months.  I have

16      heard countless hours of --

17             MS. ANTAR:  That's incorrect.  You've heard two

18      hearings --

19             THE COURT:  Stop interrupting.

20             MS. ANTAR:  -- and I have all the transcripts.

21             THE COURT:  Stop.

22             MS. ANTAR:  I'm not gonna sit here --

23             THE COURT:  Okay.

24             MS. ANTAR:  -- and listen to lies.  I have all

25      the documented proof right here.

26             THE COURT:  Miss Antar.

27             MS. ANTAR:  You've only heard two hearings with

1    us.

2         THE COURT:  Stop.  Stop.

3         MS. ANTAR:  You heard a hearing on the 28th and

4    you heard one on the 5th.  It's not the ninth that

5    you've heard.

6         THE COURT:  Stop.  Stop.  Stop.  I am so

7    concerned about your behavior.

8         MS. ANTAR:  If you're concerned, why aren't we

9    getting a GAL?  Why aren't we getting a custody

10   evaluation?  Because I'm not the one with the

11   criminal record.  I'm not the one who has a DCF

12   record --

13        THE COURT:  Would you please --

14        MS. ANTAR:  -- of neglect.  I'm not the one who

15   denied --

16        THE COURT:  Stop.  Stop.

17        MS. ANTAR:  -- why wasn't he ordered --

18        THE COURT:  I am talking to my clerk and I want

19   you to stop talking.

20        Would you please put one of the assistant clerks

21   on notice that I'm going to need some certified

22   copies of the orders that I'm about to issue and that

23   Mr. Lodice is going to need copies of those orders.

24        All right.  This Court has heard hours and hours

25   of testimony and I am going to enter some temporary

26   orders based on --

27        MS. ANTAR:  I want an attorney.

```
 1          THE COURT:  -- based on --
 2          MS. ANTAR:  I was not given a chance --
 3          THE COURT:  Please stop.
 4          MS. ANTAR:  -- to give any testimony.
 5          THE COURT:  Stop.
 6          MS. ANTAR:  I have evidence.  Why aren't you --
 7          THE COURT:  One more time --
 8          MS. ANTAR:  -- taking my evidence?
 9          THE COURT:  One more interruption and I'm gonna
10     have the marshal put you in the hallway.  Do you
11     wanna stay or do you wanna go?
12          MS. ANTAR:  I'd like an attorney.
13          THE COURT:  All right.  Stop.  So these motions
14     -- there are a number of motions that have been
15     pending before this Court for nearly a year.  This
16     Court has had multiple hearings on similar many, many
17     accusations that Miss Antar has made against Mr.
18     Lodice, against Mr. Lodice's adult -- teenage
19     children, and apparently she has continued to make
20     those allegations.  This is the continuation of a
21     hearing that we started on April 4th or 5th in which
22     Miss Antar was represented by very capable counsel
23     who she fired in between that day and today.  Based
24     on the evidence that I have heard so far in
25     consideration of the relevant custody statutes, I'm
26     making the finding -- following findings and orders:
27     that Miss Antar is in very serious emotional and
```

```
1          psychological distress that has been on flagrant

2          display most of the time that she has been in front

3          of me; that there's credible evidence that she's now

4          engaged in a fourth accusation that the father has --

5              MS. ANTAR:  I have --

6              THE COURT:  -- turned out to be --

7              MS. ANTAR:  -- evidence.  Why aren't you

8          allowing me --

9              THE COURT:  All right.  Marshal --

10             MS. ANTAR:  -- to show it?

11             THE COURT:  -- she's gonna have to go --

12             MS. ANTAR:  There's multiple --

13             THE COURT:  -- in the hallway.

14             MS. ANTAR:  -- lawsuits against you actually and

15         I'm going to be making sure that I get an attorney --

16             THE COURT:  She's leaving.

17             MS. ANTAR:  -- and fix this.  My -- I have --

18             THE COURT:  You're leaving.

19             MS. ANTAR:  -- evidence.

20             THE MARSHAL:  You have to step out, ma'am.

21             THE COURT:  The record should reflect that --

22             THE MARSHAL:  The judge asked us to --

23             MS. ANTAR:  I'm sorry but I don't --

24             THE COURT:  -- I've told the marshal to have

25         Miss Antar removed from the --

26             MS. ANTAR:  I need --

27             THE COURT:  -- courtroom.
```

1          MS. ANTAR:  -- my stuff.  This is my property.

2          THE COURT:  You can get --

3          THE MARSHAL:  You're gonna have to step out.

4          THE COURT:  -- your stuff back later.

5          THE MARSHAL:  After.

6          THE COURT:  Go -- leave the --

7          THE MARSHAL:  You're gonna have to step out --

8          THE COURT:  -- courtroom, Miss Antar.  I can't

9     have you interrupting.  You can --

10          MS. ANTAR:  I have evidence.  I have witnesses.

11          THE COURT:  -- you can --

12          MS. ANTAR:  I spoke to multiple attorneys.

13          THE COURT:  -- you can sit still silently or you

14     can leave.

