NNH-FA19-5046828-S          :  SUPERIOR COURT

THEODORA ANTAR              :  JUDICIAL DISTRICT
                              OF NEW HAVEN

v.                         :  AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE             :  JUNE 1, 2022



TRANSCRIPT OF PROCEEDINGS



BEFORE THE HONORABLE FREDRIC GILMAN, FAMILY SUPPORT MAGISTRATE



A P P E A R A N C E S :



        Representing the Plaintiff:

        THEODORA ANTAR
        Self-represented


        Representing the Defendant:

        MATTHEW LODICE
        Self-represented



        ALSO PRESENT:

        DAWN MORROW
        SUPPORT ENFORCEMENT OFFICER

        KAREN ZAK
        COURT-APPOINTED COUNSEL




                              Recorded and Transcribed by:
                              Amanda Taylor
                              Court Recording Monitor Trainee
                              235 Church Street
                              New Haven, Connecticut, 06510

1          MS. MORROW:  The next matter, your Honor, is

2     number nine; the matter of Theodora Antar and Matthew

3     Lodice.

4          THE COURT:  Thank you.

5          CLERK IMME:  Paperless file, your Honor.

6          THE COURT:  Thank you, sir.

7          CLERK IMME:  Can all parties please raise their

8     right hand.  Does everyone solemnly swear, sincerely

9     affirm the evidence they're about to give to be the

10     truth, the whole truth, nothing but the truth so help

11     you God or upon penalty of perjury?

12          MS. ANTAR:  I do.

13          MS. MORROW:  I do.

14          MR. LODICE:  I do.

15          THE CLERK:  Thank you.  Ma'am, starting with

16     you, please state your name and address for the

17     record please.

18          MS. ANTAR:  Theodora Antar.  856 Shagbark Drive,

19     Orange, Connecticut 06477.

20          THE CLERK:  Thank you.  Sir, your name --

21          MR. LODICE:  Matthew Lodice.

22          CLERK IMME:  -- and address for the record.

23          MR. LODICE:  23 Lyman Street, New Britain,

24     Connecticut, 06053.

25          THE CLERK:  Thank you.  And for support

26     enforcement.

27          MS. MORROW:  Dawn Morrow, support enforcement

1    officer, New Haven, Connecticut.

2           THE COURT:  Yes, ma'am.

3           MS. MORROW:  Your Honor, I believe that there's

4    several motions on today in this case.  There was a

5    contempt that was continued from March 9th to today's

6    date.  And then there's -- both parties have filed

7    pro se motions to modify.  And then I believe that

8    there's another motion that family court referred

9    over.

10          (Whereupon there was a pause in the

11   proceedings.)

12          CLERK IMME:  There's an order today from Joe --

13   Judge Grossman, your Honor.  It's the last order.  I

14   just see it's new in my -- in my queue.

15          THE COURT:  Thank you.

16          CLERK IMME:  You're welcome.

17          THE COURT:  Number 136 is support enforcement's

18   contempt.  Is that correct?

19          CLERK IMME:  Number 136 you said, your Honor?

20          THE COURT:  136.

21          CLERK IMME:  Yes, your Honor.  136 the State

22   filed.

23          THE COURT:  Is 137 also before the Court today?

24          CLERK IMME:  I have 136 and 148, your Honor, on

25   my docket.  And then there's a 146.01 and a 152.

26   Those I believe are the mods.  Excuse me, 152 is a

27   motion for order of some sort, financial discovery

1      order, your Honor.

2            (Whereupon a pause in the proceedings takes

3      place.)

4            THE COURT:  Judge Boreland's order of 4/12/2022

5      based upon the agreement of the parties has deferred

6      to the Family Support Magistrate Court the

7      outstanding motions:  Number 142, 146.01, number 152

8      for hearing on 6/1/2022.  Further it says, the

9      defendant shall re-engage paying child support to the

10     plaintiff.  The defendant is the gentleman, I

11     presume.  $120 per week on Friday by 6 p.m. starting

12     this Friday, 15, 2022 and apparently that was --

13           Was that April, sir?

14           MR. LODICE:  Yes.  I wanna say it was the 12th.

15           THE COURT:  And the final amount is subject to

16     decision of the Family Support Magistrate hearing on

17     6/1/2022.

18           First to you, ma'am.  What motions do you

19     believe are before the Court today?

20           MS. ANTAR:  So the clerk's office stated to me

21     that the defendant's motion 142, which was motion for

22     modification which you stated was originally set for

23     this date, was moved to the June 28th hearing in

24     front of family court because that one is strictly

25     only about custody so and I'll --

26           THE COURT:  Let me verify that.

27           MS. ANTAR:  I spoke to the supervisor --

```
1              THE COURT:  One moment please.
2              MS. ANTAR:  Okay.
3              THE COURT:  Sir, 142 is your motion.  Is that
4         correct?
5              MR. LODICE:  Is that the custody?  If it's the
6         custody one, yes.
7              THE COURT:  Okay.  Is it correct that's going to
8         6/28/2022?
9              MR. LODICE:  That I'm not sure of.
10             THE COURT:  Okay.  Do you know if that's going
11        before the Superior Court Judge?
12             MR. LODICE:  I believe it is.
13             THE COURT:  Yes?
14             MR. LODICE:  Yes.
15             THE COURT:  That's not a -- a child support
16        issue.  Correct?
17             MR. LODICE:  Well, when I called yesterday, they
18        told me we were seeing all those matters today, so
19        I'm a little bit confused.
20             THE COURT:  No, sir.
21             MR. LODICE:  Okay.  So that's the 28th.  So,
22        yes, I understand then.
23             THE COURT:  Okay.  So 142 should have a court
24        date of 6/28 --
25             CLERK IMME:  It does --
26             THE COURT:  Do you have --
27             CLERK IMME:  -- your Honor.
```

1          THE COURT:  -- that, sir?

2          CLERK IMME:  I can confirm, your Honor.

3          THE COURT:  And that's in the Superior Court.

4          CLERK IMME:  That's what the Superior Court.  I

5     believe Price-Boreland.

6          THE COURT:  Thank you.  So that's off my docket

7     today.

8          CLERK IMME:  It's with Judge Grossman.  I

9     apologize, but --

10          THE COURT:  That's okay.

11          CLERK IMME:  -- it is off your docket.  Yes,

12     your Honor.

13          THE COURT:  146.01.  Ma'am, this is your motion

14     to modify regarding child support and/or visitation.

15     Right?

16          MS. ANTAR:  Correct.

17          THE COURT:  Can you tell me if that motion

18     146.10 is also in the Superior Court regarding

19     visitation?

20          MS. ANTAR:  I was told 146.01, the -- the child

21     support portion would be heard today, and any of the

22     custody issues would be heard in family court.

23          THE COURT:  And do you have the date when that's

24     gonna be heard?

25          MS. ANTAR:  6/28.

26          THE COURT:  Also on 6/28?

27          MS. ANTAR:  Correct.

1      THE COURT:  Okay.  152.  And 152 is a motion for

2   discovery.  Is that correct, ma'am?

3      MS. ANTAR:  Correct.

4      THE COURT:  And have you served the gentleman

5   your discovery request?

6      MS. ANTAR:  I was told to send a certified copy

7   -- send a copy to his address and that wasn't

8   required to be served.  There was never a -- anything

9   sent back to me by the Court to have it served.  They

10   stated it would be heard at the hearing.

11      THE COURT:  Has the Court acted on your motion

12   for the financial discovery?

13      MS. ANTAR:  I was told it would be -- the

14   decision to act on it would be done today at this

15   hearing.  This is our first time coming to court

16   since I filed.

17      THE COURT:  Okay.  And is that with regard to

18   your pending motion to modify?

19      MS. ANTAR:  Correct.

20      THE COURT:  Okay.  Sir, do you have a motion to

21   modify on today?

22      MR. LODICE:  I do.

23      THE COURT:  Can you tell me the number for that?

24      MR. LODICE:  I don't know.

25      THE COURT:  Mr. Clerk.

26      CLERK WINGARD:  Your Honor, it should be on the

27   docket.

1      THE COURT:  Is it number 148?

2      CLERK WINGARD:  So, for our Court, your Honor,

3   what's on today is 136 contempt and 148 mod.  There

4   are other mods, specifically 146.01 and 152.  But, as

5   far as I know, those are set down to be heard on June

6   28th in family.  But I do note that it does deal

7   somewhat with support as well.

8      THE COURT:  Sir, is 148 your motion to modify?

9      MR. LODICE:  I don't know it by number, sir.

10      THE COURT:  Okay.

11      CLERK IMME:  Your -- your Honor, 148 is the --

12   the plaintiff's motion.  I'll try to find --

13      THE COURT:  Does the gentleman have a pending

14   motion to modify?

15      CLERK IMME:  I'm gonna try to find it for you

16   right now, your Honor.

17      THE COURT:  Thank you.

18      CLERK WINGARD:  Just, just look at 146.01.

19      CLERK IMME:  That --

20      CLERK WINGARD:  Just -- right, just -- but I --

21   I don't care what it says PRD just --

22      CLERK IMME:  No, but -- no.  We already looked

23   at it already; it's -- it's -- that one's going to

24   family court.

25      CLERK WINGARD:  Right, but who filed it is the

26   question.

27      CLERK IMME:  She -- she did.

1    CLERK WINGARD:  Okay.  So she filed that one, so

2    go to now 152.

3    CLERK IMME:  That's the motion we just looked at

4    for financial discovery.  That's hers.

5    CLERK WINGARD:  Okay.  Then go to info two.  And

6    just control F.  Let's see what other mods there are.

7    CLERK IMME:  Right there.  What was that?

8    CLERK WINGARD:  No, that's -- that's way up.

9    That's earlier.  146, right here.

10    CLERK IMME:  That's hers.

11    THE COURT:  Mr. Clerk.

12    CLERK WINGARD:  Yes, your Honor.

13    THE COURT:  Take a look at 148 and 146.01

14    together.

15    CLERK WINGARD:  Yep.  So 148 is her mod that we

16    scheduled here.  Yep.  That -- that's what's on the

17    docket today.  And then 146 point oh point one, you

18    said?

19    THE COURT:  Yes, sir.

20    CLERK IMME:  It's the same motion.

21    CLERK WINGARD:  Right, but -- but -- so the

22    reason that they're the same motion is we scheduled

23    the custody parts down in Superior Court and then

24    support down here in ours, so.

25    THE COURT:  Okay.  So which motion's in the

26    court, 146.01?

27    CLERK WINGARD.  So --

```
 1              THE COURT:  Or 148?

 2              CLERK IMME:  148.

 3              CLERK WINGARD:  148 is the one we are dealing

 4         with.

 5              THE COURT:  Okay.  And 146.01 is 6/28/22 --

 6              CLERK WINGARD:  Correct.

 7              THE COURT:  -- Superior Court.

 8              CLERK WINGARD:  Yes.

 9              CLERK IMME:  Correct, your Honor.  Yep.

10              THE COURT:  Regarding the visitation.  So you

11         used the same -- just so -- for the record, you used

12         the same pleading with two different pleading numbers

13         to split them between the courts.

14              CLERK WINGARD:  Correct.

15              THE COURT:  Okay.  Does the gentleman have a

16         motion to modify on today?

17              CLERK WINGARD:  Most of these motions that I see

18         are filed by mother.  I do not show a mod from

19         father.

20              MR. LODICE:  My modification was filed along

21         with my child custody.  I applied for custody

22         modification of everything all in the same filing.

23              CLERK WINGARD:  Do you know abouts when that

24         was?  Was it in twenty --

25              MR. LODICE:  March 7th or 17th, around that day.

26              CLERK WINGARD:  Your Honor, I think he's

27         referring to contempt, 140.
```

1          THE COURT:  Okay.  Let's look at that.  140; the

2     pleading is a motion for contempt by the gentleman.

3     Was that acted on?

4          MR. LODICE:  That was all the same day.

5          THE COURT:  Was it acted on?

6          MR. LODICE:  I don't believe so.

7          CLERK WINGARD:  Your -- your Honor, that is --

8     that was scheduled in Superior Court for April 12th.

9     From what I show, it was in front of Price-Boreland

10    and it's resulted as event completed, but I'm not

11    sure what happened with it.

12         THE COURT:  Okay.  So, do you have a pending

13    motion to modify for the Court today, sir?

14         MR. LODICE:  I thought I did.  But you guys are

15    telling me no, so I would assume no then.

16         THE COURT:  Do you have a copy of your motion?

17         MR. LODICE:  I do not with me.  I just --

18         THE COURT:  Ma'am, did you get served --

19         MR. LODICE:  -- can I look for a minute?

20         THE COURT:  Ma'am.  Did you get served by the

21    gentleman a motion to modify?

22         MS. ANTAR:  No.  I did not.  The only motion

23    that he filed was a motion to modify custody which I

24    also was never served with.  He never filed a motion

25    for child support or modification ever.

26         THE COURT:  Okay.  And, sir, you have no proof

27    of proceeding today on a motion to modify regarding

1      the child support?

2          MR. LODICE:  May I have one moment just to look

3      through my paperwork?

4          THE COURT:  You may.

5          MR. LODICE:  Thank you.

6          (Whereupon there was a pause in the

7      proceedings.)

8          THE COURT:  And you have 152 on for the

9      discovery motion in front of the Superior Court?

10         CLERK WINGARD:  Yes, your Honor.  That -- on

11     June 28th.

12         CLERK IMME:  On June 28th, yep.

13         THE COURT:  Thank you.

14         MR. LODICE:  Your Honor, I do not.

15         THE COURT:  You have not filed, sir?

16         MR. LODICE:  No.  I do not have proof of me

17     filing.

18         THE COURT:  Okay.

19         MR. LODICE:  I -- I did file, but I don't know

20     where my copy is.  I don't have it on me right now.

21         THE COURT:  Okay.  So the only motions for the

22     Court today is 136 under the contempt and 148

23     petitioner's modification.

24         MR. LODICE:  Okay.

25         MS. ANTAR:  Your Honor, I was told 152 was being

26     heard today in front of Magistrate because it

27     involves child support.  That family --

1          THE COURT:  I have my two clerks standing to my

2     right and they're telling me that 152, the discovery

3     motion, is on for 6/28.

4          CLERK WINGARD:  Yeah.

5          CLERK IMME:  Yeah.  We -- we checked with the

6     family clerks on this 'cuz there's so many motions

7     filed, your Honor.  152 was guaranteed that it's

8     gonna be heard in family court --

9          CLERK WINGARD:  And, and --

10         CLERK IMME:  -- on the 28th.

11         CLERK WINGARD:  -- and additionally, your Honor,

12    we did find the mod that Mr. Lodice is referring to,

13    it is 142.

14         THE COURT:  Okay.

15         CLERK WINGARD:  But that was also put down for

16    that April 12th date in family court.

17         CLERK IMME:  Strictly custody also, your Honor.

18         THE COURT:  Okay.  Give me that number again.

19         CLERK IMME:  142.

20         THE COURT:  142.

21         CLERK IMME:  Yep.  It's a -- it'd be 141/142.

22    Excuse me, your Honor.

23         THE COURT:  Okay.  Let's look at that.  Everyone

24    writing these numbers down?

25         MR. LODICE:  No.  Should we?

26         CLERK IMME:  We -- we actually had -- that's how

27    we figured it out in the end, your Honor.  We had to

1      write 'em down; there was so many.

2          THE COURT:  Yeah.  Motion to modify by the

3      gentleman is number 142.  And that's with regard to

4      apparently custody or visitation, not child support.

5      Nothing checked on the boxes regarding the exist --

6      changing the existing orders for child support under

7      subsection small a.  That was with regard to father

8      becoming the custodial parent, full custody.  Not

9      before the Court today.  So the only motions before

10     the Court is 136 and mother's 148.

11         CLERK IMME:  Correct, your Honor.

12         THE COURT:  Thank you.  You wanna be heard on

13     your modification first, ma'am?  Parties under oath?

14         CLERK IMME:  Parties are under oath, your Honor.

15         THE COURT:  Attorney Wingard, thank you. Parties

16     under oath?

17         CLERK IMME:  Parties under oath, your Honor.

18         THE COURT:  Thank you.  Ma'am, you go first

19     under your motion to modify.

20         MS. ANTAR:  Well, the clerk's office prior to

21     this told me that the 152 was being heard today so I

22     -- I'm just a little confused because I was told that

23     anything to do with child support was having to be

24     heard in Magistrate and not in family court.  So are

25     you guys now saying that it's 100 percent going to be

26     heard on the 28th and not in front of this Court?

27         THE COURT:  What, ma'am?

1       MS. ANTAR:  The motion 152 for financial

2   discovery regarding child support.

3       THE COURT:  My clerks are informing me motion

4   for discovery 152 is scheduled for 6/28/2022 Superior

5   Court.

6       MS. ANTAR:  Okay.

7       THE COURT:  Are you proceeding on your motion to

8   modify today, ma'am?

9       MS. ANTAR:  I'm asking if we can have a

10  continuance on that to wait for discovery to come in

11  because --

12      THE COURT:  Okay.

13      MS. ANTAR:  -- it's his financial affidavit is

14  extremely lower than what he's actually making and --

15      THE COURT:  Okay.

16      MS. ANTAR:  -- so I wanna wait --

17      THE COURT:  What date would you --

18      MS. ANTAR:  -- until discovery comes in.

19      THE COURT:  -- like your motion to modify

20  continued to?

21      MS. ANTAR:  After the 6/28 hearing when the

22  financial discovery motion can get heard.

23      THE COURT:  Any objection to her request for

24  continuance on the motion to modify?

