```
NNH-FA19-6096801-S              :  SUPERIOR COURT

THEODORA ANTAR                  :  JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                              :  AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :  NOVEMBER 5, 2019
```

                BEFORE THE HONORABLE DONALD R. GREEN, MAGISTRATE


A P P E A R A N C E S :


    Representing the Plaintiff:

        MS. THEODORA ANTAR
        Self-Represented Party
        856 Shagbark Drive
        Orange, Connecticut 06477


    Representing the Defendant:

        MR. MATTHEW LODICE
        Self-Represented Party
        48 Quarry Hill Road
        Waterbury, Connecticut 06706


    Also Present:

        ATTORNEY GAIL LAWRENCE
        Assistant Attorney General


                            Recorded By:
                            Meghan Gleason

                            Transcribed By:
                            Shannon Turbert
                            Court Recording Monitor
                            235 Church Street
                            New Haven, Connecticut 06510

1       ATTY. LAWRENCE:  Your Honor, if we could please

2       go to number 1 on today's calendar and that is the

3       matter of Theodora Antar and Matthew Lodice.

4       THE CLERK:  Both please raise your right.  Do

5       you both solemnly swear and sincerely affirm

6       everything -- all the evidence that you will be

7       giving today be the truth, the whole truth, and

8       nothing but the truth so help you God or upon penalty

9       of perjury?

10       MS. ANTAR:  Yes.

11       MR. LODICE:  Yes, your Honor.

12       THE CLERK:  Please state your name and address

13       for the record.

14       Ma'am, you first.

15       MS. ANTAR:  Theodora Antar, 856 Shagbark Drive,

16       Orange, Connecticut, 06477.

17       THE CLERK:  Thank you.

18       Sir.

19       MR. LODICE:  Matthew Lodice, 48 Quarry Hill

20       Road, Waterbury, Connecticut.

21       ATTY. LAWRENCE:  Your Honor, this is a support

22       petition, first time on.  Defendant was served at his

23       usual place of abode on October 1st, 2019.  I have

24       appearances for both parties and financial affidavits

25       which have been prepared.  I'll pass those forward.

26       THE COURT:  The Court finds proper service in

27       this matter.  The defendant Mr. Matthew Lodice was

1    served at the usual place of abode 48 Quarry Hill

2    Road, Waterbury, Connecticut on October 1st, 2019.

3    The defendant is also present in court.

4         ATTY. LAWRENCE:  Thank -- thank you, your Honor.

5         If I may inquire?

6         THE COURT:  You may.

7         ATTY. LAWRENCE:  Thank you.

8         Ma'am, I'm showing you a photocopy of an

9    acknoweldgment of paternity for the child Angelina

10   Maria Lodice who was born on May 21st, 2019.  And,

11   ma'am, do you recognize your signature on this

12   photocopy?

13        MS. ANTAR:  Yes.

14        ATTY. LAWRENCE:  You signed this on May 22nd,

15   2019?

16        MS. ANTAR:  Yes.

17        ATTY. LAWRENCE:  And you name Matthew John

18   Lodice who's standing to your immediate right as

19   Angelina's father.  Is that correct?

20        MS. ANTAR:  Yes.

21        THE COURT:  Within 60 days of signing this form,

22   ma'am, did you contact Department of Public Health

23   and say the information's incorrect?

24        MS. ANTAR:  No.

25        ATTY. LAWRENCE:  Thank you.

26        Sir, I'm showing you the same photocopy for

27   Angelina.  And do you recognize your signature, sir?

1       MR. LODICE:  Yes.

2       ATTY. LAWRENCE:  You signed this on May 22nd,

3  2019 also?

4       MR. LODICE:  Yep.

5       ATTY. LAWRENCE:  And you understand when you

6  signed this, you took legal responsibility for

7  Angelina?

8       MR. LODICE:  Yes.

9       ATTY. LAWRENCE:  And, sir, within 60 days of

10  signing this form did you contact Department of

11  Public Health --

12       MR. LODICE:  No, I did not.

13       ATTY. LAWRENCE:  -- and say this information was

14  incorrect?

15       MR. LODICE:  No.

16       ATTY. LAWRENCE:  Thank you, sir.

17       Is it all right with the both of you if the

18  Court accepts this document as proof of Mr. Lodice's

19  duty to support Angelina along with mom?

