```
NNH-FA19-5046828-S            :   SUPERIOR COURT

THEODORA F. ANTAR             :   JUDICIAL DISTRICT
                                  OF NEW HAVEN

v.                            :   AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE             :   APRIL 8, 2022
```

BEFORE THE HONORABLE JANE GROSSMAN, JUDGE


A P P E A R A N C E S :


    Representing the Plaintiff:

        MS. THEODORA F. ANTAR - Self-Represented
        856 Shagbark Drive
        Orange, Connecticut 06477


    Representing the Defendant:

        MR. MATTHEW J. LODICE - Self-Represented
        48 Quarry Hill Road
        Waterbury, Connecticut 06706


                        Recorded By:
                        Kelly DelBasso

                        Transcribed By:
                        Kelly DelBasso
                        Court Recording Monitor
                        235 Church Street
                        New Haven, Connecticut 06510

1        THE COURT:  The next ready matter is Antar and

2   Lodice.

3        MR. LODICE:  Lodice.

4        THE COURT:  Lodice.

5        MR. LODICE:  Good afternoon, ma'am.

6        THE COURT:  Good afternoon.

7        Please remain standing while the clerk swears

8   you in.

9        THE CLERK:  Please raise your right hand.

10       Do you solemnly swear or solemnly and sincerely

11  affirm as the case may be that the evidence you'll

12  about to give concerning this case is the truth, the

13  whole truth, nothing but truth, so help you God upon

14  penalty of perjury?  Please say I do.

15       MS. ANTAR:  I do.

16       MR. LODICE:  I do.

17       THE CLERK:  And starting with you, Miss.  Can

18  you please just state your name and address for the

19  record.

20       MS. ANTAR:  Theodora Antar.  856 Shagbark Drive,

21  Orange, Connecticut 06477.

22       THE CLERK:  Thank you.

23       And you, sir.

24       MR. LODICE:  Matthew Lodice.  48 Quarry Hill

25  Road, Waterbury, Connecticut 06706.

26       THE CLERK:  Okay.  You guys may be seated if

27  you'd like.

1          THE COURT:  All right.  So this is a custody

2     case.  Actually, I think it's a visitation petition.

3     Hold on a second.  Initially, it was a visitation

4     petition filed by you, ma'am.  Right?

5          MS. ANTAR:  Yes.

6          THE COURT:  And what brings us here today is an

7     emergency motion for custody.  That was filed in mid-

8     March.  And I think that was also filed by you.

9     Right?

10         MS. ANTAR:  Yes.

11         THE COURT:  It was denied and set down for a

12    hearing today.

13         MS. ANTAR:  Correct.

14         THE COURT:  And I have a note from family

15    relations indicating that you were not able to reach

16    an agreement about what should happen with that

17    emergency motion, and we'll need to have a hearing

18    today.  So does that sound right?

19         MS. ANTAR:  Yes.

20         THE COURT:  All right.  So the way we'll do

21    that, ma'am, is that you filed this application, so

22    you'll go first.  You'll tell me what the emergency

23    -- you filed an emergency order, so -- so I can only

24    -- I have to consider what the emergency is.  You

25    have another -- you have a -- a bigger case going on

26    about what -- when you see your child and when the

27    child should be with you or when the child should be

1      with the father.  But today, I'm just considering the

2      emergency portion.  You understand?

3           All right.  What you should tell me is what the

4      emergency is and what you want the court to order and

5      why you think that's appropriate.

6           And then sir, you'll have an opportunity to do

7      the same.  And then we'll make some decisions just on

8      that emergency motion.  Okay.

9           MR. LODICE:  Okay.

10          MS. ANTAR:  Okay.  And I just wanted to say

11     also, when I filed the emergency motion, the clerk's

12     office told me I had to also file a modification

13     along with it, which I did.

14          THE COURT:  Okay.

15          MS. ANTAR:  Okay.  So I actually prepared

16     something for the Court if it'd be okay I just read

17     it?

18          THE COURT:  Well, it's generally better for me

19     if you kind of just tell me without reading, but if

20     it's easier for you to read, that's fine.  It's just

21     that I might interrupt with questions.

22          MS. ANTAR:  Sure.  That's fine.

23          So I'm here today to ask the Court to modify

24     certain details of our custody and visitation

25     agreement for our child, Angelina Maria Lodice.  I

26     want nothing more than what's in the best interest of

27     our daughter.

