```
NNH-FA19-5046828-S              :  SUPERIOR COURT

THEODORA ANTAR                  :  JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                              :  AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :  APRIL 12, 2022
```

TRANSCRIPT OF THE PROCEEDINGS


BEFORE THE HONORABLE MAUREEN PRICE-BORELAND, JUDGE



A P P E A R A N C E S :



     Representing the Plaintiff:

          MS. THEODORA ANTAR
          Self-Represented Party
          856 Shagbark Drive
          Orange, Connecticut 06477


     Representing the Defendant:

          MR. MATTHEW LODICE
          Self-Represented Party
          23 Lyman Street
          New Britain, Connecticut 06053



                         Recorded & Transcribed By:

                         Shannon Turbert
                         Court Recording Monitor
                         235 Church Street
                         New Haven, Connecticut 06510

1          THE CLERK:  Antar v. Lodice.

2          THE COURT:  Good morning -- good afternoon.

3          MR. LODICE:  Good morning, your Honor, or

4     afternoon.

5          THE COURT:  If you'd put them under oath please.

6          THE CLERK:  If you could both raise your right

7     hand.  Do you solemnly swear or solemnly and

8     sincerely affirm as the case may be that the evidence

9     you shall give concerning this case shall be the

10    truth, the whole truth, and nothing but the truth, so

11    help you God or upon penalty of perjury?

12         MR. LODICE:  I do.

13         MS. ANTAR:  Yes.

14         THE CLERK:  Okay.  Ma'am, starting with you, if

15    you could please state your name and address for the

16    record.

17         MS. ANTAR:  Theodora Antar, 856 Shagbark Drive,

18    Orange, Connecticut, 06477.

19         THE CLERK:  Thank you.

20         And, sir?

21         MR. LODICE:  I have an address change.  Do I

22    just give you my current address?

23         THE COURT:  Yeah.

24         MR. LODICE:  It's the 23 Lyman Street, New

25    Britain, Connecticut.

26         THE COURT:  So have him also complete an updated

27    appearance --

1          THE CLERK:  Mm-hmm.

2          THE COURT:  -- so we can get that on the file.

3      So this was your post-judgment motion for

4  modification and you two came to an agreement?

5          MR. LODICE:  For a partial, yes.

6          THE CLERK:  Don't fill it out yet.

7          MR. LODICE:  Okay.

8      (Whereupon there was a pause in the

9  proceedings.)

10         THE COURT:  Motion to transfer.  What is that?

11         MS. ANTAR:  So I -- I filed a motion to transfer

12  to try to transfer the cases to Milford because of

13  where I reside.  And so there's a hearing set for --

14  there's two separate hearings for two separate

15  dockets we're involved in, and one's May 6th; the

16  other is June 14th.  So we were asking to wait to see

17  if that gets granted before we do anything else so we

18  don't have to keep coming back to different courts.

19         THE COURT:  So were you objecting to that

20  transfer?

21         MR. LODICE:  Yeah, I don't wanna go -- I don't

22  wanna have to go all the way out to Milford.  I live

23  in New Britain.  I'd rather just stay here.  The

24  Courts are familiar with our case here.  It's just --

25  I don't feel the need to transfer it.

26         THE COURT:  Okay.  And you live in New Britain.

27         And you live in?

1         MS. ANTAR:  I live in Orange and the child has

2    lived in Orange since birth so, really, it's -- it's

3    under Milford's jurisdiction.  And he checked and

4    Milford's only an extra ten minutes drive from him

5    from New Britain.  He's driving substantial amount of

6    distance anyway.  For me, the cost of -- with the

7    downtown parking and everything, it's just really

8    expensive every time to come here so that's why we're

9    hoping we can have a hearing on that.

10        THE COURT:  Mm-hmm.  Okay.  All right.  So I'm

11   gonna adopt your agreement as it relates to the

12   outstanding issue which was the post-judgment motion

13   for modification.  And the modification was primarily

14   on the issue of a visitation schedule?

15        MR. LODICE:  Yes.

16        THE COURT:  Okay.  So the -- you -- you can both

17   be seated please.

18        So this agreement is gonna resolve all your

19   other motions except the motion for transfer.  Is

20   that correct?

21        MS. ANTAR:  Not the motion for contempt.

22        THE COURT:  How long ago was that filed?

23        MS. ANTAR:  Originally, it was filed November

24   21st, 2021, I think.  And another one was filed, I

25   believe, in January.

26        THE COURT:  Of this year?

27        MS. ANTAR:  I believe so.

1          MR. LODICE:  I also have pending motions also.

2          THE COURT:  And what's your motions?

3          MR. LODICE:  I believe custody to our -- go over

4     our whole agreement.  But I think we're pretty

5     squared with the agreement end as far as visitation.

6     And then, also, a -- a contempt.

7          THE COURT:  All right.  So, I see your contempt

8     motion.  You have child support orders in the

9     magistrate court?

10         MS. ANTAR:  Yes, which they -- they stated that

11    maybe everything would have to be handled now under

12    magistrate.  However, like, you know, child -- like,

13    Matthew has not paid any child support since November

14    so I was -- that was the original contempt was about

15    money, about child support.

16         THE COURT:  Mm-hmm.

17         MS. ANTAR:  And now that support enforcement has

18    magistrate, it seems that they want everything to be

19    under that Court.

20         THE COURT:  For the purposes of child support?

21         MS. ANTAR:  Correct.

22         THE COURT:  Okay.  So their jurisdiction is

23    around the child support matter.  Our jurisdiction is

24    -- okay.  You understand that?

25         MS. ANTAR:  Right.

26         THE COURT:  Okay.  So that means, then, that

27    your contempt citation is to be handled, because

1      that's about the money.  So let me just look at it.

2      Countless times he has had strangers -- two-year-old

3      -- he then -- so, your -- your contempt motion that's

4      dated February 14th of 2022 seems to be about this

5      issue that you resolved today.

6         MS. ANTAR:  Well, one of the things I mentioned

7      in there was about the right of first refusal so I

8      just wanna make sure I was -- if it's not the

9      maternal or paternal grandparents watching the child

10     that I get at least asked first.  Even if I say no,

11     I'd like to at least have that right, and if Matthew

12     could please, you know, do that.

13        THE COURT:  So --

14        MS. ANTAR:  That was really what the contempt

15     mostly was with that and the money part.  And also we

16     had an issue about the drop-off part which seems like

17     we have a good plan for now so that should hopefully

18     resolve a lot of those issues.

19        THE COURT:  All right.  So let me read your

20     motion.  Okay.  The right of first refusal, strangers

21     watching your child, didn't show up for a designated

22     visitation, and was refusing to return her to you,

23     and he states that he won't follow any part of our

24     agreement; he has not paid child support or childcare

25     costs in five months.  So this motion still has

26     components of it that are still outstanding that you

27     need a hearing on?

1      MS. ANTAR:  I mean, I feel like I'm okay with

2   this agreement, as long as, you know, that he can

3   follow through with give me the right of first

4   refusal moving forward.

5      THE COURT:  Is that in the agreement?

6      MS. ANTAR:  It's already in a --

7      I don't have both documents open, so does your

8   agreement address that issue?

9      MS. ANTAR:  Well, it's -- nothing was changed

10   with that.  It's in our original agreement from June.

