```
NNH-FA22-5055233-S            :  SUPERIOR COURT

THEODORA F. ANTAR             :  JUDICIAL DISTRICT
                                 OF NEW HAVEN

v.                            :  AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE             :  NOVEMBER 23, 2022
```

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE CHRISTOPHER A. GRIFFIN, JUDGE

A P P E A R A N C E S :

Representing the Plaintiff:

MS. THEODORA F. ANTAR
Self-Represented Party

Representing the Defendant:

MR. MATTHEW J. LODICE
Self-Represented Party

Recorded & Transcribed By:

Clare Kiley
Court Recording Monitor
235 Church Street
New Haven, CT 06510

1          THE COURT:  So Antar and Lodice.

2          All right. Madam Clerk, can you give an oath

3     please.

4          MR. LODICE:  Good morning, your Honor.

5          THE COURT:  Good morning.

6          THE CLERK:  Can I have both parties please raise

7     your right hand.

8          Do you solemnly swear or solemnly and sincerely

9     affirm as the case may be that the evidence you shall

10    give concerning this case shall be the truth, the

11    whole truth, and nothing but the truth so help you

12    God or upon penalty of perjury?  If so, please say I

13    do.

14         MR. LODICE:  I do.

15         MS. ANTAR:  I do.

16         THE CLERK:  Starting with you, ma'am, could you

17    please state your name and address for the record.

18         MS. ANTAR:  Theodora Antar.  856 Shagbark Drive,

19    Orange, Connecticut 06477.

20         THE CLERK:  Thank you.  And you, sir.

21         MR. LODICE:  Matthew Lodice.  23 Lyman

22    Street, New Britain, Connecticut 06053.

23         THE CLERK:  Thank you.

24         THE COURT:  You can both take a seat.  Good

25    morning to both of you.

26         MR. LODICE:  Good morning.

27         THE COURT:  All right.  So this is an

1          application for a restraining order for relief from

2          abuse, it's filed by the applicant here --

3               That's you, Miss Antar.

4               I have seen the affidavit that's attached to the

5          application.  We have service; Mr. Lodice is here.

6          So let's begin with this.

7               And, Miss Antar, do you swear that the

8          information contained in your affidavit and the

9          attachment, the report that you attached to the

10         affidavit, is true and correct to the best of your

11         knowledge?

12              MS. ANTAR:  Yes.

13              THE COURT:  Okay.  Now I'd like a little more --

14         more background here.  You have a child in common.

15             MS. ANTAR:  Yes.

16              THE COURT:  How old is the child?  To -- is it

17         two children?

18              MS. ANTAR:  Just one child in common.

19              THE COURT:  One.  Okay.  And you have another

20         child?

21              MS. ANTAR:  Correct.

22              THE COURT:  Okay.  And that's -- it's hard to

23         read the handwriting when it gets scanned in; is that

24         Angelina --

25              MS. ANTAR:  Angelina --

26              THE COURT:  -- is the child in common?

27              MS. ANTAR:  -- is the child in common.

1          THE COURT:  Okay.  And Angelina, born in 2019?

2          MS. ANTAR:  Yes.

3          THE COURT:  Do you have custody orders in place?

4          MS. ANTAR:  Yes.

5          THE COURT:  All right.  'Cause I saw the

6    references to OurFamilyWizard and things of that

7    nature.  So are the two of you using OurFamilyWizard

8    primarily to communicate regarding Angelina?

9          MS. ANTAR:  Yes.

10         THE COURT:  What's the status of the support

11   payments?  Is that issued in part of your custody

12   case or is that in Family Magistrate Court?

13         MR. LODICE:  What was the question?

14         MS. ANTAR:  I'm sorry.  Can you please repeat

15   the question?

16         THE COURT:  The child support payments, is that

17   -- are those ordered through the custody case or is

18   that in Family Magistrate Court around the corner in

19   3A?

20         MS. ANTAR:  It's under Magistrate.

21         MR. LODICE:  It's -- was ordered in agreement --

22   per our agreement by ourselves, but then we've been

23   going through Magistrate because I fell behind.

24         THE COURT:  Okay.

25         MR. LODICE:  But an original order was in our

26   agreement.

27         THE COURT:  Got it.  In the custody case.

```
 1          MR. LODICE:  In the custody agreement.

 2          THE COURT:  All right.  All right, ma'am, so

 3     what would you like to tell the Court in connection

 4     with your application?  I -- I've read your

 5     affidavit; I have all that information.  Is there

 6     anything else you want to tell me or anything else

 7     you want to provide to the Court in connection with

 8     that?

 9          MS. ANTAR:  Your Honor, I just want to start by

10     asking if the Court can please take into account the

11     judicial risk assessment for this case?

12          THE COURT:  Do you have any objection to that,

13     sir?

14          MR. LODICE:  I don't know what that is, your

15     Honor.

16          THE COURT:  All right.  Did you see Family

17     Relations?

18          MR. LODICE:  Oh, you're -- this paper right

19     here, yes?

20          THE COURT:  Yes.

21          MR. LODICE:  Okay.  What -- what do you -- what

22     -- I don't understand what you're asking me when you

23     say that.

24          THE COURT:  Well, she's asking me to see it --

25          MR. LODICE:  Okay.

26          THE COURT:  -- to take a look at it.  Do you

27     have any objections to me looking at it?
```

1          MR. LODICE:  I mean, I do a little bit because

2     on paper it does make it seem like, you know, it --

3     it puts me at a level seven.  I mean, I guess no.

4     Yes, you can see it.  That's fine.

5          THE COURT:  All right.

6          MR. LODICE:  Do you want me to bring it up to

7     you or you'll take her --

8          THE COURT:  No, I have it here.

9          MR. LODICE:  Oh, okay.

10          THE COURT:  I just didn't want to open it until

11     I checked with you.

12          MR. LODICE:  Okay.

13          (Whereupon there was a pause in the

14     proceedings.)

15          THE COURT:  Okay.

16          MS. ANTAR:  Okay.  I apologize, I'm just a

17     little bit -- just a little nervous.

18          THE COURT:  Take your time.

19          MS. ANTAR:  I get anxiety about this.

20          THE COURT:  So it's -- it's -- it's now, I just

21     wanna let you know it's now 11:16.  Right.  We're

22     gonna go for a little while; I will have to take the

23     afternoon recess though; probably 11:30 to 11:45 --

24     or I'm sorry, afternoon; I'm getting ahead of myself,

25     morning recess, so I will be taking that.

26          But I want you to go ahead and start.  All

27     right.  So take your time that you need to to get --

1    get your thoughts together and we'll go from there.

2         MS. ANTAR:  Okay.

3         THE COURT:  What would you like to tell me in

4    connection with your application?

5         MS. ANTAR:  So I just want to say in connection

6    with the application that I'm trying -- I'm seeking

7    this order of protection under the grounds of

8    coercive control based on the statute which went into

9    effect in the end -- end of last year, and I believe

10   that all the examples that I have listed in the

11   affidavit strongly show the coercive control in this

12   case, and I do have some exhibits of some messages

13   and other supporting documentation as well.

14        THE COURT:  Okay.  So do you want to provide

15   those to the Court now, or do you wanna -- how would

16   you like to proceed on that?

17        MS. ANTAR:  I could provide it to the Court.

18   So --

19        THE COURT:  Now, make sure first, do you have a

20   copy for Mr. Lodice?

21        MS. ANTAR:  Yes.

22        THE COURT:  Okay.  So let's make sure he gets a

23   copy of those, so he has a chance to look at 'em.

24        MS. ANTAR:  And a copy for the Court.

25        THE COURT:  Okay.  Now let's have that one

26   marked as the Applicant's 1.

27        All right.  So, Mr. Lodice, you have a copy of

1       that; take a look.

2              MR. LODICE:  Yep.

3              THE COURT:  I believe she's offering this as --

4       as an exhibit; I'm gonna ask her a couple questions

5       about it.

6              MR. LODICE:  Yep.

7              THE COURT:  But I'm gonna -- I'll -- I'll be

8       asking you if you have any legal objections to the

9       Court taking a look at that.

10             MR. LODICE:  Okay.

11             THE COURT:  So, ma'am, what is this item that

12      we've had marked as Applicant's 1?

13             MS. ANTAR:  This is a screenshot of a --

14      messages that Matthew sent to my mother in an effort

15      to intimidate her.

16             THE COURT:  They were sent to your mother?

17             MS. ANTAR:  Correct.

18             THE COURT:  How did you get a hold of 'em?

19             MS. ANTAR:  I'm sorry?

20             THE COURT:  How did you get them?

21             MS. ANTAR:  My mother sent it to me.  She was

22      extremely upset; she said that she felt being

23      harassed -- she felt she was being harassed by him

24      when he sent her this message.  The child was

25      actually with me, and so he tried to call her

26      numerous times and then sent her a message telling

27      her if she didn't respond to his calls, he was going

1      to have the police go to her house.  My --

2           THE COURT:  So --

3           MR. LODICE:  Your Honor --

4           THE COURT:  Hold -- hold on, sir.  This is her

5      case, right.

6           MR. LODICE:  Correct.

7           THE COURT:  She's the applicant, she's going to

8      get to present her case; I'll hear from you after

9      that.  All right.

10          MR. LODICE:  Yeah.

11          THE COURT:  Don't worry.  I'll hear from both

12     sides before I do anything.

13          These messages, how did you -- how do you know

14     that they're from him if you didn't receive them

15     directly?

16          MS. ANTAR:  She told me that he texted her and

17     she then sent me the messages immediately after when

18     I requested to see what the text said.  So these came

19     directly from her, and she told me that they were

20     sent to her immediately prior to that by him.

21          THE COURT:  Okay.  Did you look at the message

22     on the phone, or you just get it from -- did she

23     forward them to you?

24          MS. ANTAR:  She sent me a screenshot and she

25     also showed it to me on her phone as well.

26          THE COURT:  So same question; if you saw it on

27     the phone, how do you know it's from him?

1          MS. ANTAR:  Because it was saved as his number
2     in -- in her phone.
3          THE COURT:  Okay.  Do you have any objections to
4     the Court --
5          MR. LODICE:  I just have --
6          THE COURT:  -- reviewing this?
7          MR. LODICE:  -- a question on the date on this,
8     there's no date provided; it just says today.
9          THE COURT:  The date is today?
10          MR. LODICE:  No, I -- that's why I'm wondering
11     what's the date on this?
12          THE COURT:  Oh.  Well, we can ask her about
13     that.
14          So what -- would you know when these messages
15     were sent?
16          MS. ANTAR:  Yes.  And I believe I referenced it
17     in my affidavit, but I can just verify as well --
18          THE COURT:  If you need to look at something to
19     refresh your recollection, go ahead.
20          MS. ANTAR:  Okay.  Thank you.
21          (Whereupon there was a pause in the
22     proceedings.)
23          MS. ANTAR:  Okay.  And this was at -- on Friday,
24     October 28th.
25          THE COURT:  Of this year?
26          MS. ANTAR:  Correct.
27          THE COURT:  Okay.  Do you have any other

1      questions for the applicant about the exhibit, sir?

2           MR. LODICE:  No, sir.

3           THE COURT:  All right.  Do you have any

4      objections to my taking a look at it?

5           MR. LODICE:  No, sir -- actually, yes.

6           THE COURT:  Okay.

7           MR. LODICE:  Objection, relevance to this case.

8           THE COURT:  All right.

9           MR. LODICE:  Relevance as to the -- for --

10          THE COURT:  All right.  What's the relevance,

11     ma'am?

12          MR. LODICE:  -- for restraining orders for her

13     and our -- our daughter.

14          MS. ANTAR:  It's relevant because --

15          MR. LODICE:  I don't understand what this.

16          MS. ANTAR: -- under coercive control, it's

17     saying that he cannot try to use intimidation for my

18     family and household members; and my mother is part

19     of my family, and he has consistently -- I also have

20     another exhibit that I'd like to show of him trying

21     to coerce and intimidate my mother and use her as a

22     way to try to hurt me.

23          THE COURT:  All right.  Well, relevance is a

24     pretty low standard, so I'll find that it is relevant

25     and admit it as full exhibit.  Okay.  The Court's

26     reviewed it; what weight ultimately it'll be given is

27     a different story.

1    MS. ANTAR:  I would like to --

2    THE COURT:  Go ahead.

3    MS. ANTAR:  -- I would like to request to -- to

4    be able to play a recording that -- I also have a

5    flash drive to submit at -- to the Court to keep for

6    the record.

7    THE COURT:  Okay.  Has Mr. Lodice been provided

8    a copy of that before today?

9    MS. ANTAR:  He has in FamilyWizard.  When the

10    incident occurred, I did send him the video in

11    FamilyWizard.

12    THE COURT:  Okay.  What's the video a recording

13    of?

14    MS. ANTAR:  It's a recording of him --

15    THE COURT:  Now, I don't want all the details;

16    just generally.

17    MS. ANTAR:  Just -- it's actually the recording

18    that corresponds with number three on my affidavit.

19    THE COURT:  Have you seen that recording, sir?

20    MR. LODICE:  No, sir.

21    THE COURT:  Was it sent to you?

22    MR. LODICE:  Not that I know of.

23    THE COURT:  All right.  When did you send to him

24    on OurFamilyWizard?

25    MS. ANTAR:  I sent it to him on July 8th, 2022.

26    THE COURT:  Okay.  Did you provide him any

27    notice that you were intending to present that today

1      as -- as evidence?

2            MS. ANTAR:  No, I did not.

3            THE COURT:  Okay.  Well, let's hold off on that

4      now -- for now.  What else do you want to present to

5      the Court?

6            MS. ANTAR:  Okay.  So I also have -- I have

7      another -- it's basically a screenshot showing that

8      he called me from -- directly from his number late --

9      at a late hour.

10           THE COURT:  Is there anything in the content of

11     the message that is relevant --

12           MS. ANTAR:  It's showing --

13           THE COURT:  -- to the allegations?

14           MS. ANTAR:  -- it's showing the phone call.  And

15     so I referenced in my affidavit that he's calls me --

16     has called me several times to -- not to speak to the

17     child, tried to call me to speak to me.  And we have

18     a set time where you to talk to the child if he

19     wishes is at 7:00 p.m., but he has called me at

20     multiple times outside of those hours.  And I would

21     message him saying, why are you calling me?  And he

22     would say, oh, I -- I only can tell you in person, or

23     I'll only tell you if you call me.

24           And the police actually told him back in April

25     only to contact me through OurFamilyWizard and not to

26     contact me outside of that or that he might be

27     arrested.  And he has continued; texted me, called me

1    directly on my phone multiple times.

2         THE COURT:  Okay.

3         MS. ANTAR:  So this is --

4         THE COURT:  So provide that --

5         MS. ANTAR:  -- showing proof.

6         THE COURT:  -- copy -- a copy to him, to Mr.

7    Lodice.

8         MS. ANTAR:  And this is for the Court.

9         THE COURT:  And we'll have that -- that copy

10   marked as Applicant's Exhibit 2.

11        MS. ANTAR:  Your Honor, I also have another call

12   from his other phone at a late hour that I also

13   referenced in my affidavit.

14        THE COURT:  Okay.  So same thing, provide him a

15   copy.

16        We'll have that marked as Applicant's 3.

17        MR. LODICE:  Thank you.

18        (Whereupon there was a pause in the

19   proceedings.)

20        THE COURT:  Do you have those marked, Madam

21   Clerk?

22        Have you been able to take a look at those, sir?

23        MR. LODICE:  What's that?  These?  Yes.

24        THE COURT:  All right.  Do you have any

25   objection to the Court seeing those?

26        MR. LODICE:  No, your Honor.

27        THE COURT:  So I just want to be -- know -- so

1    help me know what I'm looking at here.  So on Exhibit

2    2, it's from a -- the name; it looks like it's

3    associated with Kelvin Olivo [phonetic].

4         MS. ANTAR:  Yes.  For some reason it comes up as

5    that which I assume may be the person who had that

6    number prior, but Mr. Lodice has confirmed that that

7    is his phone number; that's his work number as well.