15          (Whereupon Ms. Antar exits the courtroom and Mr.

16     Lodice remains.)

17          THE COURT:  Whoo.  In light of the testimony

18     that I've heard, I have to find that Miss Antar's

19     testimony is not credible; her perceptions are not

20     accurate; her behavior is alarming and distressing.

21     It does match some of the information that we

22     received from the office of family relations

23     indicating that Miss Antar has a history of

24     psychological problems that perhaps she's not

25     treating properly.

26          The Court finds that Mr. Lodice's testimony as

27     to the custody and care of his child is credible.

1     The testimony about the finances perhaps a little

2     less so but those motions are going to have to wait

3     for another day.

4         In light of all that, I have to find at this

5     point that the child is no longer safe or secure or

6     psychologically or emotionally safe in the care of

7     the mother and I am ordering full legal and physical

8     custody of the minor child to vest immediately in the

9     father.  The father's authorized to go retrieve the

10    child from the daycare center immediately and keep

11    him -- keep the child in his sole care and custody

12    without any unsupervised access with the mother until

13    further order of the Court.

14        This matter is going to reconvene June 15th at 2

15    o'clock at which time the Court will be able to enter

16    some more detailed orders.  The time is now quarter

17    to five and I think it's not appropriate to keep

18    anybody here any longer than that.

19        So, from now until that date, sir, when you need

20    to be back in court, you have sole physical and legal

21    custody of the child.  You're not to allow the mother

22    to have any unsupervised access.  It can be in the

23    presence of whoever you think is appropriate and, of

24    course, the child should be able to talk to her

25    mother or Facetime with her but the child's gonna be

26    in your care and custody until that time.

27        MR. LODICE:  Okay.  Thank you, your Honor.

1        THE COURT:  So do you understand those orders?

2        MR. LODICE:  I do.

3        THE COURT:  All right.  You're gonna have to go

4   downstairs to the clerk's office and pick up some

5   certified copies of these orders and go pick up the

6   child.  So I want you to go do that now.

7        And, marshal, I want you to bring Miss Antar

8   back in.

9        MR. LODICE:  Thank you, your Honor.  What do I

10  tell them?  Just tell them to give me certified

11  copies of today's orders?

12       THE COURT:  They'll -- they're expecting you.

13       MR. LODICE:  Thank you, your Honor.

14       (Whereupon Mr. Lodice exits the courtroom.)

15       THE COURT:  Just make them sole physical and

16  legal custody.  Access supervised upon -- as long as

17  the father sees fit and everybody returns on June 15th

18  at 2:00.

19       THE CLERK:  Yes, your Honor.

20       THE COURT:  He's gonna need some certified

21  copies of just that.

22       THE CLERK:  Okay.

23       (Whereupon there was a pause in the

24  proceedings.)

25       THE COURT:  Marshal, is Miss Antar out there?

26       THE MARSHAL:  Yeah.  She's at the opposite end.

27  She's coming over now.

```
1              THE COURT:  Okay.

2              (Whereupon there was a pause in the

3         proceedings.)

4              THE COURT:  You don't need to send those to me

5         for approval.  Nancy'll look at them.

6              THE CLERK:  Okay, your Honor.

7              (Whereupon Ms. Antar returns to the courtroom.)

8              THE COURT:  All right.  Ms. Antar, come in and

9         sit down.  I'm gonna tell you what I ordered after --

10        and I let Mr. Lodice go to effectuate these orders.

11             I'm gonna give Mr. Lodice temporary physical and

12        legal custody of -- of Angelina.  You're gonna come

13        back here next week and we're going to -- I'm going

14        to issue some more detailed orders.  So, from now

15        until next week, it's a week, he's gonna have sole

16        physical and legal custody of Angelina.  Your -- your

17        time with her is gonna be monitored by whoever he

18        chooses.  I told him that you should see her under

19        circumstances that are arranged by him and that you

20        should be able to talk with her and video with her.

21             But this situation is much, much more serious

22        than I think you understand.  I'm extremely concerned

23        for you.  I've been having hearings with you for over

24        a year and over the course of the year your -- your

25        behavior's become extremely disturbing.  You're

26        very --

27             MS. ANTAR:  Because you're not listening to me.
```

1          THE COURT:  Okay.

2          MS. ANTAR:  You're not letting me show evidence.

3     You let him show all that evidence and you did not

4     let me show any --

5          THE COURT:  Okay.

6          MS. ANTAR:  -- okay?

7          THE COURT:  Miss --

8          MS. ANTAR:  How can I be --

9          THE COURT:  Just listen.

10         MS. ANTAR:  -- how can I be fit for sole custody

11    of one child -- you're giving it to somebody who has

12    substantiated DCF -- do you remember when you sat

13    here?  'Cause I remember everything.