25      MR. LODICE:  No, your Honor.

26      THE COURT:  Okay.  What days --

27      MR. LODICE:  Well, actually --

1          THE COURT:  Hold on.

2          MR. LODICE:  -- yes, your Honor.

3          THE COURT:  What's your objection?

4          MR. LODICE:  I would like to object because I

5     don't make the money I was making --

6          THE COURT:  No.

7          MR. LODICE:  -- when I originally --

8          THE COURT:  It's not an issue.

9          MR. LODICE:  Oh.  Then --

10          THE COURT:  We're not discussing the merits.

11          MR. LODICE:  Okay.

12          THE COURT:  We're discussing the request for

13     continuance, not the merits.

14          MR. LODICE:  So, yes, I object to the

15     continuance.

16          THE COURT:  Why?

17          MR. LODICE:  Because I don't have the money I

18     was making then, so without --

19          THE COURT:  We're not --

20          MR. LODICE:  -- modification --

21          THE COURT:  -- we're not discussing the merits

22     of the case today.

23          MR. LODICE:  But you're asking why.  Okay then,

24     I guess not.

25          THE COURT:  Okay.  Do you think your motion will

26     take more than an hour?

27          MS. ANTAR:  For the -- the modification?

```
 1              THE COURT:  Yes, ma'am.

 2              MS. ANTAR:  Yes.

 3              THE COURT:  Okay.  To my clerks, you still do

 4       special hearings on Mondays?

 5              CLERK WINGARD:  We do.  On the second, fourth,

 6       or fifth Mondays of the month.

 7              THE COURT:  We need a court date after 6/28

 8       that's on a Monday for special hearing with a time

 9       block for these parties.

10              CLERK WINGARD:  Right there.  7/11.

11              CLERK IMME:  7/11, your Honor.  10 a.m.

12              THE COURT:  Let's verify that that's good for

13       the parties --

14              CLERK WINGARD:  Not --

15              THE COURT:  -- first.

16              CLERK WINGGARD:  -- not -- not 10 a.m.  It's a

17       special hearing, so we have --

18              THE COURT:  Hold on.

19              CLERK WINGARD:  -- to make sure it's not already

20       taken.

21              CLERK IMME:  Okay.

22              CLERK WINGARD:  So 10 a.m.'s already taken, your

23       Honor.  So we can do 2 p.m.

24              CLERK IMME:  2 p.m.

25              THE COURT:  On which date?

26              CLERK IMME:  The seven --

27              CLERK WINGARD:  7/11.
```

1          CLERK IMME:  -- eleven one.

2          THE COURT:  Ma'am.  July 11th at 2:00.  Is that

3     fine?

4          MS. ANTAR:  That's fine.

5          MR. LODICE:  May I --

6          THE COURT:  Sir --

7          MR. LODICE:  -- just check my calendar real

8     quick on my phone?

9          THE COURT:  You can.

10          MR. LODICE:  Thank you.

11          (Whereupon there was a pause in the

12     proceedings.)

13          MR. LODICE:  That's fine.  That's perfect.

14          THE COURT:  Okay.

15          MR. LODICE:  2 p.m.?

16          THE COURT:  2 p.m. on motion 148, which is the

17     petitioner's, over to special hearing date July 11,

18     2022, at 2 p.m.

19          As to the contempt, is that support

20     enforcement's contempt?

21          MS. MORROW:  Let me check.

22          CLERK IMME:  I believe it was, your Honor.

23          MS. MORROW:  Yes, your Honor.  It was filed by

24     our office by Ms. Antar's request.  And that was

25     continued from March 9th to today's date for an

26     update on the custody matter.

27          THE COURT:  Okay.  Can you tell me if the

1   custody matter has been resolved?

2         MS. MORROW:  Not to my knowledge, your Honor.

3         CLERK IMME:  Your Honor, I believe with that

4   6/28 date is a date where they're gonna hear a bunch

5   of things in family court from what I was told.

6         THE COURT:  Yeah.  And to Ms. Morrow; isn't it

7   true that Judge Price-Boreland has put a order on the

8   gentleman?

9         MS. MORROW:  Your Honor, Mr. Lodice was already

10  under Court order to pay the $120 per week.  That

11  order had entered November 7th of 2019.

12        THE COURT:  Mr. Clerk, what's the order from

13  Price-Boreland please?

14        CLERK IMME:  Price-Boreland.

15        (Whereupon there was a pause in the

16  proceedings.)

17        CLERK IMME:  Your Honor, the order from 4/12 --

18  there's -- it goes over many -- is there a specific

19  --

20        CLERK WINGARD:  It's pleading 153.1, your Honor.

21        THE COURT:  Thank you.  Do you have a copy of

22  that, support enforcement, 4/12/2022 order by Judge

23  Price-Boreland?

24        MS. MORROW:  I do, your Honor.

25        THE COURT:  Defendant shall re-engage paying

26  child support to the plaintiff 120 per week on

27  Friday, 6 p.m.; starting this Friday.  And since it's

1   dated April 12th -- they meant April 15th, 2022.  And

2   that's -- that amount is subject to the decision of

3   Family Support Magistrate on the hearing of 6/1.  And

4   the modification is now over for special hearing to

5   7/11.  So under the contempt, what's your alleged

6   period of time of non-compliance with the Court

7   order?

8       MS. MORROW:  Your Honor, our contempt

9   calculation went from when Ms. Antar requested our

10  services which was February 9th of 2021 to June 1st,

11  today's date; June 1st of 2022, which was 68 weeks at

12  the $120 per week which would've been $8,160 that Mr.

13  Lodice should have paid.  He paid $4,285.53 which

14  leaves him delinquent $4,034.47 which --

15      THE COURT:  Why --

16      MS. MORROW:  -- is also the --

17      THE COURT:  -- why did -- why did Judge Boreland

18  write the words re-engage?

19      MS. MORROW:  I do not know, your Honor.  We had

20  no knowledge that the order had ever been stopped.

21      MS. ANTAR:  Your Honor, may I answer?

22      THE COURT:  Not yet.  Is support enforcement

23  aware if at any time a Superior Court -- Court Judge

24  stopped the order?

25      MS. MORROW:  No, your Honor.  I'm not aware of a

26  --

27      THE COURT:  Okay.

1          MS. MORROW:  -- order stopping it.

2          THE COURT:  Anything else?

3          MS. MORROW:  No, your Honor.

4          THE COURT:  Okay.  Ma'am, do you have any

5     questions for support enforcement services?  In the

6     form of a question.

7          MS. ANTAR:  Are you aware that Judge Price-

8     Boreland stated that she wanted him to re-engage in

9     paying child support because he had stopped paying

10    and hasn't paid since November of 2021?

11         MS. MORROW:  We do have the last pay -- the last

12    payment being December 6th of 2021.

13         MS. ANTAR:  And are you aware that the reason

14    why she wrote in her order that he is to re-engage

15    paying by Friday, April 15th by 6 p.m. was because I

16    brought up in court at our hearing in front of her

17    that he has not paid anything since December of 2021?

18    And the reason why was so that she could order him to

19    re-engage paying the -- the existing order that he

20    deliberately stopped paying?

21         MS. MORROW:  I was not there.

22         MS. ANTAR:  Okay.

23         THE COURT:  Any other questions of her?

24         MS. ANTAR:  No.

25         THE COURT:  Sir, do you have any questions for

26    the support enforcement officer?

27         MR. LODICE:  Um.

1          THE COURT:  In the form of a question.

2          MR. LODICE:  Okay.  The number that you have

3     that -- that is owed verse what is paid, is the owed

4     amount child support by itself?  Or is there other

5     things added on to that such as, like, hypothetical;

6     day -- or alleged daycare, baby-sitting, stuff like

7     that?

8          MS. MORROW:  No.  The calculation that I gave is

9     strictly the current child support order of $120 per

10    week.

11         MR. LODICE:  No further questions.

12         THE COURT:  Okay.  Miss Morrow, any other

13    testimony?

14         MS. MORROW:  No, your Honor.

15         THE COURT:  What are you claiming as the amount

16    of the delinquency?

17         MS. MORROW:  From our calculations, your Honor,

18    it's $4,034.47.

19         THE COURT:  $4,034 --

20         MS. MORROW:  47 cents.

21         THE COURT:  -- 47 cents.  As of what day?

22         MS. MORROW:  Today, your Honor.

23         THE COURT:  6/1.  Is that all --

24         MS. MORROW:  Oh.  I -- I apologize, your Honor.

25    The -- the delinquency is the same as the balance

26    that's owed to Miss Antar, and that $4,034.47 is as

27    of May 24th, 2022.

1        THE COURT:  So the arrears is also the

2    delinquency?

3        MS. MORROW:  Correct, your Honor.

4        THE COURT:  And what's the period of time --

5        MS. MORROW:  February --

6        THE COURT:  -- that accrued?

7        MS. MORROW:  February 9th, 2021, when Ms. Antar

8    requested our agency's services to June 1st, 2022.

9        THE COURT:  And when did that order enter for

10    $120 a week?

11        MS. MORROW:  November 7th, 2019.

12        THE COURT:  And who entered that order?

13        MS. MORROW:  Judge Klau.

14        THE COURT:  And was that order ever modified?

15        MS. MORROW:  Not to my knowledge, your Honor.

16        (Whereupon there was a pause in the

17    proceedings.)

18        THE COURT:  And that was by agreement of the

19    parties, which was approved and incorporated by Judge

20    Klau in his judgment.  Correct?

21        MS. MORROW:  Correct.

22        THE COURT:  Okay.

23        (Whereupon there was a pause in the

24    proceedings.)

25        THE COURT:  Ma'am, any other testimony you wanna

26    offer the Court today under the contempt?

27        MS. ANTAR:  Yes.  So the defendant has not made

1    any payments to support enforcement since the last

2    payment that came in on December 6th, 2021.  He has

3    had the ability to pay during this entire time and

4    deliberately refused to make any payments whatsoever.

5    The defendant has a business, Whole House Remodeling

6    Company, LLC., which he first established on April

7    12th -- actually, I'm sorry, April 16th of 2021.  It's

8    a construction remodeling company which he is the

9    sole owner of it.  And he has stated to me that he's

10   making more money than he's ever made in his entire

11   life.  He also stated that he made substantial

12   amounts of money in the stock market in the last two

13   years, which is all part of what I asked for in

14   discovery here; bank statements, statements from his

15   retirement accounts, so on and so forth.  He has

16   three cell phones which he keeps active.  He has a --

17   a line he pays for his 15-year-old son.  Along with

18   the phone, he also has a business phone and he has a

19   personal line, all of which he pays all three of

20   those.

21          Previously, he was living with his mother until

22   December of 2021 when he moved out and got his own

23   apartment.  He sent me several e-mails telling me

24   that he wants me to see his new lifestyle, see the

25   way he's living.  He -- he offered to have me come

26   over for dinner, to come over for wine.  He said that

27   he wanted me to be back with him and kept telling me

```
 1          how much money he's making.  During this time as
 2          well, I've asked him to pay the child support.  He
 3          has his business, which he spent money on advertising
 4          for the company.  Also, he has taken out
 5          advertisements which he paid for for the business as
 6          well in the newspaper.  He's also publicly sent money
 7          to individuals for gambling and other recreational
 8          activities --
 9               MR. LODICE:  Can I object?
10               MS. ANTAR:  -- on Venmo.  He --
11               MR. LODICE:  Objection.
12               MS. ANTAR:  -- also --
13               THE COURT:  What's your objection, sir?
14               MR. LODICE:  My objection is she's saying things
15          with no proof --
16               MS. ANTAR:  I have proof, your Honor --
17               MR. LODICE:  -- so, like, she's saying I have --
18               MS. ANTAR:  -- and I would like to submit --
19               THE COURT:  Ma'am --
20               MR. LODICE:  -- money for gambling.
21               THE COURT:  -- you don't get to interrupt --
22               THE MARSHAL:  You're gonna get your turn to
23          talk.
24               THE COURT:  I have it, Marshal --
25               MR. LODICE:  It's hearsay.
26               THE COURT:  -- thank you, sir.
27               MR. LODICE:  It's hearsay.  Hearsay, I guess.
```

1          THE COURT:  What's the basis -- what's your

2     legal basis for the objection?

3          MR. LODICE:  Hearsay.  She's saying something

4     that's -- with no evidence.

5          THE COURT:  Hearsay would be an out-of-court

6     statement offered for the truth of the matter from a

7     third person.

8          MR. LODICE:  Okay.  Lack of evidence.

9          THE COURT:  Overruled.

10         MS. ANTAR:  Okay.  So, as I stated, I have

11    evidence of each and every one of these things.  He

12    also donated -- publicly donated money to a GoFundMe

13    campaign for an individual Jason, who actually

14    overdosed from a drug overdose.  And during the time

15    when Matthew was refusing to pay his Court-ordered

16    child support over the last seven months, him and his

17    parents donated a total of $230 to the funeral fund

18    of the -- of that individual who overdosed.  He also

19    went --

20         MR. LODICE:  Objection, your Honor.

21         THE COURT:  Basis of your objection, sir.

22         MR. LODICE:  My parents' donations have nothing

23    to do with my donations.

24         THE COURT:  So you're claiming it's not

25    relevant.

26         MR. LODICE:  It's not relevant.

27         THE COURT:  Sustained.

```
 1              MS. ANTAR:  I have evidence here, it says
 2       Matthew Lodice donated a total of $30 and --
 3              THE COURT:  That wouldn't be his parents, would
 4       it?
 5              MS. ANTAR:  -- his parents are --
 6              THE COURT:  -- so his objection is --
 7              MS. ANTAR:  -- Karen and Roy Bowers.
 8              THE COURT:  -- his objection is sustained as to
 9       his parents' information, as to what they donated.
10              MS. ANTAR:  Okay.
11              THE COURT:  Move on.
12              MS. ANTAR:  Furthermore, he went to a concert
13       which what he publicly posted about a TOOL concert
14       which he went to on February 23rd which the tickets
15       were starting at $122 per ticket.
16              MR. LODICE:  Objection, your Honor.
17              THE COURT:  Basis of --
18              MR. LODICE:  It was --
19              THE COURT:  -- the objection, sir.
20              MR. LODICE:  -- it was gifted from a friend.  I
21       -- I didn't pay for it.
22              THE COURT:  No.  It has to be an objection based
23       upon the rules of evidence, sir.
24              MR. LODICE:  I -- she's saying something that
25       I'm paying for that I didn't.  I don't know --
26              THE COURT:  You can --
27              MR. LODICE:  -- what you call that.
```

1        THE COURT:  -- cross-examine her on that, sir.

2        MR. LODICE:  Okay.

3        THE COURT:  But it's not --

4        MR. LODICE:  I apologize.

5        THE COURT:  -- a basis for an objection.

6   Overruled.

7        MS. ANTAR:  Furthermore, he publicly posted

8   about several jobs that he was doing, including video

9   postings of him renting equipment from Home Depot;

10  renting Home Depot tool equipment.  He told me

11  several times in e-mails that he is not going to pay

12  unless being forced to do so by a Judge.  He said he

13  will just -- he said also that he does not have to

14  comply with the Court order and that nothing will

15  happen to him and he cannot get arrested or get in

16  trouble for violating a Court order.  In addition to

17  that, like I was stating about spending a lot of

18  money on advertising for his company as you see here;

19  $500 off projects of three-thousand.  These are

20  fliers.  He actually --

21        THE COURT:  Are you offering --

22        MS. ANTAR:  -- paid --

23        THE COURT:  -- the document, ma'am?

24        MS. ANTAR:  -- I'm sorry?

25        THE COURT:  Are you offering that document?

26        MS. ANTAR:  Yes, I am.

27        THE COURT:  Show the opposing party the

1        document.

2               MR. LODICE:  I see it.

3               THE COURT:  Being offered, sir.

4               MS. MORROW:  I seen it.

5               MR. LODICE:  All right.

6               THE COURT:  Any objection --

7               MR. LODICE:  Do you want me to take it?

8               THE COURT:  Well, you have to look at it, sir.

9               MR. LODICE.  Oh.  Yes, I know this.

10              THE COURT:  It's called a courtesy.  She's

11       offering it.  She'd like the Court to see it, sir --

12              MR. LODICE:  Okay.

13              THE COURT:  -- as a document and a full exhibit.

14       Do you have any objection to that being marked as an

15       exhibit?

16              MR. LODICE:  No.

17              THE COURT:  Okay.  Without objection, it becomes

18       Plaintiff's 1.

19              CLERK IMME:  Plaintiff's 1, your Honor.

20              THE COURT:  Thank you.  Please continue, ma'am.

21              MS. ANTAR:  So I also would like to enter this

22       as an exhibit, which is the certificate of

23       organization for his limited liability company which

24       was filed on April 16th, 2021, which lists him as the

25       sole owner of the company.

26              THE COURT:  Show the gentleman.  Also offering

27       that document, sir.  Any objection to that being

1      offered --

2              MR. LODICE:  No, your Honor.

3              THE COURT:  -- being made a full exhibit?

4              MR. LODICE:  No.  This is accurate.

5              THE COURT:  Okay.

6              CLERK IMME:  Plaintiff's 2, your Honor.

7              THE COURT:  Plaintiff's 2, Mr. Clerk.

8              CLERK IMME:  Thank you, sir.  I wasn't -- I

9      was saying to sir to him, not you.

10             THE COURT:  Please continue, ma'am.

11             MS. ANTAR:  I also wanted to submit this as a

12     exhibit.  I had requested for him to purchase some

13     underwear for our child since I haven't received

14     child support in so long.  And he stated that he was

15     not going to be purchasing -- he wasn't going to be

16     giving me the money.  But he then purchased it and

17     had it shipped to our home via Amazon.  This is the

18     package that it came to -- it came in.  So I just

19     wanted to show that he does have the ability to pay

20     but he will not pay child support directly.  He'll

21     pay for items and have them shipped to my residence

22     for the child but is deliberately refusing to pay the

23     child support.  And this is the tracking number

24     information which can be traced to see that he was

25     the one who made that purchase.