20       MS. ANTAR:  Yes.

21       MR. LODICE:  Yes.

22       ATTY. LAWRENCE:  Thank you, ma'am.

23       Thank you, sir.

24       State's A please.

25       THE COURT:  The Court finds a duty to support

26  the minor child Angelina Lodice, date of birth May

27  21st, 2019, based on a copy of the acknowledgment of

1  paternity.

2      ATTY. LAWRENCE:  Thank you, your Honor.

3      So, Miss Antar, your child is currently a

4  recipient of HUSKY insurance.  Is that correct?

5      MS. ANTAR:  Yes.

6      ATTY. LAWRENCE:  Are you looking for child

7  support today?

8      MS. ANTAR:  Yes, I am.  And I also would like to

9  -- to speak with you about the situation with Mr.

10  Lodice's income 'cause I believe that based on the

11  numbers that they -- that he put on the financial

12  affidavit, it doesn't accurately represent the

13  income.

14      ATTY. LAWRENCE:  Okay.  Let's do one thing at a

15  time.

16      MS. ANTAR:  Okay.

17      ATTY. LAWRENCE:  So, ma'am, you're looking for

18  current support.  Are you also looking for past due

19  support?

20      MS. ANTAR:  Yes.

21      ATTY. LAWRENCE:  And my understanding is that

22  you're looking for past due support from the period

23  May 21st, 2019 through today's date.  Is that

24  correct?

25      MS. ANTAR:  Correct.

26      ATTY. LAWRENCE:  And that is about 24 weeks and

27  that's more or less the date that the two of you

1      split up or?

2             MS. ANTAR:  We were never together.

3             ATTY. LAWRENCE:  Okay.  But that -- the date,

4      you're satisfied with that date?

5             MS. ANTAR:  Correct.

6             ATTY. LAWRENCE:  Okay.

7             MR. LODICE:  Can I object to this, your Honor?

8             THE COURT:  No.  You -- you -- you get the

9      chance to speak, sir.

10            MR. LODICE:  Okay.

11            ATTY. LAWRENCE:  Yeah, this is not television.

12            MR. LODICE:  I -- I -- I don't know.

13            ATTY. LAWRENCE:  It's one thing at a time --

14            MR. LODICE:  Okay.  I'm just curious.

15            ATTY. LAWRENCE:  -- one person at a time, and I

16      get to ask the questions.

17            THE COURT:  Yeah.  One -- one person speaks at a

18      time because we have a monitor who needs to record

19      everything that's happening.

20            MR. LODICE:  Okay.

21            ATTY. LAWRENCE:  Okay.  So, Miss Antar, you're

22      looking for current and past due support.  And you're

23      currently employed.  Is that correct?

24            MS. ANTAR:  Correct.

25            ATTY. LAWRENCE:  And you've completed a

26      financial affidavit which has been submitted to the

27      Court?

```
1              MS. ANTAR:  Correct.

2                   ATTY. LAWRENCE:  And your --

3              MS. ANTAR:  I also have more documents I wanted

4         to submit to the Court.

5              ATTY. LAWRENCE:  Yeah.  No, I -- ma'am, I

6         understand.

7              MS. ANTAR:  Okay.

8              ATTY. LAWRENCE:  Please let me do one thing at a

9         time.

10             MS. ANTAR:  Sure.

11             ATTY. LAWRENCE:  Your Honor, it does not appear

12        that mother's income has been included in the

13        guidelines.  So if we could pass this briefly.

14             THE COURT:  All right.  The Court will pass this

15        matter.  The State will need to run --

16             ATTY. LAWRENCE:  Oh, no.  I picked up the wrong

17        one.

18             THE COURT:  Okay.

19             ATTY. LAWRENCE:  So, I don't need the stuff

20        that --

21             THE COURT:  Then we will not pass it.

22             ATTY. LAWRENCE:  -- is incorrect.  So I don't

23        need this.  I don't need that.  And --

24             Okay.  No, that's fine.  I just don't need this

25        because it doesn't include her income.

26             So let me inquire of Mr. Lodice.

27             Mr. Lodice, you're currently employed.  Is that
```

```
1        correct?
2              MR. LODICE:  Yes.
3              ATTY. LAWRENCE:  And what kind of work do you
4        do, sir?
5              MR. LODICE:  Contractor.
6              ATTY. LAWRENCE:  And indoor or outdoor?
7              MR. LODICE:  Outdoor.
8              ATTY. LAWRENCE:  And, sir, are you self-employed
9        or do you work for a company?
10             MR. LODICE:  Self-employed.
11             ATTY. LAWRENCE:  And how long have you been at
12       the -- working at this company?
13             MR. LODICE:  Two years, in a year and a half.
14             ATTY. LAWRENCE:  Okay.  Now, my understanding is
15       that you have some -- you have another child support
16       order in the amount of $157 a week.  Is that correct,
17       sir?
18             MR. LODICE:  Yes, your Honor.  Yes.
19             ATTY. LAWRENCE:  Okay.  And you have your income
20       tax records today.  Is that correct?
21             MR. LODICE:  Yes.
22             ATTY. LAWRENCE:  And they indicate that you have
23       an income of -- an adjusted gross of about $13,000 a
24       year?
25             MR. LODICE:  Yes.
26             ATTY. LAWRENCE:  And how many months out of the
27       year do you work, sir?
```