1         Over the last ten months Mr. Lodice has

2     disrespected the Court repeatedly by refusing to

3     follow many parts of our custody and visitation

4     agreement.

5         In April of 2021 Mr. Lodice began begging me to

6     take him back and told me that he would do anything

7     that it takes to have me back.  He emailed me daily;

8     called me daily from numerous fake numbers and

9     promised me that he would do anything to make me

10    happy.  I repeatedly told him that I was not

11    interested and that all I wanted was for him to

12    coparent with me in a healthy way so that we can work

13    together to raise our two-year-old daughter.

14        Mr. Lodice continued to try to beg me to take

15    him back, repeatedly asking me to let him move back

16    in with me.  He told me that he was making more money

17    due to his new business that he started on April

18    16th, 2021, Whole House Remodeling Company, LLC.  He

19    also stated that he made over $40,000 from trading

20    the Crypto coin Dogecoin in early 2021.

21        He said that things were looking up for him and

22    that him leaving his job at Casanova Remodeling

23    Company, LLC in November of 2020 was the best

24    decision he ever made.  He stated that he was making

25    more money than he ever had in his life and that he

26    would give me more money and help me out from time to

27    time if we were on good terms.  He said if he we

1 stopped being on good terms, that he would no longer

2 give me any extra money or by anything extra for

3 Angelina and would tell me to use my child support

4 money.  He stated he wanted me to be with him before

5 all of his riches and success came about so that we

6 could grow together.  He said he wanted someone to be

7 with him before he became astronomically more wealthy

8 and not after.  He said he would pay all of my bills

9 and that if he moved in with me, he would pay $50 a

10 day to me daily on top of paying his child support.

11  I continued to tell Mr. Lodice that all I wanted

12 was a coparenting relationship and this angered him.

13 He has been emotionally, financially, and

14 psychologically abusive to me throughout the entire

15 four years that I have known him.  I spent the

16 majority of my pregnancy alone and he told me

17 repeatedly that if I had the child that it would ruin

18 him and his other sons' lives and that he couldn't

19 put them through the pain of having another child

20 take attention away from them.

21  THE COURT:  Ms. Antar, I'm gonna stop you and

22 the reason --

23  MS. ANTAR:  Okay.

24  THE COURT:  Listen.  Listen to me.  The reason

25 I'm gonna stop you is because you filed a motion

26 telling me there was a present emergency.  So what's

27 the --

1          MS. ANTAR:  So I -- I --

2          THE COURT:  -- thing that's happening right now?

3          MS. ANTAR:  Okay.  So -- so I -- I -- I'm -- I'm

4    getting to it.  It's -- it's coming up.  I just -- I

5    thought that to make it more clear for the Court

6    because there's multiple things that were filed and I

7    just wanted to just kind of --

8          THE COURT:  Okay.  I have your file in front of

9    me.

10          MS. ANTAR:  Okay.

11          THE COURT:  Maybe that will -- I should have

12    said that first.  I'm sorry.  I have your file in

13    front of me, so I can see all of the history and the

14    Court orders and the agreements.

15          MS. ANTAR:  Okay.

16          THE COURT:  But you filed an emergency motion

17    saying something is happening right now.

18          MS. ANTAR:  Right.

19          THE COURT:  And I -- so I'm trying to figure

20    out --

21          MS. ANTAR:  Okay.  So I can skip to that part.

22          So on March 17th, 2022, I filed an application

23    for emergency ex parte order of custody along with a

24    motion of modification.  And I wrote, like, you know,

25    at this time, Matthew was refusing to return Angelina

26    to me.  In the motion for modification I asked that

27    the Court order current support, increase support,

1    find arrearage, order payment, so on and so forth.

2    The reason why is that since the date of the last

3    order Mr. Lodice is making more money.  He's also not

4    following our agreement.  I asked -- I had originally

5    also asked that the Court order him to return the

6    child to me since he was withholding her from me.

7    Since then, he has returned the child to me after

8    giving me an extremely difficult time about giving

9    her back.

10       And so, you know, Mr. Lodice has also lied to

11   the Court about his address.  His current address is

12   23 Lyman Street, New Britain, Connecticut.  He has

13   lived there since January 1st of 2022.  He continues

14   to lie to the Court and continues to tell them that

15   he lives with his mother at 48 Quarry Hill Road in

16   Waterbury, Connecticut.  Mr. Lodice is renting this

17   apartment from Gregory Gallo who is related to his

18   sister-in-law, Jennifer Gallo.  Mr. Lodice also did

19   renovations on the same property which is a rental

20   investment property owned by Mr. Gallo.