11   So, it does say -- like, it's number one that we have

12   to give each other the right of first refusal.  So I

13   just wanna  --

14      THE COURT:  That it's complied with?

15      MS. ANTAR:  -- make sure that we're doing that.

16   And doing this will resolve the issue with -- where

17   we had -- with the drop-off point which was causing

18   problems with us.  And now that we came up with a

19   solution, I feel like that eliminates all of that not

20   showing up, this and that.

21      THE COURT:  All right.  So I'm gonna have 137 go

22   off.  Okay.

23      MS. ANTAR:  I'm sorry, what?

24      THE COURT:  I'm gonna have that motion go off.

25      MS. ANTAR:  Okay.

26      THE COURT:  What that means is you're telling me

27   that, theoretically, all that you've agreed to today

```
 1          combined with the original agreement resolves that
 2          motion.
 3                MS. ANTAR:  Yes.
 4                THE COURT:  'Cause the Court needs to condense
 5          what it's trying to pay attention to.  And so that's
 6          one way of condensing it, is by having that motion go
 7          off.
 8                MS. ANTAR:  Yes.
 9                THE COURT:  All right.  So you had a contempt
10          citation that was scheduled 3/9.  So, listen, I'm
11          reading this stuff as being almost, like, you guys
12          are constantly using the court to resolve what you
13          have to learn to, at some point, resolve, and that's
14          raising your child together in an amicable way.
15          'Cause as I read this motion, mother has not followed
16          the agreement in any way.  What does that mean?  Dad
17          has taken full responsible for raising the child;
18          matters for custody have been filed.  What -- what
19          are you trying to tell me?
20                MR. LODICE:  So, for the past, like, month and a
21          half especially, and even multiple other times in the
22          past, she just would refuse to take our daughter back
23          at her time.  So, like, our scheduled time was I take
24          her Friday evenings to Monday mornings; she would
25          take her Monday mornings to Friday evenings.  And she
26          just stopped taking her.  She would get mad at the
27          fact that I was behind on child support.  Like, well,
```

1    if you can't afford your child support -- and I also

2    have a bunch of emails and text messages and all that

3    proof here, if you do want to see it today, of her

4    just constantly refusing to take her.  And poor

5    Angelina is, you know, getting upset, crying all the

6    time that she -- you know, 'cause we -- we were

7    following a schedule where she would go with mom and

8    then she wasn't seeing her mom for, like, almost

9    three weeks at one point.

10          THE COURT:  Mm-hmm.  And so what was the Court

11    order in terms of your schedule?  You said what?

12    Repeat it.

13          MR. LODICE:  It was I would take our daughter

14    from Friday evening to Monday morning.

15          THE COURT:  Yeah.

16          MR. LODICE:  Then she would have her Monday

17    morning to Friday evening.

18          THE COURT:  And the child goes to school in

19    Orange?

20          MR. LODICE:  The -- well, she's a -- she's only

21    two-and-a-half --

22          THE COURT:  Okay.

23          MR. LODICE:  -- so she doesn't go to school yet.

24          THE COURT:  Okay.  All right.  So are you

25    complying with that?

26          MS. ANTAR:  So, your Honor, like, everything

27    that he just said was not accurate.  It's -- I've

1      never didn't show up to get the child.  He was using

2      he loophole of we had a -- the meeting place which

3      was at somewhere that we agreed on in June based on a

4      job I used to have, which I have -- I quit that job

5      in September.  So, since then, he had been bringing

6      her to my mother's every week since September instead

7      of that meeting place that was designated.  And I was

8      -- he -- he was also paying -- when he stopped paying

9      child support, he -- he was still paying his half of

10     Court-ordered childcare so that I would be able to

11     work since I do have the child 75 percent of the

12     time.

13          THE COURT:  Mm-hmm.

14          MS. ANTAR:  And so, you know, I said to him,

15     like, when you drop her off at my mother's, please

16     make sure you send me the money for the week because

17     it's always due on Monday for childcare whether she

18     -- we had her in a home daycare and then we took her

19     out of that because she couldn't get a flu vaccine in

20     time and it was mandated and it was, like, such a

21     short period of time that the pediatrician didn't

22     have it so, after that, I started having my personal

23     private babysitter watch her in our home and Matthew

24     was paying and then he stopped paying.  So, the issue

25     about the money is still ongoing and it didn't get

26     resolved on 3/9 because I was actually late to court

27     and so they called us and I wasn't there and then he

1    got up and said to them, oh, well, I'm filing for

2    sole custody so they said they wanted to wait and see

3    what happens with custody.  He -- he has threated me

4    many times saying he's going to lower my child

5    support or file for sole custody so that he doesn't

6    have to pay child support anymore and uses that as a

7    way to intimidate me.  And I feel like we had a great

8    discussion that ended up -- ended up well with all of

9    this.

10        THE COURT:  Today?  Mm-hmm.

11        MS. ANTAR:  And I feel like I -- what we wrote

12   here about the drop-off, pick-up eliminates the issue

13   of --

14        THE COURT:  So, you know what, you didn't answer

15   -- and I hear you on all of that.  But my question to

16   you was, you guys have a schedule.  So are you

17   complying with that schedule by having your child on

18   the days that you agreed to?

19        MS. ANTAR:  Yes.  And on the day that he's

20   discussing where he claims I didn't get her, I told

21   him to bring her to my mother's like he usually does

22   and he stated, if you don't come to the gas station

23   at this time per the -- per the Court order that I'm

24   not gonna -- that either you go there at that gas

25   station; if you're not there within ten minutes, I'm

26   leaving and I'm assuming that you abandoned her and

27   I'm gonna go file for custody.  So it's just seeming

1     that --

2          THE COURT:  Okay.

3          MS. ANTAR:  -- he's using the court as a weapon.

4          THE COURT:  So does this agreement modify the

5     place of pick-up?

6          MS. ANTAR:  Yes, it does.

7          THE COURT:  Okay.  All right.  So, therefore,

8     based on that, I'm gonna assume that 140 is also

9     gonna go off.

10          MR. LODICE:  What's 140?

11          THE COURT:  140 is your motion for contempt

12     which, basically, mother has not followed agreement.

13     Dad has taken full responsible for managing said

14     child.  Matter for custody have been filed.

15          MR. LODICE:  But that's still an issue.  It's

16     been an ongoing issue for over a year now.

17          THE COURT:  So, listen, you guys have an

18     agreement.  You guys have an order of the Court.

19     That's what you comply with.

20          MR. LODICE:  She doesn't.

21          THE COURT:  Reasonable people -- reasonable

22     people realize that circumstances change and make

23     reasonable adjustments.  This is gonna be another 16

24     years that you guys need to work together to

25     basically parent your child.  Circumstances are gonna

26     change.  If one is reasonable and the circumstances

27     seem reasonable, a minor adaptation to the pick-up

1      place is not a big deal; it's not.  And those are the

2      things that somehow you guys have start -- got to

3      start working on.  So I'm reading this that based on

4      your new agreement that the pick-up is at mom's house

5      -- your mother's house.  That addresses this.  And

6      that you will comply with your dates for pick-up, and

7      he will comply with his dates for pick-up.  Correct?