8         THE COURT:  Okay.

9         MR. LODICE:  That is accurate.

10        THE COURT:  What?

11        MR. LODICE:  That is --

12        THE COURT:  Okay.

13        MR. LODICE:  -- what it is; it's the person --

14        THE COURT:  And that was at 8:53 p.m.

15        MS. ANTAR:  I'm sorry?

16        THE COURT:  It was a call at 8:53 p.m.

17        MS. ANTAR:  Yes.

18        THE COURT:  Okay.

19        MS. ANTAR:  And I also want to note that I also

20   have him blocked.  I keep him blocked to avoid any

21   communication from him and he has still made attempts

22   to call me despite being blocked.  And that app shows

23   the name and number and time and date that people

24   call you who are blocked --

25        THE COURT:  Okay.

26        MS. ANTAR:  -- so you can still see.

27        THE COURT:  So in Exhibit 3, this is -- you have

1   this number in your phone associated with the

2   respondent?

3        MS. ANTAR:  Correct.  That is his personal

4   phone.

5        THE COURT:  And that was a call September 29th

6   at 1:20 a.m.

7        MS. ANTAR:  Correct.

8        THE COURT:  All right. Continue.

9        MS. ANTAR:  I also would like to give another

10  exhibit which is an email communication between

11  myself and the Orange police officer who told him not

12  to speak to me outside the app.

13       THE COURT:  It's a communication between the two

14  of you?

15       MS. ANTAR:  Between --

16       THE COURT:  Between you and the police officer?

17       MS. ANTAR:  -- between me and the police officer

18  forwarding him a message from Matthew, and also the

19  message from Matthew is -- is here as well.  So he

20  said to him not to contact me anymore, and Matt still

21  continued to email me, even after being told that he

22  may be arrested if he does; he continued to email

23  after that.  So I forward that to the police officer,

24  and I have the -- the email showing the forwarded

25  message from Matthew as well --

26       THE COURT:  Okay.

27       MS. ANTAR:  -- and the message.

```
 1          THE COURT:  So was that email that you forwarded
 2     the police officer, is that something you received
 3     directly from the respondent?
 4          MS. ANTAR:  Yes, it is.
 5          THE COURT:  All right.  Now the correspondence
 6     with the police officer, how is that relevant or not
 7     hearsay?
 8          MS. ANTAR:  It's directly forwarded, but I also
 9     have just the email as well.
10          THE COURT:  From him?
11          MS. ANTAR:  From him.
12          THE COURT:  Okay.  I think the conversation
13     between you and the police officer, right, you can
14     tell me what transpired, but I think in terms of
15     anything the police officer communicated to you as
16     coming in for the truth of it -- of the matter, I
17     think that's gonna fall within hearsay.
18          MS. ANTAR:  Okay.  And just to clarify, the
19     police officer did not say anything; I simply
20     forwarded the message and said see -- see the
21     forwarded message --
22          THE COURT:  Okay.
23          MS. ANTAR:  -- from the individual you told not
24     to contact me again; he's now contacting me; can you
25     please tell him to stop contacting me --
26          THE COURT:  And --
27          MS. ANTAR:  -- and I forwarded the message.
```

```
 1            THE COURT:  -- you got nothing else from the

 2       police officer --

 3            MS. ANTAR:  No, never.

 4            THE COURT:  -- on that.  All right.  Well, if

 5       that's all that's in there, then I think just the

 6       email by itself from him would be sufficient.

 7            MS. ANTAR:  Okay.

 8            THE COURT:  Because you can -- you've -- you've

 9       provided your testimony --

10            MS. ANTAR:  And this is for the Court.

11            THE COURT:  -- that you forwarded it.

12            So that's Applicant's 4.

13            THE CLERK:  Yes.

14            THE COURT:  Same question to you, sir; do you

15       have any objection to me seeing this exhibit?

16            MR. LODICE:  She stated that she had an email

17       from me; this one is just her messaging the officer

18       -- oh, no.

19            THE COURT:  So I wanna be clear, ma'am, you're

20       saying that Exhibit 4, the email in number four, is

21       something that Mr. Lodice sent to you?

22            MR. LODICE:  No, no.  This is mine.  I'm sorry.

23            MS. ANTAR:  Yes, it is, your Honor.

24            MR. LODICE:  I -- I misunderstood that.  I'm

25       sorry.

26            THE COURT:  Okay.

27            MR. LODICE:  I saw to the Fernandez -- Officer
```

1      Fernandez.

2           THE COURT:  Not a problem.  Do you have an

3      objection to the Court having that as a full exhibit?

4           MR. LODICE:  Yeah.  Yes, I do.

5           THE COURT:  What's your objection?

6           MR. LODICE:  You -- you know what, no, I don't.

7      I actually don't object to this right now.  I'll

8      rebuttal this when it's my turn.

9           THE COURT:  Okay.

10          MR. LODICE:  Thank you.

11          THE COURT:  So there's no objection.  I'm gonna

12     admit it.

13          MR. LODICE:  No objection.

14          THE COURT:  You can certainly respond to it.

15          MR. LODICE:  Yeah.

16          THE COURT:  But I'm not able to unsee it.

17          MR. LODICE:  That's fine.

18          THE COURT:  Okay.  Okay.

19          MS. ANTAR:  Okay.  I have another exhibit, which

20     is an email from the respondent trying to ask me out

21     for -- for dinner.

22          THE COURT:  All right.  When was that sent?

23          MS. ANTAR:  April 18th, 2022.

24          THE COURT:  Okay.  Same thing.  Have it marked

25     as Applicant's 5.

26          Sir, you can take a look at that.

27          MR. LODICE:  Okay.

```
1          THE COURT:  Let me know if you have any
2     objection to it.
3          MR. LODICE:  No, sir.
4          THE COURT:  No, sir.  Okay.  So that'll come in
5     as a full.  Okay.
6          All right.  Now, it's about 11:30.  Is this a
7     good time to take a brief recess?
8          MS. ANTAR:  Yes.
9          THE COURT:  Do you have any more exhibits that
10    you want to present?
11         MS. ANTAR:  I do, but I'm fine with waiting
12    until after the recess.
13         THE COURT:  If you're okay with that.
14         MR. LODICE:  Yeah.
15         THE COURT:  All right.
16         MS. ANTAR:  Okay.
17         THE COURT:  So we'll be back in about 15
18    minutes.  All right.
19         MS. ANTAR:  Okay.  Thank you.
20         MR. LODICE:  Thank you, your Honor.
21         THE MARSHAL:  All rise.  The Court stands in
22    recess.
23         (Whereupon there was a pause in the
24    proceedings.)
25         THE COURT:  All right.  So let's return to our
26    matter of Antar versus Lodice.  My apologies for the
27    interruption; it was unexpected.
```

1          All right.  Ma'am, you've submitted a number of

2     exhibits that the Court has taken and entered as

3     full.

4          MS. ANTAR:  Yes.

5          THE COURT:  How would you like to proceed?

6          MS. ANTAR:  I would like to submit additional

7     exhibits please.

8          THE COURT:  Okay.  Why don't you show all the

9     exhibits that you have to -- to Mr. Lodice right now.

10     So pull them all out, any copies that you have, let's

11     have them over there.  Let's do that all at once.

12          MS. ANTAR:  Okay.  And I also just wanted to

13     know about the video that I wanted to show as an

14     exhibit.  I did ask him if -- during the break if he

15     wanted me to email; he refused.  So I then messaged

16     him back in OurFamilyWizard on the same thread where

17     I originally sent him the video, and it showed he

18     read it and viewed it at five oh -- 5:09 p.m. on that

19     date in July --

20          THE COURT:  Okay.

21          MS. ANTAR:  -- and I said, please see below;

22     you've already received this video and viewed it --

23          THE COURT:  Okay.

24          MS. ANTAR:  -- per the stamp.  And I just wanted

25     to know if that's sufficient of him having access to

26     it for --

27          THE COURT:  Did you get -- did you get a copy of

1        it?

2              MR. LODICE:  I did not get a -- I'm -- she

3        might've messaged my -- the app; I just have yet to

4        check it right now.

5              THE COURT:  Okay.  Well, I'll give you an

6        opportunity to check.  We'll see how far we get --

7              MR. LODICE:  Okay.

8              THE COURT:  -- before the lunch recess.

9              MR. LODICE:  Want me to check it now?

10             THE COURT:  And I'll give you a break to check

11       it.

12             MR. LODICE:  Can I pull out my phone now?

13             THE COURT:  Well, let's go with the other

14       exhibits she has for now.

15             MR. LODICE:  Okay.

16             THE COURT:  And if we end up going past the

17       lunch recess, that'll be a great time for you to

18       watch it.

19             MR. LODICE:  Okay.

20             THE COURT:  If not, I'll give you time.

21             MR. LODICE:  Thank you, your Honor.

22             THE COURT:  All right.  Ma'am, did you provide

23       the copies to --

24             MR. LODICE:  These I've seen; I think one's for

25       the Judge.

26             THE COURT:  Okay.

27             MS. ANTAR:  Yes, that's it.

1          THE COURT:  Are there any other exhibits you

2     intend to present besides the video other than what

3     you've handed?

4          MS. ANTAR:  Yes.

5          THE COURT:  All right.

6          MS. ANTAR:  That was why --

7          THE COURT:  Let's go ahead and give him all of

8     them right now.

9          MS. ANTAR:  Okay.

10          THE COURT:  Unless you are planning on giving

11     testimony in between.  But I -- I'd just like to if

12     we can to expedite it, have him take a look at all of

13     them, if you're okay with that; if you'd rather do it

14     one at a time, that's up to you.

15          MS. ANTAR:  I would prefer to do it one at a

16     time if possible.

17          THE COURT:  Okay.

18          MS. ANTAR:  Okay.

19          THE COURT:  So this is -- are we at number six

20     now?

21          THE CLERK:  Yes, we are at six.

22          THE COURT:  Okay.  This is Applicant's 6.

23          Now, what is -- what is this exhibit, ma'am?

24          MS. ANTAR:  So that exhibit is a message from

25     the respondent in the OurFamilyWizard app in which he

26     is attempting to, again, intimidate, coerce me,

27     exhibit financial abuse, financial control, and

1           refusing to pay --
2                THE COURT:  Okay.  So it's --
3                MS. ANTAR:  -- his Court-ordered obligations.
4                THE COURT:  -- it's a message in
5           OurFamilyWizard?
6                MS. ANTAR:  Correct.
7                THE COURT:   And it was sent by the respondent?
8                MS. ANTAR:  Correct.
9                THE COURT:  And when was it from?
10               MS. ANTAR:  It's from, I believe, last week.
11               THE COURT:  Okay.  Sir, you -- you've had a
12          chance to look at a copy of it.
13               MR. LODICE:  Yes.
14               THE COURT:  Do you have any objection to the
15          Court reviewing the message?
16               MR. LODICE:  Yeah, I -- I don't -- she's saying
17          it's an object of coercion; it's just us discussing,
18          like, our agreement as per our agreement -- like,
19          it's just the details about our agreement.  How is
20          there coercion in there?
21               THE COURT:  Okay.  So you disagree with her
22          characterization of it.
23               MR. LODICE:  Yes.
24               THE COURT:  But do you disagree, or do you have
25          any objection with me looking at what it is?
26               MR. LODICE:  Oh, no. I -- no, I'm sorry.
27          Actually, you're right.  I'm -- I'm sorry.

```
 1            THE COURT:  Okay.  No, I -- I -- I -- I
 2       understand; sometimes it can be -- can be confusing.
 3            MR. LODICE:  Okay.
 4            THE COURT:  So with no objection we'll have it
 5       admitted.  I'll take a look it now.
 6            MR. LODICE:  Are you labeling these Exhibit,
 7       like, A, B, C?
 8            THE COURT:  They're -- they're numbered.
 9            MR. LODICE:  They're numbered?
10            THE COURT:  Yep.
11            MR. LODICE:  All right.  So what number is this
12       one, so I could --
13            THE COURT:  This one is number six.
14            MR. LODICE:  'Cause I'm gonna be -- wanna go
15       over each one of these.
16            THE COURT:  Absolutely.
17            MR. LODICE:  Um.
18            THE COURT:  And if we're going over the ones --
19       if you don't have the numbers from previous ones when
20       you discuss them --
21            MR. LODICE:  Those are one through five,
22       presumably?
23            THE COURT:  -- we'll -- we'll - we'll make sure
24       we get the numbers right, so the record is clear.
25            MR. LODICE:  Okay.  Thank you, your Honor.
26            THE COURT:  Okay.
27            MS. ANTAR:  Okay.
```

1          (Whereupon there was a pause in the

2     proceedings.)

3          THE COURT:  Anything further, ma'am?

4          MS. ANTAR:  Yes.  I have a -- another email

5     communication between the respondent and myself.

6          THE COURT:  Okay.

7          MR. LODICE:  Can she just hand --

8          MS. ANTAR:  I have a copy for him and for --

9          THE COURT:  Yes.

10         MR. LODICE:  Do you mind if I just grab it?

11         THE COURT:  Yes, absolutely.

12         MS. ANTAR:  -- and a copy for the Court --

13         THE COURT:  And the other one will come to the

14    Court.

15         MS. ANTAR:  -- as well; this is for the Court.

16         MR. LODICE:  This is number seven, your Honor?

17         THE COURT:  Yes.

18         MR. LODICE:  Thank you.

19         (Whereupon there was a pause in the

20    proceedings.)

21         MS. ANTAR:  I have another email communication

22    between the respondent and myself.

23         THE COURT:  Okay.  Was this seven that was just

24    presented, or is this another one that we're marking?

25         MS. ANTAR:  This is number eight.

26         THE COURT:  Okay.  So, sir, you had a chance

27    look at look at number seven?  Mr. Lodice, did you

1        have a chance to look at number seven?

2             MR. LODICE:  I'm sorry.  Yes.

3             THE COURT:  Okay.

4             MR. LODICE:  No objection, your Honor.

5             THE COURT:  No objection on that.

6             MR. LODICE:  No objection.

7             THE COURT:  So number 7 is full.

8             And that's eight in your hand, marshal.

9             So when the clerk gets back from running the

10       errand that I asked -- I'm just gonna grab a set of

11       'em.

12            Yeah, you can leave it on the chair there;

13       she'll get it.

14            THE MARSHAL:  Plaintiff's 8, your Honor.

15            THE COURT:  Yeah, that'll be 8.

16            No objection on 8?

17            MR. LODICE:  One second, please.  No objection,

18       your Honor.

19            THE COURT:  No objection.

20            MR. LODICE:  Nope.

21            THE COURT:  All right.  Full exhibit.

22            Thank you, Mr. Clerk.

23            THE MARSHAL:  You're welcome, your Honor.

24            (Whereupon there was a pause in the

25       proceedings.)

26            MS. ANTAR:  I have another Exhibit 9 that's just

27       an -- another email communication.

1          THE COURT:  All right.  Mr. Lodice, do you have

2     a copy of that?  You're getting one now.  Let me know

3     if you have any objection.

4          MR. LODICE:  I'll say no.

5          THE COURT:  No objection.  All right.  So 9's a

6     full Exhibit.

7          MS. ANTAR:  Exhibit 10 is another email

8     communication.

9          THE COURT:  All right.  Same question to you,

10    sir; let me know if you have any objection.

11         MR. LODICE:  No.  No objection.

12         THE COURT:  All right.  That's a full exhibit.

13         MS. ANTAR:  Exhibit 11 is also an email

14    communication.

15         THE COURT:  Okay.  How many exhibits do you have

16    there, ma'am?

17         MS. ANTAR:  Um.

18         MR. LODICE:  Your Honor, this dates back from

19    last year in June.

20         THE COURT:  How is that relevant, ma'am?

21         MS. ANTAR:  It's relevant in establishing this

22    pattern of coercive control that's been going on for

23    the last five years.

24         THE COURT:  Okay.  Well, I -- I -- I'm gonna let

25    you present your case the way you want to.  But I'm

26    gonna tell you, from what I've reviewed from the

27    exhibits before, I'm not seeing a pattern of coercive

1      control; I'm seeing in the two of you discuss things,

2      I'm seeing the two of you disagree with those things,

3      but I'm not seeing a pattern yet.  So, I mean, now

4      we've had a number of exhibits, but it's starting to

5      look like -- I mean, if we're going back that far,

6      unless it's more direct, I -- I'm having a hard time

7      seeing the relevance.