14         THE COURT:  All right.  Ms. Antar --

15         MS. ANTAR:  You said to me --

16         THE COURT:  --  I want you to stop --

17         MS. ANTAR:  -- you said to me --

18         THE COURT:  -- yelling at me.

19         MS. ANTAR:  -- we had to sign --

20         THE COURT:  I want you --

21         MS. ANTAR:  -- records for --

22         THE COURT:  -- to stop --

23         MS. ANTAR:  -- therapy.

24         THE COURT:  -- I want you to stop yelling at me

25    and listen, okay.

26         MS. ANTAR:  No, because you're not listening to

27    me.  My daughter has made these allegations.  I did

```
 1           not call DCF.

 2                 THE COURT:  All right.  Miss --

 3                 MS. ANTAR:  The -- the hospital did.

 4                 THE COURT:  -- Miss Antar --

 5                 MS. ANTAR:  The hospital did.

 6                 THE COURT:  -- stop.

 7                 MS. ANTAR:  Not me.

 8                 THE COURT:  Stop.

 9                 MS. ANTAR:  So why am I being accused --

10                 THE COURT:  Just stop --

11                 MS. ANTAR:  -- of being a liar?

12                 THE COURT:  -- and listen.

13                 MS. ANTAR:  I'm not --

14                 THE COURT:  This is --

15                 MS. ANTAR:  -- gonna be accused of being a liar.

16                 THE COURT:  Okay.

17                 MS. ANTAR:  No.  Just --

18                 THE COURT:  All right.

19                 MS. ANTAR:  -- because you have a personal

20           vendetta for me because I filed a grievance against

21           you because your malpractice.

22                 THE COURT:  Okay.

23                 MS. ANTAR:  Just like all the other lawsuits

24           against you.  And I'm -- and you're not -- you have

25           no legal basis.  I have all of the -- well, the law

26           here.  The best interest of the child.

27                 THE COURT:  All right.
```

```
1              MS. ANTAR:  The best interest of the child.  Mr.
2         Lodice is unfit and I can prove it --
3              THE COURT:  Miss Antar --
4              MS. ANTAR:  -- with all this evidence --
5              THE COURT:  -- I want --
6              MS. ANTAR:  -- that you refused --
7              THE COURT:  -- you to --
8              MS. ANTAR:  -- to take in.
9              THE COURT:  All right.  I'm --
10             MS. ANTAR:  So why are you refusing to let me
11        find counsel?
12             THE COURT:  -- I'm --
13             MS. ANTAR:  Why are you refusing --
14             THE COURT:  -- I am --
15             MS. ANTAR:  -- to let me --
16             THE COURT:  -- I'm issuing orders and I think
17        you're gonna wanna hear them.
18             MS. ANTAR:  So you're not going to allow me to
19        have -- show any evidence?
20             THE COURT:  Okay.  Listen to me.  You are coming
21        back here in a week.  If you wanna bring Attorney --
22             MS. ANTAR:  In a week --
23             THE COURT:  -- Bernstein --
24             MS. ANTAR:  -- when?
25             THE COURT:  You -- you -- are you ready to
26        listen?
27             MS. ANTAR:  I need to know what --
```

1      THE COURT:  June --

2      MS. ANTAR:  -- date to --

3      THE COURT:  It's June -- put your phone away.

4  You're absolutely not permitted to use your phone in

5  these proceedings.

6      Marshal, make sure that phone is off.

7      June 15th at 2 o'clock you're coming back to

8  court.  I'm going to issue more detailed orders by

9  then and they're certainly not going to be no-contact

10 orders between you and Angelina.  But I -- for -- for

11 now, between now and then, that is going to be the

12 case because you are falling apart before my eyes.

13 You are totally disconnected from what we're doing.

14 You have brought in piles and piles and piles of

15 things.  I've listened to you for hours --

16     MS. ANTAR:  You have not seen one --

17     THE COURT:  -- in the past --

18     MS. ANTAR:  -- thing that I brought in.  Not --

19     THE COURT:  And --

20     MS. ANTAR:  -- one.

21     THE COURT:  -- none of --

22     MS. ANTAR:  If you looked at the e-filed exhibit

23 -- I want it on the record.  I want it on the record

24 that I e-filed multiple exhibits that you refused to

25 look at.  You refused to look at the documentation

26 that she states that made substantiated documented --

27 she stated that she was abused at the Yale Child

1      Advocacy Center.  It's on her MyChart.  I gave you

2      all the documentation.