26             THE COURT:  You offering the document, ma'am?

27             MS. ANTAR:  I'm offering it, yes.

1          THE COURT:  Sir, any objection to the offer?

2          MR. LODICE:  Objection.  Relevance.

3          THE COURT:  How's that relevant, ma'am?

4          MS. ANTAR:  It's relevant because I asked him if

5     he could provide me money to pay for the underwear we

6     needed for our child.  He refused to pay the money.

7     He also refused to pay the child support and instead

8     sent items to our home with the underwear.  So he

9     purchased and had it shipped to our home, but he is

10    showing the ability to pay.  I'm demonstrating that

11    he has the ability to pay, yet he's refusing to

12    follow the Court order.  And he was again ordered by

13    Judge Price-Boreland --

14         THE COURT:  So the --

15         MS. ANTAR:  -- in April.

16         THE COURT:  -- so the proffer is that the

17    document itself intends to show the Court that he has

18    monies in which to make the purchase.

19         MS. ANTAR:  Correct.

20         THE COURT:  Sir.  The document, is that an

21    original document?

22         MR. LODICE:  It's a packaging label.

23         THE COURT:  Okay.

24         MR. LODICE:  So no, it's not.

25         THE COURT:  All right.  Does it appear to be an

26    original packaging label?

27         MR. LODICE:  Yes.

1      THE COURT:  Okay.  And your objection is that

2  it's not relevant?

3      MR. LODICE:  It's not relevant, no.

4      THE COURT:  Okay.

5      MR. LODICE:  It's not relevant to --

6      THE COURT:  The objection's overruled.

7      MR. LODICE:  Okay.

8      THE COURT:  Plaintiff's exhibit --

9      CLERK IMME:  Plaintiff's 3, your Honor.

10     THE COURT:  -- 3.

11     MS. ANTAR:  I also have another document which

12  is showing the listing of the apartment which he has

13  been renting since December of 2021.  He -- he

14  continuously was lying about his address --

15     THE COURT:  Just identify the document.

16     MS. ANTAR:  -- the document is from hotpads.com

17  showing the address 23 Lyman Street, Apartment 3 in

18  New Britain, Connecticut.

19     MR. LODICE:  Objection, Your Honor.

20     MS. ANTAR:  -- which he currently is renting.

21  And it's showing the price of $950 a month.

22     THE COURT:  What's your objection to the

23  document, sir?

24     MR. LODICE:  That's not my address.

25     THE COURT:  So you're claiming that it's not

26  authentic or correct.

27     MR. LODICE:  It's not authentic.  Yeah,

1    authenticity.

2         MS. ANTAR:  So --

3         THE COURT:  Ma'am, what's your proffer that --

4         MS. ANTAR:  -- he stated at --

5         THE COURT:  -- the gentleman has claimed --

6    for the purpose of the record, the gentleman has

7    claimed an objection that the document that you're

8    holding is incorrect.  It's not valid.  It's not

9    accurate.

10        MS. ANTAR:  He stated at the beginning of this

11   hearing that his address was the address listed here.

12   And I also have -- he's in all of his prior motions

13   --

14        THE COURT:  Show him the --

15        MS. ANTAR:  -- has listed this.

16        THE COURT:  -- document, ma'am.  Show him the

17   document.

18        MR. LODICE:  This is for the upstairs apartment

19   that was rented out to another couple.  I live in the

20   second --

21        THE COURT:  No --

22        MR. LODICE:  -- floor apartment.

23        THE COURT:  -- the document itself, sir.  Is an

24   original or a copy?

25        MR. LODICE:  Of what?  Of what --

26        THE COURT:  Of whatever --

27        MR. LODICE:  -- it is?

1          THE COURT:  -- she proposes that it is.

2          MR. LODICE:  Yes.  It is original of what she's

3     -- it's an original copy of the third-floor post, but

4     not where I live.  So yes, it is, to the post.

5          THE COURT:  And the offer made by her was that

6     it's the address by which you reside at.

7          MR. LODICE:  Yes.  But that's not right.

8          THE COURT:  Okay.  Then the objection is

9     sustained; it's ID only.  Bring it in.  ID only, Mr.

10    Clerk.

11         CLERK IMME:  Plaintiff's 4, ID only, your Honor.

12         THE COURT:  Thank you.

13         MS. ANTAR:  I have another document I'd like to

14    submit.  It's e-mail -- it's e-mail communications

15    between the defendant and I from March 7th of 2022.

16    He stated no money --

17         THE COURT:  Don't tell me what it says.

18         MS. ANTAR:  I'm sorry?

19         THE COURT:  Just tell me that it's a document.

20         MS. ANTAR:  It's a document.

21         THE COURT:  You can't read from the document not

22    yet in evidence, ma'am.

23         MS. ANTAR:  Okay.  Okay.

24         THE COURT:  You have to just identify the

25    document, tell me what it is, show it to the

26    gentleman the opposing party.

27         MS. ANTAR:  It's an e-mail --

1          THE COURT:  That's ID only.

2          MS. ANTAR:  -- communication.

3          THE COURT:  Thank you.  She's offering the

4     document, sir.

5          (Whereupon there was a pause in the

6     proceedings.)

7          MR. LODICE:  Objection 'cuz it's incomplete.

8     It's part of a conversation.  Not the conversation.

9     So it's cherry picked.

10          THE COURT:  Not the complete conversation?

11          MR. LODICE:  Not the complete conversation.

12          THE COURT:  It's only a part of it?

13          MR. LODICE:  It's only a part of it.

14          THE COURT:  Wanna be heard on the --

15          MS. ANTAR:  Your Honor, that is --

16          THE COURT:  -- on the proffer, ma'am?

17          MS. ANTAR:  Your Honor, that is the complete.

18     And, also, there is only one thing in there which I

19     wanted to highlight, which is our communication on

20     the first page.  And that shows the whole full

21     conversation.  To give context, however, I did want

22     to mention on the first page there --

23          THE COURT:  Is that the complete conversation?

24          MS. ANTAR:  It is.  And I also have more copies

25     of it as well.

26          THE COURT:  More copies of the same

27     conversation, ma'am?

```
1          MS. ANTAR:  As it continued from the same day.
2          THE COURT:  Do you have the complete
3     conversation?
4          MS. ANTAR:  If I can see my paper, I can tell
5     you.  He won't give it back though.
6          MR. LODICE:  She -- she can have it back.  I
7     have the full conversation here printed.
8          THE COURT:  Okay.
9          MS. ANTAR:  So the conversation here, the one
10    that I'm showing --
11         THE COURT:  As to your objection that it's not
12    the complete conversation, sir, is sustained.  You
13    wanna mark that, ma'am; only for that document I'll
14    mark it as ID.  If you wanna make a proffer as to the
15    full conversation, you may do so.
16         MS. ANTAR:  I do.  I have it right here.
17         THE COURT:  Okay.  Show it to the gentleman.
18         MR. LODICE:  This is the same paper.
19         THE COURT:  Pardon, sir?
20         MR. LODICE:  These are --
21         MS. ANTAR:  The full conversation is there.  If
22    you flip through the pages, you'll see it.  It goes
23    in order.  It's printed from Gmail.
24         MR. LODICE:  Sorry, your Honor.  Give me one
25    second.  Still not the full conversation, your Honor.
26    Objection.
27         THE COURT:  Pardon, sir?
```

1      MR. LODICE:  It's still --

2      THE COURT:  Pardon?

3      MR. LODICE:  -- not the full conversation, so I

4  still object.

5      MS. ANTAR:  It is the full conversation.  I

6  printed it directly from Gmail and he has nothing to

7  show otherwise that it's not.  I -- I -- I printed

8  that directly from my e-mail communication so him

9  saying it's not the full conversation is completely

10  incorrect.

11      MR. LODICE:  I also have the printed e-mail

12  thread in its entirety and the conversation ends at

13  9:16.  Meanwhile, hers ends at 8:54.

14      THE COURT:  When does yours end?

15      MR LODICE:  9:16 a.m.  So there's also, one,

16  two, three, four, five, six --

17      MS. ANTAR:  Your Honor, he's not looking at it

18  correctly.  It --

19      MR. LODICE:  -- multiple --

20      MS. ANTAR:  -- actually shows everything there

21  and if he would let me see it, I can show you that it

22  does.  And, also, I'm not referring to the -- to our

23  communications after that 'cuz none of that has

24  anything to do with the financial issue.

25      THE COURT:  Complete conversation, ma'am.  He's

26  objecting that it's not the complete conversation.

27      MS. ANTAR:  It is.  It is.  Can I please see my

1      document?

2           THE COURT:  And if it's not the complete

3      conversation, the objection is sustained.  It'll be

4      marked for ID.

5           MS. ANTAR:  I have this conversation which goes

6      on until 9:06 a.m.  I'm not sure what he's referring

7      to.  But again, if it's a separate conversation, it's

8      separate from this one which was starting at 8:40

9      a.m. on that day.

10          THE COURT:  You offering it, ma'am?

11          MS. ANTAR:  I am.  I'm offering this

12     conversation which ends at 9:06 a.m. which is with

13     the last thing that he said.

14          THE COURT:  Okay.  Show it to the gentleman.

15          MR. LODICE:  Yeah.  I still object.  It's still

16     the same thing.  The same --

17          THE COURT:  Okay.  Overruled.

18          MR. LODICE:  -- point.

19          THE COURT:  Full exhibit.  End of the

20     conversation.  The objection's overruled.

21          CLERK IMME:  You got it.

22          THE COURT:  Full.  Plaintiff's.

23          MS. ANTAR:  I also wanted to --

24          CLERK IMME:  Plaintiff's 5, your Honor.

25          MS. ANTAR:  -- show this --

26          THE COURT:  5.

27          MS. ANTAR:  -- documentation of a screenshot of

1        him working and using -- utilizing tools that he

2        rented from Home Depot.

3            THE COURT:  Any objection to that coming in,

4        sir?

5            MR. LODICE:  No, your Honor.

6            THE COURT:  6 please.  Plaintiff's.

7            CLERK IMME:  You got it, your Honor.

8        Plaintiff's 6.

9            MS. ANTAR:  I wanna show a check that he wrote

10       out of his business account which he also failed to

11       disclose on his financial disclosure for advertising

12       that he paid for his company.

13           MR. LODICE:  Mm-hmm.

14           THE COURT:  Any objection, sir?

15           MR. LODICE:  No, your Honor.

16           THE COURT:  No objection.

17           CLERK IMME:  7, your Honor.

18           THE COURT:  Plaintiff's 7.

19           CLERK IMME:  7.

20           MS. ANTAR:  I'd also like to show evidence of

21       him making a payment to friends on Venmo on January

22       9th, 2022, at 1:28 a.m. for the pot.

23           THE COURT:  Any objection to that coming in,

24       sir?

25           MR. LODICE:  I object.  There's no -- there's no

26       financial on that.  There's nothing financial on

27       that.  It's just --

1          MS. ANTAR:  Your Honor, Venmo is actually --

2     allows you to publicly view when people send other

3     people money.  So it states Matthew Lodice payed

4     Samantha --

5          THE COURT:  Don't tell me what it says, ma'am.

6          MS. ANTAR:  I'm sorry.

7          THE COURT:  You can't read from a document not

8     in evidence.

9          MS. ANTAR:  It's a documentation stating --

10    showing evidence of Matthew making payments to other

11    people during the time when he has not paid one cent

12    of his Court ordered child support.

13         THE COURT:  Okay.  Objection, sir?

14         MR. LODICE:  That -- no objections.  Just take

15    it all.

16         THE COURT:  Okay.  Over objection.

17         CLERK IMME:  8.

18         MS. ANTAR:  I also have another document I'd

19    like to --

20         THE COURT:  Plaintiff's 8.

21         MS. ANTAR:  -- give, which is proof of -- proof

22    of his payments to a GoFundMe Campaign for the

23    individual who passed away.

24         MR. LODICE:  Objection because it has my

25    mother's high-lighted, but, I mean, just take

26    whatever.  It's fine, no objection.

27         THE COURT:   No objection, sir?  Without

1          objection.  Plaintiff's.

2               CLERK IMME:  Plaintiff's 9, your Honor.

3               THE COURT:  9.

4               MS. ANTAR:  This is also showing the proof of

5          the cost of the tickets for the event that he

6          attended during the time.

7               MR. LODICE:  Objection.  That has no merit to

8          this case.

9               THE COURT:  What's the --

10              MR. LODICE:  Relevance.

11              THE COURT:  -- basis of your objection, sir?

12              MR. LODICE:  Relevance.

13              THE COURT:  How's it relevant, ma'am?

14              MS. ANTAR:  It's relevant because he posted on

15         February 23rd --

16              THE COURT:  Don't show me the document, ma'am.

17         Explain it please.

18              MS. ANTAR:  The document is relevant because

19         it's showing that he has the ability to pay child

20         support because the concert he attended started at

21         122.45 per ticket.

22              MR. LODICE:  And nothing --

23              MS. ANTAR:  And that's what this demonstrates

24         here.

25              THE COURT:  What's your objection, sir?

26              MR. LODICE:  There's nothing there that says I

27         paid for those tickets.  So what does that price of

```
1        the ticket matter?
2              THE COURT:  Okay.
3              MS. ANTAR:  I also have --
4              THE COURT:  The objection --
5              MS. ANTAR:  -- another document.
6              THE COURT:  The objection is overruled.  Mark it
7        as plaintiff's.  He can cross on it.
8              MS. ANTAR:  This document is also another from
9        the same day when he was bragging about the concert.
10             CLERK IMME:  10, your Honor.
11             MR. LODICE:  That's fine.
12             THE COURT:  Thank you.  Any objection, sir?
13             MR. LODICE:  No, your Honor.
14             THE COURT:  11 please.  Plaintiff's.
15             CLERK IMME:  11, your Honor.
16             MS. ANTAR:  Here's another e-mail showing his
17       ability to pay.
18             THE COURT:  What's the document, ma'am?
19             MS. ANTAR:  It's an e-mail.  E-mail
20       communication.
21             MR. LODICE:  Objection.  Relevance for this.
22             THE COURT:  Proffer, ma'am.  How is it relevant?
23             MS. ANTAR:  It's relevant because it shows his
24       ability to pay.
25             MR. LODICE:  How?
26             MS. ANTAR:  May I see the --
27             THE COURT:  No.
```

```
 1            MS. ANTAR:  -- document please.
 2            THE COURT:  You don't get to question each
 3       other.
 4            MR. LODICE:  Oh.
 5            THE COURT:  You're looking at a document.
 6       You've objected to it as it not being relevant.  I
 7       asked her for her proffer as to how it's relevant.
 8            MR. LODICE:  Okay.
 9            THE COURT:  She says it shows as to your ability
10       to pay.
11            MR LODICE:  I -- but it doesn't.
12            THE COURT:  Well, then you get to cross her on
13       it.
14            MR. LODICE:  Okay.
15            THE COURT:  The objection's overruled.  Make it
16       a full exhibit.
17            CLERK IMME:  12, your Honor.
18            THE COURT:  Thank you.
19            MS. ANTAR:  So I have another e-mail of him
20       asking me to go to dinner -- to have dinner with him,
21       which also demonstrates the ability to pay.
22            MR. LODICE:  Why 'cuz I could eat?  It's fine.
23            THE COURT:  No objection, sir?
24            MR. LODICE:  No objection, your Honor.
25            THE COURT:  Plaintiff's full.
26            CLERK IMME:  13, your Honor.
27            THE COURT:  Thank you, sir.
```

```
1              MS. ANTAR:  Another e-mail of him asking to set
2         up a date which is also showing the ability to pay.
3              MR. LODICE:  I'll be able to cross-examine
4         these, or --
5              THE COURT:  Pardon me, sir.
6              MR. LODICE:  -- cross-examine these -- I'll be
7         able to cross-examine these, so yeah.  I have no
8         objections.
9              THE COURT:  No objection.  Plaintiff's --
10             CLERK IMME:  14, your Honor.
11             THE COURT:  Plaintiff's 14.
12             MS. ANTAR:  Also here, another e-mail
13        communication of him stating he's not going to pay
14        and the deliberate refusal to pay.
15             MR. LODICE:  This is fine.
16             THE COURT:  No objection, sir?
17             MR. LODICE:  No objection.
18             CLERK IMME: Plaintiff's 15, your Honor.
19             THE COURT:  Plaintiff's 15.
20             MS. ANTAR:  Another e-mail showing evidence that
21        he's been working this whole time.
22             THE COURT:  What's the document, ma'am?
23             MS. ANTAR:  It's e-mail.
24             THE COURT:  Thank you.
25             (Whereupon there was a pause in the
26        proceedings.)
27             MR. LODICE:  That's fine.  No objections.
```

1          What numbers?  Sorry.

2               CLERK IMME:  This'll be plaintiff's 16.

3               MR. LODICE:  16.

4               THE COURT:  Plaintiff's 16.  Full exhibit.

5               MS. ANTAR:  It's another communication in the

6          OurFamilyWizard app.

7               (Whereupon there was a pause in the

8          proceedings.)

9               THE COURT:  Any objections --

10              MR. LODICE:  No objection, your Honor.

11              THE COURT:  -- sir?  No objection?

12              MR. LODICE:  No.

13              CLERK IMME:  17, your Honor.

14              THE COURT:  Plaintiff's 17.

15              MS. ANTAR:  Another FamilyWizard communication

16         app or copy.