1          MR. LODICE:  Ten, ten and change.

2          ATTY. LAWRENCE:  I'm sorry.  Ten?

3          MR. LODICE:  Yeah.  About ten months.

4          ATTY. LAWRENCE:  And, sir, how do you support

5     yourself on $13,000 a year?

6          MR. LODICE:  I live in my mother's house and my

7     only bills outside of my employment are my phone and

8     my car.

9          ATTY. LAWRENCE:  And, sir, you had an -- you had

10    a tax preparer prepare your income tax?

11         MR. LODICE:  Yes.

12         ATTY. LAWRENCE:  And in your income tax, of

13    course, we all know it's axiomatic that income taxes

14    are prepared in order to allow you to pay the least

15    amount of income tax.

16         MR. LODICE:  What do you mean?

17         ATTY. LAWRENCE:  A lot of times self-employed

18    individuals have the opportunity to take certain

19    deductions that people who are W-2 employees cannot

20    take.

21         MR. LODICE:  Yes, because they have other

22    financial obligations due to their business.  Yes.

23         ATTY. LAWRENCE:  Yes.

24         Okay.  So how much on an average, in an average

25    week, do you bring home or do you pay yourself?

26         MR. LODICE:  I mean, that's varies very much

27    weekly.

1          ATTY. LAWRENCE:  That's why I asked for an

2      average, sir.

3          MR. LODICE:  Average -- now, you're saying

4      before the deductions?

5          ATTY. LAWRENCE:  Before deductions, sir.

6          MR. LODICE:  About a thousand.  A week?

7          ATTY. LAWRENCE:  Yes, sir.

8          MR. LODICE:  Before deductions?

9          ATTY. LAWRENCE:  Average.

10          MR. LODICE:  Yeah.

11          ATTY. LAWRENCE:  Before deductions, sir, yes.

12          MR. LODICE:  A thousand.

13          ATTY. LAWRENCE:  Gross about $1,000?

14          MR. LODICE:  Yeah.

15          ATTY. LAWRENCE:  And what deductions do you take

16      out of that, you yourself?

17          MR. LODICE:  My car and then office expenses.

18          ATTY. LAWRENCE:  And where's your office, sir?

19          MR. LODICE:  My address.

20          ATTY. LAWRENCE:  And you take a tax deduction on

21      your office?

22          MR. LODICE:  Yes.

23          ATTY. LAWRENCE:  Okay.  And you have the tax

24      deductions on your car?

25          MR. LODICE:  Yes.

26          ATTY. LAWRENCE:  And what other expenses do you

27      take out of your taxes, out of your -- what you pay

1    yourself each week?

2        MR. LODICE:  I'd have to look at the paper but

3    there's things like office supplies, printer paper,

4    computer supplies, stuff like that.

5        ATTY. LAWRENCE:  So do you pay those as you go

6    along?

7        MR. LODICE:  Yes.

8        ATTY. LAWRENCE:  And are those weekly expenses?

9        MR. LODICE:  They vary throughout the year.  I

10   mean, it depends when I need them.

11       ATTY. LAWRENCE:  Okay.  And what kind of

12   renovations do you do or construction?  Is it new

13   constructions, renovations?

14       MR. LODICE:  Renovations.

15       ATTY. LAWRENCE:  And what kind -- what kind --

16       MR. LODICE:  I do sales for the renovations.

17       ATTY. LAWRENCE:  So you don't do the actual

18   construction?

19       MR. LODICE:  I don't do the -- the renovations

20   themselves.

21       ATTY. LAWRENCE:  Okay.  And you're subcontracted

22   to someone else?