21       He has regularly stated that he plans to tell

22   the Court that he has no income and no money and

23   claims that this is the reason why he has not paid a

24   single dollar of his Court ordered child support

25   since November 20th, 2021.  He has not paid a single

26   dollar toward Court ordered childcare payments either

27   since January 15th, 2022.

1          I have sent him certified letters documenting

2     all childcare payments that I have been paying to our

3     private babysitter who watches our daughter

4     regularly.  Matthew has refused to pay his 50 percent

5     portion forcing me to incur 100 percent of all

6     financial responsibility for our daughter and forcing

7     me to pay 100 percent of the childcare cost to be

8     able to work.  He has shown great disrespect to the

9     Court and has disregarded every Court order that has

10    been issued.

11         Our later -- our latest order is from June 15th,

12    2021, and I'm requesting to modify the following, if

13    I may say what I'm requesting?

14         THE COURT:  Okay.

15         MS. ANTAR:  Number three on our order states

16    that in a case of an emergency, illness, injury, and

17    the like, the parents shall immediately and directly

18    contact each other via call or text message.  I'm

19    requesting that this be modified so all communication

20    must be limited to via email only and only regarding

21    the minor child.  And, in case of an emergency,

22    parents shall immediately directly contact each other

23    via call or text message.

24         I'm asking for this since Mr. Lodice has been

25    abusive to me regularly, calls me names, and

26    disrespects me when I attempt to speak to him via

27    phone.  He has done in this in the presence of both

1    of my children every time I try to talk on the phone.

2    I notified him that due to this, I would only feel

3    comfortable communicating via email and only

4    regarding the minor child with the exception of an

5    emergency.

6        I'm also requesting to modify number ten on our

7    order which states that all educational decisions

8    must be made by the parents together.  As the primary

9    residence for Angelina, she will be going to schools

10   in my district when she turns five.  Matthew

11   consistently tries to argue and fight with me about

12   everything and had shown no interest in her

13   education.  I'm asking that this be modified to

14   reserve educational decisions for me, her mother.

15       I'm also requesting to change number 11, which

16   states that all medical decisions must be made by the

17   parents together.  I'm asking that this be modified

18   to reserve medical decisions for me, her mother, due

19   to the incident that recently occurred where Matthew

20   cancelled the appointment for our daughter without my

21   consent and then refused to take her to a dentist

22   appointment.  I have made and scheduled every single

23   medical appointment for Angelina since she was born.

24   I have taken the time to sign her up at doctor's

25   offices, follow up with her care, and make sure her

26   health is my priority.  Matthew has done none of the

27   above and has shown disregard for her by cancelling

1    her appointment which was necessary for her to

2    attend.

3         I'm also requesting to change number 12.  This

4    number states that the father will pick up the child

5    every Friday at 5:30 p.m. from the mother and pickup

6    location for the child will be at Cumberland Farms

7    Gas Station located at 527 North Main Street,

8    Naugatuck, Connecticut, and that the father shall

9    drop off the child to the mother at 9 a.m. every

10   Monday at the same location.  When Mr. Lodice and I

11   sat down together in June 2021 and came up with this

12   arrangement, we chose that location because of the

13   fact that Angelina was coming with me to work daily

14   at my old job which was located in Terryville,

15   Connecticut.  Every day during the week, I would

16   commute to 269 Main Street, Terryville, Connecticut

17   which is where the office is located.  Mr. Lodice and

18   I chose Cumberland Farms in Naugatuck as the drop off

19   and pickup point due to the fact that it was in close

20   proximity to his mother's house where he was living

21   at the time.  He also --

22        THE COURT:  All right.  Ms. Antar, listen to me.

23        MS. ANTAR:  Yes.

24        THE COURT:  I want you to put that away.

25        MS. ANTAR:  Okay.

26        THE COURT:  You're here on an emergency motion.

27        MS. ANTAR:  Okay.

1    THE COURT:  Put that away.  What's the

2    emergency?

3    MS. ANTAR:  Well, the emergency that -- was that

4    he wasn't giving me back my child which is what I

5    stated earlier, that she has now been returned to me.

6    But when I filed that emergency motion, they told me

7    I'd be also filing a new modification with it which

8    was gonna be part of this.

9    THE COURT:  Right.  But I'm -- but I'm not

10   hearing that today.

11   MS. ANTAR:  Okay.

12   THE COURT:  So emergency motions get in front of

13   the Court right away.