8      Is that my understanding?

9         MS. ANTAR:  Yes.  And that -- and we spoke to my

10     mother as well as his mother.  They both were in

11     agreement of these terms as well.

12        THE COURT:  Okay.  So 140 is off.

13        MR. LODICE:  But, your Honor, may I speak?

14        THE COURT:  Yes.

15        MR. LODICE:  The issues weren't just the meeting

16     location.  It's come down to the money.  'Cause I

17     have multiple text messages from all different days;

18     I have one from March 7th --

19        THE COURT:  So, listen, young man.

20        MR. LODICE:  Yes.

21        THE COURT:  When the Court enters a order for

22     child support, that's what you pay.

23        MR. LODICE:  Yep.

24        THE COURT:  You don't get to change it.

25        MR. LODICE:  No, I know that.

26        THE COURT:  You don't get to change it until you

27     have asked the Court for a modification and the Court

1    basically hears the facts under the basis for which

2    it's modified.  Your obligation for your child is

3    your obligation.

4         MR. LODICE:  I know.  And this what I'm --

5         THE COURT:  Okay.

6         MR. LODICE:  -- getting at is she's saying -- I

7    have in the emails where she's saying to me do not

8    bring Angelina to my mom unless you Venmo me the

9    childcare money.  She's refusing based on the fact

10   that I'm behind on child support.  Same thing on

11   January 2nd.  Since you're refusing to let me talk to

12   her or pay child support, you can keep her all week

13   since now I can't go grocery shopping.  You're F'ed

14   up and blah, blah, blah.  Like, I have -- I have tons

15   of dates like this.

16        THE COURT:  All right.  So it's the same for

17   you.  The understanding is when there's a Court

18   order, until it's been modified -- I hear you.  You

19   have the ability to file a motion for contempt on the

20   issue of child support and to have the Court consider

21   what that payment and arrearage needs to be.  But you

22   guys just don't get to decide that you change the

23   circumstances, unless you come to an agreement.

24   Okay.  So -- because that's what keeps us sane --

25   sane and consistent is that when there's an

26   agreement, you follow the Court orders until the

27   agreement has been changed.

1      MR. LODICE:  May I speak?

2      THE COURT:  Yes.

3      MR. LODICE:  So she's been constantly not

4      following it with zero repercussions.  That's why I

5      wanted to bring it to the Court today.  So, now, when

6      we take this -- this new agreement, what happens in

7      the next month or two when she's still doing the same

8      things over and over again, not showing up for her or

9      refusing?

10      THE COURT:  So let's go through your motions so

11      I just get to the place where, as I said, we're gonna

12      pay attention to those that are still of issue versus

13      those that have been resolved through your agreement.

14      MR. LODICE:  When you say resolved, do you mean

15      that she's saying that she's now going to follow the

16      agreement that -- this new agreement as opposed to

17      our last agreement that she said she was gonna follow

18      and didn't?

19      THE COURT:  Right.  Because sometimes when

20      there's a contempt issue, if you guys come to court

21      and you reset, right --

22      MR. LODICE:  Mm-hmm.

23      THE COURT:  -- and you agree that, moving

24      forward, this is what you're going to do, that resets

25      the agreement because you two have now come to a new

26      agreement.

27      MR. LODICE:  So even though I've been doing the

1     majority of all the parenting and taking Angelina

2     for, like, 25 --

3          THE COURT:  But there's no -- how --

4          MR. LODICE:  -- out of -- days out of the month,

5     I still --

6          THE COURT:  -- how -- how do you want me to

7     resolve that?  'Cause it's not gonna be a reduction

8     in your child support.

9          MR. LODICE:  I don't want a reduction.  I want

10    to take Angelina full-time.  I would like primary

11    residency of her.

12         THE COURT:  You -- sir, that's a very high

13    standard.

14         MR. LODICE:  That's okay.

15         THE COURT:  We -- we -- so, you'd have to have a

16    hearing on sole custody.

17         MR. LODICE:  That's what I want.

18         THE COURT:  So let me get to that motion.  And

19    let me tell you the standard for that.

20         MR. LODICE:  Okay.

21         THE COURT:  You have to show a substantial set

22    of circumstances that would indicate to the Court

23    that this child's well-being is of concern that would

24    warrant you getting sole custody.

25         MR. LODICE:  Absolutely.

26         THE COURT:  Our goal as a Court is to make sure

27    that two parents are basically considered fit

1      parents, unless something demonstrates that she's an

2      unfit parent.

3            MR. LODICE:  Okay.

4            THE COURT:  That's the only basis under which

5      the Court would consider sole custody.

6            MR. LODICE:  Okay.

7            THE COURT:  This is not based out of

8      disagreements and anger; it's based out of what's in

9      the best interest of the child.

10           MR. LODICE:  Mm-hmm.

11           THE COURT:  The Court's presumption is that a

12     child should benefit from having her father and her

13     mother involved in her life unless one of you has

14     demonstrated that, given your circumstances, it's not

15     in the best interest of the child and could be unfit.

16     So it's a high threshold.  It's not based on your

17     everyday disagreements.  Okay.

18           MR. LODICE:  Yep.

19           THE COURT:  All right.  So let me find your

20     motion that you filed for sole custody.

21           MS. ANTAR:  Your Honor, may I say something

22     please?

23           THE COURT:  Sure.

24           MS. ANTAR:  Also, I just wanted to mention that

25     Mr. Lodice has consistently been saying that he is

26     financially indigent and unable to pay his child

27     support because he claims that he has no income.  So

1  I just would like to know how somebody who has no

2  income and no assets or is financially indigent would

3  be able to take sole custody of a child.  Is that

4  something that the Court takes into account?

5       THE COURT:  You know, I -- I wouldn't worry your

6  head about that right now.  Okay.

7       MS. ANTAR:  Okay.

8       THE COURT:  That's -- that's a pretty -- a full-

9  blown hearing.

10       MS. ANTAR:  Okay.

11       THE COURT:  That's -- that's not something the

12  Court takes lightly to make a decision on.

13       MS. ANTAR:  Okay.

14       THE COURT:  This is not gonna change overnight.

15  And so people have a right to file whatever motions

16  they want to.  The Court also will hear it and make a

17  decision.

18       MS. ANTAR:  Okay.  Because I also did file to --

19  to -- for sole custody as well in one of my motions

20  to modify.

21       THE COURT:  That's what I'm telling you guys.

22  Here's what's reading to me, right.

23       MS. ANTAR:  Mm-hmm.

24       THE COURT:  This is a little old lady sitting up

25  here.  You guys are getting in a tit for tat, and

26  raising a child is not a tit for tat.  It's a

27  collaborative relationship that is designed to

1        enhance your daughter's life and teach her how to be

2        an adult in adult relationships.  This is not about

3        tit for tat.  And so the decision about sole custody

4        is something the Court takes very seriously.  Okay.

5        All right.  So -- so it's not, like, you file a

6        motion; you file a motion; you get to file that kind

7        of a motion.  That's not what we're doing here.  It

8        needs to be based on something that's legitimate.

9            Where's your sole custody motion, both of you?

10           MS. ANTAR:  I filed a motion for modification.

11       It was the most recent motion for modification that I

12       filed with the ex parte.  And that was, I believe, on

13       3/17 which I -- I -- I said changing to sole custody.