8          MS. ANTAR:  I think it's very direct.  The

9      content of the email is extremely relevant.

10         THE COURT:  Okay.  Do you want to give me an

11     offer of proof as to what's in the -- the email.

12         MS. ANTAR:  Which exhibit is this that you're

13     referring to?

14         THE COURT:  Whatever the one is that you have.

15         Can we have that marked, marshal.

16         The one -- is that number 11 now that we're on?

17         THE CLERK:  Yes.

18         MS. ANTAR:  So in this email communication, he

19     sends pornographic images to me, he tells me sexual

20     things, and is trying to basically coerce me with

21     sex.  And this is the -- this is the main theme of

22     what he's been doing; talking about, you -- you know,

23     giving examples of saying that he's -- he only agreed

24     to our agreement in our custody case because he

25     believed that would come back to him; now he realizes

26     that was a lie.  Going along with the fact that he

27     says if I don't do what he wants, he's gonna -- he

```
1        continues to threaten to take me back to court to --
2        to lower child support, to try to say he wants sole
3        custody, to say he wants to have primary residency --
4             MR. LODICE:  Where does it say that?
5             MS. ANTAR:  -- which he's done multiple times,
6        and this is --
7             THE COURT:  Is that in the exhibit, ma'am?
8             MS. ANTAR:  In this exhibit, it's a
9        communication that was between the two of us almost a
10       week after we entered our agreement in the court --
11       in this court back in -- last summer.
12            THE COURT:  Okay.
13            MS. ANTAR:  And after that, he continued to tell
14       me, like he says in this this email, that -- he said
15       the only reason he signed this is because he believed
16       that it would get me to come back to him, now he
17       realized that that was a lie; I waited for you to
18       manifest you in my life; you know, I'm gonna go -- it
19       also discusses how he -- he lied to me about getting
20       tested for STDs and then -- and then admits in this
21       email that it was all a lie, and so that's also,
22       like, putting my health at risk.
23            THE COURT:  Okay.
24            MS. ANTAR:  And I just think that the fact that
25       he's --
26            THE COURT:  I --
27            MS. ANTAR:  -- sending me --
```

1      THE COURT:  -- I'm gonna admit this over the

2   objection.  I'm gonna take a look at it.  All right.

3      (Whereupon there was a pause in the

4   proceedings.)

5      THE COURT:  All right.  Ma'am, I want to direct

6   -- help direct your testimony a little bit.  So to

7   prove coercive control, there has to be a pattern of

8   behavior that in purpose or effect unreasonably

9   interferes with the applicant's free will and

10   personal liberty, and that includes but is not

11   limited to isolating the applicant from friends,

12   relatives or other sources support; depriving the

13   applicant of basic necessities; controlling,

14   regulating, or monitoring the applicant's, movements,

15   communications, daily behavior, finances, economic

16   resources, or access to services; compelling the

17   applicant by force, threat, or intimidation

18   including, but not limited to threats based on acts

19   or expected immigration status; to engage in conduct

20   from which the applicant has a right to abstain or

21   abstain from conduct the applicant has the right to

22   pursue; committing or threatening to make cruelty to

23   animals; or force sex acts or threats of a sexual

24   nature including not to threaten acts of sexual

25   conduct; threats based on person's sexuality, or

26   threats to release sexual images.  So that's the

27   legal definition of coercive control.

1          What I see here so far, right, I'm just telling

2     you what the Court is seeing, is two people who have

3     or have been in a relationship and who have a

4     together who are disagreeing about things.  Right.

5     I'm not seeing anything here that would establish a

6     pattern of behavior that unreasonably interferes with

7     your ability to live your life.  You may disagree

8     with what he has to say; you may not want to talk to

9     him about other things, but I'm not seeing an

10    unreasonable interference here; I'm seeing two people

11    who don't get along.  Now, I -- I just I want to -- I

12    want you to know what the Court is looking for here

13    under the legal standard because I can't issue a

14    restraining order, right; you told me you were going

15    under coercive control; I can't issue a restraining

16    order just because you've had unpleasant

17    conversations with them that you don't like to have.

18         All right.  Now, I -- I need you to direct me to

19    evidence that's gonna establish coercive control.  Do

20    you have evidence more directly to elements that I

21    just discussed --

22         MS. ANTAR:  Yes.

23         THE COURT:  -- under the legal standard.

24         MS. ANTAR:  Yes, I do.  And I'd --

25         THE COURT:  Okay.

26         MS. ANTAR:  -- I'd also like the opportunity to

27    -- make -- to speak as well --

1          THE COURT:  You can speak --

2          MS. ANTAR:  -- and after I --

3          THE COURT:  -- whenever you want to.  You wanted

4     to go through the exhibits first, and I'm just

5     telling you from what I've seen; we've done ten

6     exhibits now, right, and we've taken up a good

7     portion of hearing time looking at these exhibits.

8     But I gotta tell ya, the exhibits themselves are not

9     doing anything, you know, to help establish your case

10    from the Court's perspective, I'm not seeing coercive

11    control there.

12         MS. ANTAR:  Okay.  I would just like the

13    opportunity to finish entering my exhibits and then I

14    can explain how each exhibit is relevant towards --

15         THE COURT:  Okay.  Well, then --

16         MS. ANTAR:  -- this case.

17         THE COURT:  -- if you're gonna do that, we're

18    gonna mark all of your exhibits at once --

19         MS. ANTAR:  Okay.

20         THE COURT:  -- because I don't want to continue

21    to take the time out to go through one by one.

22         MS. ANTAR:  Okay.

23         THE COURT:  If you're going to have them all

24    come in and then you're going to discuss them, I want

25    you to provide all of them to him now so that he can

26    look at them all --

27         MS. ANTAR:  Okay,

1      THE COURT:  -- we'll go through them, see if

2  there's any objections, and we'll move forward from

3  there.

4      MS. ANTAR:  Can we give him an opportunity to

5  view the video which is directly corresponding to my

6  affidavit?

7      THE COURT:  Well, I -- I gotta tell you, ma'am,

8  with what's in your affidavit, if that's what the

9  video shows, I -- I don't think it's going to be very

10  helpful to the Court.

11      MS. ANTAR:  I think if the Court would see it,

12  it'd be -- it'd be -- it's be a little helpful.  But

13  is it an opportunity for him -- he said he would be

14  willing to view it; is it okay if he does that?

15      THE COURT:  All right.  So here's what we're

16  gonna do, we're gonna take a five-minute recess.

17  You're going to provide copies of all the exhibits to

18  him, you're gonna provide copies to the clerk; the

19  clerk's gonna mark them.

20      And you're gonna take a look at that video. All

21  right.

22      MR. LODICE:  Okay.

23      THE COURT:  And then we're gonna come back and

24  then we'll see what we can get done before the lunch

25  break.

26      MS. ANTAR:  Okay.

27      THE COURT:  All right.  Thank you.

1    MR. LODICE:  Your Honor, real quick question?

2    THE COURT:  Yes.

3    MR. LODICE:  So when she gives me the exhibits,

4    gives you the exhibits and you guys mark them, do you

5    guys' file them in sequential order as she gives them

6    to you?

7    THE COURT:  Yeah, you can --

8    MR. LODICE:  So, like, as you say --

9    THE COURT:  -- you can check with the --

10   MR. LODICE:  -- this is nine, this is nine; I'll

11   be able to stay with the same pages?

12   THE COURT:  Yes.

13   MR. LODICE:  Okay.

14   THE COURT:  Yes.  Check with the clerk and make

15   sure that you have all the numbers of 'em so you can

16   write them down so that we know which documents we're

17   talking about.  But I want all those marked now --

18   MS. ANTAR:  Okay.

19   THE COURT:  -- so that we can streamline this

20   when we come back.

21   MR. LODICE:  Will she hand it to them to give to

22   me?  Does she give it to me directly?  I don't wanna

23   over --

24   THE COURT:  However you want to do it.

25   MR. LODICE:  -- overstep the Court, you know.

26   THE COURT:  However you wanna do it.

27   MR. LODICE:  That's --

```
1          MS. ANTAR:  Okay.  Is it okay if I just have --
2          MR. LODICE:  Doesn't matter to me.
3          THE COURT:  All right.
4          MS. ANTAR:  -- a few minutes -- go downstairs to
5     make sure I have everything organized and then I'll
6     come back up and give it to him?  Or the hallway or
7     whatever you --
8          THE COURT:  I -- I think you should do it here.
9      Right.
10         MS. ANTAR:  Mm-hmm.
11         THE COURT:  Because, I mean, the hearing was --
12    was today --
13         MS. ANTAR:  Okay.
14         THE COURT:  -- all that should have been
15    prepared.
16         MS. ANTAR:  Okay.  And he'll --
17         THE COURT:  All right.  So --
18         MS. ANTAR:  -- listen to the video in here as
19    well?
20         THE COURT:  He can listen wherever he would like
21    to.
22         MS. ANTAR:  Okay.
23         THE COURT:  We're in recess.
24         THE MARSHAL:  All rise.  The Court stands in
25    recess.
26         (Whereupon there was a pause in the
27    proceedings.)
```

1    THE MARSHAL:  Court's now back in session.  Good

2    afternoon, your Honor.

3        THE COURT:  All right.  So it's 12:53.  I

4    understand from the marshal that you're still working

5    through exhibits.

6        MS. ANTAR:  We have a few more; I was showing

7    him a few more on here, and then I have a couple more

8    paper ones.

9        THE COURT:  Okay.  So you say a few more on

10    here, you're pointing your computer; what do you mean

11    by that?

12        MS. ANTAR:  So I was showing it to him on the

13    computer --

14        THE COURT:  The -- this is the video, the -- the

15    the doorbell video we talked about?

16        MS. ANTAR:  He did see that --

17        MR. LODICE:  There's three videos.

18        MS. ANTAR:  -- and I had a few other things on

19    there that I'm including on this file that --

20        THE COURT:  So --

21        MS. ANTAR:  -- I'll provide to the Court.

22        THE COURT:  -- so -- so there are other, other

23    things?

24        MS. ANTAR:  Just a few more that didn't print

25    that I -- they're just messages.

26        THE COURT:  Okay.  So there are more exhibits

27    than just the doorbell that you have in an electronic

1      format only.
2          MS. ANTAR:  Yes, but we only have a few more
3      that he needs to see.
4          THE COURT:  Okay.  So you're showing those to
5      him now.
6          MS. ANTAR:  Yes.
7          THE COURT:  All right.  Well, it's 12:54.  I
8      have to give everyone a lunch recess from 1:00 to
9      2:00.  I have a hearing scheduled for 2 o'clock.
10     Now, I don't know if they're going to be here;  I
11     don't know if they're going to settle; I don't know
12     how long that's gonna take.
13         I can continue this in the afternoon, or we can
14     pick a new date to continue this to as well.  It'll
15     give you an opportunity to make sure you've shown him
16     all your exhibits, and then we can continue with the
17     hearing then.
18         MS. ANTAR:  I would really appreciate that to
19     get a chance to send him everything ahead of time and
20     get things a little organized -- more organized and
21     presentable for the Court.  I would really appreciate
22     to continue to a different day.
23         THE COURT:  Okay.  Sir, what's your position on
24     that?
25         MR. LODICE:  I -- I would like to not have this
26     hanging over my head and be able to show that this is
27     all -- this is her fourth attempt at a restraining

1    order and --

2         THE COURT:  Okay.

3         MR. LODICE:  -- I just -- I want this to be over

4    with, sir.

5         THE COURT:  Look, ma'am, today was the day for

6    the hearing, so you should have come prepared to

7    proceed at the hearing.

8         So what I'm gonna do is I'm -- we're gonna --

9    we'll take our lunch recess so that you can finish

10   showing him the exhibits, and we'll see if we can get

11   done this afternoon.  All right.  If the 2 o'clock

12   hearing I have settles, or if they want to talk, or

13   if I can get over with quickly, we'll continue to

14   work this in; we'll try to get this done today.  All

15   right.

16        MS. ANTAR:  Okay.  Would it be possible for us

17   to get like a -- a sort of, like, a set time for this

18   afternoon, like, maybe 3 o'clock?

19        THE COURT:  No.  No.

20        MS. ANTAR:  So just whenever the other hearing

21   is --

22        THE COURT:  2 o'clock.

23        MS. ANTAR:  -- finished?  Okay.

24        THE COURT:  I'll see you at 2 o'clock right back

25      here in case I have the ability because if they're

26      talking or something's going on, I'll be able to

27      fit you in.  I want to make sure we streamline

1          this as much as possible.  So make sure all the

2          exhibits are shown to him; make sure you have all

3          the exhibits marked, all right, when we come back.

4          All right.  And we'll get --

5             I think they -- are they already marked except

6      for electronic exhibits.

7             THE CLERK:  I -- and I believe she has a -- she

8      said she has a few more.

9             THE COURT:  Okay.

10            MR. LODICE:  I have up to 16 as of right now of

11     her --

12            MS. ANTAR:  If I show him during the break --

13            THE COURT:  Do you have any more paper exhibits?

14            MS. ANTAR:  I do.

15            THE COURT:  How many exhibits do you have,

16     ma'am?

17            MS. ANTAR:  I don't have them counted, so I -- I

18     don't know for sure, but I just --

19            THE COURT:  Okay.  So let's get --

20            MS. ANTAR:  -- I've done all -- as much as I

21     could.

22            THE COURT:  -- your paper exhibits marked --

23            MS. ANTAR:  Okay.

24            THE COURT:  -- get the paper exhibits to Mr.

25     Lodice.

26            MS. ANTAR:  Okay.

27            THE COURT:  And then you can spend the break

1    looking at what the -- what's on the electronic

2    exhibit.  All right.  I want to streamline that as

3    much as possible so we can get that done today.  All

4    right.

5         MS. ANTAR:  Okay.  And if I send him the things

6    directly during the break, at -- he -- that's

7    sufficient for him --

8         THE COURT:  As long as he's able to view it.

9    He'll be able to tell me that; if he's able to get it

10   or not, and we can deal with that after we come back.

11        MS. ANTAR:  Okay.

12        THE COURT:  But right now, and for the next five

13   minutes until staff has to take their lunch recess, I

14   want you to get those papers marked.

15        MS. ANTAR:  Okay.

16        THE COURT:  All right.

17        MS. ANTAR:  So I have 17 --

18        THE COURT:  But at 1 o'clock --

19        MS. ANTAR:  I have 17 here --

20        THE COURT:  -- right, that's it.  So you got

21   four minutes.

22        MS. ANTAR:  Okay.

23        THE COURT:  -- so do it quickly.  And then when

24   you come back right at 2:00, you can get anything

25   else marked that you need to.