3              THE COURT:  All right.

4              MS. ANTAR:  Why aren't you looking at that?

5              THE COURT:  Miss Antar --

6              MS. ANTAR:  If you wanna --

7              THE COURT:  -- this is --

8              MS. ANTAR:  -- say I'm a liar --

9              THE COURT:  Stop.  Stop.

10             MS. ANTAR:  -- you're saying that the -- the --

11     you're saying that the --

12             THE COURT:  Stop.

13             MS. ANTAR:  -- doctor's a liar?  Are you saying

14     the hospital's a liar?  Because it's not me saying

15     this --

16             THE COURT:  This is the --

17             MS. ANTAR:  -- and I have all the --

18             THE COURT:  Listen to me.

19             MS. ANTAR:  -- evidence.  You just have --

20             THE COURT:  The evidence --

21             MS. ANTAR:  -- you have no reason to say this --

22             THE COURT:  -- the evidence --

23             MS. ANTAR:  -- without seeing my evidence.

24             THE COURT:  -- the evidence --

25             MS. ANTAR:  You need to be --

26             THE COURT:  -- that --

27             MS. ANTAR:  -- impartial and you're not.  You

```
1        should recuse yourself from this case.  Why are you
2        smiling?  Because you think it's funny, right?  It's
3        funny 'cause you get off on taking kids away from
4        women just like every other lawyer in New Haven said
5        about you.
6             THE COURT:  Okay.
7             MS. ANTAR:  Because they say that's what you do.
8        You wanna take children away from women.
9             You know what?  Family relations sat there and
10       said Angelina's very bonded to her mother.  They said
11       she's extremely bonded to her mother.  She cries and
12       screams -- and I have two witnesses, Janis Rubinowski
13       [phonetic] and Karen Skerinsi [phonetic] --
14            THE COURT:  All right.
15            MS. ANTAR:  -- who said that they saw how
16       apprehensive she is when she has to speak to her
17       [sic].  She screams and says I don't wanna talk to
18       daddy, I don't wanna go to --
19            THE COURT:  All right.
20            MS. ANTAR:  -- daddy's.  He dumps her --
21            THE COURT:  Miss Antar.
22            MS. ANTAR:  -- with his 16-year-old son who's
23       now under investigation.  I have all the proof and
24       videos --
25            THE COURT:  All right.
26            MS. ANTAR:  -- that are not leading --
27            THE COURT:  All right.
```

1          MS. ANTAR:  -- that I would --

2          THE COURT:  Enough.

3          MS. ANTAR:  -- love to show you that you're

4     refusing to let me show.