17              MR. LODICE:  No --

18              THE COURT:  Any objection, sir?

19              MR. LODICE:  -- objections.

20              CLERK IMME:  Plaintiff's 18, your Honor.

21              THE COURT:  No objection, sir?

22              MR. LODICE:  No objections.

23              THE COURT:  Plaintiff's 18.

24              CLERK IMME:  Thank you, your Honor.

25              MS. ANTAR:  This is another communication in the

26         OurFamilyWizard app.

27              MR. LODICE:  No objections.

```
 1              THE COURT:  Okay.  Plaintiff's.

 2              CLERK IMME:  19, your Honor.

 3              THE COURT:  Thank you.

 4              MS. ANTAR:  Another OurFamilyWizard

 5         communication.

 6              MR. LODICE:  No objections.

 7              CLERK IMME:  20, your Honor.

 8              THE COURT:  Plaintiff's 20.

 9              MS. ANTAR:  It's another e-mail communication.

10              MR. LODICE:  Definitely no objection to that.

11              THE COURT:  No objection, sir?

12              MR. LODICE:  No, sir.

13              THE COURT:  21.

14              CLERK IMME:  Two one, your Honor.

15              THE COURT:  21.  Plaintiff's please.

16              MS. ANTAR:  This is a copy of Venmo payments

17         that he has made demonstrating his ability to pay.

18              MR. LODICE:  Objection.  Relevance.

19              THE COURT:  How's that relevant, ma'am?

20              MS. ANTAR:  It demonstrates that he's had his --

21         the ability to pay his Court ordered child support

22         this entire time.  Yet in the past seven months still

23         refuses despite having the ability to pay.

24              MR. LODICE:  But -- this is all before she

25         filed.  This is me paying her.

26              THE COURT:  Okay.  The objection's overruled.

27         Plaintiff's 22.  You can cross on it, sir.
```

1           MR. LODICE:  Yeah, I know.  I forgot.  I'm
2     sorry.
3           MS. ANTAR:  I also have another e-mail
4     communication --
5           MR. LODICE:  Wait.  Before she --
6           MS. ANTAR:  -- demonstrating his ability to pay.
7           MR. LODICE:  -- continues, what number is that?
8           THE COURT:  22.
9           MR. LODICE:  Sorry.  I --
10          THE COURT:  Any objection?
11          MR. LODICE:  No.  No objections.
12          THE COURT:  Plaintiff.
13          CLERK IMME:  23, your Honor.
14          THE COURT:  23.
15          MS. ANTAR:  Another e-mail communication showing
16     the ability to pay and the refusal to pay.
17          THE COURT:  How many more documents do you have,
18     ma'am?
19          MS. ANTAR:  I have a lot of documents.
20          THE COURT:  Perhaps we'll take our lunch early
21     and you can premark them all for ID.
22          MS. ANTAR:  Yes.
23          THE COURT:  Court takes its recess.  Premark
24     them ID only at this time.  And then you can
25     introduce them.
26          MS. ANTAR:  Okay.
27          THE COURT:  Sir, before we leave, in a contempt

1    proceeding you have the right to an attorney.  You

2    can ask for a continuance if you wish to hire your

3    own attorney.  You can ask for Court appointed

4    counsel if the Court finds that you're indigent,

5    subject to finding of contempt and the possibility of

6    incarceration today.  Or you can waive your right to

7    an attorney and you can represent yourself.  How are

8    you proceeding?

9        MR. LODICE:  I'll waive the right.

10       THE COURT:  You're gonna represent yourself,

11   sir?

12       MR. LODICE:  Yes, sir.

13       THE COURT:  Doing so freely and voluntarily?

14       MR. LODICE:  Yes, sir.

15       THE COURT:  Anyone make any threats or promises

16   to get you to do so?

17       MR. LODICE:  No, sir.

18       THE COURT:  Okay.  The matter is passed until 2

19   o'clock.  All your further documents, you're gonna

20   mark it starting at what number?

21       CLERK IMME:  Starting at 24, your Honor.

22       THE COURT:  Starting at 24.  They're all ID

23   only, they have not come in yet; premark them.  Sir.

24       MR LODICE:  Can --

25       THE COURT:  You may have an opportunity through

26   support enforcement to take a look at any of the

27   documents.  Any of those documents that you do not

1    object to will come in fully as full exhibits.  Any

2    that you do, we'll hold a hearing on them.

3         MR. LODICE:  Will I have a chance to look at

4    them after they get submitted?

5         THE COURT:  They're not getting admitted, sir.

6    They're being marked for ID only.  You're gonna get

7    an opportunity to look at them.

8         MR. LODICE:  Okay.

9         THE COURT:  Any ones that you do not oppose will

10   come in as full exhibits.  We'll try and shorten this

11   up.

12        MR. LODICE:  Okay.

13        THE COURT:  Any ones that you do; we'll hold

14   hearings on them.

15        MR. LODICE:  Thank you, your Honor.

16        THE COURT:  Thank you.

17        ATTY. ZAK:  Your Honor.

18        THE COURT:  Get them all premarked.

19        ATTY ZAK:  Before you go off the bench, are

20   Attorney Kylin and I released or would you --

21        THE COURT:  You are.

22        ATTY ZAK:  -- like us to remain?

23        THE COURT:  I have one other matter which is

24   number three.  Is that being marked?

25        MS. MORROW:  That's a marking, your Honor.

26        THE COURT:  Thank you.  Parties excused 'til 2

27   o'clock.

1          MR. LODICE:  Thank you, your Honor.

2          THE COURT:  Get them premarked, ma'am.

3          ATTY ZAK:  Thank you.

4          MS. ANTAR:  Thank you.

5          THE COURT:  And then we're gonna have the

6     gentleman take a look at each of those documents on

7     the record.

8          MS. ANTAR:  Okay.

9          CLERK IMME:  We'll do that marking --

10         THE COURT:  Counsel --

11         CLERK IMME:  -- at two --

12         THE COURT: -- that's appointed --

13         CLERK IMME: -- just to get it out the way.

14         THE COURT: -- thank you for your services --

15         CLERK IMME:  We'll do the marking --

16         ATTY ZAK:  Okay.

17         THE COURT:  -- you're excused from court today.

18         CLERK IMME: -- right away at two just to get it

19     out of the way.

20         THE COURT:  Court's in recess.

21         (Whereupon the case was passed and recalled.)

22         THE COURT:  You have them premarked?

23         MS. MORROW:  Yes, your Honor.  They're

24     premarked; however, Mr. Lodice has not finished

25     reviewing all of them.

26         THE COURT:  How much more time do you need?

27         MR. LODICE:  I -- I just started going through

1      them at like 2:15 when she finished 'em.

2           MS. MORROW:  We have one --

3           THE COURT:  How much time do you need?

4           MR. LODICE:  How many more are there?

5           MS. MORROW:  29 more to look at.

6           MR. LODICE:  Probably 15 minutes, I would

7      assume.

8           THE COURT:  How much, sir?

9           MR. LODICE:  I -- I -- I don't know -- I don't

10     know what the evidence is to read through it, so I

11     would say 15 minutes.

12          THE COURT:  Okay.  Complete reviewing the

13     exhibits that are being offered.  Court will come

14     back in at 3:15 and we're gonna continue the hearing.

15          MR. LODICE:  Okay.

16          MS. MORROW:  Thank you.

17          THE COURT:  Recess.

18          THE MARSHAL:  All rise.  Court's back in a

19     recess.

20          (Whereupon the case was passed and recalled.)

21          THE COURT:  All the exhibits that are premarked

22     without objection.

23          MS. MORROW:  These are non-objected.

24          THE COURT:  No objection to those documents,

25     sir?  As premarked.  Sir?

26          MR. LODICE:  Sorry, sir?

27          THE COURT:  No objection to the documents being

1          offered that have been premarked?

2               MR. LODICE:  I can't hear you.  One more time.

3               THE COURT:  Sure.  Any objection to the

4          documents that just came forward that were premarked?

5               MR. LODICE:  No.  No.

6               THE COURT:  Thank you.  So marked full.

7               CLERK IMME:  Thank you, your Honor.  Plaintiff's

8          24 through 76, your Honor.

9               THE COURT:  Thank you.

10               CLERK IMME:  Thank you.  Full, your Honor?

11               THE COURT:  Any -- full.  Any documents being

12          offered that are presently marked ID that are

13          objected to?

14               MS. MORROW:  Yes, your Honor.

15               THE COURT:  How many?

16               MS. MORROW:  There's -- one, two, three -- nine.

17               THE COURT:  Nine.  Take one at a time.  Show

18          them to the gentleman.  I'd like to know the

19          gentleman's objection to each of the documents.  Give

20          me the number on it please.  Marked for ID at this

21          time.

22               MS. MORROW:  This is ID number 26.

23               MR. LODICE:  Relevance and foundation.

24               THE COURT:  What's the document?

25               MR. LODICE:  It's a document of 2020 income

26          which has no relevance to this case.  And the

27          foundation is where did she obtain these illegally.

1          THE COURT:  You offer that document, ma'am?

2          MS. ANTAR:  Yes, I did.  That was not obtained

3      illegally.  I was actually the manager of that

4      company and I was able to get that because I was

5      given access to it and --

6          THE COURT:  What does the document indicate?

7      What --

8          MS. ANTAR:  The document --

9          THE COURT:  -- is the document?

10         MS. ANTAR:  The document is income from 2020

11     which is also relevant because this is our first time

12     in --

13         THE COURT:  Whose income?

14         MS. ANTAR:  -- court since -- Matthew's income.

15         THE COURT:  And the document is what document?

16         MS. ANTAR:  It's a list of his sales and

17     commissions from the company where he was working as

18     a salesman from 2018 'til 2020.  And he actually --

19     this is our first time being in court regarding this

20     child support matter since 2019 when it was first

21     ordered.  So it is relevant because it's showing --

22     it shows that he has the ability to pay because --

23         THE COURT:  It shows he has income.

24         MS. ANTAR:  -- he's been working.

25         THE COURT:  The document shows that he has

26     income.

27         MS. ANTAR:  Correct.

1          THE COURT:  Okay.

2          MR. LODICE:  In 2020 from a past job.  This is

3     for contempt since December of this year.  So it's --

4     I feel like it's -- there's no relevance.

5          MS. ANTAR:  It's --

6          THE COURT:  Well, let's look --

7          MS. ANTAR:  -- illustrating that --

8          THE COURT:  Hold on.  Support enforcement,

9     what's the period of time alleged under this

10    contempt?

11         MS. MORROW:  February 9th, 2021, to June 1st,

12    2022.

13         THE COURT:  Okay.  The objection's sustained.

14    It's ID only.  Hand it to my marshal, who's gonna

15    hand it to my clerk.  Period of time is from February

16    9th, 2021, to 6/1/2022.  The objection's sustained.

17         MR. LODICE:  Thank you.

18         THE COURT:  Not relevant as to period of time.

19    Next document that's challenged.

20         MS. MORROW:  Next matter is or, I'm sorry, your

21    Honor.  The next number is 34.

22         MR. LODICE:  The objection --

23         THE COURT:  What's the --

24         MR LODICE:  -- on this was --

25         THE COURT:  -- document?

26         MR. LODICE:  I'm sorry.

27         THE COURT:  Identify the document for me.

1            MR. LODICE:  You want me to --

2            THE COURT:  Ma'am.

3            MR LODICE:  -- I don't understand.  Me or her?

4            THE COURT:  Miss Morrow.

5            MS. MORROW:  It --

6            THE COURT:  Identify the document for me.

7            MS. MORROW:  -- appears to be a text message,

8     your Honor.

9            THE COURT:  Okay.  Sir?

10           MR. LODICE:  The objection is relevance.  This

11    has to do with signing up Angelina for a sport.

12           THE COURT:  Your claim, ma'am.

13           MS. ANTAR:  So in this one it is relevant

14    because it shows that he's lying about his income and

15    financing.

16           THE COURT:  No.  Determine -- the Court

17    determines credibility.  As to the document itself.

18           MS. ANTAR:  So --

19           THE COURT:  Why are you --

20           MS. ANTAR:  -- it's --

21           THE COURT:  -- offering the document?

22           MS. ANTAR:  -- in the document he's stating that

23    he will not pay for any of the needs for our child.

24    It's relevant because it shows refusal to financially

25    support the child in any way.

26           THE COURT:  Between the period of time of

27    February 9th, 2021, and 6/1/2022?

1      MS. ANTAR:  Correct.

2      MR. LODICE:  It shows -- it's discussing about

3  signing up for a sport.  It has nothing to do with me

4  saying I'm not gonna to pay for anything.

5      THE COURT:  Okay.  The objection's sustained.

6  ID only.  Give it to my marshal please.  Sustained as

7  to relevance.

8      MR. LODICE:  Thank you, your Honor.

9      THE COURT:  Next document.  Please identify it.

10      MS. MORROW:  Next one is number 40 which appears

11  to be an e-mail exchange between the parties.

12      MR. LODICE:  Number 34?  34 was --

13      MS. MORROW:  That was --

14      MR LODICE:  -- was an objection.

15      MS. MORROW:  -- that was 34 that just went

16  forward.

17      MR. LODICE:  Oh.  Okay.

18      MS. MORROW:  This is number 40.

19      MR. LODICE:  Okay.  I'm sorry.

20      MS. MORROW:  That's okay.

21      MR. LODICE:  Thank you.

22      THE COURT:  Basis of the objection, sir?

23      MR. LODICE:  40 was the relevance on this one.

24  This also has nothing to do with this case.

25      THE COURT:  Your claim, ma'am?

26      MS. ANTAR:  May I please see the document?

27      MR. LODICE:  Yeah.

1      MS. ANTAR:  So this is relevant because it

2      refers in this communication exchange, he refers to

3      child support as an extra money for him.  He claims

4      his bills are more important --

5          THE COURT:  You can't read me the document.  You

6      have to make me an offer as to why the document may

7      be relevant at over --

8          MS. ANTAR:  It --

9          THE COURT:  -- over his objection to the

10     document, ma'am.

11         MS. ANTAR:  It shows ability to pay.  And it's

12     also relevant because it shows bad faith and it shows

13     the ability to pay and willingness only to under

14     force by the Court.

15         THE COURT:  And your objection again, sir?

16         MR. LODICE:  That's not --

17         THE COURT:  As to the document.

18         MR. LODICE:  -- that's not what it shows.  But I

19     guess put it in and we'll go through it after.

20         THE COURT:  No.  We don't put it in go through

21     it after.  We do it now.  Do you have an objection?

22         MR. LODICE:  It does not show that, that's --

23     so I hold my same objection.

24         THE COURT:  As to its relevance?

25         MR. LODICE:  As to its relevance.

26         THE COURT:  Sustained.  ID only.  Next document.

27      Identify it please.

1          MS. MORROW:  Number 41, which is another e-mail

2     exchange between the parties.

3          MR. LODICE:  This isn't between the parties, so

4     my objection to --

5          MS. MORROW:  It's --

6          MR. LODICE:  -- this is hearsay.  This is

7     between her and someone else.

8          MS. MORROW:  I apologize, your Honor.  It's an

9     e-mail between the plaintiff and a Fred Anthony.

10          THE COURT:  That would be hearsay.  The

11     objection's sustained.  ID only.

12          CLERK IMME:  Okay.

13          MS. MORROW:  Next is number 42 which is a text

14     message exchange.

15          THE COURT:  Thank you.

16          MR. LODICE:  This is the same objection as

17     before.  It's about the soccer; signing her up for

18     soccer.  Same objection.  Relevance.

19          MS. ANTAR:  It's not the same.  It's actually a

20     different document and it's showing his ability to

21     provide and pay.

22          THE COURT:  Does it deal with soccer or signing

23     her up, ma'am?

24          MS. ANTAR:  It's -- he states, makes statements

25     --

26          THE COURT:  Don't tell me --

27          MS. ANTAR:  -- in here --

```
 1              THE COURT:  -- what he says --

 2              MS. ANTAR:  -- not just soccer –

 3              THE COURT:  -- you can't -- you cannot --

 4              MS. ANTAR:  -- not just soccer.

 5              THE COURT:  -- you cannot read me the document.

 6              MS. ANTAR:  I'm not reading.  I'm just stating

 7         it does state -- he makes statements in there which

 8         show his ability to provide for and pay for the

 9         child.

10              THE COURT:  Okay.  The objection's sustained.

11         ID please.  Next document.

12              MS. MORROW:  Number 45 which is another e-mail

13         exchange between the parties.

14              MR. LODICE:  Objection.  Relevance to this one.

15              THE COURT:  What's the basis of your objection

16         as to relevance?

17              MR. LODICE:  It's me asking her to come for

18         dinner back in April.

19              THE COURT:  Ma'am?  Your offer.

20              MS. ANTAR:  It shows the ability to pay.

21              THE COURT:  How does that document show an

22         ability to pay?

23              MS. ANTAR:  The fact that he's asking for dates

24         with me, showing that he can afford to provide

25         dinners is showing ability to pay.

26              THE COURT:  The objection's sustained.  ID only.

27              CLERK IMME:  Thank you.
```

```
 1            THE COURT:  Next document.
 2            MS. MORROW:  Number 46 is an e-mail from the
 3       plaintiff with the -- the OurFamilyWizard.
 4            MR. LODICE:  The objection is relevance.  This
 5       is just an e-mail for the signing for the app that
 6       was Court ordered to set us up for.
 7            MS. ANTAR:  It shows his ability to pay and the
 8       fact that he paid for this app which is over $200.
 9            MR. LODICE:  I was Court ordered to pay that.
10            THE COURT:  The objection's sustained.  ID only.
11       Next document.
12            MS. MORROW:  Number 66 which is an e-mail
13       exchange between the parties.
14            MR. LODICE:  My objection was relevance to this.
15       It's her asking me if I care about her and if I
16       should be taking care of my baby mama.  Which is what
17       she said.
18            THE COURT:  Proffer please, ma'am.
19            MS. ANTAR:  The full exchange is not the entire
20       thing that we're focusing on in this.  It's only
21       certain parts of it where he references the ability
22       to pay and he documents in there his ability to pay.
23       And to --
24            THE COURT:  Okay.  The objection is sustained.
25       ID only.  Marshal, would you take that document and
26       bring it up to my clerk please.
27            THE MARSHAL:  Yes, your Honor.
```

1        THE COURT:  Thank you, sir.

2        MS. MORROW:  The last --

3        THE COURT:  ID only, Mr. Clerk.

4        CLERK IMME:  You got it.  Thank you, your Honor.

5        MS. MORROW:  -- number --

6        CLERK IMME:  Thank you, sir.

7        MS. MORROW:  -- 71 which is another e-mail

8    exchange between the parties.