23       MR. LODICE:  Yes.

24       ATTY. LAWRENCE:  And what company is that?

25       MR. LODICE:  That's -- wait, I subcontract.  No.

26   So, I do the sales.  I'm paid -- so I'm a

27   subcontractor for a remodeling company.  What I do is

1    I get the bids and I sell the job and then this

2    remodeling company does the work.

3        ATTY. LAWRENCE:  I'm sorry, what'd you -- I'm

4    sorry.  I didn't catch all that.

5        MR. LODICE:  No.  I was saying so I -- I work

6    for myself as a salesman through a remodeling

7    company.  So a remodeling company gives me leads; I

8    run the appointments and stuff, try to sell the job,

9    and then sell the job, and then the remodeling

10   company is the one that does it.

11       ATTY. LAWRENCE:  So are you actually employed

12   by the -- the remodeling company?

13       MR. LODICE:  No.

14       ATTY. LAWRENCE:  So how do they determine your

15   remuneration?  How do they pay you?

16       MR. LODICE:  It's a commission percentage based

17   on the total sales of the job.

18       ATTY. LAWRENCE:  And does that commission vary

19   from time to time?

20       MR. LODICE:  Yes.

21       ATTY. LAWRENCE:  So, sir, I'm gonna show you an

22   income disclosure from Casanova Remodeling Company --

23       MR. LODICE:  Mm-hmm.

24       ATTY. LAWRENCE:  -- which was requested by the

25   Department of Social Services which indicates that

26   they -- as a subcontractor, they pay you $60,000 a

27   year.

1     MR. LODICE:  Yes.

2     ATTY. LAWRENCE:  Okay.

3     MR. LODICE:  I mean, it was 55,000 but yes.

4     ATTY. LAWRENCE:  Well, your income tax says

5     fifty -- 55,000 but they're saying that they pay you

6     60,000.

7     MR. LODICE:  Okay.

8     ATTY. LAWRENCE:  Okay.  And, ma'am, let me show

9     you this before I submit it to the Court.  It is a

10    income disclosure that is -- is part of the ordinary

11    investigative process that Department of Social

12    Service does.  And while they hadn't filled out the

13    periods, they do indicate that 60,000 a year.

14    Do you have an objection to the Court accepting

15    this?

16    MR. LODICE:  No, not at all.

17    ATTY. LAWRENCE:  Ma'am.

18    MS. ANTAR:  No.

19    ATTY. LAWRENCE:  State's B, your Honor.

20    THE CLERK:  B.

21    THE COURT:  State's B.  Yep.

22    THE CLERK:  Thank you.

23    ATTY. LAWRENCE:  And let me let the Court look

24    at it before we proceed.

25    (Whereupon there was a pause in the

26    proceedings.)

27    THE COURT:  All right.  Attorney Lawrence.

1     ATTY. LAWRENCE:  Thank you, your Honor.

2     So, Mr. Lodice, you indicated that you have

3     additional expenses that obviously are not calculated

4     in that -- in that wage verification.  Did you want

5     to submit that information to the Court to show what

6     those expenses are?

7     MR. LODICE:  Yes.

8     ATTY. LAWRENCE:  Okay.  So what are you

9     submitting?

10    MR. LODICE:  My W-2 which has all the expenses

11    written on there.

12    ATTY. LAWRENCE:  You have a W-2 in here?

13    MR. LODICE:  Not a W-2, excuse me, 1099.

14    ATTY. LAWRENCE:  So these are kind of out of

15    order, sir.  You wanna put those in order so the

16    Court can review them?  Schedule C doesn't go on top.

17    MR. LODICE:  I'm not sure exactly what order

18    this goes in.  It's not listed by page number.  I

19    don't know what you're looking for for an order.  I

20    think this one was the first one initially.

21    ATTY. LAWRENCE:  Yep, that's the top one.  So

22    that's Schedule 1; that's Schedule C.

23    (Whereupon there was a pause in the

24    proceedings.)

25    ATTY. LAWRENCE:  Forty-five, sixty-two.  This is

26    part of the depreciation so -- the other part of

27    Schedule C.  All right.

1      THE COURT:  Attorney Lawrence, do you think this

2      may require a special hearing?

3          ATTY. LAWRENCE:  Possibly, your Honor.

4          This is Defendant's --

5          THE CLERK:  Defendant's 1.

6          ATTY. LAWRENCE:  The State has no objection.

7          You have no objection, right?

8          MS. ANTAR:  I did have an objection.  I want --

9          ATTY. LAWRENCE:  I mean, but to the Court seeing

10     the --

11         MS. ANTAR:  No, not to them seeing it.

12         ATTY. LAWRENCE:  That.  That's -- that's where

13     we are right --

14         THE COURT:  Okay.

15         MS. ANTAR:  But to what he said.

16         ATTY. LAWRENCE:  That's where we are right now.

17         MS. ANTAR:  Okay.

18         THE CLERK:  Defendant's 1, your Honor.

19         (Whereupon there was a pause in the

20     proceedings.)