14   MS. ANTAR:  Okay.

15   THE COURT:  They get -- so they sort of jump

16   ahead of all the other motions.  That's why today has

17   seemed like -- like -- like you guys had to wait so

18   long because all I'm hearing today are emergency

19   motions --

20   MS. ANTAR:  Mm-hmm.

21   THE COURT:  -- because they -- they get sooner

22   court dates.

23   MS. ANTAR:  Okay.

24   THE COURT:  So I can hear you out about the

25   emergency situation.  If you're telling me the

26   emergency is solved, that's fine.  But I'm not gonna

27   decide the -- the bigger motion to modify the

1       schedule today.  That's gonna get treated like every

2       other date.  The court date you have a -- you have a

3       court date for that April -- June -- June 14th.

4            MS. ANTAR:  April 12th is our next court date.

5            THE COURT:  Yes.  You're right.

6            MS. ANTAR:  Which is Tuesday.

7            THE COURT:  April 12th.

8            MS. ANTAR:  And -- and the reason why that this

9       turned into, like, an emergency is, as I was

10      describing, Matthew has been not -- like, that --

11      like, I quite that job back in September.  So since

12      September to now we've only met at that gas station

13      to do the exchange of our daughter a handful of

14      times.  I think six times.  All the other times, he

15      has dropped her off at my mother's and picked her up

16      from my mother's.

17           Now, in the last few weeks he's been getting

18      mad.  So to try to retaliate against me, he's saying

19      either you meet me at this gas station per the

20      agreement or I'm gonna say that you abandoned

21      Angelina, and I'm gonna file for sole custody, and

22      I'm gonna say you abandoned her, and now I'm gonna

23      get sole custody and you're gonna pay me child

24      support.  So that's what he's been saying to me.  And

25      so when I tried to say -- when I tried to call him

26      multiple times, as you can see in my affidavit that

27      was attached to this emergency ex parte motion, my

1    typed affidavit, I stated that I asked him that day

2    to bring my child to the dentist where she had a

3    scheduled appointment.  I said please meet me here at

4    this -- at this time.  He -- he reached out to me to

5    say that he was running late.  I said, okay.  We can

6    try to reschedule.  But then when I called the

7    office, they said they can't reschedule it.  They

8    said it's okay if she's late.  So I reached back out

9    to him.  I said, okay, she can just come late.  Just

10   come as soon as you can.  I scheduled that

11   appointment at the same time as my other child so

12   both could be there, and I was expecting for him to

13   bring me Angelina and she was gonna go home with me

14   after that appointment.

15        I even asked him if he could -- if I could

16   borrow his car seat because I was planning to take

17   her home and I forgot my car seat.  So he then called

18   the doctor, cancelled the appointment, and said he

19   was gonna reschedule it even though we're supposed to

20   make medical decisions together.  And the plan was

21   for him to meet me at that dentist office so she

22   could do her dentist appointment, which was actually

23   gonna be her first dentist appointment, and then

24   after that she was gonna go home with me which was a

25   -- it was a -- a Tuesday.

26        So -- so then, you know, I called the police,

27   and I said my Court order states that she's supposed

1    to be with me from Monday through Friday and him from

2    Friday to Monday.  He's refusing to give her back to

3    me.  He said to me, if you want to get the child, get

4    her from my -- my -- my house at 48 Quarry Hill Road

5    in Waterbury.