14       But, again, after meeting today with family relations

15       I thought Matthew and I made some progress and I -- I

16       feel that --

17           THE COURT:  And here were are.  Right?

18           MS. ANTAR:  You know, I feel like if -- if -- if

19       -- according to this, we're okay with continuing the

20       way it is.  But if he wants to keep fighting in court

21       and going tit for tat, I just feel like it's not

22       benefitting our child at all.  And, really, you know,

23       he has his other two children on the weekends; I have

24       my daughter who I have sole custody of during the

25       week. And so it matches up perfectly where our child

26       gets to be with her sister during the week Monday

27       through Friday and gets to be with her two brothers

1     on the weekend.  Matthew is able to work; I'm able to

2     work.  It's a good, you know --

3         THE COURT:  So, on 146 which is the motion that

4     you filed on March 17th, it does not request sole

5     custody.  It basically leaves it at joint.  Father

6     making more money, not following the agreement.  That

7     was the issue as it relates to an enforcement around

8     child support.

9         MS. ANTAR:  I did file another one.  Like I

10    said, I mean, I'd rather just resolve this than have

11    to keep coming back again and again for nothing, if

12    Matthew is willing to.

13        THE COURT:  All right.  So his motion on the

14    request for sole custody is 142.  So we'll retain

15    that motion to move forward.

16        And what -- what motions did I say went off so

17    far?  137 and what?

18        THE CLERK:  It's 137 and 140.

19        THE COURT:  Okay.  So 142 to be heard.  And hers

20    is 146 and I don't see any -- remove father's

21    visitation.  So you ask for his visitation to be

22    removed, but not for sole custody.  So is that the

23    motion you're seeking to follow through on?

24        MS. ANTAR:  Well, yeah.  I mean, in -- in that

25    motion I had requested to remove it 'cause he was

26    refusing to give her back.  He -- he consistently

27    keeps saying to you that I wasn't -- I was refusing

1    to pick up the child.  I was actually begging, and I

2    have emails of me every day.  I have police reports

3    to back this up as well of me begging daily to get

4    the child.  He would say the child's at my mother's

5    house.  He was lying about his address.  I had a

6    police go to the address.  They confirmed that he

7    hasn't lived there in months.  He said -- then he

8    stopped responding.  So he was then telling me, if

9    you wanna get the child, you have to wait until

10   Monday at nine at the gas station like the agreement

11   says, even though I was asking Tuesday, Wednesday,

12   every day.

13        THE COURT:  But then you're saying, based on the

14   agreement that you're seeking the Court to adopt

15   today, you guys have been able to come to a reset.

16   Correct?

17        MS. ANTAR:  We have, yes.  And I feel that -- I

18   feel that moving forward this will be a good plan for

19   us because it eliminates that loophole where, before,

20   it --

21        THE COURT:  So why don't you take the higher

22   road.  Okay.  Use this agreement as the way that

23   you're going to proceed --

24        MS. ANTAR:  Right.

25        THE COURT:  -- and then we will go from there.

26   Okay.  So I'm gonna take 146 off -- 146.10 because,

27   based on the agreement, we are indicating that that

1    addresses the issue.

2        I am gonna reconfirm what you currently have as

3    orders once I complete this agreement.  Okay.

4        MS. ANTAR:  Okay.

5        THE COURT:  All right.  So, listen, both of you

6    went to family today and you signed this agreement.

7    Correct?

8        MS. ANTAR:  Yes.

9        THE COURT:  Sir?

10       MR. LODICE:  Yes.

11       THE COURT:  And you considered this agreement to

12   be fair and equitable, sir?

13       MR. LODICE:  Yes.

14       THE COURT:  All right.

15       MS. ANTAR:  Yes.

16       THE COURT:  So the parties agree to the

17   following modification to their parenting plan:  The

18   mother shall drop off the child to the home of the

19   paternal grandmother, as in his father.  Correct?

20       MS. ANTAR:  Paternal --

21       THE COURT:  Grandmother.  So his mother.

22       MS. ANTAR:  Correct.  His mother.

23       MR. LODICE:  My mother.  Yes.

24       THE COURT:  Every Friday anytime from 8:30 a.m.

25   commencing on April 15th, 2022.  Father shall drop

26   the child off to the daycare each Monday by 9 a.m.

27   with the exception of April 18, 2022 and April 25th,

1      2022, or any other times that the daycare is not

2      available.  On those occasions, the father shall drop

3      the child off to the home of the maternal grandmother

4      anytime after 8 a.m.  So you guys understood those

5      terms.  Correct?

6           MR. LODICE:  Yes, your Honor.

7           THE COURT:  On April 17, 2022, the father will

8      drop the child off to Saint Barbara Greek Orthodox

9      Church in Orange, Connecticut by 10 a.m. and the

10     mother will drop the child off to the home of

11     paternal grandmother by 2 p.m. on April 17th.

12     Correct?

13          MR. LODICE:  Yes.

14          MS. ANTAR:  Yes.

15          THE COURT:  On April 24, 2022, the father will

16     drop off the child to the mother's home by 10 a.m.

17     and the child will stay with the mother.

18         The parents agree to celebrate the minor child's

19     birthday with a joint birthday party to be held on

20     May 21st, 2022.  The parents further agree to share

21     any costs equally.

22         The parents are requesting a hearing for the

23     motion to transfer.

24         Does that reflect your agreement?

25          MR. LODICE:  Yes.

26          MS. ANTAR:  Yes.

27          THE COURT:  All right.  So let me just confirm

1          with you what else is here as an agreement.  So that

2          is a supplement to your initial agreement which was

3          dated 6/16 of 2021.  That was adopted by Judge

4          Murphy.  Does that reflect your understanding?

5                    MS. ANTAR:  Yes.

6                    MR. LODICE:  Yes.

7                    THE COURT:  And that's the one that allowed you

8          guys, you know, the goodnights and all of that kind

9          of scheduling activity and that is dated 6/16/2021

10         and it's on pleading 128 in the event you guys have

11         to -- but you have the agreement.  Correct?

12                   MS. ANTAR:  Yes.

13                   MR. LODICE:  Yes.  Your Honor, she --

14                   THE COURT:  Yes.

15                   MR. LODICE:  -- she keeps me blocked so I can't

16         call to talk to my daughter and she never calls like

17         the agreement says.  That's one of the things that

18         she doesn't follow.  Is there a way that we can make

19         sure that that's followed so I can talk to my

20         daughter during the week when I'm not with her?

21                   MS. ANTAR:  Your Honor, that was one of the

22         things I was asking to modify because I have several

23         recorded conversations of me trying to call either so

24         he can talk to her or vice versa so I can talk to her

25         and, in the background, he's saying you're ugly;

26         nobody loves you, you know, calling me all these

27         names, every name you could think of.  And I have --

1       you know, every time that I've talked to him in any

2       other way, he's very mean and says very mean things

3       to me.  And so I tried to even ask the police to tell

4       him not to contact me unless it's via email only

5       about the child.  And -- and so the FaceTime and the

6       phone calls have been difficult because he uses a,

7       you know, harassing language towards me during those

8       and he uses it as an opportunity to insult me.  And

9       he says -- has said these things in front of my -- in

10      front of both of my children.  And I've recorded many

11      of these calls.