26        MS. ANTAR:  Okay.

27        THE COURT:  Lunch recess.

```
 1            THE MARSHAL:  All rise.  The Court stands in
 2       recess.
 3            (Whereupon there was a pause in the
 4       proceedings.)
 5            THE COURT:  Antar and Lodice back up please
 6            And we're a little delayed in resuming.  It's
 7       now 2:25; I came out at 2:24.
 8            I think, Miss Antar, you were a little late
 9       getting back here.
10            MS. ANTAR:  I apologize.
11            THE COURT:  Okay.  My hearing for 2 o'clock has
12       been moved to a different court so that I can
13       continue with this.
14            MR. LODICE:  Thank you, your Honor.
15            THE COURT:  Where we left off was we were
16       marking exhibits.  Did we get those marked?
17            MS. ANTAR:  I did not get a chance because the
18       computers upstairs are having problems, but I can do
19       it now -- and I was going to ask if we can have a few
20       minutes to resume what we were finishing before they
21       locked up.
22            THE COURT:  Well, what computers upstairs?  I
23       thought you had paper exhibits you wanted to have
24       marked.
25            MS. ANTAR:  Right.  And I was trying to make
26       sure I had, like, everything copied and so on and so
27       forth, and I was having trouble with the printers
```

```
 1          upstairs, so it took me a while to get it going.
 2              THE COURT:  Okay.  Well, I -- I mean, anything
 3          that you wanted to present, you should've had
 4          prepared before you came to the hearing today.
 5              MS. ANTAR:  I understand that.
 6              THE COURT:  So were you trying to present --
 7          print -- print additional exhibits --
 8              MS. ANTAR:  I --
 9              THE COURT:  -- that you didn't have prepared for
10          today?
11              MS. ANTAR:  -- I was trying to make sure I had
12          copies of the ones I already have.
13              THE COURT:  Okay.
14              MS. ANTAR:  So I'd just like to just have chance
15          to continue where we left off?
16              THE COURT:  Okay.  Well, did you -- did you get
17          additional exhibits marked?
18              MS. ANTAR:  Um.
19              THE COURT:  Do we have additional exhibits
20          marked, Madam Clerk.
21              THE CLERK:  I have as far as to 16.
22              THE COURT:  So we have -- so we're now up to 16;
23          I think before we're at 10, is that correct?  So 10
24          is a full Exhibit.
25              THE CLERK:  10 is full, 11 is full, and 12 is
26          full.
27              THE COURT:  We're up to 12?
```

```
 1              THE CLERK:  Yes.

 2              THE COURT:  Can I see Exhibit 12.

 3              These are admitted by -- full by agreement.

 4         Right?  I just don't think I had seen those yet.  So

 5         now we have 14 through --

 6              Sir, 13 through 16 also.  Did you get a chance

 7         to look at those, sir?

 8              MR. LODICE:  I'm sorry, your Honor?

 9              THE COURT:  Did you get a chance to look at 13

10         through 16, sir?

11              MR. LODICE:  I did, your Honor.

12              THE COURT:  Do you have any objections to those?

13              MR. LODICE:  Nope.

14              THE COURT:  All right.  So those are gonna be

15         marked as full.

16              Ma'am, what other exhibits do you have?

17              THE MARSHAL:  Your Honor, I have 17 and 18 right

18         here, sir.

19              THE COURT:  All right.  What -- what are those?

20              THE CLERK:  Copies of order of protection.

21              THE COURT:  Copies of order of protection?

22              THE CLERK:  Yes.  Ex parte.

23              THE COURT:  All right.  We're not putting in the

24         protective orders into evidence.  All right.  So --

25         because that contains confidential information.  So

26         if there's a protective order in place, the Court

27         could take notice of it if it was issued, but I'm --
```

1          I'm not gonna have those put into evidence.

2              MS. ANTAR:  Okay.  Well, it's -- it wasn't the

3          actual protective order, it's just showing that I had

4          already tried before to get protection and -- from

5          this individual, and my affidavits in there I thought

6          were relevant --

7              THE COURT:  Okay.

8              MS. ANTAR:  -- establishing a pattern.

9              THE COURT:  So these are prior applications that

10         you had?

11             MS. ANTAR:  Um.

12             THE COURT:  Or are these the actual orders?

13             MS. ANTAR:  These are --

14             MR. LODICE:  That were both denied.

15             MS. ANTAR:  -- these were the prior

16         applications, and the order was granted ex parte and

17         then we had a hearing --

18             THE COURT:  All right.

19             MS. ANTAR:  -- for each of them.

20             THE COURT:  All right.

21             MS. ANTAR:  And --

22             THE COURT:  I -- the Court can take notice of

23         those if they're --

24             MS. ANTAR:  Okay.

25             THE COURT:  -- if they're on the Court's docket.

26             MS. ANTAR:  Okay.

27             THE COURT:  So we're going to proceed that way

```
 1          on anything you want to draw the Court's attention

 2          to.  But, ma'am, the prior -- prior applications and

 3          the denials are going to have extremely limited

 4          relevance, if any, to this is proceeding.

 5               MS. ANTAR:  Okay.  I was just trying to

 6          establish a --

 7               THE COURT:  I --

 8               MS. ANTAR:  -- pattern of the abuse that's --

 9               THE COURT:  Okay.

10               MS. ANTAR:  -- been ongoing for several years.

11               THE COURT:  Well, ma'am, I'm -- I'm trying to

12          understand here because that what have been given so

13          far does not rise to the level of abuse of -- of any

14          pattern at all, of anything abusive or that would

15          trigger, in the Court's view, this statute so far.

16          Like I mentioned before, seen evidence that the two

17          of you disagree about a bunch of things; seen

18          evidence that maybe you don't want to talk to him

19          much anymore.  I haven't seen any evidence of

20          something that was gonna arise level domestic abuse.

21          I haven't seen threats of violence; I haven't seen

22          the indication he's been violent; I haven't seen

23          anything that he's attempting to coerce you, to

24          interfere unreasonably with your ability to live your

25          life or force you to do things against your will.

26               So I -- so -- so I -- I just, I'm trying to --

27          right.  It's 2:30 in the afternoon now.  Where are we
```

1      going with this?

2          MS. ANTAR:  Your Honor, I would like to please

3      have the opportunity to explain the exhibits and I

4      know that if you just look at it, it's not the same

5      as if I actually --

6          THE COURT:  Okay.

7          MS. ANTAR:  -- explain it myself.

8          THE COURT:  Right.  Well, I -- I asked you

9      earlier whether you want -- how you wanted to

10     proceed, and then you said you have a number of

11     exhibits.  And the -- the difficulty I'm having now

12     is that we're up to --

13         And you had no objection on 13 through 16?

14         MR. LODICE:  No objection, your Honor.

15         THE COURT:  Let me look at all these exhibits.

16     I just -- I -- we're getting to a point, ma'am, where

17     I'm gonna say these exhibits aren't, I mean, they're

18     not -- not looking helpful to the Court and they

19     might -- they might be irrelevant.

20         MS. ANTAR:  I think -- I believe they are

21     helpful --

22         THE COURT:  So --

23         MS. ANTAR:  -- and if I only had the opportunity

24     to testify and say my -- give --

25         THE COURT:  Okay.

26         MS. ANTAR:  -- be able to try to --

27         THE COURT:  Well -- well --

1          MS. ANTAR:  -- meet this burden of proof.

2          THE COURT:  -- why don't we go switch to your

3     testimony then before we put in a lot more exhibits

4     because it's taking a lot of time to put these

5     exhibits in, and, again, candidly, they're not very

6     helpful.

7          MS. ANTAR:  Would we be able to have another

8     five to ten minutes to fit -- to wrap up the exhibits

9     and then move on to the testimony?  Because again, I

10    did prepare these in -- in advance of today's hearing

11    and I would like the opportunity to --

12         THE COURT:  Well, let's -- let's go through what

13    we have.  Okay?

14         MS. ANTAR:  Okay.  So this one here I was about

15    to hand in we're --

16         THE COURT:  Hold --

17         MS. ANTAR:  -- we're gonna hold off?

18         THE COURT:  -- hold -- hold on.  I'd like to go

19    through what's --

20         Can I have 11 and 12, Madam Clerk.

21         I know -- I believe previously, I only saw up to

22    number 10.  And I know we admitted 11 and 12, and

23    then when I saw there were more coming, we recessed

24    to try to care of the exhibit thing; but it's now

25    2:30 and we still don't have it organized and it

26    sounds like the applicant is still printing

27    additional exhibits.

1          MS. ANTAR:  May I -- may I say some of my

2      testimony now and then -- and then address the

3      exhibits that have already been

4          THE COURT:  Well --

5          MS. ANTAR:  -- put in?

6          THE COURT:  -- I'd -- I'd like -- sure, but let

7      me take a look at these exhibits first.

8          MS. ANTAR:  Okay.

9          THE COURT:  Okay.  Because I want to make sure I

10     get a chance to see them.

11         MS. ANTAR:  Sure.

12         (Whereupon there was a pause in the

13     proceedings.)

14         THE COURT:  All right.  So what you like to

15     direct the Court's attention to?

16         MS. ANTAR:  Okay.  So I -- I prepared a short

17     thing that I would like to read to the Court if it's

18     okay with you, your Honor.  And then I would like to

19     address the exhibits.

20         THE COURT:  Are these notes that you made?

21         MS. ANTAR:  It's just basically a summary of

22     what I'd like -- I'd like to please be able to give

23     this as my testimony.

24         THE COURT:  Okay.  Well, I -- I just -- I just

25     want to know what you're reading from, that's all.

26     'Cause normally you can't read from documents that

27     aren't in evidence, but if -- if -- if you're -- if

1      what you're referring to are notes that you've

2      prepared to help you, that's fine.

3           MS. ANTAR:  Yes, it's notes.

4           THE COURT:  But understand, if you're testifying

5      from notes, the other party has the right to see

6      anything you're testifying from.

7           MS. ANTAR:  Okay.

8           THE COURT:  All right.  So if you're using

9      notes, he can ask to see them.

10          MS. ANTAR:  Okay.

11          THE COURT:  All right.  So I just want to make

12     sure you understand that before you go.

13          MS. ANTAR:  Yes.

14          THE COURT:  All right.  So go ahead.

15          MS. ANTAR:  Okay.  So I'd just like to start by

16     saying again that the risk assessment through Family

17     Service shows our case at a -- a risk level of seven

18     which is a moderate risk.  I have extreme fear for my

19     psychological, mental, and emotional well-being as a

20     result of the pattern of emotional, financial, and

21     psychological abuse, as well as coercive control that

22     the respondent has exhibited.  I've been suffering

23     from PTSD as a result of the emotional abuse that I

24     have and continue to endure at the hands of the

25     respondent.  He has harassed me, intentionally

26     inflicted emotional distress upon me, used coercive

27     control to try to frighten and manipulate me.  The

1       Orange Police Department asked him on multiple

2       occasions not to contact me anymore and he has

3       continued to contact me.  Our existing temporary

4       Court orders say that the daily allotted phone calls

5       we each get with our child are not allowed to be

6       recorded.  I have not recorded any calls with the

7       child from June 28th, '22 until present when that

8       temporary order was placed.  The respondent, who was

9       also ordered by -- Court ordered not to make any

10      disparaging comments or statements toward me during

11      the calls, has made several disparaging and

12      inappropriate, and at times, sexually explicit

13      statements toward me and in front of my minor child.

14          I have listed my affidavit numbers 4 through 72

15      which highlight a number of recent incidents of

16      coercion that happened within the last 90 days.

17      Every day I live in constant fear that he will

18      continue to try to cause me emotional suffering and

19      coercive control.  Under the State statute, coercive

20      control includes isolating the family or household

21      member from friends, family, relatives, or other

22      support; the respondent has exhibited this behavior

23      by trying to manipulate members of my family.  He has

24      tried to intimidate my mother and tried to isolate

25      her from me and made statements to try to intimidate

26      and scare her.

27          MR. LODICE:  Objection, your Honor --

1          MS. ANTAR:  He has insinuated that is --

2          MR. LODICE:  -- hearsay.

3          THE COURT:  Hold on --

4          MS. ANTAR:  -- she does --

5          THE COURT:  -- hold on a moment.  Hold on a

6     moment.  He's -- we -- we have an objection here.

7          What's the basis of your objection?

8          MR. LODICE:  Hearsay.

9          THE COURT:  You're objecting to hearsay.

10         MR. LODICE:  She's saying things that her mother

11    has said; she's saying her mother is saying I'm --

12         THE COURT:  Are these things that you've

13    personally heard the --

14         MS. ANTAR:  These are things that I haven't --

15         THE COURT:  -- the respondent say or are these

16    things that you heard from your mother?

17         MS. ANTAR:  These are things I personally heard

18    the respondents say via video recording.

19         MR. LODICE:  No, no.  Her claim was her mother

20    says that I'm harassing her --

21         THE COURT:  Right.

22         MR. LODICE:  -- that's the hearsay.

23         THE COURT:  All right.  So as to that, it's

24    sustained.

25         Stick with anything that you've personally

26    observed, ma'am.

27         MS. ANTAR:  Okay.  Well, I personally observed

1      him on video saying many coercive and manipulative

2      things to my mother in an effort to try to manipulate

3      her and scare her.  In my affidavit --

4          THE COURT:  Would you, ma'am, would you like to

5      share the contents of those communications with the

6      Court.

7          MS. ANTAR:  I would like to show the video if

8      possible.

9          THE COURT:  All right.  Can you just --

10         MS. ANTAR:  And the respondent has seen it.

11         THE COURT:  -- tell me about what's on it.

12         MS. ANTAR:  It's just a Ring video showing a

13     interaction when he went to pick up the child on a

14     day when no one showed up at the Court-ordered

15     location.

16         THE COURT:  Okay.  And -- and what did he --

17     what did he say that was threatening or intimidating

18     to your mother on the video?

19         MS. ANTAR:  He said to her, if you don't talk to

20     me remember that when I have custody and see how --

21     if you don't want -- you're the one who doesn't want

22     to talk to me.  Which to me is insinuating that she

23     if -- if she doesn't talk to him and do what he's

24     asking, she'll have a -- a hard time --

25         MR. LODICE:  Objection, speculation.

26         MS. ANTAR:  -- seeing the child.

27         THE COURT:  Well, I'll -- I'm going to overrule

1    the objection.  You know, it's --  this is her view

2    of it, but what the Court's view will ultimately be

3    will be, you know, a different story.

4         So --

5         MS. ANTAR:  And the --

6         THE COURT:  -- go ahead.

7         MS. ANTAR:  -- respondent has also already seen

8    the video and approved of it during our five-minute

9    intermission.

10        THE COURT:  Okay.  Well, you've told me about

11   the contents of it.  I don't know that I need to see

12   the video now.

13        MS. ANTAR:  Okay.  And so, additionally, he has

14   -- he has also said that if she does not speak to him

15   outside of the app, he will take sole legal and

16   physical custody of our daughter and not allow her to

17   see the child.  In my affidavit, I mentioned this on

18   page one, number three, which references the Ring

19   video I mentioned from July 8th of 2022.  Also in

20   number three, it shows coercive control towards my

21   family, and according to the State statute, family

22   members are -- include those who are related by

23   blood, which my mother is.  Furthermore --

24        THE COURT:  Well, you --

25        MS. ANTAR:  -- the statute also --

26        THE COURT:  -- Ma'am, you're not applying for a

27   restraining order on behalf of your mother, are you?

1          MS. ANTAR:  No, but the fact that he's -- he's

2     trying to isolate me from my family members and

3     trying to -- to cause --

4          THE COURT:  What evidence do you have that he's

5     isolating you from your family members?

6          MS. ANTAR:  Because it's -- he's trying to be --

7     based on what he was saying with this video and other

8     statements he's made in the past, he's trying to

9     basically scare my mother, who she -- I told her to

10    only communicate with him in OurFamilyWizard app; he

11    then deleted her multiple times from the app, and he

12    stated that he will not allow her to be on the app

13    even though it allows for --

14         THE COURT:  So how -- how is that interfering

15    with -- how is that trying to isolate you from her,

16    if he's taking her off family -- OurFamilyWizard --

17         MS. ANTAR:  That's just one --

18         THE COURT:  -- from his communication with her?

19         MS. ANTAR:  -- that's one example.  And then

20    she's told him several times not to contact him and

21    he's then in this threat, which I'd like the chance

22    to just play the video because it also show -- shows

23    his, you know, his tone and the way that he is; it's

24    very nasty towards my mother and this is in an effort

25    to try to alienate it -- alienate us to get her to

26    side with him.

27         THE COURT:  Okay.  All right.  Do -- do you any

1          have other evidence that he's trying to isolate you

2          from family members.

3               MS. ANTAR:  Yes.  He said -- my mother has said

4          several times that he's told her that --

5               THE COURT:  All right.

6               MS. ANTAR:  -- if she doesn't --

7               THE COURT:  Well, that's hearsay, so I don't

8          want to hear anything that --

9               MS. ANTAR:  I don't have any --

10              THE COURT:  -- someone's told you.

11              MS. ANTAR:  -- anything I can hand you that I've

12         printed, but --

13              THE COURT:  All right.  Well, I -- I -- I can't

14         consider things that you're telling me that someone

15         else has said.

16              MS. ANTAR:  Okay.

17              THE COURT:  All right.  So I -- is there any

18         other evidence you have that he's tried to isolate

19         you from family members.

20              MS. ANTAR:  No.

21              THE COURT:  Okay.

22              MS. ANTAR:  And so, moving on, it also talks

23         about depriving family or household member of basic

24         necessities.  He has deprived myself and my children

25         of basic necessities by refusing to pay Court-ordered

26         childcare or child support and using that as a

27         weapon.