5          THE COURT:  Enough.

6          MS. ANTAR:  We need a --

7          THE COURT:  The --

8          MS. ANTAR:  -- trial.

9          THE COURT:  Enough.

10         MS. ANTAR:  We need a trial, not a two-hour

11    rushed hearing, where I'm told that I'm going to be

12    losing all of these -- not a chance to show a single

13    piece of evidence and you're telling me I'm gonna

14    lose custody of my daughter, give it to somebody

15    who's been charged with all of these things?  He

16    doesn't even have primary of his other children.  So

17    now you think it's okay to take her away from a

18    loving mother.  I take her to therapy.  She's not

19    gonna be able to go to therapy now.  She's not gonna

20    be --

21         THE COURT:  And, Miss Antar --

22         MS. ANTAR:  -- able to do any of these things

23    that --

24         THE COURT:  Enough.

25         MS. ANTAR:  -- every one her providers are

26    saying is good for her because you want to listen to

27    what he says without any legal evidence --

```
 1              THE COURT:  Here's --

 2              MS. ANTAR:  -- without any basis?  I wanna

 3       know --

 4              THE COURT:  Here's the --

 5              MS. ANTAR:  -- why you're not letting me show

 6       evidence?

 7              THE COURT:  All right.

 8              MS. ANTAR:  I wanna know why I'm not allowed to

 9       show the evidence.  I wanna know why I'm not allowed

10       to seek proper counsel.  You're saying Attorney

11       Cretella did a great job?  You refused to -- you

12       didn't grant my motion to continuance and you said

13       we'd hear this motion today.  You did not.

14              (Whereupon there was discussion between the

15       Court and the clerk.)

16              THE COURT:  So this -- the evidence that I've

17       received indicates from family relations that you

18       have probably, likely, an untreated psychiatric

19       disorder, perhaps an untreated personality --

20              MS. ANTAR:  No --

21              THE COURT:  -- disorder --

22              MS. ANTAR:  -- it doesn't.  That's a lie.  It

23       stated --

24              THE COURT:  -- untreated --

25              MS. ANTAR:  -- that I'm in therapy --

26              THE COURT:  -- behavioral --

27              MS. ANTAR:  -- and my therapist --
```

```
1          THE COURT:  -- disorder --

2          MS. ANTAR:  -- wrote a very nice letter about

3     me.  And that's a lie.  And actually you asked me at

4     the last hearing on April 5th.  You said to me are you

5     -- do you take any medication and I said yes, for

6     ADHD and it's helping with the ADHD.  And I have

7     documented PTSD from being sexually abused as a child

8     and that was a -- led to a conviction and a

9     subsequent civil lawsuit and that was prosecuted in

10    this court.

11         THE COURT:  All right.  So what --

12         MS. ANTAR:  And so I --

13         THE COURT:  All right.  One --

14         MS. ANTAR:  -- am not going to be told that my

15    daughter's a liar.

16         THE COURT:  What --

17         MS. ANTAR:  I'm not gonna be told that I'm a

18    liar.  I'm not gonna let somebody who is a criminal

19    destroy my credibility and --

20         THE COURT:  One of --

21         MS. ANTAR:  -- I'm not gonna be told that --

22         THE COURT:  Stop.

23         MS. ANTAR:  -- I can't get counsel.  I have

24    legal rights.

25         THE COURT:  One of the things that I'm also

26    concerned about is that you told me today that you've

27    made what is now a third or fourth --
```

1          MS. ANTAR:  No, I didn't.

2          THE COURT:  -- claim --

3          MS. ANTAR:  I said that --

4          THE COURT:  -- that --

5          MS. ANTAR:  -- the hospital did.  My -- if you'd

6     like, I'd be happy to tell you about it.  You've --

7          THE COURT:  All right.

8          MS. ANTAR:  -- you're not even letting me

9     explain anything.  I showed evidence.  Do you see --

10    did you see the records that I put on there, that I

11    e-filed?  Did you bother to look?  No, you didn't.

12         THE COURT:  All right.  That --

13         MS. ANTAR:  Because if you'd look at it you'd

14    see that her pediatrician referred us to the ER.  I

15    said to her I think it might be a UTI.  She's

16    complaining saying her vagina hurt.  That's all I

17    said.  The pediatrician said take her to the ER

18    immediately.  I did.  I want this on the record.

19         I took her to the ER at Griffin.  Griffin

20    immediately after seeing the video I showed them in

21    that room -- and I'm happy to show it to you if you

22    wanna think I'm lying.  I have no reason to lie.  I

23    showed them that.  The provider in Griffin, the

24    doctor said immediately we're gonna go to Hartford.

25    He said we will put her in the ambulance if we have

26    to.  If not, you drive her there right now.

27         We get to Hartford.  The PA said I'm so happy

1      you're here.  I showed it to them.  Everybody saw

2      this video except you.  And you're refusing to see

3      it.  You're refusing to even look at this evidence.

4      Because, again, I'm not just -- I could understand if

5      I had no evidence but I have evidence.  You're not

6      letting me show it.

7           Attorney Cretella did not introduce it.  He did

8      not prepare me.  He took my money and then he never

9      answered.  He made many, many violations of

10     malpractice, him and Gene Zingaro.  And they said to

11     me they're not giving me my file --

12          THE COURT:  All right.  Miss Antar --

13          MS. ANTAR:  -- until you rule --

14          THE COURT:  -- I want you to --

15          MS. ANTAR:  -- on this today.

16          THE COURT:  -- stop.  I want you to stop

17     talking --

18          MS. ANTAR:  Because you are not --

19          THE COURT:  -- and let me --

20          MS. ANTAR:  -- doing --

21          THE COURT:  -- let me --

22          MS. ANTAR:  -- legally you are --

23          THE COURT:  -- let me finish.

24          MS. ANTAR:  -- violating my legal rights.  And

25     I --

26          THE COURT:  Let --

27          MS. ANTAR:  -- have rights.

```
 1          THE COURT:  -- let --

 2          MS. ANTAR:  And also the American with

 3     Disabilities Act [sic] states that you need to also

 4     be ADA compliant which you are not.

 5          THE COURT:  All right.  So the evidence that

 6     I've received indicates that the same complaints have

 7     been made about Mr. Lodice's adult --

 8          MS. ANTAR:  So you're saying that --

 9          THE COURT:  -- son on --

10          MS. ANTAR:  -- you're making -- you're making --

11          THE COURT:  -- prior occasions.

12          MS. ANTAR:  -- you're making conclusions about

13     an investigation that was just opened without seeing

14     any evidence?  Without seeing or hearing any

15     testimony or evidence, you're gonna just make a -- a

16     conclusion about something that just started two days

17     ago?

18          THE COURT:  Well, the evidence that I received

19     on --

20          MS. ANTAR:  What evidence?  What evidence?

21          THE COURT:  Stop interrupting.

22          MS. ANTAR:  You don't --

23          THE COURT:  Stop interrupting.

24          MS. ANTAR:  -- have any evidence you're

25     referring to.  You're just lying.

26          THE COURT:  -- indicates that all of these prior

27     allegations have been unfounded.
```