9        MR. LODICE:  Yeah.  Objection this was

10   relevance.  This is about visitation.  Us --

11       MS. ANTAR:  It's relevant because --

12       MR. LODICE:  -- e-mail exchange.

13       MS. ANTAR:  -- it shows bad faith.  It shows

14   he's also lying about his address.

15       THE COURT:  The Court once again determines

16   credibility, ma'am.  What's the purpose of the

17   proffer of the document?

18       MS. ANTAR:  Stating he will not pay unless

19   forced in court.

20       THE COURT:  Okay.  The objection's sustained.

21   ID only.  Marshal, please.  Thank you, sir.  Any

22   other documents that were challenged?

23       MS. MORROW:  That's all that they were able to

24   get through, your Honor.

25       THE COURT:  Okay.  Any other documents that

26   you're offering today, ma'am?

27       MS. ANTAR:  Yes.

1        THE COURT:  What are they?

2        MS. ANTAR:  Should I give 'em to -- each one --

3        THE COURT:  You have to identify the document --

4        MS. ANTAR:  So this one is --

5        THE COURT:  -- ma'am.  You have to make the

6     proffer to the Court.  You have to show the exhibit

7     to the opposing party and then we determine on

8     whether or not there's an objection.  How many

9     further exhibits do you have?

10       MS. ANTAR:  Um.

11       THE COURT:  As the Court has given you three and

12    a half hours to premark your exhibits.

13       MS. ANTAR:  Nine.

14       THE COURT:  Okay.  Identify them.

15       MS. ANTAR:  Okay this one --

16       THE COURT:  One at a time.

17       MS. ANTAR:  -- is an e-mail exchange between the

18    two parties and it's relevant to this because it's

19    showing that he's stating he will only pay if forced.

20       THE COURT:  Show it to the gentleman.

21       MR. LODICE:  This is fine.

22       THE COURT:  Wanna be heard on that, sir?

23       MR. LODICE:  What's that?

24       THE COURT:  You wanna be heard on the document

25    being offered?

26       MR. LODICE:  I said I had no objections.

27       THE COURT:  Okay.  Full exhibit, Mr. Clerk.

1          CLERK IMME:  You got it, your Honor.

2          MS. MORROW:  This is number 77.

3          CLERK IMME:  Seventy --

4          MS. MORROW:  Seven.

5          CLERK IMME:  -- seven.  Thank you.

6          THE COURT:  Next document, ma'am.

7          MS. ANTAR:  The next document is a paid in full

8      invoice that the defendant -- showing that he paid

9      for ads that he purchased in -- from my business and

10     showing his ability to pay.

11         MR. LODICE:  Objection.  Relevance.  It's from

12     last September.

13         MS. ANTAR:  It's within the timeframe.

14         THE COURT:  You claim it's not within the

15     relevant time, sir?

16         MR. LODICE:  Yeah.  The -- the relevant time was

17     from December 2020 -- or February 2022 you said.

18         THE COURT:  February 9th, '21, to June 1, 2022.

19         MR. LODICE:  Oh.  February 9th, 2021.  Oh.

20         THE COURT:  Yes, sir.

21         MR. LODICE:  Then, yeah, that's fine.

22         THE COURT:  Okay.  Without objection.

23         CLERK IMME:  Full, your Honor.

24         THE COURT:  Full.  Thank you --

25         CLERK IMME:  78?

26         THE COURT:  -- Marshal.

27         MS. MORROW:  78.

1          CLERK IMME:  Thank you, Dawn.  Thank you, sir

2      marshal.

3          MS. ANTAR:  Number 79 is another paid in full

4      invoice showing his ability to pay for his business

5      advertisements.

6          MR. LODICE:  That's fine.  It's the same.

7          THE COURT:  Without objection.

8          MR. LODICE:  No objections.  Oh, sorry.

9          THE COURT:  Full exhibit.

10         CLERK IMME:  79?

11         MS. MORROW:  Correct.

12         CLERK IMME:  Full, your Honor.

13         THE COURT:  Thank you.  Thank you, marshal.

14         CLERK IMME:  Thank you, sir.

15         THE COURT:  Next document please.

16         MS. ANTAR:  So the next document is an e-mail

17     exchange between the two of us in which he's again

18     stating he will not pay unless forced in court.

19         (Whereupon there was a pause in the

20     proceedings.)

21         MR. LODICE:  This is -- this is fine.

22         THE COURT:  No objection, sir?

23         MR. LODICE:  No objections, your Honor.

24         THE COURT:  Full exhibit please.

25         CLERK IMME:  Thank you, your Honor.  Number 80

26     for the plaintiff, your Honor.

27         (Whereupon there was a pause in the

1    proceedings.)

2         MS. ANTAR:  This one is exhibit 81.  Is an e-

3    mail exchange which also demonstrates that his --

4    he's unwilling to pay unless forced in court, as well

5    as lying about his address.

6         (Whereupon there was a pause in the

7    proceedings.)

8         MR. LODICE:  Objection.  There's nothing here

9    about me willing to pay.  This whole thing's about me

10   living somewhere else.

11        MS. ANTAR:  There is; you just didn't read it

12   right.

13        THE COURT:  Do not argue with each other.  You

14   don't have the privilege.  The Court is not giving

15   you --

16        MR. LODICE:  Objection --

17        THE COURT:  -- the option.

18        MR. LODICE:  -- relevance on this one.

19        THE COURT:  Relevance, sir?

20        MR. LODICE:  Yes.

21        THE COURT:  Proffer, ma'am.

22        MS. ANTAR:  So this is relevant because in this

23   he is stating that he will not pay unless forced in

24   court and, also, he's lying about his address which

25   he's required to report for child support.

26        THE COURT:  Okay.  The objection's sustained.

27   ID only.

1        CLERK IMME:  ID, your Honor.  Thank you.

2        MS. ANTAR:  This is another e-mail exchange from

3    March 13th, 2022, in which he states he will not pay

4    anything unless forced to in court.

5        (Whereupon there was a pause in the

6    proceedings.)

7        MR. LODICE:  This is -- this -- no objections.

8    Sorry.

9        THE COURT:  Without objection, full exhibit.

10       CLERK IMME:  Full, your Honor.  Eighty --

11       MS. MORROW:  Two.

12       CLERK IMME:  -- two.  Thank you.

13       MS. ANTAR:  Number 83 is an e-mail communication

14   from March 13th, 2022, in which he is -- it's showing

15   his ability to pay and refusal to pay unless forced

16   in court.

17       (Whereupon there was a pause in the

18   proceedings.)

19       MR. LODICE:  No objections.

20       THE COURT:  Without objection, full exhibit.

21       CLERK IMME:  Thank you, your Honor.  Number 83,

22   your Honor.

23       MS. MORROW:  83.

24       CLERK IMME:  Full.  Full 83.  Thank you.

25       MS. ANTAR:  Number 84 is a -- e-mail

26   communication from March 9th where the defendant is

27   again refusing to -- to pay and showing his ability

1    to pay.

2         MR. LODICE:  Objection.  Relevance.  There's

3    nothing here showing my ability to pay.  Just like

4    all the other ones.

5         THE COURT:  How about your admission?

6         MR. LODICE:  I don't understand.

7         THE COURT:  Your admission, sir.

8         MR. LODICE:  Of being unable to pay?

9         THE COURT:  What's the proffer, ma'am?  Please

10   listen to the proffer, sir.

11        MR. LODICE:  Yes.

12        MS. ANTAR:  I'm sorry -- what?

13        THE COURT:  What's the proffer?  What are you

14   claiming the document is?

15        MS. ANTAR:  I'm claiming in here he --

16        THE COURT:  It's an e-mail.

17        MS. ANTAR:  It's an e-mail and it's between the

18   two of us on March 9th and in this he refuses to pay

19   child support and shows the ability to pay child

20   support.

21        THE COURT:  So as to the objection as to the

22   ability to pay; that's sustained.  How about the

23   admission that you're refusing to pay?

24        MR. LODICE:  I -- there's no objections to that.

25        THE COURT:  Okay.  Then it comes in full

26   exhibit.

27        CLERK IMME:  You got it, your Honor.

1          MS. MORROW:  It's 84.

2          CLERK IMME:  84.  Thank you, Dawn.

3          THE COURT:  And the objection's overruled.

4          CLERK IMME:  Thank you, you Honor.

5          MS. ANTAR:  So on -- Exhibit 85, it's an e-mail

6     communication from April 19th between the two of us.

7     And it's relevant because this is showing his ability

8     to pay and refusal to initially pay.

9          (Whereupon there was a pause in the

10    proceedings.)

11          MR. LODICE:  Objection.  Relevance.  Again, or

12    -- yeah, relevance because it doesn't say any of

13    those things.  This is discussing our phone call with

14    each other and then --

15          THE COURT:  So you're claiming it's not relevant

16    --

17          MR. LODICE:  It discusses about the --

18          THE COURT:  -- sir?

19          MR. LODICE:  -- party.  It has nothing

20    discussing about child support itself.

21          THE COURT:  You're claiming it's not relevant,

22    sir?

23          MR. LODICE:  I'm not -- it's not relevant.

24          THE COURT:  Okay.  Proffer please.

25          MS. ANTAR:  So it is relevant because it shows

26    that he was lying initially refusing --

27          THE COURT:  No.  The Court determines

1 credibility.

2   MS. ANTAR:  I'm -- I'm sorry.  It shows that his

3 initial refusal to pay for the parenting app stating

4 that he has no money and can't afford it, even though

5 he then did pay for it after the police gave him an

6 ultimatum to either pay for it or be arrested if he

7 contacted me outside of the app.

8   THE COURT:  Okay.  The objection's sustained.

9 Mark for ID only.

10   CLERK IMME:  Thank you, your Honor.

11   THE COURT:  Not relevant.

12   CLERK IMME:  ID 85?

13   MS. MORROW:  Correct.

14   THE COURT:  Thank you.

15   CLERK IMME:  Thank you.

16   MS. ANTAR:  86 is an e-mail communication

17 between the two of us from March 7th, 2022, in which

18 it shows his ability to pay and ability to afford to

19 have sole custody of the child.

20   (Whereupon there was a pause in the

21 proceedings.)

22   MR. LODICE:  Objection.  Relevance.  This

23 doesn't say anything about me having ability to pay.

24 Just like all the other ones.  It just tells me -- me

25 saying I can't afford it.  That's not me showing I

26 have ability to pay.

27   THE COURT:  So you're objecting as to relevance,

1      sir?

2            MR. LODICE:  Yes.

3            THE COURT:  Proffer please.

4            MS. ANTAR:  It's absolutely relevant because in

5      here he claims to be financially capable of sole

6      custody, which shows the ability to pay.

7            THE COURT:  Okay.  The objection is sustained.

8      It's marked for ID only.

9            CLERK IMME:  You got it, your Honor.  86 ID for

10     the plaintiff.  Thank you, sir.

11           THE COURT:  Any other documents that you're

12     offering today, ma'am?

13           MS. ANTAR:  No, but I was asking before to the

14     clerk if it would be possible to see the exhibits

15     that we entered before the break.

16           THE COURT:  Why?

17           MS. ANTAR:  Just to be able to refer to them

18     just so I can look at them again.

19           THE COURT:  For what purpose?

20           MS. ANTAR:  In case we need to refer to them.

21           THE COURT:  They speak to -- they speak for

22     themselves.

23           MS. ANTAR:  Okay.

24           THE COURT:  Any other testimony you wish to

25     offer today?

26           MS. ANTAR:  Yes, actually.  So I just wanted to

27     say that Mr. Lodice has not paid a single cent in

1    child support since that one payment he made that

2    posted on December 6th of 2021.  During that time, he

3    has continued to work.  He has continued to -- he --

4    he went from living in his mother's basement to

5    getting his own apartment.  He's paying his own

6    apartment, rent, utilities.  He's able to afford his

7    lifestyle, which includes all of his bills that he's

8    paying for his business.  He continues to do

9    construction jobs, advertise for his company.  He

10   claims he's making more money than he's ever made in

11   his entire life.

12        And he's been using child support as a weapon

13   ever since it was first ordered in 2019. Every time

14   something bad that he didn't like happened, he would

15   threaten to take me to court.  He said he would low

16   -- lower my child support, and has weaponized it

17   several times.

18        He told me he -- that he made more money than --

19   from his new business that he started on April 16th,

20   2021.  He said that he made more money than he ever

21   made in his life.  He actually begged for me back,

22   saying he would pay all of my bills if I allowed him

23   to move back in with me, stating he would pay me $50

24   a day on top of the Court ordered child support.

25        In addition to this, he stated that he plans to

26   tell the Court that he has no income and no money.

27   He also has shown his ability to pay by paying for

1        other things such as in family court they asked us to

2        have a joint birthday party celebration for the child

3        and to -- to split the cost equally.  He sent me $300

4        that he said was for the cost of the party.  He had

5        no problem paying that.  He had no problem paying for

6        the parenting app that Judge Price-Boreland ordered

7        him to pay for.  However, when he was ordered to

8        resume paying child support which he stopped paying,

9        he refused to even pay one cent of that.  And I

10       believe that he clearly has the ability to pay.  When

11       we were at the birthday party, he even took more

12       money and tipped the girl who was hosting the party

13       an additional $40 cash.  He made payments to the

14       child -- child's daycare in cash and he often gets

15       cash deals from his job.

16            In addition, he has people working for him --

17       and including people who he is putting on a 1099 and

18       paying them.  He also told me that he was so busy

19       with his work that he actually asked me to work for

20       him, offering to pay me 17 to 18 dollars an hour to

21       walk up and down the street and put fliers on

22       people's doorknobs, which is how I received the one

23       that I submitted as an exhibit as evidence.  He also

24       maintains a gym membership, he pays his rent, three

25       cell phones, three phone payments, three phone lines,

26       Netflix, Tindr, Amazon Prime, and several other

27       subscriptions which he maintains.  He stated to me

1    several times in documents that I've submitted as

2    exhibits that he doesn't have any extra money for

3    child support; that if he has to make a choice

4    between feeding his family and paying child support,

5    that it's a no-brainer.  He says that he'll let the

6    Court handle it and unless forced to pay in court

7    that he's going to not pay me a single cent.  And,

8    again, it's been almost seven months since we've

9    received a dollar.  I've had to rack up extravagant

10   amounts of credit card debt just to get by; pay the

11   bills, take care of my -- my daughter with him.  And

12   I'm struggling financially now because of it.  He

13   owes me over $4,000 and has made zero effort

14   whatsoever to pay it.

15       And it's not fair to my child or to me.  I do

16   everything I can for my daughter, and I asked him to

17   follow the Court order and he has disparaged the

18   Court over and over again, showing no respect

19   whatsoever for the Court order.  And he stated that

20   unless put in jail, he would not pay.  He and -- so

21   I'm -- I'm asking that he be incarcerated and I'm

22   also asking that his professional home improvement

23   contractor license be suspended along with his

24   driver's license until he begins making payments

25   again.  He's able to work and finance this lavish

26   lifestyle of his and he stated to me that he also

27   made extreme amounts of money in the stock market

1    trading Dogecoin as well.  I have more evidence of

2    all of this; and after getting our financial

3    discovery, I'll be able to prove what he is making

4    after seeing his bank statements and all of the other

5    documents that I'm requesting which is my legal right

6    to see.

7         And I just think that my daughter deserves

8    better than this and he -- Mr. Lodice has

9    disrespected the Court and shown no regard whatsoever

10   for a Court order.  And he stated that he cannot get

11   in trouble for not following a Court order.  He said

12   nothing will happen to him if he violates a Court

13   order; he can't get arrested; he can't get -- go to

14   jail.  And he state -- stated this to the New Britain

15   Police Department the other day when they told him

16   they would do a warrant for his arrest if he didn't

17   bring the child to the birthday party which was Court

18   ordered, which has nothing to do with child support

19   but shows the fact that he seems to think that he can

20   do whatever he wants and nothing will happen to him.

21        THE COURT:  Anything else, ma'am?

22        MS. ANTAR:  No.

23        THE COURT:  Any other witnesses you wish to

24   call?

25        MS. ANTAR:  No.

26        THE COURT:  Sir, do you have any questions for

27   her on cross-examination?

1          MR. LODICE:  I have no -- questions for her you

2     mean?  For the --

3          THE COURT:  For the plaintiff, sir.

4          MR LODICE:  No, I have no questions.  But will I

5     be able to speak in --

6          THE COURT:  Your turn will come.

7          MR. LODICE:  Okay.

8          THE COURT:  That --

9          MR. LODICE:  No questions.

10          THE COURT:  -- concludes your case in chief,

11     ma'am?

12          MS. ANTAR:  Yes.

13          THE COURT:  You've rested.  Is that correct?

14          MS. ANTAR:  Yes.

15          THE COURT:  Thank you.  Your case in chief, sir.

16          MR. LODICE:  Okay.  Everything she said there

17     was not true at all.  I don't live a lavish

18     lifestyle.  I would be happy to bring you all my bank

19     account statements and you would see that I am

20     struggling financially.  I'm behind in my rent.  My

21     gas bill is due.  It's two months late.  I just setup

22     a payment plan with them.  My -- my -- my electric

23     bill is behind.  I have $200 in my bank account.  My

24     business account is negative $2.  I don't have any

25     money.  I'm not not sending her money or paying child

26     support because I'm trying to be malicious in any

27     way.  All this happened because she stopped taking in

1    our daughter.  This is when I applied for full

2    custody, because she refused to take her.  We went

3    months where I was taking the full responsibility of

4    all the parenting, paying all the bills myself.  I

5    had to sign her up for my own daycare.  I had to pay

6    out-of-pocket $300 a week for like two months until

7    finally just when we went to court in April, she

8    finally started following her schedule.  I'm doing

9    everything I could.