21         THE COURT:  You wanna redact the defendant's

22     Social --

23         ATTY. LAWRENCE:  Oh, yes, you do.

24         THE COURT:  -- on -- on these documents.

25         ATTY. LAWRENCE:  Sorry about that, your Honor.

26         THE COURT:  Yeah.

27         (Whereupon there was a pause in the

1      proceedings.)

2          ATTY. LAWRENCE:  Sorry about that, your Honor.

3          THE COURT:  No problem.

4          ATTY. LAWRENCE:  Thank you.

5          THE COURT:  Okay.

6          (Whereupon there was a pause in the

7      proceedings.)

8          THE COURT:  All right.  Attorney Lawrence.

9          ATTY. LAWRENCE:  Yes.

10         Mr. Lodice, how long have you been a

11     subcontractor for this company?

12         MR. LODICE:  Since March of last year, March of

13     2018 so.

14         ATTY. LAWRENCE:  Since two thousand when?  Since

15     2018?

16         MR. LODICE:  Yeah.  So, 20 months.

17         ATTY. LAWRENCE:  So then that would explain why

18     for the year of 2018 they -- your -- your records

19     report a 55,000-dollar-a-year income.  Were they

20     perhaps projecting into 2019 what they're paying you?

21         MR. LODICE:  I don't understand the question.

22     Can you repeat that?

23         ATTY. LAWRENCE:  Well, you said you only started

24     in March and they indicated that you -- and you were

25     commenting that your income tax for 2018 reflects

26     $55,000 a year.  The wage verification from last

27     month reflects an income of 60,000.  And is it -- are

1     they paying you more than they did last year?

2          MR. LODICE:  No, no.  He just put it there as,

3     like, 'cause he thought it was about 60,000.  He

4     probably didn't have the exact number at the time

5     that he wrote it so he wrote 60,000 'cause he knew it

6     was close to that.

7          ATTY. LAWRENCE:  Okay.  And --

8          THE COURT:  The Court -- the Court will note,

9     Attorney Lawrence, that State's Exhibit B indicates

10    there was a date of hire in 2016 to current.

11         ATTY. LAWRENCE:  Oh, the date of --

12         THE COURT:  On the income disclosure form.

13         MR. LODICE:  There is a date of a hire?

14         THE COURT:  Indicates he's a subcontractor,

15    1099, and earns $60,000 a year.

16         MR. LODICE:  That's wrong.  I wasn't hired in

17    2016.  I didn't start there till last year.

18         THE COURT:  Well, that's what the income

19    disclosure form indicates, sir.

20         MR. LODICE:  That's not accurate.  I mean, he

21    must have wrote it wrong.  I mean, we can -- wait,

22    we're in 2019.  Right?  Yeah.  I started last year.

23         ATTY. LAWRENCE:  And, sir, you indicated you

24    work about ten months out of the year?

25         MR. LODICE:  Yes.

26         ATTY. LAWRENCE:  And what do you do the other

27    two months?

1      MR. LODICE:  Well, hopefully find some kind of

2   work or just hang -- mostly hang out with the kids.

3   I -- I don't get to see my other children as much

4   during this work year because I'm always on the road

5   and doing things so usually during the -- these two

6   months, I change my visitation with the children with

7   my ex-wife and I see them a lot more.

8      ATTY. LAWRENCE:  Okay.  As an independent

9   contractor, what -- what exactly do you do for

10  Casanova?

11     MR. LODICE:  I do -- I sell the jobs.  So if you

12  needed a new roof for your house, you would have

13  someone like me come in and I would measure it out,

14  price it; you would say yes; I would take all the

15  informations, write the contract, sign up for you,

16  and then pass the information along to the remodeling

17  company and then they would do the work.

18     ATTY. LAWRENCE:  And, sir, did you -- what is

19  your area?

20     MR. LODICE:  We do all over.  I do Mass.,

21  Connecticut, New Hampshire, Vermont, Rhode Island.

22  Basically, from Maine all the way down to

23  Pennsylvania.

24     ATTY. LAWRENCE:  Okay.

25     I have no other questions for this witness at

26  this time, your Honor.