6         So I drove to 48 Quarry Hill Road in Waterbury.

7     Nobody was there.  I called the police.  I said I

8    wanted to have them do a wellness check because

9    Matthew stopped responding to all of my calls or my

10   emails.  I emailed him multiple times saying I'm here

11   at 48 Quarry Hill, Waterbury.  Nobody's there.  I

12   called -- I called the police in Waterbury.  They

13   went there.  They spoke to the homeowner who is Roy

14   Bowers who is Matthew's stepfather and Roy Bowers

15   stated to the Waterbury Police that Angelina was not

16   there, that Matthew has not lived there, and Angelina

17   has not lived there with Matthew since December, and

18   that Matthew lives in New Britain at the address

19   which I stated which is the one I said before in New

20   Britain, 23 -- I don't know.  I lost it.

21             THE COURT:  All right.  So --

22             MS. ANTAR:  But, either way, so --

23             THE COURT:  But the current -- the

24   current --

25             MS. ANTAR:  -- so the police did a --

26             THE COURT:  The current --

27             MS. ANTAR:  I'm sorry.  The -- the police

```
 1          went --
 2                THE COURT:  The current -- I've read your
 3          affidavit.
 4                MS. ANTAR:  Yeah.
 5                THE COURT:  The current schedule --
 6                MS. ANTAR:  Yeah.
 7                THE COURT:   -- has Angelina with you Monday
 8          through Friday --
 9                MS. ANTAR:  Right.
10                THE COURT:  -- and every week.
11                MS. ANTAR:  Every week and so --
12                THE COURT:  And then --
13                MS. ANTAR:  -- it's basically, like, every
14          weekend she's supposed to go with him and so it's,
15          like, it's not like the schedule has -- has been a
16          problem for us.  The problem is this little statement
17          here about this gas station is the problem because
18          one, I know longer work there at that office, so I'm
19          not doing that commute anymore.
20                THE COURT:  I -- I understand.  Where do you
21          live?
22                MS. ANTAR:  I live in Orange.
23                THE COURT:  Okay.  And where do -- where do you
24          live, sir?
25                MR. LODICE:  I moved to New Britain last month.
26                THE COURT:  New Britain.  You moved just last
27          month?
```

1          MR. LODICE:  Yes.

2          THE COURT:  Where do you live?

3          MS. ANTAR:  And under oath he said -- said he

4     lives in Waterbury.

5          THE MARSHAL:  Don't interrupt, please.

6          THE COURT:  Hey.  Hey.

7          So why is your stepfather saying you live in

8     Newington?

9          MR. LODICE:  No.  He said New Britain.

10          THE COURT:  New Britain?

11          MR. LODICE:  Yeah.

12          THE COURT:  Okay.  What's the address in New

13     Britain?

14          MR. LODICE:  23 Lyman Street.

15          THE COURT:  And where is the gas station you

16     were exchanging the child at?

17          MR. LODICE:  Naugatuck.

18          MS. ANTAR:  The gas station's at 527 North Main,

19     Street, Naugatuck, CT, and it's Cumberland Farms.

20     And that was what we picked when we discussed this in

21     June of 2021 'cause it was convenient for both of us.

22     It was relatively very close --

23          THE COURT:  All right.  And what -- what are you

24     suggesting now?

25          MS. ANTAR:  Well, I -- I actually wrote down one

26     of the things, but that was the one I was asking to

27     suggest a change.  I know I -- I was putting too much

1    background info, but I'm just saying -- I'm asking

2    that the Court remove this specific pickup location

3    from the agreement since Matthew now lives at 23

4    Lyman Street, New Britain, CT and no longer lives

5    within minutes of the Cumberland Farms.

6        THE COURT:  So -- so where do you want to meet

7    now?

8        MS. ANTAR:  I said I'm asking to change the

9    pickup point to Angelina's daycare.  I'm in the

10   process of signing her up for a daycare located in

11   Thomaston, CT.  I would like to make it so Matthew

12   drops her off at her daycare in Thomaston, CT on

13   Mondays at 9 and picks her up from there Fridays at

14   5:30.  If she changes daycare or school, Mr. Lodice

15   would be able to bring her to the new school or

16   daycare.  On days when there's no school Mr. Lodice

17   can bring child to my mother's house.  And if my

18   mother is unavailable, he can bring her to me at a

19   police station which is halfway point between both

20   our addresses, which I looked at a map and said North

21   Haven, CT might be good.  But, honestly, I'm -- I'm

22   open to whatever.  I'm also -- I just don't feel like

23   it's --

24       THE COURT:  All right.  So I don't -- hold on.

25       MS. ANTAR:  Yes.

26       THE COURT:  I don't understand.  If she's with

27   you Monday through Friday, you're suggesting he pick

```
1        the child up from daycare Friday.
2             MS. ANTAR:  At 5:30.  So the daycare that I'm
3        looking at that I'm most likely --
4             THE COURT:  Okay.
5             MS. ANTAR:  -- going to sign her up for, she has
6        to be dropped off by 9 --
7             THE COURT:  Okay.
8             MS. ANTAR:  -- and she has to be picked up by
9        5:30.
10            And on our agreement it says he's -- he's
11       supposed to drop her off Mondays at 9 and pick her up
12       Fridays at 5:30, so it'd be perfect.  He can drop her
13       off even earlier if he wanted.  She can go to
14       daycare.  And then this way we don't have to have the
15       drama of arguing and seeing each other all the time
16       like that.  We can limit the communication to the
17       emails.
18            THE COURT:  Okay.  I -- stop.  Stop.
19            MS. ANTAR:  Sorry.
20            THE COURT:  I understand.
21            MS. ANTAR:  I'm sorry.
22            THE COURT:  I understand what you're saying.
23       Listen, what I also understand is that there's no
24       emergency anymore.
25            MS. ANTAR:  Right.  And I -- and I acknowledged
26       that.
27            THE COURT:  All right.  So the only thing that
```