12           MR. LODICE:  Could we hear these recordings

13      please?

14           THE COURT:  I'm not -- I'm not doing a full-

15      blown hearing today.

16           MR. LODICE:  Oh, because that's not true.  So

17      I'd like to hear the actual recordings.

18           MS. ANTAR:  It is true.  And my -- and my child

19      -- my --

20           THE COURT:  She's totally making it up?

21           MR. LODICE:  Yes.

22           THE COURT:  Every aspect of it?

23           MR. LODICE:  Most of it, yes.

24           THE COURT:  Most of it.

25           MR. LODICE:  Yep.

26           THE COURT:  So it's possible that some of this

27      has occurred?

1        MR. LODICE:  When we've been in conversations

2     when I was trying to talk to my daughter, she would

3     jump into the conversation and be, like, oh, what,

4     you're too busy with your girlfriend.  Like, little

5     childish things like that.

6        THE COURT:  You guys have got to grow up.

7        MR. LODICE:  I agree.

8        MS. ANTAR:  I never once said that.

9        THE COURT:  You've got to grow up.  You know

10    what, you have a child now and you need to just

11    really grow up.

12       MR. LODICE:  Mm-hmm.

13       THE COURT:  Okay.  So, listen, two-and-a-half is

14    tough for phone calls, right, because --

15       MR. LODICE:  Mm-hmm.  No, she's very smart.

16       THE COURT:  Yeah, but, nonetheless, it's a --

17    it's -- it's unnatural.  Don't care how smart she is.

18    Her attention span as it relates to a phone call --

19    but you do have your right to your phone calls.  And

20    you basically, based on your agreement, indicated

21    that you guys would agree to have those phone calls

22    on a regular basis.  Now, is it a FaceTime or is it a

23    phone call?

24       MS. ANTAR:  Well, in --

25       MR. LODICE:  I would prefer a FaceTime or a

26    phone call.  I mean, either one's fine.  And I don't

27    even need to talk to her.  She can just give my

1    daughter the phone cause I have no need for

2    conversation.  And, actually, another thing I'd like

3    to request is when we do have to communicate, is

4    there a way that we could set it up where it's a

5    Court-monitored app --

6         THE COURT:  Yes.

7         MR. LODICE:  -- to defer from these --

8         THE COURT:  So there are two options.

9         MR. LODICE:  -- discrepancies?

10         THE COURT:  Let me tell you what the options

11    are.  And I -- I think you guys are right for this

12    option.

13         MR. LODICE:  Okay.

14         THE COURT:  There's one called OurFamilyWizard.

15         MR. LODICE:  Okay.

16         THE COURT:  And that costs about $125 per year.

17         MR. LODICE:  Okay.

18         THE COURT:  It is a more robust system that

19    really, you know, keeps track of a lot of details.

20    The second option is something called AppClose which

21    is free.

22         MR. LODICE:  I'm sorry, what was that called?

23         THE COURT:  A-p-p-C-l-o-s-e.

24         MR. LODICE:  Okay.

25         THE COURT:  And that's also quite usable as a

26    means of communicating.

27         MR. LODICE:  Okay.

1          THE COURT:  And so what's your choice?

2          MR. LODICE:  We could do the OurFamilyWizard.

3          MS. ANTAR:  Your Honor --

4          MR. LODICE:  I'd like something a little more

5     comprehensive that will keep a better monitoring of

6     what's really happening.

7          MS. ANTAR:  Your Honor, may I just mention that

8     we previously tried using a parenting app called

9     WeParent and I actually had to delete it because he

10    was sending me pornographic images of him with our

11    previous babysitter that he was having an affair

12    with.  So, he was using the app to not only harass me

13    saying mean, hurtful things to me, but also sending

14    inappropriate images.

15         THE COURT:  You two are young.  You have a child

16    together.  You guys have got to stop this.

17         MS. ANTAR:  Is -- is there any way we can order

18    it to be contact only about the child?

19         THE COURT:  Well, that's what the apps are for.

20         MR. LODICE:  Yeah.

21         THE COURT:  And you -- you -- so you wouldn't

22    delete the app because it's important that you have

23    that information as evidence in the event you need to

24    provide it.  Right?

25         MS. ANTAR:  Well, Matthew offered to pay for the

26    app.  Can you order that he has to pay for it if

27    we're gonna be using that?

1          MR. LODICE:  That's -- that's fine.  I would be

2     happy to pay for it.

3          THE COURT:  Okay.  So I'm gonna put that in as

4     the order.  So you're gonna use OurFamilyWizard.

5     Correct?

6          MR. LODICE:  Yes.

7          THE COURT:  And both of you are gonna download

8     that.  So today is the 12th, a Tuesday.  Why don't we

9     agree that you'll have that engaged and ready to go

10    by the 15th.

11         MR. LODICE:  Okay.  I mean, I can -- yeah.

12    That's fine.

13         THE COURT:  Okay.  So your daughter is gonna be,

14    at some point, very sensitive to what's going on with

15    the both of you.

16         MR. LODICE:  She is already.

17         THE COURT:  And you guys are gonna be teaching

18    her some skills about her future engagement.  And so

19    somehow I hope you can get past this phase that

20    you're in.  If it's the angry phase, accelerate it so

21    you can move on.  Okay.  It's gonna impact her.  All

22    right.

23         So, as a result of that, you are going to reach

24    out to her when it's time for your -- your -- did you

25    set a time in the schedule of when you would have

26    your phone contact?

27         MR. LODICE:  No, we didn't set a time.  The time

1          -- I -- I don't --

2              THE COURT:  Let's set a time now.

3              MR. LODICE:  Okay.

4              THE COURT:  Let's add a time to this new

5      modified agreement.  Each night in order to say

6      goodnight.  So what is normally a good night when

7      she's heading to bed?

8              MR. LODICE:  6:30, 7 I would say.

9              MS. ANTAR:  I'd say, like, bedtime would

10     probably, like, let's just say 7:30 -- 7:30 p.m.

11             THE COURT:  'Cause she goes down around 8

12     o'clock?

13             MS. ANTAR:  Yeah.

14             THE COURT:  Okay.  So 7:30 is good?

15             MR. LODICE:  Can -- can we --

16             THE COURT:  7 o'clock is good.

17             MR. LODICE:  -- can we do 7?  7 would be better.

18             THE COURT:  Okay.  7 o'clock.

19             MR. LODICE:  'Cause I usually have her in bed by

20     7:30.

21             THE COURT:  7 o'clock.

22             MR. LODICE:  Okay.

23             THE COURT:  Okay.  So 7 o'clock you'll make your

24     daughter available for a video call.