1      MR. LODICE:  Objection, your Honor --

2      MS. ANTAR:  He states --

3      MR. LODICE:  -- relevance to this case; my -- me

4   being behind on child support doesn't affect this [-

5      MS. ANTAR:  Your Honor --

6      MR. LODICE:  -- 'cause I have to pay Court

7   Support Enforcement, and I've been dealing with that

8   through --

9      THE COURT:  Well, I --

10     MR. LODICE:  -- Magistrate and --

11     THE COURT:  -- I --

12     MR. LODICE:  -- and I'm paying it.

13     THE COURT:  -- I think -- I think child support

14   matters can be dealt with through the Magistrate

15   Court.

16     MS. ANTAR:  Your Honor --

17     THE COURT:  Are -- are -- are you arguing that

18   whether he's current on child support, if he falls

19   behind that's an act of coercive control?

20     MS. ANTAR:  Your Honor, I'm not saying that it's

21   falling behind; he did not make a single payment for

22   ten months --

23     THE COURT:  Okay.

24     MS. ANTAR:  -- and the only way he did pay was

25   after he was incarcerated on June 1st and --

26     THE COURT:  Well, that's --

27     MS. ANTAR:  -- a purge payment was set.

```
 1            THE COURT:  -- I -- I mean --
 2            MS. ANTAR:  He has told me that he will not
 3       pay --
 4            THE COURT:  Well --
 5            MS. ANTAR:  -- at all --
 6            THE COURT:  -- are you still --
 7            MS. ANTAR:  -- unless I sleep with him.
 8            MR. LODICE:  I never said that, your Honor.
 9            THE COURT:  All right.  Well, that --
10            MS. ANTAR:  He has said that --
11            THE COURT:  -- well, that --
12            MS. ANTAR:  -- multiple times.
13            THE COURT:  -- that's different.  So you can
14       provide that testimony; that's relevant.
15            MS. ANTAR:  The last time --
16            THE COURT:  Whether -- whether the Court will
17       credit it and what weight it will give it is another
18       matter, but go ahead.
19            MS. ANTAR:  Right.  And then -- and,
20       furthermore, to that point, the last time that him
21       and I were intimate was on December 5th of 2021,
22       which also correlates with the last time that he made
23       a willful child support payment to Child Support
24       Enforcement.  He then proceeded to go an entire ten
25       months without making a single payment whatsoever,
26       and only after he was incarcerated did he make a
27       payment only to get out of jail.  And since then, he
```

```
1          had promised to pay and stated to the Court and
2          stated to the Magistrate that he was able to pay and
3          physically had the funds to do so, but then he
4          continued not to do so and has told me several times
5          that he's now going to lower the child support in an
6          effort to try to further hurt --
7               THE COURT:  Well, he --
8               MS. ANTAR:  -- me financially.
9               MR. LODICE:  Objection.
10              THE COURT:  -- he -- he can't lower the child
11         support; only the Magistrate can do that.
12              MS. ANTAR:  Well, he's threatened me --
13              THE COURT:  So he can --
14              MS. ANTAR:  -- several times.
15              THE COURT:  Well, he can certainly ask the Court
16         and the Magistrate can grant it or not based on the
17         legal criteria.
18              MS. ANTAR:  Right.  And I'd like to also note
19         for the Court that when we first had the child
20         support order entered, this was in 2019 --
21              THE COURT:  Mm-hmm.
22              MS. ANTAR:  -- and he willingly agreed to pay an
23         amount that was higher than what the guidelines
24         stated saying that it was because it -- he felt it
25         was in the best interest of the minor child.  And
26         after that, he continued to try to ask me to --
27         coerce me to back in the relationship with him and
```

1      stated that if I did not, he would retaliate by

2      turning around and lowering the child support.  He

3      has threatened numerous times to lower my child

4      support and he's used those exact words saying --

5           THE COURT:  Okay.

6           MS. ANTAR:  -- I will lower your child support

7      to $30 a week; and he says he will not lower his ex-

8      wife's child support because she, quote, gets along

9      with him and provides him with sexual favors

10     regularly.  Which after 2019, him and I did briefly

11     get back together and live together for a while.  He

12     stayed on child support, but after we split up,

13     again, the threats resumed where he said, guess what,

14     I'm gonna take sole custody; I'm gonna take -- I'm

15     gonna lower your child support; I'm gonna take your

16     child away; I'm gonna make DCF reports; I'm gonna

17     have you arrested, on and on and on.  And I -- like,

18     again --

19          THE COURT:  Well, you -- you understand, ma'am,

20     he can't do any of those things unilaterally; he

21     can't arrest you; he can't lower his child support,

22     that has to be done through the Court or through law

23     enforcement.  So he can certainly ask that they be

24     done, and he can certainly make that request, but it

25     doesn't mean it's going to happen.  He's just simply

26     stating this is what I intend to do.  I understand

27     where you're coming from, but I want to be clear.  He

1      can't unilaterally adjust those things.  He can't

2      unilaterally have you arrested without some

3      intervening authority.

4          MS. ANTAR:  I do understand that, but the

5      constant threats, the constant hearing this over and

6      over and over for three years.  And even -- even

7      after that, in the beginning of 2021, he tried to

8      file to lower the child support again out of

9      retaliation.  He tried to file it again in two -- in

10     the beginning of this year, and then again now just

11     recently -- he has tried so many times to try to use

12     that to -- to sort of weaponize the situation saying

13     to me that he's not going to provide me with anything

14     regardless of whether it's Court ordered or not and

15     using it as a way to try to hurt me.

16         THE COURT:  Well --

17         MS. ANTAR:  Also --

18         THE COURT:  -- if he doesn't obey the Court's

19     orders, then I mean, he's gonna find himself locked

20     up.

21         MS. ANTAR:  Additionally, on multiple occasions

22     he stated, including after our last Court hearing,

23     which was on June 20th of 2022, he stated after that

24     hearing when Family Relations encouraged us to have a

25     lunch together to try to speak about our case and try

26     to get us to get along --

27         MR. LODICE:  Objection, your Honor; they never

1          -- I -- I speculate hearsay, I guess, because they

2      never recommended that we have lunch together.

3          THE COURT:  All right.

4          MR. LODICE:  She's saying that someone said --

5          MS. ANTAR:  Your Honor, that --

6          MR. LODICE:  -- we should have lunch together.

7          THE COURT:  Well, I'll --

8          MS. ANTAR:  Your Honor, if I could please --

9          THE COURT:  Well --

10         MS. ANTAR:  -- finish the sentence?

11         THE COURT:  Well, hold on.  Hold On.  All right.

12     It's -- this is a little bit different than the usual

13     way we go in Court where we have question, answer,

14     question, answer, 'cause we're getting just the

15     testimony from you.

16         I -- look, if you disagree with what she's

17     saying, then you'll be able to tell me that.  Right

18     now --

19         MR. LODICE:  And just do it after?

20         THE COURT:  What's that?

21         MR. LODICE:  You want me to just do it after --

22         THE COURT:  Yes.

23         MR. LODICE:  -- she gets through all this?

24         THE COURT:  Yes.

25         MR. LODICE:  Okay.

26         THE COURT:  Because in terms of it being

27     admissible, she can tell me that; it's in the nature

1    of a verbal act, so it's not hearsay.

2           MR. LODICE:  Okay.

3           THE COURT:  You'll be able to explain if you

4    want to or disagree that that actually happened.

5           MR. LODICE:  I'll -- I'll trying to keep up

6    'cause there's a lot, your Honor.

7           THE COURT:  Take notes.

8           MS. ANTAR:  Okay.  So, like I was saying --

9           MR. LODICE:  I'm trying.

10          MS. ANTAR:  -- On June 28th, 2022, the

11   respondent and I appeared in New Haven Superior

12   Court, we we're in front of Judge Jane Grossman.

13   After our hearing -- the Judge instructed us to speak

14   with Family Relations after the hearing.  And then it

15   -- the -- it was the end of the day, so after the --

16   5 o'clock rolled around, Family Relations suggested

17   that we get lunch together and discuss trying to make

18   some arrangements to change our agreement before our

19   next court date.  We went to Sitar Indian restaurant

20   in New Haven, Connecticut on that date, and during

21   that time he bought -- purchased lunch and after the

22   lunch was over, he told me that he would do whatever

23   I wanted if I only started to have sexual relations

24   with him again; he stated that he would give-in to

25   any of my demands in court; he said that he would

26   agree to absolutely anything I wanted as long as I

27   started sleeping with him.

```
 1              And, as I mentioned in the past, I was sleeping
 2       with him and he was doing all of those things; giving
 3       me extra money, helping me, going above and beyond,
 4       agreeing to -- to a -- a Court order that we put in
 5       place in June of 2021, however, once I stopped
 6       sleeping with him he completely stopped doing
 7       everything.  He also stated on multiple occasions
 8       that if I do not do what he wants and if I don't have
 9       sexual relations or engage in a relationship with
10       him, he will retaliate by lowering the child support;
11       refusing to pay the Court ordered support;
12       withholding extra money that he was giving me in the
13       past to try to coerce me into sleeping with him.  He
14       also stated on multiple occasions that he does not
15       feel that withholding support or extra monetary
16       assistance hurts me or my child, and he has stated he
17       will continue to do so as long as I'm not sleeping
18       with him.  And addition -- you know, as I mentioned
19       in my -- as far as the sexual coercion, in my
20       affidavit I describe multiple incidents where he has
21       made these during the calls.  So and then,
22       furthermore, the statute also talks about
23       controlling, regulating, or monitoring the family or
24       household's members' movements, communications, daily
25       behavior, finances, economic resource, or access to
26       services.
27              THE COURT:  I -- I just want to correct you on
```

1      one thing, ma'am; it's -- it's the applicant's

2      movements, not family members.

3              MS. ANTAR:  I'm sorry.  Well, I -- I -- I was

4      typing it off of something --

5              THE COURT:  Right.

6              MS. ANTAR:  -- on the statute I saw online.

7              And in terms of -- in reference to that, he has

8      stated on multiple occasions that he has a tracking

9      device that he implemented in my vehicle, which

10     allows him to monitor all of my movements via

11     computer program.  He stated he has been tracking my

12     whereabouts for years and that he always knows where

13     I am at all times.  Additionally, he has driven by my

14     house on multiple occasions, and on multiple

15     occasions he has broken into and or attempted to

16     break into and enter my home uninvited and

17     subsequently tried to coerce me into sexual

18     relations.

19             THE COURT:  When was this?

20             MS. ANTAR:  The last time that this -- the --

21     the last time, when that type of --

22             THE COURT:  That he broke into your house.

23             MS. ANTAR:  Last time when he broke into my

24     house was in the end of 2020; I made a police report

25     and I subsequently --

26             THE COURT:  Okay.

27             THE COURT:  -- tried to file a restraining order

1    application, which is the application referenced from

2    12/28/2020.

3          THE COURT:  Was -- was the restraining order

4    granted?

5          MS. ANTAR:  It was granted on an ex parte basis.

6          MR. LODICE:  No, it was not.

7          THE COURT:  Was it granted after a hearing?

8          MS. ANTAR:  After the hearing, it was not.

9          THE COURT:  Okay.

10         MS. ANTAR:  Furthermore, it also -- the statute

11   also refers -- mentions compelling the family or

12   household member by force, threat, or intimidation,

13   including but not limited to threats based on actual

14   or suspected immigration status; to engage in conduct

15   from which they might have a right to abstain or

16   abstain from conduct that they have a right to

17   pursue.  He has attempted multiple times to try and

18   intimidate me and threaten to get me arrested,

19   threaten to get me kicked out of law school, and

20   threaten to get my children taken away.  He's --

21         THE COURT:  Do you have any evidence of that?

22         MS. ANTAR:  Yes, I do; in -- in many of the

23   exhibits.

24         THE COURT:  Can you direct my attention to that

25   please.

26         MS. ANTAR:  Just give me one second please?

27         THE COURT:  And if it's something you haven't

1      introduced yet, we can have it marked.

2           (Whereupon there was a pause in the

3      proceedings.)

4           MS. ANTAR:  So Exhibit 14 is the most recent one

5      which he actually sent to me --

6           THE COURT:  Can I have Exhibit 14 --

7           MS. ANTAR:  -- on Monday --

8           THE COURT:  -- Madam Clerk.

9           MS. ANTAR:  -- of this week.

10          THE COURT:  Okay.  Let me take a look at the

11     exhibit, ma'am.  All right.  I read through this

12     before.  How was this threatening to have you

13     arrested?

14          MS. ANTAR:  In this here, he says I wasn't going

15     to prosecute you nor press any charges for the

16     harassment you've been doing; I see you're trying to

17     get me in trouble; now that I'm going for custody

18     you're trying to have me arrested; I'm sorry, now I

19     will be moving forward with everything; I'm sorry in

20     advance if your arrest makes you unable to complete

21     your law degree; what kind of mother would try to

22     take their daughter away --

23          MR. LODICE:  She skipped the sentence --

24          MS. ANTAR:  -- I want what's best --

25          MR. LODICE:  -- your Honor.

26          MS. ANTAR:  I want --

27          MR. LODICE:  She's not reading it verbatim.

 1          MS. ANTAR:  The sentence he said is all I want

 2     is what's best for Angelina, that's clearly not what

 3     you want; what kind of mother would try to take their

 4     daughter away from their father; do you know how many

 5     single moms wish that the dad just be in the child's

 6     life, let alone be a great dad and one who takes the

 7     child half-time; this is so stupid and you're only

 8     hurting her.  And that was in response to my prior

 9     message from Sunday telling him that our child was

10     crying and screaming after Sunday school asking when

11     daddy was coming to pick her up because he refused to

12     come get her; he refused to read or open any of my

13     messages in the app even though he's Court ordered to

14     respond to them, and then he responds a day later

15     with this --

16          THE COURT:  Well, what's --

17          MS. ANTAR:  -- to try to intimidate me and scare

18     me and -- and --

19          THE COURT:  -- what's the reference at the

20     beginning of the paragraph that says, you tell me to

21     come get her from you, but then you call the cops --

22          MS. ANTAR:  The reference --

23          THE COURT:  -- and tell them you want me to stay

24     away from you.

25          MS. ANTAR:  -- the reference --

26          THE COURT:  What does that refer to?

27          MS. ANTAR:  -- the reference is from below

1    'cause the -- it goes from up -- it goes from bottom

2    up.

3           THE COURT:  No, I understand that.  But when he

4    says that do you know what he's referring to?

5           MS. ANTAR:  He's saying you -- you're telling me

6    to come get her.  Because in my prior message I said

7    to him, when are you coming to get her?  Because in

8    our Court order, he's supposed to have visitation

9    from Friday to Monday --

10          THE COURT:  Well, it looks like he's concerned

11   about going to get her because he's afraid you're

12   gonna call the police on him; at least that's how I

13   read it.  Is there more context --

14          MS. ANTAR:  That doesn't make --

15          THE COURT:  -- that you want to provide the

16   Court?

17          MS. ANTAR:  I -- I don't think that makes any

18   sense because he -- he already had her and he had no

19   problem with handing her to me on that Saturday.  The

20   day before, he walked right up to my car handed her

21   to me -- and this was before the police report was

22   made --

23          THE COURT:  Mm-hmm.

24          MS. ANTAR:  -- the police report was the same

25   report that I sent as my affidavit for this

26   restraining order --

27          THE COURT:  Did you call the police?

```
 1              MS. ANTAR:  I went to -- after --
 2              MR. LODICE:  No, she -- she picked her up from
 3         my house --
 4              MS. ANTAR:  I --
 5              MR. LODICE:  -- it wasn't near her house.
 6              MS. ANTAR:  I'm sorry, may I please respond --
 7              THE COURT:  Hold on, sir.
 8              MS. ANTAR:  -- without him interrupting?
 9              THE COURT:  Did you call the police in
10         connection with this?
11              MS. ANTAR:  You're asking me?
12              THE COURT:  Yes.
13              MS. ANTAR:  Did I call the police in connection
14         with what?
15              THE COURT:  With this exhibit; any time before,
16         after, soon after, soon -- like, before; days before,
17         days after?
18              MS. ANTAR:  So maybe I -- I can find the exact
19         date, but --
20              THE COURT:  Well it looks like it's --
21              MS. ANTAR:  -- it was the same day --
22              THE COURT:  -- November 21st.
23              MS. ANTAR:  -- the same day I applied for this
24         restraining order; it was the day that I went to the
25         police, which was the Orange Police Department, and I
26         made a sworn statement which was literally word for
27         word the same statement I put in my affidavit for the
```

1     restraining order.