1          MS. ANTAR:  And that's not true and I have

2      evidence which states that the child said that

3      Dominic sits on her and he sits on her and she sits

4      on him.  She said it in the last forensic.  It's

5      documented in MyChart.  I submitted it in an e-filed

6      exhibit which I submitted to the Court today and I

7      also submitted all the documentation for the doctor,

8      stating that it was them who was the ones referring

9      us, not me.

10          THE COURT:  So --

11          MS. ANTAR:  This was me doing the best --

12          THE COURT:  -- all the prior investigations have

13      been concluded as unfounded and unsubstantiated.

14          MS. ANTAR:  They have not --

15          THE COURT:  As a matter of fact, one of --

16          MS. ANTAR:  -- been said unfounded.

17          THE COURT:  -- one of -- one of them was

18      recently closed just in the last 60 days.  So it is

19      quite disturbing that another identical allegation

20      would be brought --

21          MS. ANTAR:  So do you --

22          THE COURT:  -- by you --

23          MS. ANTAR:  -- really think it's impossible that

24      a little girl's being sexually abused by her 16-and-

25      a-half-year-old perverted half-brother that has

26      mental problems?  Do you really think that that's not

27      possible?  Because Matthew leaves the child with

1       Dominic every time.  How is it okay that you're

2       giving custody to him?  He doesn't even watch her.

3       He can't even watch -- he sits here and says, oh,

4       Theo is ruining my chance to have a babysitter on the

5       weekend by trying to -- by trying to poison Dom's

6       name.  He's saying that I'm trying to -- to ruin his

7       babysitter.  Why does he need a babysitter on the

8       weekend?  He can't even handle two days a week.  He

9       goes and he leaves her with Dom; he leaves her with

10      his mom; he leaves her with all these people.

11          Angelina needs love; she needs support; she

12      needs consistency.  I have a nice home for her, the

13      only home she's ever known.  And there's -- the best

14      child -- the best interest of the child.  She's in

15      therapy.  I would love to have expert testimony from

16      her therapist Jessica Mayo, Ph.D., from the Yale

17      Child Study Center, my therapist Lancia Blatchley who

18      I've been with for two years that can testify to the

19      fact that I don't have psychological issues.  I'm

20      doing very well.  I'm in law school.  I have a clean

21      record.

22          THE COURT:  Are you --

23          MS. ANTAR:  Regardless --

24          THE COURT:  -- are you -- are you still in

25      school?

26          MS. ANTAR:  I am in school.  I know that it

27      really probably kills you to see that.  And you know

1     what?  Even with all this going on, I was awarded for

2     the best grade in my class and I received an award.

3     And you know what?  I'm proud of myself because

4     everybody including Dom -- Mr. Lodice is over here

5     trying to ruin my name and make me seem like this bad

6     person when I'm not.  I'm a notary.  I'm

7     commissioned --

8          THE COURT:  All right.

9          MS. ANTAR:  -- with the State as a notary.

10          THE COURT:  So --

11          MS. ANTAR:  I'm in law school.  I'm trying to

12     make a better future so that I can provide for myself

13     without needing the deadbeat support from someone

14     like that who can't even comply with the hundred

15     twenty dollar a week order.  He owes me 13 grand

16     between daycare and -- and -- and -- and child

17     support and you've done nothing.  And he sits here

18     and he -- he doesn't have to pay child support.

19          He's not following the Court orders where you

20     said he's ordered to bring her to religious events.

21     It says mom makes all religious decisions.  I give my

22     daughter a great religious foundation.  I submitted

23     to -- in evidence a letter from my priest who's well-

24     respected in this community and I'd be happy -- he

25     said he will come testify to you again if you don't

26     think his letter's good enough.

27          I submitted another letter for you.  I brought a

1  witness here who said -- who witnessed that Matthew

2  was saying all of these terrible, terrible things

3  that resulted in him getting arrested for harassment.

4  Still an open case.  My witness came here today to

5  say to you and -- and testify about -- that --

6    THE COURT:  All right.

7    MS. ANTAR:  -- he witnessed these things and you

8  didn't even give him a chance --

9    THE COURT:  Miss Antar.

10    MS. ANTAR:  -- to talk or me.

11    THE COURT:  Is it true that you got recently

12  arrested at one of these visits -- visitation

13  transfers?