10        I've never -- I've never employed anyone else.

11    I don't have anyone on 1099.  Everything she's

12    talking about that I was doing was before I ran outta

13    money.  Like I -- I was up to date.  This is why I'm

14    a little confused on why the -- the -- this contempt

15    is from before December because I was up to date and

16    paid up until December.  That's when I started

17    missing my payments. That's when I ran outta money.

18    And since then, I haven't been making any payments

19    and I know that it doesn't look good on my part that

20    I haven't made payments in seven months and I do

21    wanna make payments and I'm gonna try my best.  I ask

22    you just please don't send me to jail or take my

23    license because I can't work with either one of those

24    things happening.  I -- if you give me a chance, I

25    will pay everything that needs to be paid.  And if

26    you could just tack on what is owed onto arrearage

27    until we could fully like go through all the custody

1    and everything, I will make sure I make my payments

2    every week on time.  It's only 4,000, which is a lot,

3    but it's not like a large, large amount.  It's not

4    like 40,000 like we've heard other cases.

5         As far as all the evidence she provided, none of

6    the evidence is -- you can go through it yourself if

7    you wanna take time and do it.  All the e-mails of me

8    saying I'm sorry, I don't have the money; I can't --

9    I can't -- I can't give you the money.  Or it's the

10   discussions where like I'm like I -- I can't give you

11   the money because I'm taking Angelina full-time and I

12   just don't have it.  Like I send her copies of my

13   bank statements, my -- my -- how -- like, the

14   negative accounts and everything.  Like, I'm doing

15   everything I can.  The times I invite her over for

16   dinner, yeah, I -- I have was able to pay for

17   groceries and stuff like that, but I struggle.  All

18   my credit cards are maxed out.  Every single credit

19   card I have is maxed out.  I can bring in those

20   statements and show you.  And all the payments were

21   done on like my electric bill or like my groceries.

22   There's nothing going out to dinner, there's nothing

23   going like vacations, nothing like that.  I don't

24   spend any money on that 'cuz I don't have it to spend

25   on that.  Everything I'm doing is for my children.  I

26   take my children three days a week every single week.

27   All three of my kids.  I have 'em from Friday until

1           Monday and I drop them back off on Monday.  So she

2           only has Angelina one more day than me.  It's not

3           like I'm like, like, depriving her of her necessities

4           in life.  I am giving my daughter every time --

5           everything she needs.  And I understand I fell

6           behind, but please give me a chance to -- to fix it

7           and I will start paying as of next week.  I promise I

8           will start paying what is owed on my child support

9           and maintain it all the way through.  Please.

10               THE COURT:  Anything else, sir?

11               MR. LODICE:  That's all I have, your Honor.

12               THE COURT:  Ma'am, any questions for the

13          gentleman on cross?

14               MS. ANTAR:  Yes, actually.

15               THE COURT:  In the form of a question please.

16               MS. ANTAR:  Okay.  Why do you say multiple times

17          that paying child support is an option for you when

18          --

19               MR. LODICE:  I never --

20               MS. ANTAR:  -- it is a Court order?

21               MR. LODICE:  -- I never said it was an option.

22          I said if I have the option of eating or paying child

23          support, am I supposed to like -- what am I supposed

24          to do when Angelina, Sarah, and Dom are with me and I

25          can't afford groceries because I s ent you the money?

26               THE COURT:  Next question please.

27               MS. ANTAR:  In Exhibit 40, you refer to child

1       support as extra money and you claim that your bills

2       are more important and child support can only be paid

3       if you're forced in court.  Is there a reason why you

4       stated that?

5           MR. LODICE:  Number 40 was what?  Say that again

6       please.

7           MS. ANTAR:  You --

8           MR. LODICE:  That I said it was extra money?

9           MS. ANTAR:  -- is there a reason why you

10      referred to child support as extra money when you

11      stated I don't have any extra money to pay child

12      support to --

13          MR. LODICE:  Yeah.  I --

14          MS. ANTAR:  -- you.

15          MR. LODICE:  -- didn't.  I wasn't calling child

16      support extra money.  What I was saying is I don't

17      have any money outside of, like, my living expenses

18      at that time to give to you.  I wasn't saying, oh,

19      child support's just extra money.  I was saying I

20      don't have the money for it.

21          THE COURT:  Next question please.

22          MS. ANTAR:  Why did you state in Exhibit 24 that

23      after you were first served with your contempt in

24      November of 2021 that you were going to then go back

25      to court to lower the child support?

26          MR. LODICE:  'Cuz I had to.  Because when we

27      agreed to this agreement, I agreed to a hundred and

1    twenty.  That wasn't based on my income.  That was

2    based on what I -- I thought I could afford at the

3    time.  This is when I was working for the last

4    company.  I was making good money then.  That's why I

5    agreed to that. But then, I got fired.  I won't say

6    why.  And I am not making that money.  You can -- if

7    you -- I would love to print my bank statements for

8    the last year and just show --

9         THE COURT:  Next question please.

10        MR. LODICE:  -- the Court.

11        MS. ANTAR:  Why did you state in court, in this

12   courtroom in 2019, that you were making only 8,000 a

13   year and now you're stating that you were making very

14   good money at that time?

15        MR. LODICE:  I never stated I only made 8,000 a

16   year.

17        THE COURT:  Next --

18        MS. ANTAR:  You did and I'll get the transcript.

19        THE COURT:  Next question please.

20        MS. ANTAR:  Next question is why did you state

21   in Exhibit 25 that you're not paying unless forced by

22   a Court?

23        MR. LODICE:  I'm saying I -- 'cuz I can't afford

24   to pay you.  Like I can't just send you money.  I --

25   I couldn't.  I could now.  I'm getting there.

26        THE COURT:  Okay.  Next question please.

27        MS. ANTAR:  How are you able to afford the

1      parenting app, the birthday party, daycare costs, the

2      $70 you said you spent on a backpack and other things

3      for the child, and all of the other documented things

4      that you've paid for in the last seven months if you

5      claim to have no money?

6          MR. LODICE:  The parenting app that I was Court

7      ordered to pay for that the police told me I had to

8      pay for it right away or they were gonna get me in

9      trouble because I'm just trying to -- I -- the whole

10     time before I paid for that parenting app, I was

11     trying to explain to you I couldn't afford it.  That

12     I didn't wanna have to pay for it; let's use a free

13     one.  You were like, no.  You have to get the one

14     that you pay for.  So I still paid for it.  And, yes,

15     that I was Court ordered to split half the birthday

16     and I sent you what I could which was 300 and you

17     still got mad at me and asked me for more money that

18     I didn't have.  I -- I'm not -- not paying you, Theo,

19     because I'm trying to hurt you.  I'm not doing that.

20      I just don't physically have the money.  There's

21     $200 in my account right now.  That's it.

22         THE COURT:  Next question please.

23         MS. ANTAR:  Why is it that when Judge Price-

24     Boreland ordered you on April 12th, 2022, to do all

25     three of the following: the parenting app, re-engage

26     in paying child support, and pay the birthday, that

27     you feel that child support was not important even

1      though all three of those things were Court ordered,

2      why did you feel that you could choose to

3      deliberately refuse to child support when that's been

4      two months now and you were warned by another Judge?

5      Why did you think it was okay to pay --

6           MR. LODICE:  I didn't choose to refuse.  I had

7      three different things I had to pay for.  I paid --

8      all three were Court ordered.  I had to pay for all

9      of them.  I paid what I could.

10          MS. ANTAR:  Is there a reason why you paid zero

11     towards the child support which you were also Court

12     ordered to pay since --

13          MR. LODICE:  'Cuz I don't have the money.

14          THE COURT:  Next --

15          MS. ANTAR:  If you didn't have the money --

16          THE COURT:  -- next question.

17          MS. ANTAR:  -- how are you able to pay for the

18     other items?

19          MR. LODCIE:  I -- I had $600.  I -- do what,

20     should I have gaven you nothing and just paid the

21     child support?  And then you'd be here saying, oh, he

22     didn't pay for the birthday, he didn't pay for this,

23     and those are Court ordered.  So like no matter what

24     it was a lose lose situation.

25          MS. ANTAR:  It shows your ability to pay, does

26     it --

27          MR. LODICE:  It shows my --

1          MS. ANTAR:  -- not?

2          MR. LODICE:  -- ability to pay what?

3          MS. ANTAR:  It shows that --

4          MR. LODICE:  Six hundred --

5          MS. ANTAR:  -- that you have --

6          MR LODICE:  -- that week?

7          MS. ANTAR:  -- the ability to pay for extra --

8          THE COURT:  Excuse me.

9          MS. ANTAR:  -- things.  Does it not?

10         THE COURT:  Excuse me.  You don't get to argue

11    with each other.

12         MR. LODICE:  I'm sorry.  I apologize.

13         THE COURT:  You ask a question.  You answer it,

14    sir.  And move on to the next question.  Next

15    question please.

16         MS. ANTAR:  Okay.  How were you able to make the

17    payments that you've been paying for Angelina's

18    daycare in the past few weeks despite you claiming

19    that you have no money to pay your Court ordered

20    child support?

21         MR. LODICE:  Because of -- you had that -- the

22    Care 4 Kids, it's $19 a week.  Yeah, I can scrounge

23    up $19 a week to pay for daycare.  That's a lot

24    different than paying you $120 plus 4,000 in

25    arrearage.  That's a huge difference.

26         MS. ANTAR:  According to the teacher, you paid a

27    $40 cash payment the -- last week.

1          MR. LODICE:  For two weeks.

2          MS. ANTAR:  How are you able to -- how are you

3      able to get that $40 in cash?

4          MR. LODICE:  By working.

5          MS. ANTAR:   So you're working?

6          MR. LODICE:  I never said I wasn't.

7          MS. ANTAR:  Okay.  So you're working and you

8      have the ability to pay.  Correct?

9          MR. LODICE:  I do now, yes.  This is why I said

10     I will start paying.

11         MS. ANTAR:  Okay.

12         MR. LODICE:  If not, then you can send me --

13         THE COURT:  No question --

14         MR. LODICE:  -- to jail next time I --

15         THE COURT:  -- pending.

16         MR. LODICE:  -- come in.

17         THE COURT:  Next question please.

18         MS. ANTAR:  Next question is in Exhibit 28, why

19     did you state that you were refusing to pay and

20     blatantly refusing to pay despite having the ability?

21         MR. LODICE:  I think that was objection

22     sustained.

23         MS. ANTAR:  This -- this was actually okayed and

24     it was not objected to.

25         MR. LODICE:  The -- yes, it was.

26         THE COURT:  28 please, Mr. Clerk.

27         CLERK IMME:  28 is a full Exhibit, no objection,

1    your Honor.  I have it right here.

2         THE COURT:  Thank you.

3         MR. LODICE:  No objection?

4         THE COURT:  No objection.

5         CLERK IMME:  You never --

6         MR. LODICE:  Okay.

7         CLERK IMME:  -- you said no.

8         THE COURT:  No objection.  Full exhibit.

9         MR. LODICE:  What did I say in it?

10        MS. ANTAR:  Why in that exhibit were you

11   refusing to pay your Court ordered child support as

12   well as admitting to blatantly refusing to pay

13   despite having the ability?

14        MR. LODICE:  When you -- when you say despite

15   having ability, what does that mean?

16        THE COURT:  No.  You don't get to ask her

17   questions.

18        MR. LODICE:  Because I didn't --

19        THE COURT:  Answer the question --

20        MR. LODICE:  -- have the ability.

21        THE COURT:  -- she asked of you, sir.

22        MR. LODICE:  Because it's not I wasn't refusing

23   because I wanted to.  I was refusing 'cuz I didn't

24   have the ability.  You can't just say I have

25   --

26        THE COURT:  Thank you.

27        MR. LODICE:  -- the ability.

```
1           THE COURT:  Next question please.  Court
2      determines whether or not you have the ability, sir.
3           MR. LODICE:  I apologize, your Honor.
4           THE COURT:  Next question.
5           MS. ANTAR:  Why in exhibit 29 did you state that
6      you were blatantly refusing to pay unless forced by a
7      Judge or Court?
8           MR. LODICE:  Objection.  Said and -- heard and
9      said already.  It's the same question she asked.
10          THE COURT:  29 a full -- full exhibit or --
11          CLERK IMME:  Fully.
12          THE COURT:  -- is that 27?  It's 29?
13          CLERK IMME:  That's 29, your Honor.  Yep.
14          THE COURT:  29 is a full exhibit, sir.
15          MR. LODICE:  Yeah, but she's saying that --
16     she's asking me the same question she just asked.
17     She saying --
18          THE COURT:  Okay.
19          MR. LODICE:  -- why am I refusing to pay, saying
20     I'm refusing to pay when I explained I can't -- I
21     couldn't afford it.
22          THE COURT:  And you object to her asking you the
23     same question over?
24          MR. LODICE:  Yes.
25          THE COURT:  Asked and answered.  The objection's
26     --
27          MR. LODICE:  Asked and answered.
```

```
1              THE COURT:  -- sustained.
2         MS. ANTAR:  Okay.  Have you ever had
3    communication with an individual named Tom Salvador
4    of the GIL Foundation at 115 Waterbury Road,
5    Prospect, Connecticut?
6         MR. LODICE:  Yes.
7         MS. ANTAR:  And did you perform a roof for that
8    business?
9         MR. LODICE:  Yes.
10        MS. ANTAR:  And how much did you get paid for
11   doing that roof job?
12        MR. LODICE:  For the whole job or for my income
13   based on it?
14        MS. ANTAR:  How much did you get paid for doing
15   that roof job?
16        MR. LODICE:  I think the whole thing was, I
17   wanna say, eleven or fifteen said and done.
18        MS. ANTAR:  Just to clarify, you said you were
19   paid $15,000 for that job.  Correct?
20        MR. LODICE:  For the whole project.
21        MS. ANTAR:  Excuse me.  Just to clarify, you
22   were saying you paid 15,000 for that job?
23        MR. LODICE:  Yes.
24        MS. ANTAR:  Correct.  You received $15,000.  And
25   when did you perform that job?
26        MR. LODICE:  I wanna say last June.  I don't --
27   I don't know.  I don't know.
```

1           MS. ANTAR:  According to this individual, you

2      performed this job in 2022.

3           MR. LODICE:  That's not true.

4           MS. ANTAR:  So when did you perform the job?

5           MR. LODICE:  This was at least a year ago.

6           MS. ANTAR:  Okay.  So seeing that it's within

7      the timeframe we're -- we're -- we're discussing for

8      this contempt from February 2021 to June 2022, is

9      there a reason why you received $15,000 for doing a

10     job and still felt that you could pay zero dollars --

11          MR. LODICE:  'Cuz at the --

12          MS. ANTAR:  -- in your Court ordered child

13     support?  Is there a reason why you still felt that

14     you could choose to pay zero dollars when you're

15     making 15,000 off of one job?

16          MR. LODICE:  That time that that job was done,

17     my child support was being paid.  And you can look

18     that up.  You can correlate the days with each other

19     and that was being paid.  I stopped paying in

20     December.

21          MS. ANTAR:  Is there a reason why --

22          MR. LODICE:  There's no --

23          MS. ANTAR:  Is there a reason why you are

24     telling the Court that you are indigent when you were

25     making over $15,000 for each job that you are doing

26     --

27          MR. LODICE:  When you make --

1      MS. ANTAR:  -- and still refusing to make --

2      MR. LODICE:  -- $15,000 on a job --

3      MS. ANTAR:  -- and still refusing to pay your

4   child support which is Court ordered?

5      MR. LODICE:  That time when I made that money

6   for that job, my child support was being paid because

7   I was making that money on that job.  When I make the

8   money, I do pay it, Theo.

9      MS. ANTAR:  And how many cell phones do you have

10  under your name in T-Mobile?

11     MR. LODICE:  There's three lines on my cell

12  phone.

13     MS. ANTAR:  And you pay for three separate lines

14  as well as three separate phones.  Correct?

15     MR. LODICE:  The phones are bought and paid for.

16   Mine are both three years old.

17     MS. ANTAR:  So you were able to pay in full for

18  three phones --

19     MR. LODICE:  Yes.  Three --

20     MS. ANTAR:  -- and continue to --

21     MR. LODICE:  -- years ago, yes.

22     MS. ANTAR:  -- pay the lines on three lines.

23  And are -- are you late on your cell phone right now?

24     MR. LODICE:  I am late on my cell phone.

25     MS. ANTAR:  But your line has not been

26  suspended.  Correct?

27     MR. LODICE:  No because I'm on a --

1            MS. ANTAR:  Neither of --

2            MR. LODICE:  -- payment plan.

3            MS. ANTAR:  -- your lines?

4            MR. LODICE:  I'm on a payment plan.

5            MS. ANTAR:  And what makes you think that paying

6     for three cell phones -- not one, but three cell

7     phones is more of a priority than the Court ordered

8     child support for our young three-year-old daughter?

9            MR. LODICE:  Well, I need my phone for my

10    business.  The other one I'm actually removing

11    because I can't afford it.  And to add on the extra

12    lines is $10 a month.

13           MS. ANTAR:  So during this last seven months, at

14    no point did you think to remove the second or third

15    line on your phone in order to be able to pay your

16    Court ordered child support for our young daughter

17    who needs food and other necessities?  At no point

18    did you think that maybe paying the Court ordered

19    child support was more of a priority than the three

20    cell phones?

21           MR. LODICE:  I -- I guess I did not.  I'm sorry.

22           MS. ANTAR:  So -- so according to you, you

23    having two cell phones and your fourteen-year-old son

24    having one cell phone is more important than our

25    daughter getting her Court ordered child support

26    paid?

27           MR. LODICE:  Then no.  That's not what I think.

1        MS. ANTAR:  Then why didn't you pay it?

2        MR. LODICE:  Because I was trying to pay all my

3   bills and then pay that.