27     THE COURT:  Okay.

1      ATTY. LAWRENCE:  If I may inquire of mother?

2      THE COURT:  You may.

3      ATTY. LAWRENCE:  Miss Antar, you indicated that

4   you are not in agreement with the defendant's claims.

5   What information do you have as to his income?

6      MS. ANTAR:  Okay.  So, just to clarify, Matthew

7   is a salesman that he's employed by Casanova

8   Remodeling.  So I'm also employed Casanova

9   Remodeling.  We're both paid as 1099 independent

10  contractors but we are employed by that company.  He

11  has business cards with his name on it from Casanova

12  Remodeling.  He's one of the salesmen.  We have a

13  group chat with the owner and all the salesmen.  I'm

14  also in the group chat.  They post their sales.  He

15  gets a commission which is -- doesn't' vary.  It's

16  ten percent of the total sale that's up to their par

17  plus 50 percent of everything above that par.  I

18  have --

19      ATTY. LAWRENCE:  I'm sorry.  Ten percent of the

20  total sales and then --

21      MS. ANTAR:  Of the par.  And then anything --

22      ATTY. LAWRENCE:  And what is -- what is that?

23      MS. ANTAR:  So, like, let's say on a roof his

24  par is 8,000 and he sells it for 8,000, his

25  commission would be 10 percent; he would make 800.

26  If he sells it for 10,000, it's 2,000 over par; he

27  makes 50 percent of the overage.  So if he sold it

1    for 2,000 over, he'd make an additional thousand on

2    that sale.  I have his sales sheet for 2019.  Like I

3    said, I'm the office manager.

4        I handle everything in the office.  This also

5    was updated recently and it shows all the checks that

6    he receives.  And he gets every check up front.  You

7    know, plus a last check that he received which was

8    for sixty-seven oh seven.  So, as of this year to

9    date, he's made -- and he's received and taken home

10   $71,753.25.

11       His income projected for the end of the year

12   with what's owed to him is almost double what it was

13   last year because this year he's worked a full year

14   whereas last year, like he said, he didn't begin

15   until March.

16       I also have a deposit slip from the last -- the

17   last check that he received that was for sixty-seven

18   oh seven.  In terms of his expenses, the -- the boss

19   actually pays for all of the hotels, all of the

20   travel expenses, the gas, the mileage; the boss

21   reimburses us for all of that.  And if you'd like to

22   subpoena him, he said that he has no problem coming

23   to court and clarifying any of this information

24   because I did speak to him about this already.

25       ATTY. LAWRENCE:  Okay.  So back up a little,

26   ma'am.  You're giving a lot of information.

27       MS. ANTAR:  Sure.

1      ATTY. LAWRENCE:  So how did you come about that

2      information that you're holding?

3      MS. ANTAR:  I'm the office manager for Casanova

4      Remodeling so I actually printed it out.  And --

5      ATTY. LAWRENCE:  So that is information that you

6      would normally have available to you?

7      MS. ANTAR:  Yes.  And I --

8      ATTY. LAWRENCE:  And do you have that -- do you

9      have that information for all employees?

10     MS. ANTAR:  Correct.

11     ATTY. LAWRENCE:  Okay.  And now you were saying

12     you printed that out.  When did you print it out?

13     MS. ANTAR:  This one was -- this one was from

14     the end of September.  So this was from September

15     23rd.  But, like I said, since then I added some -- I

16     added the other ones that came in.

17     ATTY. LAWRENCE:  Okay.  So the printout is

18     actually -- is as of September 23rd, 2019 and you've

19     made additional hand-written notations --

20     MS. ANTAR:  Yeah, for each sale.

21     ATTY. LAWRENCE:  Let me finish my sentence,

22     ma'am.

23     MS. ANTAR:  Yep.

24     ATTY. LAWRENCE:  -- made hand-written notations

25     bringing it up to what date?

26     MS. ANTAR:  Up to current of what he's taken

27     home.

1        ATTY. LAWRENCE:  Okay.  Current being, what,

2    last Friday, this Monday?

3        MS. ANTAR:  Last Friday.

4        ATTY. LAWRENCE:  Okay.  So that would have been

5    November 1st?

6        MS. ANTAR:  Correct.

7        ATTY. LAWRENCE:  We're telling the Court a story

8    so we have to keep -- we have to make sure that all

9    the story is -- is clear on the record.

10       MS. ANTAR:  Okay,

11       ATTY. LAWRENCE:  Okay.  That's why -- I mean,

12   the questions may sound kind of silly but there's a

13   -- a point to them.