1    has my attention in terms of, like, it might be kind

2    of an emergency, is that your pickup and drop off

3    location doesn't make any sense anymore.  So I'm -- I

4    will talk to you about maybe organizing a new pickup

5    and drop off location so that you guys don't have

6    this disconnect anymore.   That is -- because that

7    involves your child.

8         MS. ANTAR:  Right.

9         THE COURT:  Your child shouldn't spend hours in

10   the car driving around the state 'cause her parents

11   can't agree on the location.  So have you discussed

12   this new pickup and drop off location yet?

13        MR. LODICE:  This is the first I've heard of it,

14   your Honor.

15        THE COURT:  Okay.

16        MS. ANTAR:  He has stated to me, like, we

17   will --

18        THE COURT:  Okay.

19        MS. ANTAR:  -- we'll handle it court.  When we

20   go to court, we'll handle it.  And it's, like, the

21   court date is weeks away, so --

22        THE COURT:  But the court date's now.

23        MS. ANTAR:  So now we're here.

24        MR. LODICE:  So now.  But, your Honor --

25        THE COURT:  Well, what's --

26        MR. LODICE:  -- she made a lot of allegations

27   against me.  I would like to at least be able to

1          rebut some of those.  I mean --
2               THE COURT:  There's no --
3               MS. ANTAR:  She doesn't care about that.
4               THE COURT:  Hey.
5               THE MARSHAL:  Hey.
6               THE COURT:  Ma'am.
7               MS. ANTAR:  I'm sorry.  I just feel like --
8               MR. LODICE:  I mean --
9               THE COURT:  Listen to me.
10              MS. ANTAR:  -- I didn't get to finish reading
11         all the stuff I was saying about him and he -- and he
12         says all this false stuff about me.
13              THE COURT:  Stop.
14              THE MARSHAL:  Okay.
15              THE COURT:  Listen, there is no emergency.  The
16         emergency has been resolved.  You two are obviously
17         not behaving very well with each other.  That will
18         get addressed on your April court date.
19              The only thing that I think is an issue is your
20         pickup and drop off location.  So I'm happy to help
21         you try and figure that out if you -- if that's the
22         issue 'cause you can't -- your child should not be,
23         like, driving all over the place.
24              You want to pick the child up and drop the child
25         off at daycare, sir?  Does that make sense to you?
26              MR. LODICE:  Well, I -- when is she starting
27         this daycare?

```
 1            THE COURT:  I don't know.
 2            MR. LODICE:  'Cause Theo will say things like
 3       that and then I'll have issues where she won't be at
 4       that -- I -- there won't be a daycare, and then I'll
 5       go there and she'll be, like, I didn't sign her up.
 6       You can just keep her.  Like, I have papers of her
 7       refusing Angelina six different times --
 8            THE COURT:  Okay.
 9            MR. LODICE:  -- on Mondays.  This is why I
10       wanted to, like, say my end.  So, like --
11            THE COURT:  All right.  Well, we're not --
12       listen, we're not gonna get into any of that because
13       there is no emergency.
14            MR. LODICE:  But there is no daycare yet
15       neither.
16            THE COURT:  Well, I -- I understand that.
17            MS. ANTAR:  Your Honor, may I -- may I comment
18       on that --
19            THE COURT:  No.
20            MS. ANTAR:  -- about the daycare?
21            THE COURT:  No.  No.  You can stop talking,
22       young lady.  You have interrupted me, like, three
23       times.  I kick people out of my courtroom for
24       interrupting, so I want you to stop.
25            MS. ANTAR:  I'm sorry.  I just want --
26            THE COURT:  Listen to me --
27            MS. ANTAR:  I'm sorry.
```

1          THE COURT:  -- both of you.  You have a very

2     young child in common.

3          MR. LODICE:  Mm-hmm.

4          THE COURT:  She's only two.

5          MR. LODICE:  Two and a half.

6          THE COURT:  Two and a half.

7          MR. LODICE:  She'll be three in May.

8          THE COURT:  You two have spent so much time in

9     court already.  Already since 2019.