25             And, you, in turn, will do the same.

26             MR. LODICE:  Mm-hmm.

27             THE COURT:  All right.  So the thing that you're

```
1      modifying on here is father will drop child off at

2      mother's house.  You have modified it with your

3      agreement at 10 a.m. on -- well, no, that was

4      Mother's Day.

5           MR. LODICE:  No, yeah, that was just that one

6      day.

7           THE COURT:  Okay.

8           MS. ANTAR:  We modified number 12 on that

9      agreement.

10          THE COURT:  Number 12.

11          MS. ANTAR:  That was that -- yeah.

12          THE COURT:  Okay.

13          MR. LODICE:  Yeah.  It was the location was the

14     biggest discrepancy.

15          THE COURT:  All right.  So this new agreement

16     modifies item number 12 on their agreement which is

17     dated 6/16 of 2021 on pleading 128.  And everything

18     else kind of remains the same.  Right?

19          MS. ANTAR:  Yes.  And we put in some, like,

20     clarifying details about -- for this year, number 15

21     and number 16 and number 17, just because we just

22     wanna make sure we can have something that we can go

23     with.

24          THE COURT:  All right.  Are those religious

25     holidays?

26          MS. ANTAR:  Yes.

27          MR. LODICE:  Yes.
```

1          THE COURT:  Okay.  All right.  So, let me just

2     summarize.  You guys have this agreement that you

3     came to today that there's a modification to your

4     prior transition.  So, for the purposes of child

5     support, I noticed that support enforcement is now

6     involved.  And so will there be reductions from his

7     paycheck?  Has that been finalized?

8          MS. ANTAR:  He's self -- he's self-employed so

9     she's responsible to pay himself.  He has willingly

10    not paid a single dollar.  He said I'm not paying

11    anything unless a Judge forces me to which is why I

12    was gonna ask if maybe we could suspend his

13    professional license because he has a home

14    improvement contractor license.  He just paid to

15    renew it.  Maybe we can suspend that until he makes a

16    payment since he --

17         THE COURT:  All right.  So let's take it step by

18    step.

19         MS. ANTAR:  Okay.

20         THE COURT:  I'm gonna re-order whatever

21    delinquency -- do you have a figure on the

22    delinquency?

23         MS. ANTAR:  I do.  Child support is $3,314.47.

24    And the childcare is $1,640.53.

25         THE COURT:  And what support is that?  What did

26    you use to come up with that figure?

27         MS. ANTAR:  That's from all the money that I've

1    paid for childcare for -- to the babysitter since he

2    stopped paying.

3         THE COURT:  And then the child support, how did

4    you come up with that figure?

5         MS. ANTAR:  I called child support enforcement

6    services and they gave me that number.

7         THE COURT:  And when did you get that number?

8         MS. ANTAR:  That was on Friday, so it's probably

9    the same.

10         THE COURT:  Right.  Are you disputing that

11    figure?

12         MR. LODICE:  Yeah, the babysitting.  She was

13    using a friend to babysit that she wasn't paying so.

14         MS. ANTAR:  I've never used a friend.  I've had

15    a babysitter.  She even signed a -- a -- a W-9 and

16    everything's legitimate.

17         MR. LODICE:  Can we see that?

18         MS. ANTAR:  This isn't a hearing, is it?  This

19    isn't about money.  Money is --

20         MR. LODICE:  I -- yes, it is.  She's addressing

21    the money now.

22         THE COURT:  Well, so, you know, part of the

23    issue is the fact that you guys are here and I'm

24    sensitive to the fact that you are indicating that

25    you have not been getting child support and there is

26    a motion on here.  I'm just allowing you guys some

27    latitude because the Court, fortunately, has a little

1    bit of time to resolve some issues.  So, given what

2    she said, we will hold off on the extracurricular --

3    on the daycare issue for a more full hearing.  Child

4    support has already been ordered --

5        MR. LODICE:  Yeah.

6        THE COURT:  -- and there's no reason that you

7    shouldn't be complying with that.  So my question to

8    you, does that $3,000 reflect your understanding of

9    what you owe at this point?

10       MR. LODICE:  Yes.  As -- as of our previous

11   agreement, yes, it does reflect that.  However, my

12   circumstances of employment have changed drastically.

13   I was making way more money when we agreed on that.

14       THE COURT:  All right.  So, listen, as I told

15   you, until there's a modification, that's what you're

16   paying.

17       MR. LODICE:  But I don't have it.

18       THE COURT:  So --

19       MR. LODICE:  How can I pay something that I

20   don't have?

21       THE COURT:  Okay.  What was your -- what was

22   your weekly payment?

23       MR. LODICE:  $120 a week.

24       THE COURT:  Okay.  And --

25       MR. LODICE:  I'm, like, scraping by right now.

26   Like, you -- I could bring you all my bank account

27   statements and you'll look at them and be, like, he

1    can't afford it.

2         THE COURT:  Do you understand that your daughter

3    has to eat?

4         MR. LODICE:  I do.

5         THE COURT:  Okay.  And she has to eat --

6         MR. LODICE:  But she only has her --

7         THE COURT:  -- seven days a week?

8         MR. LODICE:  Yes.

9         THE COURT:  Okay.

10        MR. LODICE:  And I take her three out of the

11   seven days.

12        THE COURT:  And that -- what?

13        MR. LODICE:  And I take her and feed her myself

14   three of those seven days.  It's not like I'm not

15   taking her.  It's not like I'm one of those parents

16   or fathers that are nonexistant.

17        THE COURT:  So the other four days she shouldn't

18   eat?

19        MR. LODICE:  What?

20        THE COURT:  The other four days she doesn't get

21   to eat?

22        MR. LODICE:  No, she does.  But that's only one

23   more --

24        THE COURT:  But the point is --

25        MR. LODICE:  -- day.

26        THE COURT:  Listen, listen, listen.

27        MR. LODICE:  So does she pay for my three days?

```
1              THE COURT:  Child support is child support.

2              MR. LODICE:  I agree.

3              THE COURT:  You're obligated to pay it.

4              MR. LODICE:  Yes.

5              THE COURT:  Okay.  So what day of the week were

6         you supposed to be paying this child support?

7              MR. LODICE:  I -- I don't think there's a

8         specific day that we had.

9              Did we have a day?

10             I think we just did it at the end of the week,

11        like, Sunday we did it.

12             MS. ANTAR:  I believe that it's -- I believe

13        that it's Thursday on their end.  But, your Honor, I

14        just wanted to mention that Mr. Lodice is making

15        significantly more money than he was when this order

16        of $120 a week was placed in 2019.

17             MR. LODICE:  Based off of what?

18             MS. ANTAR:  In 2019 --

19             THE COURT:  So, listen, sir, I'm gonna reinforce

20        that you have child support payments.  They need to

21        be paid every Friday by 6 p.m.

22             MR. LODICE:  Okay.

23             THE COURT:  And the child support payments,

24        based on the Court order, was $120.

25             MR. LODICE:  We -- we agreed on --

26             MS. ANTAR:  $120 -- $120 a week plus 50 percent

27        of any unreimbursed childcare and medical costs.
```

1          THE COURT:  Okay.  Unreimbursed childcare,

2      you're gonna tack that on to the next hearing.  So

3      I'll add that to the next hearing because that

4      requires, I think, the documentation and an argument

5      about that issue.

6          MR. LODICE:  Your Honor, that --

7          MS. ANTAR:  Yes.

8          THE COURT:  As it relates to the child support,

9      that was already established as part of your

10     agreement.  Correct?

11         MR. LODICE:  Your Honor, yes, that figure that

12     we agreed on was a figure that we agreed on.  That

13     wasn't a Court-ordered figure based off of my income.

14     That was just something we agreed on at the time

15     because I was making better money then.