2          THE COURT:  Okay.

3          MS. ANTAR:  And after -- which, on that date,

4     the officer stated he was going to contact the

5     respondent; he, you know, he was going -- he asked me

6     to send him additional documentation of evidence to

7     his email, the officer did, and he said it would, you

8     know, they would consider whether or not it would be

9     an arrest or not, and that they -- might potentially

10    be a warrant for his arrest.  But after that, I still

11    ended up -- he still -- two weekends in a row had

12    visitation.

13         THE COURT:  And --

14         MS. ANTAR:  So for him to then bring up the

15    statement --

16         THE COURT:  All right.

17         MS. ANTAR:  -- two weeks later and use that as

18    an excuse not to --

19         THE COURT:  I'm --

20         MS. ANTAR:  -- get child --

21         THE COURT:  -- I'm going to interrupt you,

22    ma'am.

23         MS. ANTAR:  -- makes no sense.

24         THE COURT:  Okay.  All right.  I've listened to

25    the evidence you provided so far; I've looked at the

26    exhibits you've given me, none of this, none of this

27    right, is resembling coercive control.  Certainly,

1    I'm concerned about the testimony you gave about him

2    saying he wanted to have sexual relations with you in

3    order to keep paying his child support. But, of

4    course, if he stops paying his child support, he's

5    gonna have to deal with the Family Support Magistrate

6    on that, so it's not as if he ultimately has a choice

7    to refrain from that, or not.

8         But when you're going through an exhibit like

9    this and you're telling me this is evidence of

10   coercive control, I just see this as a custody

11   dispute.  Nothing in here in that exhibit is rising

12   to the level of any kind of coercive control.  He

13   simply disagrees with you.  Just because the two of

14   you don't agree, just because you're having disputes

15   over when someone's coming to pick up the kid at what

16   time, or when they're there, or why the kid is mad at

17   one parent versus the other are, quite frankly, and,

18   unfortunately, typical disputes that we see here in

19   Family Court; not the kind of thing that's rising the

20   level of coercive control.  I'm not seeing any

21   evidence so far that he's actually compelling you or

22   engaging in a true pattern of behavior that's

23   interfering with your ability to live your life.

24        MS. ANTAR:  Well --

25        THE COURT:  Because if he doesn't pay his child

26   support, you could just go to court and enforce that

27   and, he's ultimately on the hook for that.  And, I

1    mean, you mentioned, even after some of these

2    threats, and, you know, some of the -- the, you know,

3    the emails in Exhibit 11 where you explained that he

4    was showing you some sexually explicit items, you

5    said that the two of you got back together after

6    that.  So it sounds to me like the two of you have

7    had some kind of ongoing relationship, perhaps on

8    again, off again; I don't know what's going on, and

9    you disagree over a lot of things regarding custody,

10   but I'm not hearing anything that in the Court's view

11   rises to level of coercive control.

12        And now, it's almost 3 o'clock.  Right.  You've

13   had a pretty substantial period of time to present

14   the case.  I'm not getting evidence that's being

15   helpful here.  And so I don't know how much more time

16   we're going to be able to go if I'm gonna keep

17   getting evidence of the same thing.  So I -- I need

18   -- I need you to get more specific in terms of what

19   threats he's made, beyond what you've already told me

20   about or what harm is done to you.  The incident you

21   told me about from 2020, where he was breaking into

22   your house, it's more than two years old and there

23   was no restraining order issued after a hearing on

24   that, which tells me that, for whatever reason, a

25   Judge who heard the evidence was not convinced by a

26   preponderance of the evidence that what you had said

27   was true, or that it rose to the level of issuing a

1      restraining order.

2           So, I mean, the pattern I see here is the two of

3      you don't get along.  The pattern I see here is that

4      the two of you might be better off not trying to have

5      any kind of relationship together in the future.  But

6      much of the issues that you're raising are things

7      that need to be addressed in the custody case, not

8      through a restraining order, which is to protect

9      someone from domestic violence.

10          Now, the two of you have a child together,  I

11     can't make him dry up and blow away and go away and

12     never -- and -- and have -- have -- him disappear;

13     the two of you are gonna have to work together,

14     whether you want to or not, to work on raising your

15     kid.  This to me looks like the two of you are just

16     having difficulty doing that.  I'm not seeing

17     domestic violence here.

18          MS. ANTAR:  Your Honor, may I please respond?  I

19     just wanted --

20          THE COURT:  Yes.

21          MS. ANTAR:  -- just to say briefly about Exhibit

22     14; again, I --

23          THE COURT:  Exhibit 14 please.

24          MS. ANTAR:  -- simply asked him when he was

25     coming to get the child and he responds by

26     threatening to prosecute me and press charges for

27     harassment --

1          THE COURT:  Okay.

2          MS. ANTAR:  -- and threatening --

3          THE COURT:  Well, hang on.  Hang on.

4          MS. ANTAR:  -- to have me arrested.

5          THE COURT:  Let me -- let me -- let me have that

6     for a second.

7          Right.  'Cause you did not just ask me was

8     coming at the child.  You said she's crying and

9     having a meltdown; asked when you're going to come

10    and get her; if you don't show up today, I'll be

11    suspending all visits until further notice.  So it

12    sounds like some of these threats of coercion go both

13    ways, that's what I'm seeing.  So I just want to be

14    clear about what you said to him; it wasn't just when

15    you are coming to get her; you had a little bit more

16    in it.

17         MS. ANTAR:  Right.  But --

18         THE COURT:  And so I can understand if someone

19    told me if you don't do what I say right now, I'm not

20    letting you see the kid; maybe that's going to elicit

21    a reaction from somebody; that's not coercive control

22    control, or if it is, it sounds like it's going both

23    ways.

24         MS. ANTAR:  Well, your Honor, he waited 30 hours

25    to respond to my message asking when he was picking

26    up the child.  He was well aware that it was his

27    Court ordered day --

1          THE COURT:  I --

2          MS. ANTAR:  -- and he made no effort to pick her

3     up --

4          THE COURT:  If he's --

5          MS. ANTAR:  -- but then he responded by telling

6     me he's gonna get me kicked out of law school and --

7          THE COURT:  He didn't say he was gonna get you

8     kicked --

9          MS. ANTAR:  -- he said --

10         THE COURT:  -- out of law school.

11         MS. ANTAR:  -- he said, I -- I apologize if this

12     arrest is going to make you unable to complete your

13     law degree; to me, that's put -- causing me extreme

14     amounts of fear because he's said several times that

15     he's made the -- like, statements to the police in an

16     effort to try to get me arrested.  He tells me every

17     day that I have pending warrants for my arrest; he

18     says this in the app over and over, you have --

19         THE COURT:  Do you have those --  do you have

20     those --

21         MS. ANTAR:  I have --

22         THE COURT:  -- those communications?

23         MS. ANTAR:  I have -- if you would give me a

24     chance, I would like to able to show this and --

25     and --

26         THE COURT:  I mean --

27         MS. ANTAR:  -- and -- as far as the ones --

1          THE COURT:  -- I gave you the whole lunch break

2     to present it.  If you have those -- those -- those

3     documents where he threatened to have you -- to --

4     that there were -- told you there were warrants out

5     for your arrest, I'd like to see that.

6          MS. ANTAR:  Yes.  And it -- would be okay if I

7     showed it on the screen as well and give it to you

8     guys on the --

9          THE COURT:  You don't have it in paper?

10         MS. ANTAR:  I might --

11         THE COURT:  You have a lot of papers over there.

12         MS. ANTAR:  I know.

13         THE COURT:  You don't have that?

14         MS. ANTAR:  I -- I'm sorry.  Like, I'm just

15    having a really hard time with this, and I do have

16    ADHD and it's a little hard sometimes to be organized

17    and I'm trying the best I can.  I really would --

18         THE COURT:  Well, ma'am, I --

19         MS. ANTAR:  -- would really appreciate some

20    patience.

21         THE COURT:  I -- I -- I've -- I'm giving you

22    that opportunity. I've given you plenty of

23    opportunities; we've already taken two recesses to

24    help you get your exhibits lined up.  I've asked you

25    to have all that ready to go; I gave you a lunch

26    break to do that.  It's, you know, it's now going on

27    3 o'clock, I -- you -- you've had opportunities.

1    Right?  So I --

2         MS. ANTAR:  Okay.  And would I be able to show

3    it on --

4         THE COURT:  No.

5         MS. ANTAR:  -- on the screen if I'm submitting

6    it to the Court on the file?

7         THE COURT:  No, because I'm not taking that file

8    right now because quite frankly, ma'am, the exhibits

9    you've been giving are -- are -- are -- have not been

10   helpful to the Court, and you haven't told me

11   anything that's going to convince me that the

12   evidence you want to present is not cumulative, or

13   likely to just waste the Court's time, or irrelevant.

14   So I don't --

15        MS. ANTAR:  Well, your Honor, I just said I'd --

16        THE COURT:  So I don't --

17        MS. ANTAR:  -- I'm sorry.  I just was saying --

18        THE COURT:  So -- so can you tell me what's in

19   the content of those messages are?

20        MS. ANTAR:  Contents of him saying he's getting

21   warrants for my arrest, getting me arrested, getting

22   me kicked out --

23        THE COURT:  Okay.  That's different than that --

24        MS. ANTAR:  -- of law school and --

25        THE COURT:  -- he -- there already are warrants

26   for your arrest.  So if he's saying he's --

27        MS. ANTAR:   He said there are warrants.

```
 1          THE COURT:  -- he's going to -- okay.  Well, do
 2     you have that exhibit handy?
 3          MS. ANTAR:  I can pull it up for you on here if
 4     that's okay, and quickly --
 5          THE COURT:  I can't just see it on there.
 6          MS. ANTAR:  I can give it --
 7          THE COURT:  Do --
 8          MS. ANTAR:  -- to the Court on the file, and I
 9     can show it to him as well; they --
10          THE COURT:  Have --
11          MS. ANTAR: -- they -- they --
12          THE COURT:  -- have you already shown it him?
13          MS. ANTAR:  -- they told me that I'm allowed to
14     do that.  He's seen all these messages because he
15     gets them in the app.
16          THE COURT:  Well, I know.  I understand that,
17     ma'am.  But my question is have you shown it to him
18     showing that you're intending to introduce that in
19     the evidence before the Court?  'Cause he has a fair
20     opportunity to know what you're intending to present
21     as evidence.
22          MS. ANTAR:  I asked him -- I asked him during
23     the first break if I could email him exhibits.  And
24     he said, absolutely not; it doesn't work that way,
25     and and walked away.  So I don't want to email him
26     when we're -- we're ordered to speak --
27          THE COURT:  Okay.  So that's a no; you haven't
```

1    shown it to him then.

2          MS. ANTAR:  I attempted to, and he refused.

3          THE COURT:  All right.  And you only have it on

4    your on -- your computer, or on a -- and you want to

5    move it over to a file that you want to give to this

6    Court.

7          MS. ANTAR:  I would like to for those specific

8    ones that you were asking for, and if I could just --

9    with the ones we already entered, if I could just

10   explain the relevance of -- of them before, just

11   because they've already been entered I would really

12   like --

13         THE COURT:  Right.  Well, I thought that's what

14   we're doing.

15         MS. ANTAR:  Right.

16         THE COURT:  And -- and I gotta tell ya, we've --

17   we've been doing it for a while now, but the

18   information that -- that -- that you're giving me

19   it's not what the exhibits show.  So what you -- the

20   way you're characterizing them is not consistent with

21   what I'm seeing on the exhibits.

22         MS. ANTAR:  Okay.  May I -- may I introduce

23   Exhibit 19 to the Court?

24         THE COURT:  What is Exhibit 19?

25         MR. LODICE:  Oh, it's --

26         MS. ANTAR:  Exhibit 19 is messages -- email

27   messages from the respondent that he sent to me the

1     day that this restraining order was dropped after the

2     hearing.

3          THE COURT:  But denied.  Okay.  And -- and what

4     are those -- what are those messages gonna --

5          MS. ANTAR:  Where he's trying to --

6          THE COURT:  -- show me?

7          MS. ANTAR:  -- coerce me to be with him, saying

8     he's in love with me, saying that he lied to the

9     Judge during the hearing; there's a lot in here, and

10    I really think that this is -- gives the --

11         THE COURT:  Did you show him the messages?

12         MR. LODICE:  Can I see those?

13         THE COURT:  Do you have those in paper?

14         Have it marked; it's 19.

15         THE CLERK:  This is gonna be 17.

16         THE COURT:  17.  Ma'am, did you label it 19, or?

17         MS. ANTAR:  I did because I tried giving the

18    other ones as 17 and 18 --

19         MR. LODICE:  So this is 17, your Honor?

20         THE COURT:  This is gonna be 17.

21         MS. ANTAR:  And so if I could just testify about

22    that --

23         THE COURT:  Well, let me --

24         MS. ANTAR:  Okay.

25         THE COURT:  -- let me -- let me let the clerk

26    get it marked.  He has an -- he needs to have an

27    opportunity to look at it.  Like I said, you have it

1      in paper; I asked you to give all that to him over

2      lunch so that he'd have chance to look at it.  Right.

3          MS. ANTAR:  He left.

4          THE COURT:  So -- well, he was -- I mean, he

5      was, to be clear, he was waiting in here shortly

6      after 2:00 and you didn't get back here till 2:24; or

7      at least that's when I came out, but you were at

8      least -- at least after 2:15.  So that could've been

9      handled at that time too before we resumed.

10         All right.  Sir, do you have any objections to

11     me seeing this exhibit?

12         MR. LODICE:  No, not at all.

13         THE COURT:  Okay.

14         MR. LODICE:  This is from two years ago when we

15     we're still back and forth; this has no relevance to

16     it, your Honor.

17         MS. ANTAR:  Your Honor, this was from last year;

18     the day that the restraining order got denied.

19         MR. LODICE:  March of last year.  Could she show

20     me where it says I lied to the Judge?

21         THE COURT:  Can you show me that too, ma'am.

22          MS. ANTAR:  Oh, yeah.  May I see?

23         He says at, like, at 10:35 p.m. on that day,

24     this is your chance to have everything you wanted;

25     remember what I said at the car to you; I'm not going

26     to keep begging for you if you're willing to try --

27     that's on page -- on page six.  And then I said to

1    him, you told the Judge the relationship was over and

2    that you didn't want to be with me; if you wanted to

3    me with me, you would do -- you would not do half of

4    what you were trying to do to hurt me; if only what

5    you said was real.  He says, I don't know if you I

6    don't know if you noticed, but I froze up when she

7    asked that; look, you already made it clear it's not

8    what you want; have a good week, I'll see you on

9    Friday.  So he's -- he's --

10        MR. LODICE:  Nothing of that says --

11        MS. ANTAR:   -- acknowledging; oh, I froze up

12   when she asked that and told her that the

13   relationships over and he want to be with me, then

14   proceeds to send me multiple messages begging me to

15   be with him; send --

16        THE COURT:  Ma'am.

17        MS. ANTAR:  -- sending me photos of flowers,

18   hearts --

19        THE COURT:  Ma'am.  We're done.  Okay.  The

20   evidence you presented is not consistent with your

21   characterizations of it.  I simply don't find you

22   credible.  I don't find that the evidence that you've

23   presented, and we're now up to 17 exhibits, have

24   established what you claim they do.  I'm not seeing

25   any evidence of coercive control; I'm just -- it's

26   not here.  The two of you have had disagreements

27   about your relationship; you've had disagreements

1     about custody; if you have issues about that, or if

2     you have issues about childcare being paid, those can

3     be addressed in the child support case; those can be

4     addressed in the custody case.  I'm not seeing

5     anything that would rise level of issuing a

6     restraining order here.  It's just the two of you

7     have had difficulties with relationships.  And maybe

8     that causes you stress and I'm sorry if that does,

9     but the purpose of a restraining order is not to

10    simply protect you from having stress; it's to

11    protect you from domestic violence and I'm not

12    finding that any has happened here.  And with the way

13    you're making these representations and then when I

14    see the exhibit, quite frankly, I don't find your

15    representations credible.  So I'm going to deny the

16    request for the restraining prder.