14    MS. ANTAR:  I'm not going to --

15    THE COURT:  Is that accurate?

16    MS. ANTAR:  -- comment on any alleged -- alleged

17  charges because I'm innocent.  And I'm not going to

18  -- also the fact that your order which was saying

19  required to bring to Sunday school, required to bring

20  to special religious events was not being followed

21  and the police refused to do anything because they

22  said that this Court order was so ambiguous that they

23  don't even know what it means.  So I wanted a clear

24  change to the order.

25    At the last hearing we talked about how we

26  wanted to make it every other weekend.  You said you

27  thought that it was good for the child to have time

1      with me on the -- with mom on the weekend and,

2      honestly, I don't see what the problem with that is.

3      If -- if I can have every other weekend and he has

4      every other weekend, it allows him to work.   It

5      allows him to do the things he's saying.   He says I

6      need a babysitter so I can work.   I need a babysitter

7      so I can work.   I would love to have every other

8      weekend to take my daughters to do things together.

9      I do so much for my children.

10          THE COURT:   Okay.

11          MS. ANTAR:   Did you know that my daughter just

12     turned four on Sunday and -- and your Court order

13     said Mr. Lodice was required to bring her to Sunday

14     school on that day?  He did not.  He said I'm not

15     bringing her because it's her birthday and instead he

16     had her sit home.  He didn't do a cake.  He didn't do

17     a -- a party.  He kept her away from her Sunday

18     school.  He kept her away from her Sunday school

19     graduation.  And he refused to bring her.  I had to

20     go drive to his house to get her.  And after that I

21     was the one who gave her a cake.  I was the one who

22     did a little something and I promised her that

23     instead of a party this year, because I didn't wanna

24     plan a party because I knew he would give me --

25          THE COURT:   All right.

26          MS. ANTAR:   -- a hard time --

27          THE COURT:   So, Miss Antar --

1      MS. ANTAR:  -- with no clear orders --

2      THE COURT:  -- why don't you tell me when it is

3  that you -- the church services are on Sunday that

4  you like to take your child to.  When do they start

5  and when do they end?

6      MS. ANTAR:  It depends because, like, for

7  example -- I just want you to just listen for --

8  about --

9      THE COURT:  Okay.

10     MS. ANTAR:  -- our last hearing --

11     THE COURT:  I want you to answer my question.

12     MS. ANTAR:  There's special religious events

13  which occur --

14     THE COURT:  What's the -- what are the -- what's

15  the regular service hours?

16     MS. ANTAR:  The regular services is Sunday from

17  -- it -- it technically starts about 9:00 and it ends

18  at -- after the fellowship and stuff, like, say about

19  noon.  But sometimes they have special religious

20  events that take place afterwards.

21     And also, again, I try to do everything to

22  provide my daughter -- I have a house in Orange in a

23  beautiful neighborhood.  I provide my daughter --

24     THE COURT:  Okay.

25     MS. ANTAR:  -- with a excellent --

26     THE COURT:  All right.  You've --

27     MS. ANTAR:  -- school system --

1      THE COURT:  -- answered my question.  Why don't

2   you tell me what your work schedule is and what your

3   school schedule is.

4      MS. ANTAR:  Right now I have a flexible schedule

5   and I'm -- I don't have any set schedule whatsoever

6   with work.  And, as far as school, I just have -- I'm

7   gonna be doing an internship over the summer and a

8   independent research study.

9      THE COURT:  Okay.  So do you know what your

10  internship hours are going to be?

11     MS. ANTAR:  It's whatever I want.  I make my own

12  schedule, he said.

13     THE COURT:  Okay.  Are you gonna come back here

14  a week at 2 o'clock?

15     MS. ANTAR:  I plan on speaking to an attorney

16  which I was speaking to before, I told you, Stephanie

17  Bernstein, who's taking -- she believes me.  And

18  honesty -- like, I -- I -- I can understand that -- I

19  understand that there's people who come and make

20  allegations with no proof and with no basis and that

21  you're probably used to hearing people all the time

22  saying things.  But, honestly, I would never, ever in

23  my life lie about something like this.  I would never

24  -- nothing that I've ever said in any of these

25  filings was a lie.

26     I love my daughter.  I do everything -- I go

27  above and beyond and I could bring a hundred people

1      that could testify to that.  I'm an excellent mother

2      to my children and nobody can ever tell me I'm not a

3      good mother.  I give them everything.  I sacrifice so

4      much for my children.  And Angelina tells me every

5      single day how much she loves me, how happy she is

6      that she gets to see me every day.  I give her -- he

7      lives in a three-family apartment in a dangerous

8      neighborhood in New Britain that's flooded with sex

9      offenders all around it.