4        MS. ANTAR:  So is -- what -- which is more of a

5   priority in terms of your bills; the three cell

6   phones or the child support?

7        MR. LODICE:  Well, at least my cell phone

8   because I need it for my life and work.  How can I

9   communicate with you through an app if I don't have

10   the cell phone?

11        MS. ANTAR:  Which is more priority; three cell

12   phones or paying the Court ordered child support?

13        MR. LODICE:  Obviously the Court ordered child

14   support.

15        MS. ANTAR:  So why haven't you paid a single

16   penny of it in seven months?

17        MR. LODICE:  I just haven't been able to.

18        MS. ANTAR:  But you've been able to pay the cell

19   phones.  Multiple cell phones --

20        MR. LODICE:  So what am I supposed to do --

21        MS. ANTAR:  -- multiple lines --

22        MR. LODICE:  -- not have a --

23        MS. ANTAR:  -- no problem.

24        MR. LODICE:  -- phone and just pay you?

25        MS. ANTAR:  Why do you need three phones?

26        MR. LODICE:  I have one business line, my

27   personal, and then the other one's Dominick's that

1       cost me ten bucks a month to add on a line.

2            MS. ANTAR:  How are you able to afford those if

3       you're claiming that you only make --

4            MR. LODICE:  I can't.  That's --

5            MS. ANTAR:  -- $400?  How are you claiming to

6       afford those if say you only make $400 a week and you

7       and you also pay rent?  And you also stated that you

8       pay $20,000 a year for food and gas.  How are you --

9            MR. LODICE:  Why do you think I'm --

10           MS. ANTAR:  -- able to afford --

11           MR. LODICE:  -- behind in everything?  Go look

12      at my credit card statements.

13           MS. ANTAR:  In the last --

14           MR. LODICE:  Look at my --

15           MS. ANTAR:  -- seven months --

16           MR. LODICE:  -- debt.

17           MS. ANTAR:  In the last seven months, how many

18      months has the cell phones -- have the cell phones

19      been shut off for non-payment?

20           MR. LODICE:  In the last seven months?  Probably

21      twice.

22           MS. ANTAR:  And in the last seven months, how

23      much have you paid in child support?

24           MR. LODICE:  I have not paid anything in seven

25      months.  We just discussed this.

26           MS. ANTAR:  Okay.  And do you currently have a

27      gym membership?

1          MR. LODICE:  I have a -- I bought a year

2     membership last year when --

3          MS. ANTAR:  Okay.

4          MR. LODICE:  -- I had money.

5          MS. ANTAR:  And so you thought that paying for a

6     full year membership for your --

7          MR. LODICE:  At that time --

8          MS. ANTAR:  -- personal gym was more --

9          MR. LODICE:  -- the child support was paid.

10          MS. ANTAR:  That's not true.

11          MR. LODICE:  Yes, it is.

12          MS. ANTAR:  Okay.  And --

13          THE COURT:  Do not argue with each --

14          MR. LODICE:  Sorry.

15          THE COURT:  -- other.  This is question/answer.

16          MS. ANTAR:  Okay.  And why did you leave from

17     your mother's house at 48 Quarry Hill Road,

18     Waterbury, Connecticut in December of 2021 which you

19     were having a free place to live?

20          MR. LODICE:  Because when I was taking on the

21     full responsibility of Angelina, it was becoming too

22     much for her and she wanted me to go.

23          MS. ANTAR:  Okay.  So how are you able to afford

24     rent and utilities for your new apartment that you

25     got?

26          MR. LODICE:  I struggled.  I -- I -- I stopped

27     paying child support and I used my money to get a

1    place 'cuz I didn't wanna live on the streets.  So I

2    should live on the streets and pay you child support?

3        MS. ANTAR:  So you deliberately stopped paying

4    child support because you felt that you getting your

5    own apartment was more of a priority than paying your

6    Court ordered child support?

7        MR. LODICE:  Yes.  I felt that providing shelter

8    for my -- my -- for my children and me was more

9    important, yes.  Yes, I did.

10        MS. ANTAR:  Oh, okay.  Even though you have

11    multiple family members who would've given you a

12    place to stay such as --

13        MR. LODICE:  No, I don't.

14        MS. ANTAR:   -- your father, your mother, your

15    sister, either of your brothers.  And is it also true

16    that your landlord is actually your sister-in-law's

17    brother?

18        MR. LODICE:  That was the only reason I got the

19    place.

20        MS. ANTAR:  Is your landlord your sister-in-

21    law's brother?

22        MR. LODICE:  Yes.

23        MS. ANTAR:  Yes or no.

24        MR. LODICE:  Of course.

25        MS. ANTAR:  Okay.  And how much does he charge

26    you monthly for rent?

27        MR. LODICE:  $1,000.

1          MS. ANTAR:  And you're able to afford $1,000 --

2          MR. LODICE:  Well, I'm behind now.

3          MS. ANTAR:  Okay.  So you've stated that you --

4     you are paying $1,000 a month for rent.  Right?

5          MR. LODICE:  Yep.

6          MS. ANTAR:  How much are you paying for the cell

7     phones?

8          MR. LODICE:  200 a month.

9          MS. ANTAR:  $200 a month for three lines and

10    you're able to --

11         MR. LODICE:  One --

12         MS. ANTAR:  -- provide documentation of that?

13         MR. LODICE:  Yes.  I can.

14         MS. ANTAR:  Your -- your bill is two --

15         MR. LODICE:  It's like one-seventy.

16         MS. ANTAR:  -- hundred for three phones?

17         THE COURT:  Ask your question, ma'am.

18         MR. LODICE:  Yes.

19         MS. ANTAR:  Okay.  And you also stated that

20    you're paying another $2,000 a month on food and --

21         MR. LODICE:  Yes.  I'm in the --

22         MS. ANTAR:  -- gas?

23         MR. LODICE:  -- hole, Theo.

24         MS. ANTAR:  How are --

25         MR. LODICE:  We all know this.

26         MS. ANTAR:  -- you paying --

27         MR. LODICE:  This is why --

1           MS. ANTAR:  -- how are you paying for --

2           MR. LODICE:  -- all my accounts are --

3           MS. ANTAR:  -- how are you paying for --

4           MR. LODICE:  -- negative.

5           THE COURT:  Ma'am.

6           MS. ANTAR:  -- any --

7           THE COURT:  Ma'am.

8           MS. ANTAR:  -- of these with no income?

9           THE COURT:  Please stop when I --

10          MS. ANTAR:  I'm sorry.

11          THE COURT:  -- interrupt you.  Thank you.  It's

12     question answer.  Do not talk over each other.

13          MS. ANTAR:  I'm sorry.

14          THE COURT:  I have a court reporter who's taking

15     this all down.  And --

16          MR. LODICE:  I'm sorry.

17          THE COURT:  -- if you talk together, she's not

18     able to do so.  Thank you.

19          THE COURT MONITOR:  Thank you, your Honor.

20          THE COURT:  Ask your question.

21          MS. ANTAR:  So what source of income do you use

22     to cover the four -- four to five thousand dollars

23     per month that you stated in your financial affidavit

24     and in court and in documents that you pay monthly

25     for yourself to live?  How are you -- what income do

26     you use to pay that?

27          MR. LODICE:  I did not claim I pay $4,000 a

1    month in bills.

2        MS. ANTAR:  Did you not just say that you have a

3    1,000 dollar month rent?

4        MR. LODICE:  Yes.

5        MS. ANTAR:  And did you not state that you pay

6    $150 a week in gas and a hundred -- and $200 a week

7    in food?

8        MR. LODICE:  Yeah.  Food varies.  But, yeah, we

9    could say that.

10        MS. ANTAR:  And did you not also state that you

11    pay $200 a month for three cell phones which are

12    unnecessary?

13        MR. LODICE:  That -- that -- that are not

14    unnecessary but, yeah, okay.

15        MS. ANTAR:  So you believe that a fourteen-year-

16    old having a cell phone is necessary?

17        MR. LODICE:  Okay.  I could take his cell phone

18    off and save $10 a month and I can send an extra ten.

19    I --

20        THE COURT:  Next question please.

21        MS. ANTAR:  How are you able to pay the $1,000

22    --

23        MR. LODICE:  I haven't been.  This is why I'm --

24    I'm negative.

25        MS. ANTAR:  How --

26        MR. LODICE:  Look at my accounts --

27        THE COURT:  Next question please.

1          MR. LODICE:  -- there's 200 in there.

2          MS. ANTAR:  My question is how in the past seven

3      months have you been able to pay the $1,000 a month

4      for rent, not including the utilities, in addition a

5      150 a week for gas, 200 a week for food, and 200 a

6      month for the phones and all of your other expenses?

7      How have you been able to do that?  With what income?

8          MR. LODICE:  With the money I've been making

9      working.

10         MS. ANTAR:  So if you stated that you're making

11     $400 a week working, how does that -- how does that

12     allow you to pay --

13         MR. LODICE:  It's like 1600 and I rack up a lot

14     of credit card debt.  All my credit cards are maxed

15     out.

16         MS. ANTAR:  You stated you had --

17         MR. LODICE:  I hit rock bottom.

18         MS. ANTAR:  -- one -- in your financial

19     affidavit you stated you only had only have one

20     credit card with a balance of 3500.  So --

21         MR. LODICE:  That's --

22         MS. ANTAR:  -- none of --

23         MR. LODICE:  -- all of my credit cards combined

24     --

25         MS. ANTAR:  -- none of --

26         MR. LODICE:  -- this 3500.

27         MS. ANTAR:  -- that adds up -- how does any of

1       that add amount to this -- this amount here that we

2       just stated?

3              MR. LODICE:  'Cuz when I didn't have money, I

4       borrowed money from people a few times.

5              MS. ANTAR:  And why didn't you ever think to

6       borrow money from people to pay the Court ordered

7       child support?

8              MR. LODICE:  Because I was borrowing money to

9       get by.

10             MS. ANTAR:  So do you don't think that our

11      daughter, who is with me from Monday -- you drop her

12      off Monday at -- before 9 a.m. and she goes to your

13      mother until you get her on Friday evenings.  So --

14             MR. LODICE:  And --

15             MS. ANTAR:  -- do you really --

16             MR. LODICE:  -- 9 a.m. Friday --

17             MS. ANTAR:  -- do you think that --

18             MR. LODICE:  -- she goes to my mother.

19             MS. ANTAR:  No.  She doesn't go at 9 a.m.

20             THE COURT:  Please don't argue with each other.

21       Ask your question.

22             MS. ANTAR:  Do you think that --

23             THE COURT:  Otherwise, I'm going to admonish

24      you. And then I'm going to sanction or fine you for

25      not complying with the Court's instructions.  Ask --

26             MS. ANTAR:  Sorry.

27             THE COURT:  -- a question.

1          MS. ANTAR:  Do you think it's fair that our

2    daughter who is with me more than 75 percent of the

3    time should not get a single dollar of support from

4    you at all?

5          MR. LODICE:  No.  I think it's not fair that the

6    one day a week that you do have her more than me that

7    I do not pay child support to you.  I'm sorry that I

8    haven't been.  I don't think it's fair --

9          MS. ANTAR:  And how --

10         MR. LODICE:  -- I think it's wrong.  And that's

11   why I'm trying to say I will start paying it.  It

12   took me awhile to get like, level.  Like I had -- I

13   had to move out of my house.  I had to get my own

14   place. So, no, I don't think it's fair that you're

15   not getting your child support.  I don't.  And I want

16   to pay you.  I do.  I'm not not paying you for any

17   reason.  It was hard for the first six months, those

18   six months before April when you weren't taking her

19   and I had the full responsibility.  And I -- I can

20   pay now.  I'm at a point it's summertime, season's

21   picked up, I'm starting to get some work.  I got some

22   jobs coming in next week so I'll be able to pay

23   coming next week.  This is why I was telling your

24   Honor that I would start paying next week and I will

25   maintain payment every week, consecutively.

26         THE COURT:  Next question please.

27         MS. ANTAR:  Did you do work at the address of 23

1      Lyman Road, New Britain, Connecticut?

2            MR. LODICE:  Before I moved in there?  I -- I

3      worked on the apartment.

4            MS. ANTAR:  How much were you paid for the work

5      that you did on that address?

6            MR. LODICE:  I wasn't paid.  It was kinda like a

7      little deal we worked out for me to get into that

8      apartment.  So the reason I got -- I got a nice --

9            THE COURT:  No question pending.

10            MR. LODICE:  -- four bedroom --

11            THE COURT:  -- move on.

12            MR. LODICE:  Okay.

13            MS. ANTAR:  Okay.  How much did you get paid to

14      replace the roof for Jay -- James Lambo in

15      Middlebury, Connecticut?

16            MR. LODICE:  I never did Jay's roof.

17            MS. ANTAR:  You stated in two --

18            THE COURT:  Form of a question please.

19            MS. ANTAR:  Okay.  How much did you get paid to

20      replace the roof for Greg Gallo?

21            MR. LODICE:  I never did Greg's roof.

22            MS. ANTAR:  I have proof that you do.

23            THE COURT:  Ma'am.  You don't get to make

24      statements.  Ask your question.

25            MS. ANTAR:  Okay.  Do you currently have

26      Internet at your house?

27            MR. LODICE:  I do.

1          MS. ANTAR:  Do you currently have Amazon Prime
2     at your house?
3          MR. LODICE:  I don't.
4          MS. ANTAR:  Do you have Netflix at your house?
5          MR. LODICE:  I use somebody else's account.
6          MS. ANTAR:  Whose account do you use?
7          MR. LODICE:  My girlfriend's.
8          MS. ANTAR:  Okay.  So who pays the Internet?
9          MR. LODICE:  She does.
10          MS. ANTAR:  Okay.  And at any point did you
11     think to ask her to maybe borrow some money to pay
12     your Court ordered child support to --
13          MR. LODICE:  I borrowed --
14          MS. ANTAR:  -- avoid going --
15          MR. LODICE:  -- money to buy gas and --
16          MS. ANTAR:  -- and getting incarcerated?
17          MR. LODICE:  -- groceries two weeks ago.  And I
18     could show you where I did that.
19          MS. ANTAR:  Okay, so you get additional income
20     from your girlfriend and --
21          MR. LODICE:  That's not an income.  Me borrowing
22     money from somebody is not income, Theo.
23          MS. ANTAR:  Okay.  So does your girlfriend give
24     you money?  Yes or no.
25          MR. LODICE:  Has she, or does she?  Those are
26     two different questions.  Has she, yes.  Does she,
27     no.

1        THE COURT:  So you're objecting to the form of

2    the question?

3        MR. LODICE:  Yeah.  Objecting --

4        THE COURT:  Sustained.

5        MR. LODICE:  -- to the form of the question.

6        THE COURT:  Ask the question again.

7        MS. ANTAR:  Has she given you money in the last

8    seven months?

9        MR. LODICE:  Yes.

10       MS. ANTAR:  Have you used any of it to pay your

11   Court ordered child support?

12       MR. LODICE:  No.

13       MS. ANTAR:  Do you respect what a Court order

14   is?

15       MR. LODICE:  A hundred percent.

16       MS. ANTAR:  Why did you not pay any child

17   support after April 15th when you were given a final

18   date to pay by Judge Price-Boreland?

19       MR. LODICE:  Because after everything I was

20   paying for, trying to make sure I can maintain a

21   place, feed the kids that I have three days a week,

22   like I said, and make sure I can still maintain work

23   by having gas in my car, I didn't have the money.

24       MS. ANTAR:  So you think that your gas and your

25   car and other things like your other bills are more

26   important than this Court order here?

27       MR. LODICE:  It's not that I think they're more

1    important.  But I think that for me to survive, yes,

2    I do need to pay those bills.  I need to have

3    shelter.  I need to have food.  I need to be able to

4    work.  Like, if I don't have those things, I'm gonna

5    be living on the street.  Am I supposed to live on

6    the street just so you can get your child support for

7    the one extra day you have her?  I -- I'm sorry, I

8    couldn't.

9         MS. ANTAR:  How are you able to pay your car

10   payment monthly?

11        MR. LODICE:  Well, it's behind two months right

12   now; about to be three months which I'm kinda nervous

13   about.  And three different times in the last seven

14   months I had them push my payment to the end of the

15   loan because I couldn't afford it.  And I can bring

16   documentation for all this.

17        MS. ANTAR:  So --

18        MR. LODICE:  I'm not not paying you, Theo,

19   because -- I'm trying.

20        MS. ANTAR:  So in the last seven months you were

21   nervous about missing a car payment but you weren't

22   nervous about missing your Court ordered child

23   support payments?

24        MR. LODICE:  I was nervous about them taking my

25   car and losing my ability to pick up my kids, to

26   bring them to daycare, to school, to be able to work.

27   Yes, I was nervous about that than sending you money.

1          MS. ANTAR:  And you weren't nervous about

2      getting incarcerated or possibly having other

3      sanctions placed --

4          MR. LODICE:  Of course I'm --

5          MS. ANTAR:  -- on you for --

6          MR. LODICE:  -- scared of --

7          MS. ANTAR:  -- violating a --

8          MR. LODICE:  -- incarceration.

9          MS. ANTAR:  -- Court order?

10         MR. LODICE:  I don't wanna go to jail.

11         MS. ANTAR:  And is that why you didn't pay a

12     single penny in seven months?

13         MR. LODICE:  I don't understand the question.

14         MS. ANTAR:  If you don't wanna go to jail, why

15     didn't you pay a single penny in the last seven

16     months for child support which is Court ordered for

17     our child?

18         MR. LODICE:  Because I didn't have the money.

19     You keep asking the same question.  I don't have it.

20         MS. ANTAR:  Is it that you didn't have the money

21     or that you just chose to allocate the funds to rent,

22     car payment, three cell phones --

23         MR. LODICE:  Well, I guess --

24         MS. ANTAR:  -- Amazon --

25         MR. LODICE:  -- to answer that question --

26         MS. ANTAR:  -- Prime --

27         MR. LODICE:  -- I allocated it --

1       MS. ANTAR:  -- internet --

2       MR. LODICE:  -- I allocated it--

3       MS. ANTAR:  -- and other --

4       MR. LODICE:  -- to my other bills.  My primary

5   bills, yes.