14       MS. ANTAR:  Okay.

15       ATTY. LAWRENCE:  All right.  So, ma'am, you're

16   -- also indicated that the defendant is reimbursed

17   for gas and mileage.  And what else did you say?

18       MS. ANTAR:  Hotels.  Also, he doesn't have to

19   pay anything for the printing.  He doesn't have an

20   office.  He lives at home in his mother's basement;

21   there's no office there.

22       ATTY. LAWRENCE:  Okay.  Let me ask that

23   specifically.

24       Does he have an office on the premises at

25   Casanova?

26       MS. ANTAR:  No, he does not.

27       ATTY. LAWRENCE:  So where do you -- did the two

1      of you ever live together?

2           MS. ANTAR:  No.

3           MR. LODICE:  Yes.

4           MS. ANTAR:  We did not.  He's -- he spent time

5      staying at my house but he has been living at his

6      mother's house in the mother's basement.

7           MR. LODICE:  We lived with each other for three

8      months.

9           MS. ANTAR:  I live alone with my two children.

10          ATTY. LAWRENCE:  Sir, sir.

11          THE COURT:  One person at time, sir.

12          MR. LODICE:  Sorry.

13          ATTY. LAWRENCE:  You'll get a chance to respond,

14     sir.

15          MR. LODICE:  Okay.

16          ATTY. LAWRENCE:  So you're not aware that

17     whether or not he has a -- a -- a desk at his

18     mother's house that is committed to -- to this work?

19          MS. ANTAR:  He does not.  He has a desk in his

20     mother's -- in his room in his mother's house but it

21     is not an office.  Most of his work, like, you know,

22     what he does is he goes out to each appointment; he

23     -- he brings a contract with him; he -- you know, he

24     -- if he sells the deal, if he signs the contract; he

25     brings the contract back to our office which is

26     located at 269 Main Street in Terryville which is --

27     the property is owned by the owner of the company

1      John Casanova. It's an office that was just opened

2      earlier this year back in, I wanna say, April he

3      opened it. And so, in that office he has a

4      conference table; he has three printers, computers.

5      So Matthew along with the other sales guys, will come

6      in; they'll print their pictures; they'll -- they'll

7      get their materials. Anything they need, coffee,

8      water, everything, is provided by the owner. Every

9      time that Matthew has a toll, the owner will

10      reimburse him. Every time he has -- he has -- gives

11      him a certain amount for gas. He also gives him --

12      the hotels are always paid.

13      ATTY. LAWRENCE: Okay.

14      MS. ANTAR: So every expense that they have is

15      provided by the employer. He doesn't have any other

16      purpose of having an office because him -- he is

17      employed by Casanova Remodeling.

18      And, like, I, as the office manager, handle the

19      calendar for all of the salesmen, including Matthew.

20      I have a Google calendar on my phone showing the

21      past, you know, three months of appointments he's run

22      and all of that. You know, every time there's an

23      appointment, I'm the one who sends it to him along

24      with the sales manager 'cause we're both managers for

25      the company. So, you know, it's pretty straight

26      forward where, you know, he's -- you know, he has his

27      boss that's a sales manager and I'm the office

1    manager.  The sales manager and I work together.  We

2    hand out the appointments, we give them the

3    appointments, and then he has a chance to run it.  If

4    he sells it, he hands in the contract to the boss and

5    then he gets, you know, half of his commission up

6    front; the other half when the job is done and is

7    completely paid for.  So that's why he calls it in

8    the pipe.  Whatever he has in the pipe is money

9    that's still owed to him for the rest of the year.

10   And so this year he's made significantly more than he

11   did last year.  And, you know, as you can see with

12   all these checks, including this most recent one,

13   it's -- it's ridiculous to say he makes 13,000 which

14   then how are you eating?  How are you doing any of

15   that?  It's -- he's lying about his income and trying

16   to use the 1099 as an excuse which is why I think we

17   should go by, you know, this sales information here,

18   the number I have is he's made 71,753 take -- taken

19   home that much this year so far.

20        THE COURT:  All right.  Attorney Lawrence --

21        ATTY. LAWRENCE:  So, ma'am --

22        Just one question.

23        THE COURT:  We're gonna need a special hearing

24   on this.

25        ATTY. LAWRENCE:  Yeah, I think so.

26        If we could have a transcript of this and

27   continue this for a special hearing.