10          MR. LODICE:  Mm-hmm.

11          THE COURT:  You cannot do this to your child.

12     This is a disaster.  You two have to get on the same

13     page.

14          So you're only here on an emergency motion.  And

15     I think that everybody acknowledges that there's no

16     longer an emergency.  I agree that you need a

17     schedule, so that you both know when you're child is

18     going to be with each one of you.  And I agree that

19     you should probably change the pickup and drop off

20     location.  The place in Naugatuck maybe is not a good

21     idea.  But if you can't have a rational discussion

22     with me about that, then I'm gonna send you out of

23     here, deny the emergency motion 'cause the emergency

24     has been resolved, and I'll see you in April.

25          So what is it, folks?  Do you want to have a

26     rational discussion about a new pickup and drop off

27     or do you want to just come back in April?

1          MR. LODICE:  Of course I do.

2          MS. ANTAR:  I would love to and I just --

3          THE COURT:  Okay.  Then -- then we're gonna have

4     a rational guided discussion by me.

5          MS. ANTAR:  Okay.

6          THE COURT:  So she's suggesting daycare.  You're

7     not -- you don't trust that the daycare has started

8     yet.  What's your suggestion?

9          MR. LODICE:  Well, the meeting place we have now

10    is 20 minutes from her house and 30 minutes from

11    mine.

12         THE COURT:  The --

13         MR. LODICE:  It's -- it's -- it's a halfway

14    point.

15         THE COURT:  The place in Naugatuck?  All right.

16         MR. LODICE:  It's not a bad halfway point.  And

17    not only that, it's also on the way to the daycare.

18         THE COURT:  All right.  Does -- why do you think

19    the place doesn't make any sense anymore if it's 20

20    minutes from your house and 30 minutes from him?

21         MS. ANTAR:  So for me, I used to bring Angelina

22    with me to work every day.

23         THE COURT:  Mm-hmm.

24         MS. ANTAR:  And I would bring her with me to my

25    office in Terryville.  Now, I don't do that anymore,

26    so I don't bring Angelina with me to work.  So what I

27    usually do is I'll bring her to my mother on Monday

1        and my mom usually watches her.

2               THE COURT:  I see.

3               MS. ANTAR:  And, I mean, on Mondays he has her.

4        So on Mondays he would usually bring her to my mother

5        so then I would just pick her up from there.  So it's

6        very convenient 'cause then when my older daughter

7        goes on the bus at 8, I just go right to work.

8               THE COURT:  Well, where is your mom?

9               MS. ANTAR:  My mom is in Woodbridge.  And so

10       Matthew has been bringing Angelina to and from my

11       mom's this whole time since -- since September except

12       for a few times where he insisted we meet at the gas

13       station 'cause that's what the agreement said.  And I

14       -- and so --

15              THE COURT:  Okay.  So New Britain to Woodbridge

16       is kind of long drive.  But you could -- you could do

17       all the driving one way.

18              And you can do all the driving the other way.

19              MS. ANTAR:  Well, the other thing I was gonna

20       mention also is that with, you know, with my mom, he

21       can -- he can bring her as early as 8 which'll give

22       him an earlier start on his workday versus 9.

23              THE COURT:  Do you have -- do you have any

24       interest in doing that, sir?

25              MS. ANTAR:  But --

26              THE COURT:  Don't --

27              MR. LODICE:  Her mother actually told me that

1      she wasn't going to be taking her anymore from me and

2      that's why I stopped bringing her to her mother

3      because her mother told me not to.  I have the proof.

4      I have the text messages of her mom saying this to

5      me.

6           THE COURT:  Listen, I'm asking you if I -- if I

7      ordered it, everybody's gonna do it.

8           MR. LODICE:  Yeah.  But is her mom --

9           THE COURT:  Is picking up --

10          MR. LODICE:  What happens when her mom says I'm

11     not taking her today?

12          THE COURT:  Well, is your -- put that aside.

13          Is her mother's house a better location for you?

14          MR. LODICE:  My mother's house?

15          THE COURT:  No.  Hers.

16          MR. LODICE:  Her mother's house?

17          THE COURT:  Yeah.

18          MR. LODICE:  Not really.  No.  All the way to

19     Woodbridge?  No.

20          THE COURT:  Okay.

21          MR. LODICE:  Especially, if she's gonna be going

22     to -- can I direct her, or can you direct then?  Can

23     you ask her, I guess, then is she going to be going

24     to daycare on Mondays or is she going to be going to

25     her mother's on Mondays?