16         THE COURT:  Okay.

17         MR. LODICE:  So it's not like I followed, like,

18     my income and my finances and then we agreed.  We

19     just agreed that --

20         THE COURT:  So there's been not motion for

21     modification that has bene granted, so that figure

22     remains the same.

23         MR. LODICE:  So I have to file a motion of

24     modification to change that?

25         THE COURT:  And you have to prove, basically,

26     that there is a need to modify.  In the meantime,

27     your payments are $120 to be paid every Friday by 6

1          p.m.

2                And what do you guys use, Zelle?

3                MR. LODICE:  We were -- we were doing a check, I

4          think, initially.

5                MS. ANTAR:  So for every -- since -- since

6          everything's under support enforcement services --

7                MR. LODICE:  Oh, yeah.  We pay them.

8                MS. ANTAR:  -- isn't he supposed to pay them

9          directly?

10                MR. LODICE:  Yeah.

11                THE COURT:  He's supposed to pay them directly.

12           And what have they done with his noncompliance?

13                MS. ANTAR:  So they filed a motion for contempt

14          on him on his behalf which was supposed to be on 3/9

15          but I was actually a little bit late to court that

16          morning and, because they called us when I wasn't

17          there, they gave us a continuance which is for June

18          1st.

19                MR. LODICE:  You were two hours late.

20                MS. ANTAR:  So --

21                MR. LODICE:  That's not a little bit.

22                MS. ANTAR:  I wasn't two hours late.

23                THE COURT:  All right.  So I'm reinforcing the

24          payment amount.  Your hearing is June 1st with

25          support enforcement for compliance.  Okay.

26                MR. LODICE:  Okay.

27                MS. ANTAR:  And, your Honor, I'm -- I just was

1    asking again because, like I said, you know, he

2    started this business on April 16th, 2021.  I also

3    filed a motion for financial discovery because he has

4    made substantial money in the stock market as well in

5    the last 18 months.  I'm requesting to see the last

6    three years of his -- all of his financials because

7    he has been significantly making more money.  He

8    stated to me on several occasions that he's making

9    more money now than he ever has in his life now that

10   he owns his own business and --

11        THE COURT:  Okay.  152 is your motion for

12   discovery.  So that will also be tacked on to the

13   hearing.

14        MS. ANTAR:  On June 1st?

15        THE COURT:  No.  June 1st -- so, it looks like

16   you guys have parallel actions, right.  You have a

17   action with support enforcement as it relates to the

18   enforcement of child support.  This Court sets the

19   child support amount.  So the child support amount

20   has already been set in this court at 120, and that's

21   what should be paid.

22        For the -- the modification or the change of

23   that amount, that happens in this court.  Support

24   enforcement just enforces what already exists.

25   Understood?

26        MS. ANTAR:  So, now if he doesn't pay the 120 by

27   this Friday, do I have to file another motion for

1      contempt?

2          THE COURT:  I'm gonna tack it on to these

3      orders, and yes.  And that would also be part of your

4      next hearing.

5          MS. ANTAR:  And is it possible to suspend is HIC

6      license until he pays?

7          MR. LODICE:  So let me not work?

8          THE COURT:  No.  We need a full hearing.  We

9      need a hearing on that.

10         MS. ANTAR:  Okay.

11         THE COURT:  It is possible as a sanction, but

12     not yet.

13         MS. ANTAR:  Okay.

14         MR. LODICE:  So she wants to make me not work to

15     pay her?  That makes sense?

16         THE COURT:  Well, you know --

17         MS. ANTAR:  You afforded a new apartment.

18         THE COURT:  -- one of the solutions is to be

19     able to pay her and then I think we wouldn't be

20     there.  Right?

21         MR. LODICE:  I agree and I want to pay her.

22     It's not like I don't want to.

23         THE COURT:  So she -- so she has a motion for

24     discovery which is pleading 152 will also be on --

25     where she's asking for discovery on your financial

26     information as a means of being able to establish

27     exactly what your circumstances are.

1      MR. LODICE:  Mm-hmm.

2          THE COURT:  So you will need to look at that

3      motion and be prepared for that too.

4          MR. LODICE:  Okay.

5          MS. ANTAR:  And, your Honor, when will that be

6      -- when will that --

7          THE COURT:  I'm gonna have to ask caseflow to

8      schedule it.  So, given all that we've talked about

9      here, I'm going to set you guys down for a two-hour

10     hearing at a later date on the outstanding motions

11     that have been identified.  So it includes your

12     motion as it relates to the question of sole custody.

13     It includes -- so his, I think, was 142.  Hers is

14     146.10.  And also motion 152.

15         All right.  So your agreement that you have

16     reached otherwise for today's purposes, you consider

17     it to be fair and equitable under the circumstances

18     and in the best interest of your minor child.

19     Correct?

20         MR. LODICE:  Yes, your Honor.

21         MS. ANTAR:  Yes.

22         THE COURT:  And you're asking the Court to adopt

23     that agreement and enter it as an order today.

24     Correct?

25         MS. ANTAR:  Correct.

26         MR. LODICE:  Yes.

27         THE COURT:  All right.  Any questions?

1        MR. LODICE:  Nope.

2        THE COURT:  So you guys will get a date from

3    caseflow to schedule you for the hearing.

4        MR. LODICE:  Okay.  And all the current dates

5    that we have coming up are still active?  'Cause

6    there's -- we have, like, I think three or four more

7    court dates already.  Is there a way to, like --

8        THE COURT:  Here or in another court?

9        MR. LODICE:  Here.  And one of them is even on a

10   separate docket for some reason.

11       THE COURT:  It's on the magistrate docket for

12   6/1.  That's about the contempt issue with the child

13   support.

14       MR. LODICE:  What about the one on May 6th?

15       THE COURT:  May 6th, I don't see you with a date

16   for May 6th.

17       MS. ANTAR:  That's the motion to transfer.

18       MR. LODICE:  Oh, okay.

19       THE COURT:  Maybe they haven't calendared it

20   yet, but it's not the calendar yet.

21       MR. LODICE:  It's weird because it's on a

22   complete separate docket so, like, when I go on the

23   website, all the other ones are on this docket and

24   then that one for 5/6 for some reason is on, like,

25   its own separate -- like, it's, like, a new case

26   almost is what it looks like.

27       THE COURT:  Okay.  The motion to -- it probably

1    was assigned a new docket number.

2         MR. LODICE:  Is there a way to do all this in,

3    like, one hearing, like, all our cases?  Can we just,

4    like, pile it all in one and just go through it all

5    line by line and just be done with it?

6         MS. ANTAR:  Your Honor, I'd rather not do that

7    because there's a -- each motion is separate.

8         THE COURT:  So, let me answer.  All right.  Let

9    -- let -- let the Court answer.  So the answer is

10   that it's based on the Court's availability --

11        MR. LODICE:  Okay.

12        THE COURT:  -- as it relates to schedule.

13   And --

14        MR. LODICE:  'Cause it's very hard for me to

15   lose a day of work and come here.  Like, last time we

16   were here Friday.  We didn't --

17        THE COURT:  One thing I would suggest is

18   probably rather than put this down for two hours, I'm

19   gonna put it down for a half a day.  You guys need to

20   have all your motions and your information ready in

21   order to have the Court proceed so that all the

22   outstanding issues can resolve.  The financial issues

23   as it relates to your payment is already in

24   magistrate court.  You need to have that date on 6/1

25   of 2022.  The only other date I see is 6/14/2022.