17         MS. ANTAR:  May I at least finish my testimony

18    referencing the statute and referencing the actual

19    things because --

20         THE COURT:  Ma'am.

21         MS. ANTAR:  -- again, a -- some --

22         THE COURT:  Ma'am, I've asked you to reference

23    the actual things; I've --

24         MS. ANTAR:  And I'm trying --

25         THE COURT:  -- asked you to get to those.

26         MS. ANTAR:  -- to finish this, if I could please

27    just --

```
1          THE COURT:  I'm gonna let you finish that --

2          MS. ANTAR:  Okay.  Thank you.

3          THE COURT:  -- and then that's it.

4          MS. ANTAR:  Okay.  So he has attempted multiple

5     times to try and intimidate me, threaten me arrested,

6     kicked out of law school, get my children taken away.

7     He threatens --

8          THE COURT:  Where -- where are those threats,

9     ma'am.

10          MS. ANTAR:  I -- I have all those in

11    OurFamilyWizard which you said I wasn't allowed to

12    show the Court.

13          THE COURT:  Well, I asked you to prepare 'em

14    before you came back for lunch.

15          MS. ANTAR:  I'm sorry.  I struggle with my

16    disability and it's a little hard sometimes to do all

17    this with no attorney.  I tried to see if I could

18    get legal --

19          THE COURT:  Okay.

20          MS. ANTAR:  -- representation and I was told I

21    would be okay doing it myself --

22          THE COURT:  I just --

23          MS. ANTAR:  -- and I'm --

24          THE COURT:  Ma'am.

25          MS. ANTAR:  -- trying the best I can.

26          THE COURT:  I -- I -- I would think if you had

27    evidence that he was actually threatening you, right,
```

1      that you would have provided that first, because the

2      evidence that you've already put in that you said

3      shows that he's threatening you and terrorizing you

4      does not actually show that.

5          MS. ANTAR:  I have evidence here of him asking

6      me in the parenting at multiple times to go out with

7      him; multiple times about the calls;  multiple times

8      -- I have a lot of stuff here and I -- I would have

9      liked to show it.

10         THE COURT:  Well, I -- all right.  Just go ahead

11     with your testimony, but --

12         MS. ANTAR:  Okay.

13         THE COURT:  -- I'm just --

14         MS. ANTAR:  So --

15         THE COURT:  -- I -- I don't see any evidence of

16     that, ma'am.

17         MS. ANTAR:  -- I have the evidence; I'd like the

18     chance to show the Court to -- moving on, he

19     threatens constantly; made three prior false reports

20     on me to DCF in an effort to get my child taken away;

21     he threatens constantly to getting me kicked out of

22     school which causes me immense psychological and

23     emotional harm on a daily basis.  Every time I see

24     messages from him in the app, I get anxiety.  It's

25     usually him making threats to prevent me from

26     pursuing my education; trying to convince me to date,

27     sleep with him, or otherwise engage in sex acts with

1    him.  And I have some documentation I'd like to show

2    that -- a message here where he's asking me and my

3    other child to come over; asking for us to sleepover;

4    stay for dinner.  I have another exhibit here --

5         THE COURT:  Wait.  So, ma'am, so he asked you

6    over for dinner and to sleepover, and you think

7    that's him asking you to -- to engage in forced sex

8    acts.

9         MS. ANTAR:  He's asking me this in the Court

10   ordered parenting app which is used to discuss our

11   custody and visitation.

12        THE COURT:  Okay.

13        MS. ANTAR:  It's highly inappropriate for him to

14   ask me this --

15        THE COURT:  Well --

16        MS. ANTAR:  -- when I've told him several times

17   -- I've had the police tell him stop bothering me; I

18   don't want -- I don't want to hear from him unless --

19        THE COURT:  Okay.

20        MS. ANTAR:  -- it's about the child in the app.

21   And here I am getting messages asking for dates,

22   asking me to come over, asking me to sleepover,

23   asking me --

24        THE COURT:  That can all be dealt with in your

25   custody case; it's not a basis for restraining order.

26        MS. ANTAR:  I just don't want him to be able to

27   talk to me during these calls with the child anymore

1          because --
2              THE COURT:  And that can be addressed in your
3          custody case.
4              MS. ANTAR:  But what about all the times where
5          he sexually, explicitly said things to the child
6          directly, and to me?  I mean, how --
7              THE COURT:  Ma'am.
8              MS. ANTAR:  -- I don't have --
9              THE COURT:  Ma'am, I, frankly, I don't find your
10         assertions credible.
11             MS. ANTAR:  I even have a witness.
12             THE COURT:  With -- with -- with based on how --
13             MS. ANTAR:  I even have a witness who -- who --
14             THE COURT:  Is your witness here to testify?
15             MS. ANTAR:  No, but I -- they said they would be
16         willing to testify and I -- and I --
17             THE COURT:  Today --
18             MS. ANTAR:  -- would be happy to bring the
19         witness to testify.
20             THE COURT:  Today is the day for the hearing;
21         they need to be here now if they're going to testify.
22         If they're not here, not gonna be able to testify.
23             Ma'am, you may -- what you understand these
24         communications to be, and what they actually are and
25         what I see are not consistent, and so I don't find
26         your other allegations credible.
27             MS. ANTAR:  So you're not willing --

1       THE COURT:  I've read the affidavit --

2       MS. ANTAR:  -- you're not willing to allow me to

3   show the evidence because you're saying the evidence

4   I already showed, you -- you don't think it's gonna --

5       THE COURT:  Correct.

6       MS. ANTAR:  -- you won't see the --

7       THE COURT:  Because -- because, at this point,

8   ma'am, I've -- I've -- you've had more than enough

9   time to present evidence; the evidence you present --

10  presented does not show what you claim it does, and I

11  am not able to make a finding that what you want to

12  present is not going to be cumulative, or irrelevant,

13  or a waste of time based on what you've told me.

14      So you can finish reading your testimony; I will

15  listen to that, but so far what you've told me, based

16  on what I'm seeing, it's simply not credible.

17      MS. ANTAR:  So even if I have evidence that you

18  haven't seen or heard about yet, you're not even

19  willing to take it into consideration?

20      THE COURT:  At this point, no.

21      MS. ANTAR:  So, I mean, like I said, he stated

22  he's only doing all these things as a effort to hurt

23  me because he's angered by the fact that I will not

24  sleep with him.  He told me several times he has many

25  female friends he would have physically attack me,

26  hurt me, or kill me; that they would do this at his

27  request.  He specified a large family who lives

1    across the street from his mother that is five to ten

2    females -- would do that for -- women in the family

3    would specifically be willing to cause me physical

4    harm and bodily injury.  And on multiple occasions,

5    he told me he will not take care of me financially

6    unless I engage in sexual activity with him.  He

7    possesses hundreds of sexually explicit videos and

8    images of me, both individually and together with

9    him, which he has said several times that he will

10   post, has posted, and said that he will try to sell

11   and make money off of.

12        THE COURT:  Where has he posted them?

13        MS. ANTAR:  He said that he's posted them

14   websites such as Pornhub, and he said that he's sold

15   and contends to sell them on --

16        THE COURT:  Do you have any evidence that he did

17   it?

18        MS. ANTAR:  I don't have any evidence that he

19   did it --

20        THE COURT:  Okay.

21        MS. ANTAR:  -- but he's told me --

22        THE COURT:  Nope.  You've answered my question.

23   Continue.

24        MS. ANTAR:  Okay.  In addition, every single

25   time that he has asked for a FaceTime or phone call

26   with the child, which, as I mentioned, I don't have

27   proof of the -- what's said on the calls because the

1      Court order says we can't record the calls.  And I

2      was recording the calls prior to that for my own

3      protection and to be able to prove in court what's

4      being said; since I'm not allowed to do that because

5      of the Court order, I wasn't; however, during all of

6      these calls with the child, he said multiple things

7      to me, and every time when he was on the phone with

8      the child saying these things, I was typing it up;

9      documenting it for my own documentation; I made a

10     list of everything, and I was keeping track of all of

11     these which I --

12          THE COURT:  Ma'am, the -- the -- the -- the

13     difficulty with that is I -- I have a hard time

14     giving credit to your claims on that, when you've

15     made claims about what the exhibits you've already

16     put in show and they don't match up at all; they're

17     not what you say they are.

18          MS. ANTAR:  Well, I haven't had an opportunity

19     to explain any of the other ones that I did put in,

20     like, you know --

21          THE COURT:  Well, the ones you have explained

22     have not come close to what you've said.  And I've

23     read all of the exhibits now, and none of them show

24     the coercive control you're claiming is happening;

25     none of them.

26          MS. ANTAR:  Okay.  So him asking me repeatedly --

27          THE COURT:  What --

1          MS. ANTAR:  -- for sleeping over --

2          THE COURT:  Well --

3          MS. ANTAR:  -- and dates and all that, it

4     doesn't -- doesn't matter?

5          THE COURT:  I don't believe it rises to the

6     level coercive control if someone asked you out on a

7     date.

8          So, ma'am, just a moment; I need to ask a

9     question.

10         Attorney Nugent, do you have a matter here?

11         ATTY. NUGENT:  I do.  Yes, your Honor, with you.

12         THE COURT:  You do.

13         THE CLERK:  Trial management conference at

14    three.

15         THE COURT:  Okay.  All right.

16         MS. ANTAR:  I just want to also say --

17         THE COURT:  I'm sorry to hold you up.

18         Hold -- hold on, ma'am, I -- I  asked you to

19    give me a moment --

20         MS. ANTAR:  Okay.

21         THE COURT:  -- I'm to talking to the counsel.

22         That's on Nash and Poland.

23         ATTY. NUGENT:  Yes.  And --

24         THE COURT:  Do we have everybody here for that?

25         ATTY. NUGENT:  Yes.  Mm-hmm.

26         THE COURT:  Okay.  I'm gonna pass this briefly.

27         Gonna pass this matter and we'll --

1          MR. LODICE:  You're passing us for now?

2          THE COURT:  Yep.  We're gonna go to the trial

3     management conference.

4          MR. LODICE:  Okay.  Can I -- should I take my

5     stuff.

6          THE COURT:  You can push it to the side if you

7     want to.

8          MR. LODICE:  Thank you, your Honor.

9          THE COURT:  Stay close.

10         (Whereupon there was a pause in the

11    proceedings.)

12         THE COURT:  All right.  Ma'am, here's what I

13    would like, right; I need evidence that he's done --

14    of -- of this coercive control you claim is happening

15    sometime in the last 90 days.  So all of your stuff

16    is going back, what do you have -- take five minutes

17    to look through your stuff, what do you have that's

18    evidence you want to submit to the Court from the

19    last 90 days.

20         MS. ANTAR:  And may I submit it electronically

21    or is that not allowed?  If I submit the flash drive

22    for the Court to keep?

23         THE COURT:  Do -- is all you-- you only have it

24    electronically?

25         MS. ANTAR:  Everything I have is on

26    OurFamilyWizard.  If I had -- if -- if I can try to

27    print it upstairs again, or I could just show it

1       electronically --

2            THE COURT:  Well --

3            MS. ANTAR:  -- but I was trying to do all of

4       this prior to today and I've had a lot going on and

5       it's been really, really hard, so.

6            THE COURT:  Well, I understand.  But -- but, I

7       mean, the -- the -- on -- on the other side of the

8       coin here is, right, is you filed for a restraining

9       order.  You're asking for the Court to impose a

10      restraining on the respondent; he's come here, he has

11      materials, he appears prepared.  You're the one who

12      brought him into Court; he has a right to want this

13      resolved today and you should be prepared to go when

14      you file for that.

15           So I -- why don't you look through your phone,

16      see if there's anything on there that you need.  You

17      can -- and then we'll go from there and see if you

18      can just tell me the contents of it.  But I -- I -- I

19      gotta tell ya, if -- if this next exhibit is not

20      showing what you're claiming it's showing, I think

21      we're finished.

22           MS. ANTAR:  And I just wanted to ask a question

23      for the Court.  So any --

24           THE COURT:  Sure.

25           THE COURT:  -- evidence showing, like, asking me

26      repeatedly for dates, asking me repeatedly to

27      sleepover, asking me repeatedly out, is that

1      considered?

2           THE COURT:  That's happened in the last 90 days?

3           MS. ANTAR:  Yes.

4           THE COURT:  And all he did is ask you for a

5      date?

6           MS. ANTAR:  He's asked me multiple times and

7      I've told him multiple times I'm not interested; the

8      police have told --

9           MR. LODICE:  We've gone out on a date.

10          MS. ANTAR:  No, we have not.

11          MR. LODICE:  Yes, we have.

12          MS. ANTAR:  The police --

13          THE COURT:  Hold on.

14          MS. ANTAR:  We didn't --

15          MR. LODICE:  And we were making out after.

16          THE COURT:  Hold on.  Hold on.  Hold on.  Hold

17     on.  Let me -- let me hear from him.

18          MR. LODICE:  We went out on a date four weeks

19     ago; it was, like, the first week in October.

20          THE COURT:  Is that true, ma'am?

21          MS. ANTAR:  It was not a date.  After Sunday

22     school, he had the child -- he had the child ask me

23     directly; mommy, can you please go get lunch with

24     daddy?  He gave her this idea --

25          MR. LODICE:  It's not how --

26          MS. ANTAR:  -- and she continued to beg me.  I

27     agreed just because my attorney said if he's saying

1    -- if he's framing it as a coparenting lunch then,

2    you know, go ahead; there's nothing wrong with that.

3         MR. LODICE:  And what did we do after lunch?

4         MS. ANTAR:  He kept trying -- he kept trying to

5    to touch me --

6         THE COURT:  Hold on, sir.

7         MS. ANTAR:  -- repeatedly throughout the entire

8    time; he continued --

9         MR. LODICE:  That's not how it happened at all.

10        MS. ANTAR:  -- he continued to grab me --

11        THE COURT:  Hold on.  Hold on.

12        MS. ANTAR:  Yes.

13        THE COURT:  All right.  This -- this is a --

14   this is a much different picture than you've been

15   trying to paint.  So I'm gonna take a moment, I'm

16   gonna I'm gonna hear from his --

17        MS. ANTAR:  Okay.

18        THE COURT:  -- his version of what happened.

19        So go ahead, sir.

20        MR. LODICE:  So we went out to lunch together.

21   First, she asked me earlier that day if I would go to

22   church with her; she wanted me to be part of the

23   church and stand there with her and, you know, be --

24        MS. ANTAR:  Objection.  I never said that.

25        MR. LODICE:  I -- how --

26        THE COURT:  Okay.  Well --

27        MR. LODICE:  I could pull up the --

```
1              THE COURT:  -- ma'am, you've had your chance;
2        I'm listening to him now.
3              MR. LODICE:  I mean, I -- I probably could get
4        evidence for that if I need to.
5              THE COURT:  No.  Go ahead.
6              MR. LODICE:  And then I ended up staying and
7        then we ended up hanging out after church.  And then
8        she was like, oh, I want you to take me somewhere
9        nice.  We were gonna go to a diner, but she was like,
10       no, I want a nice restaurant.  So we went to -- I
11       don't remember the name of the place; it's here in
12       New Haven.  And then after that, when we went to the
13       car -- we went to the car together, and she had --
14       she gave her our -- our daughter her phone and our
15       daughter watching TV on the phone, and then we
16       started kissing for, like, 25 minutes; we're making,
17       talking; she's grabbing me, like, oh, da-da-da; this
18       and that.  And I'm --
19             THE COURT:  Well --
20             MR. LODICE:  -- it -- it -- it's --
21             THE COURT:  I --
22             MR. LODICE:  -- she baited me the past two
23       months and I -- I can show you all this if -- once we
24       get to my part if I need to.
25             THE COURT:  I don't think you need to, sir.  I
26       don't think you need to.  I find you credible; I find
27       you candid.
```

1          I don't find what you've told me credible,

2     ma'am.  I -- I -- so the Court's going to deny your

3     request for a a restraining order.  You've not

4     provided evidence to support your claims; what you

5     have told me is not consistent with the evidence you

6     have provided, and then --

7          MS. ANTAR:  So I don't get a chance to show the

8     evidence?  Like, you just said I could have five

9     minutes.