10         He -- he leaves her with the 16-year-old brother

11     when he's supposed to be giving me right of first

12     refusal.  A three-year-old girl who -- again, for you

13     -- I -- I -- it's concerning that I -- I'm telling

14     you that my daughter -- I was in the ER till 3:00 in

15     the morning with my daughter.  All these people are

16     concerned.  It's concerning that you're not even

17     thinking that it's even remotely possible because the

18     fact is that this truth will come out eventually.

19     And my daughter's four now and she's able to talk and

20     she -- if she -- if -- I guarantee you if she went in

21     a police interview or a forensic interview she would

22     say it.

23         And, again, she did make an allegation to the PA

24     at Children's Hartford's Medical Center [sic] which I

25     -- I'd like to be able for the Court to see all these

26     things because it's -- and that's why I asked for a

27     GAL because you can't just -- if -- if people are

1    fighting so much, the GAL is supposed to be looking

2    out for the baby.  And, as far as at Children's

3    Medical Center in Hartford on Tuesday night, my

4    daughter said when she was alone with the PA in the

5    room -- they had me go in the hallway 'cause they

6    said they didn't want me to say anything to her, they

7    need to speak to her by herself before they did the

8    exam.  And they said to her -- and I would be happy

9    to provide documentation.  If you look at the exhibit

10   I provided, all the stuff that I received from -- I

11   made -- I labeled it and I -- and I have it all here

12   as well if -- if you want to look at it.  But --

13   however, she stated to the PA -- and the name of that

14   person, who I would be happy to subpoena as well, is

15   -- her name is Micaela Lavoie, L-a-v-o-i-e, and she's

16   the PA, and the MD who saw --

17        THE COURT:  Okay.

18        MS. ANTAR:  -- Angelina at Connecticut

19   Children's ER was Mariann Kelley.  And when Angelina

20   was alone in the room with Micaela --

21        THE COURT:  All right.  Miss -- Miss Antar,

22   we're gonna finish up.

23        MS. ANTAR:  I know but I --

24        THE COURT:  It's five --

25        MS. ANTAR:  -- just wanted you to --

26        THE COURT:  -- it's -- it's -- it's --

27        MS. ANTAR:  -- this is very important.

```
1              THE COURT:  -- 5 o'clock.

2              MS. ANTAR:  She disclosed to Micaela -- she

3         disclosed --

4              THE COURT:  It is --

5              MS. ANTAR:  -- to Micaela --

6              THE COURT:  -- it is --

7              MS. ANTAR:  -- alone --

8              THE COURT:  -- 5 o'clock.

9              MS. ANTAR:  Right.  But you -- you said I'm

10        saying this.  Well, when I was not in the room,

11        Micaela asked Angelina before they did the rape kit,

12        she asked Angelina do you have any --

13             THE COURT:  Okay.

14             MS. ANTAR:  -- private parts, do you know what

15        your private parts are.

16             THE COURT:  We're --

17             MS. ANTAR:  And she said Angelina's --

18             THE COURT:  -- we are --

19             MS. ANTAR:  -- response to that was Dom did it

20        to me.  Dom did it to me --

21             THE COURT:  We're done --

22             MS. ANTAR:  -- and mommy --

23             THE COURT:  -- and the -- I'll see you June 15th

24        at 2 o'clock.

25             MS. ANTAR:  Okay.  So you're not --

26             THE COURT:  We're --

27             MS. ANTAR:  -- willing to listen --
```

1          THE COURT:  -- we're adjourned --

2          MS. ANTAR:  -- to anything I said?

3          THE COURT:  -- ladies and gentlemen.  Thank you.

4          MS. ANTAR:  Okay.

5          THE MARSHAL:  All rise.  Court now stands

6      adjourned.

7          (Whereupon court adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

```
NNH-FA19-5046828-S            :  SUPERIOR COURT

THEODORA F. ANTAR             :  JUDICIAL DISTRICT
                                 OF NEW HAVEN

v.                            :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE             :  MAY 25, 2023
```

E L E C T R O N I C

C E R T I F I C A T I O N

I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, at New Haven, Connecticut, before the Honorable Jane K. Grossman, Judge, on the 25th day of May, 2023.

Dated this 30th day of May, 2023 in New Haven, Connecticut.

_____
Alexis Shevchenko
Court Recording Monitor
6/26/2023

```
NNH-FA19-5046828-S            :  SUPERIOR COURT

THEODORA F. ANTAR             :  JUDICIAL DISTRICT
                                 OF NEW HAVEN

v.                            :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE             :  MAY 25, 2023
```

C E R T I F I C A T I O N

    I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, at New Haven, Connecticut, before the Honorable Jane K. Grossman, Judge, on the 25th day of May, 2023.

    Dated this 26th day of June, 2023 in New Haven, Connecticut.

_____
Alexis Shevchenko
Court Recording Monitor