6       MS. ANTAR:  Okay.  So in your -- in your mind,

7   your primary bills supersede a Court order?

8       MR. LODICE:  No.

9       MS. ANTAR:  So why didn't you pay the child

10   support first?  Which is what you --

11       MR. LODICE:  Because --

12       MS. ANTAR:  -- were ordered to do.

13       MR. LODICE:  -- maintaining a shelter had to be

14   done first.  I need to have a place to live.  Why

15   don't you just let me start paying now and let them

16   add --

17       THE COURT:  No question --

18       Mr. LODICE:  -- on arrearage --

19       THE COURT:  -- pending.

20       MR. LODICE:  -- so we can go ahead.

21       THE COURT:  Move on, ma'am.

22       MS. ANTAR:  Why didn't -- why didn't you include

23   your business checking account on your financial

24   affidavit?

25       MR. LODICE:  Well, one, the business checking is

26   not my personal account so that's like a separate

27   entity.  And, two, it's negative $3 right now.  But I

1      can be happy to pull that up if you wanna see it.

2           MS. ANTAR:  How were you able to afford the $70

3      that you claimed to pay for a backpack and other

4      items that you bought for Angelina for her first day

5      of school?

6           MR. LODICE:  On her first day of school, I had

7      to buy her things.  Because you refused --

8           MS. ANTAR:  How were you able to afford it?

9           MR. LODICE:  I told you I had some money.  You

10     keep going around in the --

11          THE COURT:  Next --

12          MR. LODICE:  -- same circle.

13          THE COURT:  -- question please.

14          MS. ANTAR:  So you're admitting that you had

15     some money and that you've had access to money

16     throughout this entire period of time.  Yet, you

17     didn't find that you -- you didn't find it necessary

18     to even pay one penny or make any effort whatsoever

19     to pay the Court order.  You continue to just let it

20     add up, add up, add up.  Is that correct?

21          MR. LODICE:  It is correct that I let it -- I

22     let it add up, yes.

23          MS. ANTAR:  Okay.  And how much did you pay for

24     those glasses that you're wearing?

25          MR. LODICE:  These were free.  They're state

26     funded.  HUSKY.

27          MS. ANTAR:  HUSKY doesn't pay for Nike.

1          THE COURT:  Ma'am.  Once again, it's an

2     argument.

3          MS. ANTAR:  I'm sorry.

4          THE COURT:  And you've been admonished.  And if

5     you continue to make that argument, I'm going to cut

6     you off on cross and you'll be concluded.  Ask your

7     next question.

8          MS. ANTAR:  If you are working --

9          MR. LODICE:  To answer your last question, my

10     sister works for the eye doctor.

11          THE COURT:  Stop talking.

12          MR. LODICE:  Okay.  Sorry.

13          MS. ANTAR:  Okay.  So did you or did you not

14     offer and actually pay me to work handing out fliers

15     for your business?

16          MR. LODICE:  Yes, I did.

17          MS. ANTAR:  Okay.  And how were you able to

18     afford to pay me $18 an hour to hand out fliers if

19     you claim to have no money?

20          MR. LODICE:  'Cuz back then I had money and

21     child support was paid.  This is when I was still

22     paying child support.  This was last summer.

23          MS. ANTAR:  And who's Gabriel Mena?

24          MR. LODICE:  My friend and neighbor that I grew

25     up with.

26          MS. ANTAR:  Okay.  And has he or has he not

27     worked for your company?

1    MR. LODICE:  He has not worked for my company.

2    MS. ANTAR:  Okay.  So when -- when the police

3    were involved when he was threatening me and we

4    actually had police statements then they spoke to

5    him, you stated in the police report that he was your

6    employee.  Is that correct?

7    MR. LODICE:  That's not correct.

8    MS. ANTAR:  So you're saying that you lied when

9    you made the -- the report?

10   MR. LODICE:  I never said he was my employee.

11   Show me where I --

12   MS. ANTAR:  So he never --

13   MR. LODICE:  -- said he was my employee.

14   MS. ANTAR:  -- so --

15   THE COURT:  Once again, you don't get to argue

16   with each other.

17   MR. LODICE:  Oh.  I'm sorry.

18   THE COURT:  It's an ask and answer.

19   MR. LODICE:  Okay.

20   MS. ANTAR:  So are you --

21   THE COURT:  If this continues, I'm concluding

22   your cross, ma'am.

23   Ms. ANTAR:  Okay.

24   THE COURT:  Move on.

25   MS. ANTAR:  So who does the work for you?

26   MR. LODICE:  Me.

27   MS. ANTAR:  So you're saying you complete roofs

1           on your own by yourself without any help?

2                  MR. LODICE:  I did one.

3                  MS. ANTAR:  So who has done all of the work for

4           you in the last year?

5                  MR. LODICE:  Me.

6                  MS. ANTAR:  So you're saying that you do all the

7           work, complete roofs, and all the other home

8           remodeling projects by yourself without anybody else

9           working for you?

10                  MR. LODICE:  I don't have that many remodeling

11           projects.  I --

12                  MS. ANTAR:  So when you --

13                  MR. LODICE:  -- I --

14                  MS. ANTAR:  -- got paid $15,000 to do a roof,

15           you did it by yourself?

16                  MR. LODICE:  Yes.

17                  MS. ANTAR:  So if I ask Mr. Salvador, he will

18           state that no other workers came to the GIL

19           Foundation to do that work other than you?

20                  MR. LODICE:  Yes.

21                  MS. ANTAR:  Okay.  So why in Exhibit 30 did you

22           state that you will pay support enforcement and not

23           me; however, support enforcement states that you

24           still haven't paid anything?

25                  MR. LODICE:  Because you kept asking me to send

26           you money.  You said, send me the money, send me the

27           money, don't worry about support enforcement, just

1    send me the money directly.  And I said no, I'm

2    supposed to pay support enforcement, not you 'cuz

3    that's what they tell me to pay.

4         MS. ANTAR:  Did Judge Price -- Price-Boreland

5    tell you in court that Zelle was an option for

6    paying?

7         MR. LODICE:  If it wasn't Court ordered to

8    support enforcement.  Zelle was an option for me to

9    pay you for the baby -- or for the party.  It was

10   never an option for the child support.

11        MS. ANTAR:  And so did you or did you not

12   acknowledge on April 12th, 2022, that you were

13   required to pay that 120 dollar a week order no later

14   than 6 p.m. on Friday, April 15th --

15        MR. LODICE:  Objection --

16        MS. ANTAR:  -- of 2022.

17        MR. LODICE:  -- asked and answered.

18        THE COURT:  Sustained.  It's all part of the

19   Court file and the Court has read it into the record.

20   Court takes judicial notice of Judge Boreland's

21   order.

22        CLERK IMME:  Noted, your Honor.

23        MS. ANTAR:  Why in number 51 did you originally

24   say you were only able to afford $200 for our child's

25   birthday party, but then decided that you were gonna

26   $300?  Does that not show that you were refusing to

27   pay an amount and showing that you were actually able

1        to pay more than you were initially offering?

2           MR. LODICE:  No.  That's me showing that I'm

3        struggling.  I only had $200.  I didn't even have

4        that to really send.  And I said I would give you

5        $200, and you kept fighting with me about it saying

6        that, oh, then we're just gonna do the party without

7        you.  We're just gonna -- you need to send me more

8        money than that.  So, yeah, I came up with 300.  And

9        then I had other bills that are behind.

10           MS. ANTAR:  You originally stated you wouldn't

11        give me any money and that you were only going to

12        send it directly to the venue; however, you then

13        stated you would give $200 and you then stated you

14        would make it $300.  So does that not show the

15        ability to pay child support if you were able to

16        afford an additional $300 for extra expense of a

17        birthday party?

18           MR. LODICE:  No, it does not show that because

19        it was Court ordered for me to pay half.  And you

20        were telling me it was gonna be at least 600. So, no,

21        it does not show that.

22           MS. ANTAR:  And was the child support Court

23        ordered?

24           MR. LODICE:  It was also Court ordered, yes.

25           MS. ANTAR:  And so --

26           MR. LODICE:  They're both equal Court orders.

27           MS. ANTAR:  If they're both equal Court orders,

1      why did one get ignored and deliberately disobeyed?

2          MR. LODICE:  'Cuz I had to pick which one I

3      could afford.  I had 300.  It was either pay the baby

4      or -- pay for my daughter to have her -- her third

5      birthday party or pay you some back child support.  I

6      chose to pay for her birthday party.

7          MS. ANTAR:  So do you think that it's -- our

8      daughter deserves to eat and have a roof over her

9      head --

10          MR. LODICE:  Of course.  That's why I'm

11      struggling so hard to make sure she has that when

12      she's with me.

13          MS. ANTAR:  So I have primary residency of her

14      which means she's with me the majority of the time.

15      Do you not --

16          MR. LODICE:  One more day.

17          MS. ANTAR:  -- think -- do you not think that

18      it's important for her to eat and have a roof over

19      her head?

20          MR. LODICE:  Of course I do.

21          MS. ANTAR:  And so do you not think that the

22      $4,034.47 that you owe is -- by you not paying that,

23      do you not think that that hurts our child?

24          MR. LODICE:  I think it does hurt you a little

25      bit to not get that extra income.  But I think you

26      also do very well contrary to this statement.

27          MS. ANTAR:  My question was:  Do you think that

1        hurts our child, yes or no?

2             MR. LODICE:  I do not.

3             MS. ANTAR:  So you think that you not paying me

4        a single cent in child support since November when

5        you made your payment which posted on December 6th of

6        2021, you think that by not paying a single cent that

7        it doesn't hurt our daughter at all?

8             MR. LODICE:  I -- I -- no, I do -- I do.  It's

9        not that I don't think it doesn't hurt -- yes, I

10       think it doesn't hurt her in any way.  I think it may

11       hurt you a little bit financially that you're not

12       getting the extra income, yes.  But I don't think it,

13       like, hurts her directly.

14            MS. ANTAR:  Okay.  And if I was

15            MR. LODICE:  It is -- it is --

16            MS. ANTAR:  -- unable to pay my mortgage and we

17       had to go on the street, would that hurt our

18       daughter?

19            MR. LODICE:  I would never let that happen.  I

20       would let you guys --

21            MS. ANTAR:  How would you --

22            MR. LODICE:  -- move in with me.

23            MS. ANTAR:  -- not let that happen?

24            MR. LODICE:  I would have you move in with me.

25            MS. ANTAR:  How can you afford to have us move

26       in with you if you have -- if you can't even afford

27       to take care of yourself?

```
1          MR. LODICE:  I would struggle like I have been.

2          MS. ANTAR:  So how would -- how would you

3      struggle --

4          MR. LODICE:  Objection.  Relevance --

5          MS. ANTAR:  -- to make all this money?

6          MR. LODICE:  -- for all this questioning.

7          THE COURT:  Sustained.

8          MS. ANTAR:  That --

9          THE COURT:  Any other questions on cross?

10         Ms. ANTAR:  No.

11         THE COURT:  Any redirect by you, sir?

12         MR. LODICE:  I -- I just wanna say that I will

13     try and I will make sure I pay every week from this

14     point on.  But if you take my license, if you send me

15     to jail, I can't do that from in there and I can't do

16     that without being able to operate.  So please give

17     me a chance to show you.  I've never been behind on

18     child support until the end of last year and it's the

19     first time this ever happened.  I have child support

20     with my ex-wife and in eight years I've never been

21     behind.  And then finally this -- the end of last

22     year, I fell behind a lot.  And I'm finally at a

23     point where I'm level, I'm a little bit behind on my

24     bills, but I have enough to, like, skate by where I'm

25     going to pay the child support.  Any way I could.

26         THE COURT:  Okay.  Anything else?

27         MR. LODICE:  No, your Honor.  That's it.
```

1    THE COURT:  Any other witnesses you wish to call

2    today?

3    MR. LODICE:  No, your Honor.

4    THE COURT:  Okay.  That concludes your contempt,

5    ma'am?

6    MS. ANTAR:  Yeah.

7    THE COURT:  For support enforcement.  Number

8    136.  Correct?

9    MS. MORROW:  Correct, your Honor.

10    THE COURT:  Thank you.  And the order's 120 a

11    week?

12    MS. MORROW:  Correct.

13    THE COURT:  And the amount of the arrearage

14    found it $4,034.47 as of May 24, 2022, and that's

15    owed to the petitioner.  And the Court will order $24

16    a week on the arrearage payment.  Immediate income

17    withholding is modified accordingly.  That's

18    effective today, 6/1/2022.  Your order is now $44

19    [sic] a week, sir.  120 a week on the current

20    support, and $24 a week on the arrearage.  Court

21    finds -- and how do you pronounce your last name,

22    Lodice?

23    MR. LODICE:  Lodice.

24    THE COURT:  Lodice?

25    MR. LODICE:  Yes.

26    THE COURT:  Court finds that Mr. Lodice is

27    subject to a Court order.  That Court order is $120 a

1     week.  The Court again takes judicial notice of Judge

2     of Klau's original order, and also Magistrate [sic]

3     Price-Boreland's orders that he begin paying his

4     child support again.  And the Court finds that the

5     order is valid and unambiguous, that the gentleman

6     had knowledge of the order, failed to pay the order

7     between the period of time of February 9th, 2021, and

8     June 1st, 2022.  Number of weeks that exists for me,

9     madam?

10         MS. MORROW:  I'm sorry.  Is that April --

11         THE COURT:  Is that 18 weeks?

12         MS. MORROW:  April 15th --

13         THE COURT:  I believe it's February 9th, 2021.

14         MS. MORROW:  Oh, I'm sorry.  February 9th, 2021,

15     to June 1st of 2022 is 68 weeks.

16         THE COURT:  And from Price-Boreland's order to

17     today?

18         MS. MORROW:  The pay date was to start April

19     15th to today's date, June 1st, which would be six

20     weeks.

21         THE COURT:  Six weeks?

22         MS. MORROW:  Yes.

23         THE COURT:  Okay.  Thank you.  Find that he had

24     the ability to pay and to comply with the order and

25     his failure to pay the order is willful under clear

26     and convincing basis under Brody.  Find that the

27     gentleman is found in contempt of the Court order and

1       he's ordered to pay a purge of $2,160.  Do you have

2       the $2,160, sir?

3              MR. LODICE:  I do not, your Honor.

4              THE COURT:  Okay.  The gentleman is remanded

5       into the custody of the Department of Corrections on

6       the payment of the purge $2,160.  Purge is not paid,

7       the gentleman will be remanded and his review date is

8       June 29th --

9              MR. LODICE:  So what does that mean?

10             THE COURT:  -- 2022.  And if the purge is paid,

11      the contempt is concluded.  You're required to pay

12      the weekly order each week on time in full.  And the

13      order's now 144.

14             Marshal, you may take the gentleman into

15      custody.

16             MR. LODICE:  So does that mean I --

17             CLERK IMME:  Your Honor, may I have --

18             MR. LODICE:  -- can't get out until --

19             CLERK IMME:  -- Dawn --

20             MR. LODICE:  -- 2,000 is paid?

21             CLERK IMME:  -- date of birth?

22             MS. MORROW:  Date of birth is May 11th, 1983.

23             CLERK IMME:  Thank you.

24             MR. LODICE:  This is all my paperwork if you can

25      grab it all.  Yeah, just throw -- throw it all right

26      there.  It's all the same things.  It's all part of

27      it.  Yeah.  That's not mine.

1          MR. LODICE:  So now, do I have to stay in jail

2      until I come up with $2,000?  Is that what that

3      means?

4          THE COURT:  2,160.

5          MR. LODICE:  And if I don't come up with that

6      money, I just stay in jail?

7          THE COURT:  You stay there until the review date

8      of June 29th when the Court holds a review on the

9      purge.

10          MR. LODICE:  So how can I work and pay money --

11          THE COURT:  Take the gentleman --

12          MR. LODICE:  -- if I'm locked up?

13          THE COURT:  -- into custody.

14          MR. LODICE:  Makes no sense.

15          MS. MORROW:  And I'm sorry, your Honor, the

16      motion to --

17          THE MARSHAL:  Keep your comments to yourself

18      please.

19          MS. MORROW:  -- modify date stays as the July --

20      July 11th, the special hearing date for the

21      modification?

22          CLERK IMME:  Two -- 2 p.m.

23          THE COURT:  Court's already scheduled that.

24          CLERK IMME:  Yep.

25          MS. MORROW:  2 p.m.  Okay.

26          CLERK IMME:  For number 148; it's 7/11, 2 p.m.

27          THE COURT:  And the Court stands adjourned,

1    Marshal.

2         MS. MORROW:  Thank you.

3         THE MARSHAL:  All rise.  Court stands adjourned

4    for the day.

```
NNH-FA19-5046828-S              :  SUPERIOR COURT

THEODORA ANTAR                  :  JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                              :  AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :  JUNE 1, 2022
```

C E R T I F I C A T I O N


        I hereby certify the electronic version is a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, Connecticut, before the Honorable Frederic Gilman, on
the 1st day of June, 2022.



        Dated this 9th day of September, 2022 in New Haven,
Connecticut.


                                    _____
                                    Amanda Taylor
                                    Court Recording Monitor Trainee

```
NNH-FA19-5046828-S              :   SUPERIOR COURT

THEODORA ANTAR                  :   JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                              :   AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :   JUNE 1, 2022
```

C E R T I F I C A T I O N

     I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, Connecticut, before the Honorable Frederic Gilman, on the 1st day of June, 2022.

     Dated this 9th day of September, 2022 in New Haven, Connecticut.

_____
Amanda Taylor
Court Recording Monitor Trainee