1      THE COURT:  Yeah.

2      ATTY. LAWRENCE:  I did have one other question,

3   ma'am.  Mr. Lodice reported that he only works about

4   ten months out of the year.  Is that -- is that your

5   understanding?  Is that correct?

6      MS. ANTAR:  Not -- not technically because it's

7   not like he's officially laid off.  But during, like,

8   you know, November and December it's kind of slow

9   where there's really not many appointments going

10   around.  But, you know, he's still, like, on-call.

11   If -- if they had an appointment, they could still

12   call him and say, hey, you wanna take this and he can

13   do it.  So it's not like he's, like, told that he

14   can't work at all.  He just -- we don't really have

15   much business in the Christmas and Thanksgiving

16   season.

17      THE COURT:  Anything else, Attorney Lawrence?

18      ATTY. LAWRENCE:  That's it.  That's it for this

19   time, your Honor.

20      THE COURT:  All right.  The Court -- the Court

21   is gonna set this matter down for a special hearing

22   because it's gonna take more time than the Court has

23   today on today's calendar.  Give you a chance to both

24   present your sides of the -- of the case and so the

25   Court can be more thorough and -- and make an

26   informed decision.

27      MS. ANTAR:  Okay.

1      THE COURT:  At the hearing, you -- you're

2      welcome to bring any -- any witnesses you might have

3      to testify on your behalf as well.

4      MS. ANTAR:  Okay.

5      THE COURT:  Okay.

6      THE CLERK:  Your Honor --

7      ATTY. LAWRENCE:  I --

8      THE CLERK:  -- does the A --

9      ATTY. LAWRENCE:  Same with you, sir.

10     THE CLERK:  -- does the AAG need to be present

11     for this matter?

12     THE COURT:  Yes.

13     ATTY. LAWRENCE:  It's our petition, so yeah.

14     THE CLERK :  So would you like a UIFSA day?  A

15     Tuesday or a Thursday or -- or a Friday.

16     ATTY. LAWRENCE:  Well, my problem is that -- I

17     guess you could put it on a UIFSA day in the

18     afternoon for Attorney Guido 'cause I have UIFSA in

19     Waterbury.

20     THE COURT:  All right.  Let's do it, like, 2

21     o'clock --

22     THE CLERK:  All right.  We'll do --

23     THE COURT:  -- so we have the whole afternoon.

24     THE CLERK:  We can do December 2nd, your Honor.

25     ATTY. LAWRENCE:  As long as we have the

26     transcript there so that Attorney Guido and the Court

27     can review it.

1          THE CLERK:  Can you get it by then?

2          All right.  December 2nd, 2 o'clock.

3          THE CLERK:  All right.  This matter is continued

4     to December 2nd at 2 o'clock for a special hearing.

5          Okay.  Again, bring any -- any and all

6     documentation that you might have or any witnesses

7     that you may think --

8          MR. LODICE:  Okay, your Honor.

9          THE COURT:  -- that you wanna call on that date.

10    Okay.

11         MR. LODICE:  Thank you, your Honor.

12         MS. ANTAR:  Thank you.

13         THE COURT:  All right.  You both are excused.

14         MS. ANTAR:  Thank you.

15         ATTY. LAWRENCE:  Thank you, ma'am.

16         Thank you, sir.

17         MR. LODICE:  Thank you.

18

19

20

21

22

23

24

25

26

27

NNH-FA19-6096801-S            :   SUPERIOR COURT

THODORA ANTAR                 :   JUDICIAL DISTRICT
                                  OF NEW HAVEN

v.                            :   AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                :   NOVEMBER 5, 2019


C E R T I F I C A T I O N


        I hereby certify the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, Connecticut, before the Honorable Donald Green,
Magistrate, on the 5th day of November, 2019.


        Dated this 13th day of December, 2019 in New Haven,
Connecticut.


                              _____
                              Shannon B. Turbert
                              Court Recording Monitor

| NNH-FA19-6096801-S | : | SUPERIOR COURT |
| THODORA ANTAR | : | JUDICIAL DISTRICT<br>OF NEW HAVEN |
| v. | : | AT NEW HAVEN, CONNECTICUT |
| MATTHEW LODICE | : | NOVEMBER 5, 2019 |

E L E C T R O N I C   C E R T I F I C A T I O N

     I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, Connecticut, before the Honorable Donald Green, Magistrate, on the 5th day of November, 2019.

     Dated this 13th day of December, 2019 in New Haven, Connecticut.

_____
Shannon B. Turbert
Court Recording Monitor