26          THE COURT:  Well, it sounded to me like she was

27     gonna go to this new daycare on Monday.

1          MR. LODICE:  And that's a definite?

2          THE COURT:  So if the -- let's put it this way,

3     if the child was going to daycare in Thomaston, would

4     that be easier for you?

5          MR. LODICE:  I -- I would be willing to drive.

6     It's a little hike, but, I mean, it's far.  It's,

7     like, probably 45 minutes from my house.  I mean,

8     it'd be ideal if I didn't have to go that far, but I

9     understand it'd be easier if I dropped her off there.

10    But them I'm, like, I'm driving 45 minutes out of my

11    way to drop her off and go back to my house and then

12    I'm driving 45 minutes on my way to pick her up and

13    go back to my house on every visit.

14         THE COURT:  Yeah.  Well, this is why I agreed to

15    talk about this.  Your child -- you should make

16    arrangements so that the child spends less time in

17    the car.  Okay.  Because it's -- now, what two-year-

18    old wants to be in the car?  So and if you have

19    limited amount of free time and you want to spend it

20    with your child, you don't want to spend an hour and

21    a half of it in the car.  So it would make sense for

22    you two to find a location in the middle or for one

23    parent to do all the driving on one day and the other

24    parent to do all of the driving on the other day.

25    And maybe your workday is not a good day for that.

26    You two have -- you two really have to do a better

27    job of, like, compromising with each other.  So --

1          MR LODICE:  Also -- also, I have -- I have two
2     other children with my ex-wife and I'd have to drop
3     them off.  I'm Court ordered to drop them off at
4     school on Monday mornings in Southington.  So I'm
5     going in that direction.
6          THE COURT:  Okay.
7          MR. LODICE:  So that's why Naugatuck always
8     worked out perfectly for us 'cause it was, like, a
9     perfect middle ground.  It was on the way to her old
10    job and now it's on the way to her daycare.  I still
11    feel --
12         THE COURT:  All right.  Except that she doesn't
13    have the child with her on the --
14         MR. LODICE:  But she got to go there to bring
15    her to daycare.
16         MS. ANTAR:  No.  I -- your Honor, may I please?
17         THE COURT:  All right.  Okay.  Okay.  Nope.
18    Nope.  We're all done.
19         MS. ANTAR:  I just wanted to say one thing,
20    please.
21         THE COURT:  No.  We're all done.
22         There is no emergency.  The emergency motion is
23    denied.  And we will see you two in April.  And that
24    is it.
25         And I want you to listen to what the -- think
26    about the lecture I gave the last family.  Do you
27    really want a stranger, another Judge, making

1    decisions about when you see your children?  You two

2    have to find a way to get on the same page here.

3    Your daughter deserves that from both of you.  But

4    you guys are not even really listening to each other,

5    and you can't raise a child like that.

6         So in terms of today, the emergency motion is

7    denied.  There's no emergency.

8         Your motion for modification will move forward,

9    ma'am.  You have a court date for it.  And we'll

10   address those things in the regular course of

11   business.

12        That's it.  You folks are excused.

13        MR. LODICE:  Thank you, your Honor.

14        THE COURT:  The orders for today will be that

15   the emergency ex parte motion is -- is denied.

16        THE CLERK:  Yes, your Honor.

17        (Whereupon the matter was concluded.)

18

19

20

21

22

23

24

25

26

27

NNH-FA19-5046828-S              :  SUPERIOR COURT

THEODORA F. ANTAR              :  JUDICIAL DISTRICT
                                  OF NEW HAVEN

v.                            :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE              :  APRIL 8, 2022


C E R T I F I C A T I O N


        I hereby certify the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, Connecticut, before the Honorable Jane Grossman,
Judge, on the 8th day of April, 2022.


        Dated this 4th day of August, 2022 in New Haven,
Connecticut.


                                   _____
                                   Kelly DelBasso
                                   Court Recording Monitor

NNH-FA19-5046828-S            :   SUPERIOR COURT

THEODORA F. ANTAR            :   JUDICIAL DISTRICT
                                 OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE           :   APRIL 8, 2022


C E R T I F I C A T I O N


        I hereby certify the electronic version is a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, Connecticut, before the Honorable Jane Grossman,
Judge, on the 8th day of April, 2022.


        Dated this 4th day of August, 2022 in New Haven,
Connecticut.


                                _____
                                Kelly DelBasso
                                Court Recording Monitor