26   I'm gonna mark that off because, since you are

27   seeking a hearing date on your outstanding motions,

1        that was another resolution plan date.  And if you

2        are not gonna use that, then we'll mark that off and

3        have a half a day hearing.

4            MR. LODICE:  Okay.

5            MS. ANTAR:  I was told that the 6/14 date was

6        for the motion to transfer on the family docket, and

7        the 5/6 date was the motion to transfer on the

8        magistrate docket.  That's what the clerk's office

9        told me.

10           THE COURT:  Do you guys have the ability to see

11       your docket?

12           MS. ANTAR:  Yes.

13           THE COURT:  Okay.  So I'm gonna have -- after

14       this, the clerk's gonna confirm the 5/6 day.  I will

15       add whatever my understanding is of that to the order

16       so that you guys can see it, what the 5/6 date is.

17           You already know what it is?

18           THE CLERK:  Yes.

19           THE COURT:  Okay.

20           THE CLERK:  They do have a hearing on the 6th of

21       May and that is through magistrate.  It is the motion

22       to transfer.

23           MS. ANTAR:  But 6/14 --

24           THE COURT:  Through magistrate?

25           MR. LODICE:  I'm so confused.

26           THE COURT:  Okay.

27           THE CLERK:  Yeah.

1          THE COURT:  All right.  We'll look at that 5/6
2      date.  All right.  We're good?
3          MS. ANTAR:  Well, I just wanted to confirm --
4          MR. LODICE:  I don't know.
5          MS. ANTAR:  -- about 6/14.
6          MR. LODICE:  I'm very confused.
7          MS. ANTAR:  Is that still on as the motion to
8      transfer to the family docket?  Because that's what
9      that was for, 6/14.
10         MR. LODICE:  What is -- I don't know what that
11     means.
12         MS. ANTAR:  It's right here.
13         THE COURT:  A resolution plan date is not gonna
14     take up the issue of a transfer.
15         MS. ANTAR:  So what was that resolution plan
16     date?
17         THE COURT:  I -- what they do is they give you
18     two bites of the apple with the resolution plan date
19     in the event you can use that second date to come to
20     a global resolution.
21         MR. LODICE:  Okay.
22         THE COURT:  What I'm hearing, based on your
23     continued dispute, is that you need hearing time.
24         MR. LODICE:  Yes.
25         THE COURT:  Those resolution plan dates are like
26     this.  You don't even get as long as you've been
27     sitting here today.  And the only reason you're

1       sitting here today for this length of time, 'cause

2       this was scheduled for a case date and I had the

3       ability to listen to you for a little bit because I

4       didn't have anything lined up after you.

5               MR. LODICE:  Thank you.

6               THE COURT:  I'm gonna put that date as off and

7       also put the motion for transfer on the date that

8       they're gonna schedule for the half a day.

9               MS. ANTAR:  Okay.  Which -- which hasn't been

10      scheduled yet?

11              THE COURT:  Has not been scheduled yet.

12              MS. ANTAR:  So we'll do the motion to transfer

13      as well as all the other issues on that day?

14              THE COURT:  Yes.

15              MS. ANTAR:  Okay.

16              MR. LODICE:  Okay.

17              THE COURT:  And I'm setting it up for a half a

18      day.  So you guys are gonna remain self-represented.

19      Correct?

20              MR. LODICE:  Yes.

21              MS. ANTAR:  Well, I may --

22              MR. LODICE:  I can't afford a lawyer.

23              MS. ANTAR:  -- I may retain an attorney.

24              THE COURT:  All right.  If you decide to retain

25      an attorney, then you'll need to have the attorney

26      know the date.

27              MS. ANTAR:  Okay.

1      THE COURT:  If you're not retaining an attorney,

2   you need to come prepared with all your proof that

3   you're trying to submit to the Court through evidence

4   of what you are arguing.

5      MR. LODICE:  Okay.

6      THE COURT:  Okay.  All right.  We're good?

7      MS. ANTAR:  Yes.

8      THE COURT:  All right.

9      MR. LODICE:  Yes.  Also, just one more thing

10   just -- so we have 6/1 and that's the big court date

11   for everything that's the half-day.

12      THE COURT:  That's magistrate court.

13      MR. LODICE:  But we also have the 5/6 one is

14   still on also.  And those are the only two left.

15   Correct?

16      THE COURT:  I'm gonna put in my orders after

17   today, so look up my orders after today.

18      MR. LODICE:  Okay.

19      THE COURT:  I'm gonna double check your 5/6 day.

20      MR. LODICE:  Okay.

21      THE COURT:  I think it's unusual that your

22   transfer, which is what I think she's indicating,

23   would be at magistrate court.  Magistrate court

24   doesn't normally take motions on transfer.

25      MR. LODICE:  Okay.

26      THE COURT:  That's here.  If that's the case and

27   the 5/6 day is off, I will indicate that in my order

1    or I will tell you what the 5/6 day is for.  So

2    review my orders by the end of the week, usually when

3    it gets posted, and that will tell you about 5/6.

4         MR. LODICE:  Okay.  Thank you, your Honor.

5         THE COURT:  In the meantime, we are going to

6    schedule a half a day for the other motions that we

7    identified.

8         MR. LODICE:  Okay.

9         THE COURT:  Okay.

10        MR. LODICE:  Thank you, your Honor.

11        THE COURT:  All right.  6/1, however, stays on

12   because that's about the enforcement of child

13   support.

14        MS. ANTAR:  And once he doesn't make a payment

15   again, just file another contempt myself through

16   family court since you ordered today he has start

17   paying on Friday?

18        THE COURT:  Yeah.  And it's kind of doubling up

19   because that -- the order exists -- it exists.  Okay.

20        MS. ANTAR:  Okay.

21        THE COURT:  I'm reinforcing the order.

22        MS. ANTAR:  Thank you.

23        THE COURT:  Okay.  All right.

24        (Whereupon court recessed.)

25

26

27

```
NNH-FA19-5046828-S              :   SUPERIOR COURT

THEODORA ANTAR                  :   JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                              :   AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :   APRIL 12, 2022
```

C E R T I F I C A T I O N

      I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, Connecticut, before the Honorable Maureen Price-Boreland, Judge, on the 12th day of April, 2022.

      Dated this 9th day of August, 2022 in New Haven, Connecticut.

_____
Shannon B. Turbert
Court Recording Monitor

NNH-FA19-5046828-S              :   SUPERIOR COURT

THEODORA ANTAR                  :   JUDICIAL DISTRICT
                                    OF NEW HAVEN

v.                              :   AT NEW HAVEN, CONNECTICUT

MATTHEW LODICE                  :   APRIL 12, 2022


E L E C T R O N I C   C E R T I F I C A T I O N


        I hereby certify the electronic version is a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
New Haven, Connecticut, before the Honorable Maureen Price-
Boreland, Judge, on the 12th day of April, 2022.


        Dated this 9th day of August, 2022 in New Haven,
Connecticut.


                                _____
                                Shannon B. Turbert
                                Court Recording Monitor