10         THE COURT:  No, unfortunately, you don't

11    because --

12         MS. ANTAR:  Because he's claiming we made out --

13         THE COURT:  -- even in the situation --

14         MS. ANTAR:  -- when he was trying to force me to

15    sleep with him?

16         THE COURT:  Ma'am, I don't find your claims

17    credible.

18         MS. ANTAR:  So I'm not allowed to show the

19    evidence that you just said I could look for?

20         THE COURT:  Not if -- not if -- no.  Because I

21    believe him when he tells me that you invited him out

22    to church; that you wanted to go to lunch --

23         MS. ANTAR:  He showed no proof --

24         THE COURT:  -- and so --

25         MS. ANTAR:  -- of that.

26         THE COURT:  -- so him --

27         MS. ANTAR:  I never --

```
 1              THE COURT:  I believe --
 2              MS. ANTAR:  -- I never said any of that.
 3              THE COURT:  -- I believe his testimony.
 4              MS. ANTAR:  I have proof from the --
 5              THE COURT:  Now --
 6              MS. ANTAR:  -- from the app showing the real --
 7              THE COURT:  Okay.
 8              MS. ANTAR:  -- conversation which was him
 9         insisting on staying at church because he didn't want
10         to have to drive back and forth.
11              THE COURT:  Show me that conversation.
12              MS. ANTAR:  Okay.
13              THE COURT:  Tell me what it says.
14              Do you have a copy of that conversation, sir?
15              MR. LODICE:  I don't -- actually, I might.
16              (Whereupon there was a pause in the
17         proceedings.)
18              MR. LODICE:  I -- I -- I don't have a copy of
19         that right now.  I mean --
20              THE COURT:  Okay.
21              MR. LODICE:  -- I'm sure I can go on the app and
22         print it if I need to --
23              THE COURT:  Well, let's see --
24              MR. LODICE:  -- if I need to prove myself.
25              THE COURT:  -- if she can find out when it was
26         and whether she has it; and if the two of you agree
27         of the contents of the message, you can just read
```

1       them to me.

2               (Whereupon there was a pause in the

3       proceedings.)

4           MS. ANTAR:  I did find another message of him

5       trying to show coercive control and trying to say --

6       about trying to get me in trouble.

7           THE COURT:  Well, let's -- let's just focus on

8       what I'd like to see which is you both testified

9       about this event with the church thing a few weeks

10      ago.  You said that the -- that you have messages to

11      prove that he's lying; I'd like to see those.

12          MS. ANTAR:  Okay.  So I can read to you what was

13      actually said; I -- I -- it looks like I found it if

14      you'd like.

15          THE COURT:  Sir, do you have any objection to

16      her reading?

17          MR. LODICE:  As long as she reads verbatim then

18      I have no problem with it.

19          THE COURT:  All right.  Can you tell us the --

20          MR. LODICE:  And can I have the date and time?

21          THE COURT:  -- can you tell us the date and time

22      so that he can confirm what you're saying and then if

23      you both agree on that, then I'll -- I'll take it.

24          MS. ANTAR:  So the first message was from

25      September 30th at 3:34 p.m.

26          MR. LODICE:  That's this year?

27          MS. ANTAR:  Yes.

1          MR. LODICE:  Okay.

2          MS. ANTAR:  And --

3          THE COURT:  Do you think that's about the time

4      you're referencing, sir?

5          MR. LODICE:  The time we went out to dinner?

6      No, that wasn't the --

7          THE COURT:  The time you went -- the -- the

8      church.

9          MR. LODICE:  No.

10         THE COURT:  Went out to church then to lunch.

11         MR. LODICE:  No, there was a week after that.

12         THE COURT:  Okay.

13         MS. ANTAR:  So actually, this was the weekend --

14     so the -- the 30th was prior; the 1st was Saturday,

15     and the day that we went to lunch was on the 2nd.

16         MR. LODICE:  Oh.  She might be right.

17         MS. ANTAR:  And on the 30th, I said to him,

18     please confirm you will be brining Angelina to Sunday

19     school per Court order.  He states -- says on the

20     1st, I will be dropping her off at church with your

21     mom and 9:30.  I then responded saying no, you will

22     not; she's not being dropped off to my mom; she needs

23     to be dropped off to me, I'm her Sunday school

24     teacher; you need to meet in front of the church at

25     9:45; you need to pick her back up at 12:00 if you

26     are not planning to attend the service with her.

27         MR. LODICE:  If I'm not --

1          MS. ANTAR:  In his mind that's --

2          MR. LODICE:  -- planning to attend --

3          MS. ANTAR:  -- that's me inviting him --

4          MR. LODICE:  the service.

5          MS. ANTAR:  -- to have the service together with

6     me, but all it simply said, you need to pick her back

7     up at 12 if you are not planning to attend the

8     service with her because you can't just leave her

9     alone; he would have -- she would have to be with me

10    to go to Sunday school and then get picked back up,

11    so that was simply what I said.  And then he

12    responded to that and --

13         MR. LODICE:  Is she going -- sir, well, could

14    she read it verbatim?

15         THE COURT:  Yeah.

16         MR. LODICE:  Like, as the message is --

17         THE COURT:  No, I told --

18         MR. LODICE:  -- each one in order?

19         THE COURT:  Why don't you pull all the messages

20    you have from that date.

21         'Cause I want to make sure that we're consistent

22    with that, ma'am.  I --

23         MR. LODICE:  What's the date on that there?

24         MS. ANTAR:  Those three messages were from

25    September 30th to October 1st.  And then on October

26    2nd, which was the actual day of church, we had more

27    -- another communication --

1    THE COURT:  Okay.  Well, let me --

2         MS. ANTAR:  -- following that.

3         THE COURT:  -- let me -- hold on.  Let him have

4    an opportunity to look at this.

5         MR. LODICE:  I gotta sign-in; give it ten

6    seconds.  Okay.  The first one was September 30th, is

7    that what you said?

8         THE COURT:  Yes.  And she read from three

9    messages.  Are there more messages on September 30th?

10        MR. LODICE:  Have to go back and see.  Tt's

11   gonna take me a second to scroll; there's no way to

12   jump to a date.

13        MS. ANTAR:  Those messages ended after that

14   where we only then discussed it again on the 2nd.

15        MR. LODICE:  Almost there.  Okay.  September

16   30th.  Which thread are you talking about?  'Cause

17   they all have subjects, so which thread are you

18   reading from?

19        MS. ANTAR:  I stated the date and time.

20        MR. LODICE:  But there's multiple threads for

21   that day and time, so.

22        MS. ANTAR:  I just wanted to also say he then

23   responded in a separate thread which he -- he

24   reference --

25        THE COURT:  What was the date and time of that

26   thread?

27        MS. ANTAR:  The date was 10/1/22 at 1:27 p.m.

```
 1              THE COURT:  All right.  Sir, can you find --

 2              MS. ANTAR:  Um.

 3              THE COURT:  -- that message.

 4         Hold on, ma'am.

 5              MS. ANTAR:  On 1:20 --

 6              THE COURT:  Hold on, ma'am.

 7              MS. ANTAR:  -- p.m.  I'm sorry.  1:20.

 8              THE COURT:  It was what time?

 9              MS. ANTAR:  1:20 p.m.

10              THE COURT:  1:20 p.m.  Okay.  Can you --

11              MR. LODICE:  It's -- it's very difficult to keep

12         up.  When she messages me, she messages me, like --

13              THE COURT:  I --

14              MR. LODICE:  -- on five different threads.

15              THE COURT:  See if you can find that message.

16              MR. LODICE:  Can -- can she tell -- so every

17         thread has a subject name --

18              MS. ANTAR:  This is --

19              THE COURT:  What's the subject.

20              MR. LODICE:  -- so can she tell me subject name

21         please?

22              MS. ANTAR:  The subject was attending, and he

23         started the thread.

24              MR. LODICE:  It was attending; and this is on,

25         what?  September 30th?

26              MS. ANTAR:  Yep, it's a new thread that you

27         started after the other thread.
```

1          MR. LODICE:  What day?

2          MS. ANTAR:  10/1/22.

3          MR. LODICE:  10/1.  Thank you.

4          MS. ANTAR:  And I can read if it helps.

5          MR. LODICE:  And this is -- it's called family

6     funday?

7          MS. ANTAR:  I just told you; it's called

8     attending.

9          MR. LODICE:  There's a lot from October 1st.

10          MS. ANTAR:  And I'd like to note that because I

11     said the word, you can attend the service with her,

12     he then went and started a new subject called

13     attending.  And I'd be happy to read what he said if

14     it's okay with you.

15          THE COURT:  Is that his response that you wanted

16     to point the Court to from --

17          MS. ANTAR:  It seems --

18          THE COURT:  -- from -- from the 2nd?

19          MS. ANTAR:  -- it seems -- from the 1st.

20          THE COURT:  From the -- October 1st.

21          MS. ANTAR:  Yes.  He says --

22          MR. LODICE:  Yes.

23          THE COURT:  Okay.  Well, it -- do we all -- are

24     we all on the same page?

25          MR. LODICE:  Yep.

26          THE COURT:  Okay.

27          MR. LODICE:  I believe so.

1        MS. ANTAR:  So after I said you can -- you can

2     attend with her; if -- if you're not attending with

3     her, you gotta pick her up at 12, he starts a new

4     message called attending and says, what do you mean

5     when you say attend tomorrow; like, stay for the

6     church service the whole thing; will you even be

7     there tomorrow; you have not been there at any of the

8     other weeks when I dropped her off.  And I said --

9        MR. LODICE:  She's stressing that you would

10    manipulate it.

11       MS. ANTAR:  Because whether I'm there it

12    shouldn't matter if he attends -- I said, I'm there

13    every week; I'm her Sunday school teacher.  He said,

14    that's weird; you were not there last couple of weeks

15    I would drop her off; we'll be at church at 9:45, if

16    you're not there by 10:00, we will leave; if/when you

17    get there you can show me that you can be a normal,

18    civilized person around me, then I will stay with you

19    for the service; I want us to do things together for

20    Angelina; I want her to see that.  When I never said

21    anything about us attending it together, him and I; I

22    simply said stay with the child during the service,

23    or drop her off and come back to pick her up for the

24    rest of your visitation time.

25       And then I -- I even have a video where he tried

26    to kiss me, and I pulled away when he when -- he -- I

27    was trying to record it when he first brought the

1    child in, and then after, he kept trying to touch me;

2    I told him to stop repeatedly.  We sat down for

3    coffee hour with the child with -- at which point the

4    -- he had the child ask me repeatedly if I wanted to

5    get lunch.  I agreed to get lunch with him and only

6    because the child begged and because she was present.

7    So again, it's not a date; it was a lunch, the child

8    was there.  And he tried touching me before and after

9    -- and, again, during that time he said to me to my

10   face at Pacifico restaurant in New Haven,

11   Connecticut, he said, the only reason I'm doing all

12   of this to hurt you is because you won't be with me.

13        MR. LODICE:  I've never said that.

14        MS. ANTAR:  And --

15        THE COURT:  All right.  Ma'am, I -- I don't

16   think these -- these exhibits and these items of

17   evidence say what you're claiming they say.

18        MS. ANTAR:  Would be able to show this stuff

19   about the -- the threatening about school and

20   threatening about the arrest because if he can --

21        THE COURT:  You've --

22        MS. ANTAR:  -- see at the same time, I'd love to

23   be able to --

24        THE COURT:  No.  No.

25        MS. ANTAR:  'Cause that's a big --

26        THE COURT:  No.

27        MS. ANTAR:  -- thing for me.

1    THE COURT:  Ma'am, I -- I'm not seeing any

2    evidence here.  And so I'm not going to continue this

3    hearing just to provide more evidence that's not

4    gonna support your case at the end of the day.

5    MS. ANTAR:  But this will --

6    THE COURT:  So the request --

7    MS. ANTAR:  -- this will -- this will support my

8    case entirely.

9    THE COURT:  Well, you've told me many things are

10   going to support it entirely, and it hasn't

11   materialized, so.

12   MS. ANTAR:  But you did say I could have five

13   minutes to look for this, and he -- if he can see it

14   at the same time, why can't I just read it?

15   THE COURT:  Well, we're done, ma'am.  Okay.

16   So your request for a restraining order is

17   denied.  I don't find the allegations credible.  I

18   don't find that the proof you provided proved by a

19   preponderance of the evidence that he has engaged in

20   a conduct, coercive conduct, that can qualify as

21   domestic violence that would allow the Court to issue

22   a restraining order.

23   I understand you have more exhibits that you

24   want to present, but based on the track record that

25   we have so far, I do not find that they would be

26   helpful to the Court; that they would be relevant;

27   that they would be non-cumulative, or not a waste of

1    time.  So as a result of that, I don't find the need

2    to continue to hear those exhibits.  He has been here

3    long enough.  I don't find any basis for a

4    restraining order.

5         Like I've mentioned, what you're describing is

6    unfortunately a common occurrence that happens

7    between two people that once had a relationship have

8    a child together and are trying to go on.  Because

9    the two of you have to continue to have contact

10   together because you have a child in common and each

11   of you might be looking for different things out of

12   that relationship; that's not a surprise, that's not

13   -- that's not uncommon.  Maybe he still wants to be

14   with you, maybe not; there are discussions along

15   those lines.

16        I would hope that after today, sir, if you are

17   making overtures toward -- toward her, that that

18   would stop; I don't know that I credit that you have.

19   And I understand you still are talking to her; I

20   understand you're trying to be friendly; I understand

21   you're trying to parent together, maybe you need to

22   go with a different tactic on that.

23        If you don't like the way he's talking to you on

24   OurFamilyWizard; if you don't like them contacting

25   you outside of that, address that in the custody

26   case; I don't find that's the basis for coercive

27   control.  And I haven't seen any evidence that he's

1      -- he's actually doing anything to control your life.

2      You may not like what he's asking you, but I haven't

3      seen it have any impact on you at the end of the day.

4      And you have recourse through this Court in your

5      custody case if he's threatening to not pay child

6      support, he doesn't have the choice to not pay child

7      support; that's going to be enforced through the

8      Family Magistrate Court.

9          I -- I -- I just don't see anything here that

10     rises to the level of domestic violence under the

11     statute; from what's been presented so far, I don't

12     believe any further evidence is going to help

13     establish that based on the track record that we

14     have.  If you have further issues, you can address

15     them in your custody case.  If something changes, and

16     I mean changes and actually meets the statute, you

17     can always file again if you need to.

18         But on the basis of the evidence I've heard

19     today, there is no basis for issuing a restraining

20     order, so your request is denied.

21         Thank you.

22         MR. LODICE:  Thank you, your Honor.

23         THE COURT:  We're adjourned.

24         THE MARSHAL:  All rise.  Court now stands

25     adjourned.

26

27

```
NNH-FA22-5055233-S            :   SUPERIOR COURT

THEODORA F. ANTAR             :   JUDICIAL DISTRICT
                                  OF NEW HAVEN

v.                            :   AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE             :   NOVEMBER 23, 2022
```

C E R T I F I C A T I O N

       I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, New Haven, Connecticut, before the Honorable Christopher A. Griffin, Judge, on the 23rd day of November, 2022.

       Dated this 29th day of May, 2023 in New Haven, Connecticut.

```
                                   _____  6/26/23
                                   Clare Kiley
                                   Court Recording Monitor
```

```
NNH-FA22-5055233-S          :   SUPERIOR COURT

THEODORA F. ANTAR           :   JUDICIAL DISTRICT
                                OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

MATTHEW J. LODICE           :   NOVEMBER 23, 2022
```

C E R T I F I C A T I O N

    I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of New Haven, New Haven, Connecticut, before the Honorable Christopher A. Griffin, Judge, on the 23rd day of November, 2022.

    Dated this 29th day of May, 2023 in New Haven, Connecticut.

                          6/26/23
                      Clare Kiley
                      Court Recording Monitor